October 24, 2016


Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     Cunningham v. Cornell University,
        No. 1:16-cv-06525-PKC (S.D.N.Y)

Dear Judge Castel:

The parties submit this joint letter in response to the Court's Order concerning the Initial Pretrial Conference scheduled for October 31, 2016, at 12:15 p.m., in the above-captioned matter.

1)      Brief Description of the Case

        a)      Plaintiff's Claims

This is an action for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §1132(a)(2). Plaintiff Casey Cunningham seeks to represent a class of all participants in the Cornell University Retirement Plan and Tax-Deferred Annuity Plan (collectively "Plans"), two individual account, defined contribution retirement plans that Cornell University maintains for its employees. *See* 29 U.S.C. §1002(34). The Plans are among the largest defined contribution plans in the United States, with a combined total of over $3 billion in assets and 18,000 participants as of year-end 2014.

The duties imposed on ERISA fiduciaries are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982); *see* 29 U.S.C. §1104(a)(1)(A), (B). As described in detail in the Complaint (Doc. 1) and response to Cornell's pre-motion letter (Doc. 30), the gravamen of Plaintiff's claim is that Defendants Cornell and its Retirement Plan Oversight Committee breached their fiduciary duties to the Plans by failing to monitor and control the Plans' administrative fees, failing to properly investigate an appropriate administrative and investment structure for the Plans, and failing to determine whether each of the Plans' 300 investment options remained prudent for the Plans compared to superior low-cost alternatives, impermissibly shifting to participants the responsibility to screen Plan investments. Plaintiff contends that these breaches caused significant losses to the Plans and participants' retirement savings, and seeks to recover those losses and to obtain equitable relief to prevent similar losses in the future. *See* 29 U.S.C. §1109(a).

Hon. P. Kevin Castel
October 24, 2016
Page 2

Courts have found conduct similar to what Plaintiff alleges to be a breach of fiduciary duty. Regarding administrative fees, Plaintiff contends that Cornell failed to determine how much the Plans were paying for recordkeeping, particularly through uncapped, asset-based "revenue sharing," failed to assess whether that amount was reasonable for the services provided and compared to the price that could have been obtained through a competitive bidding process, and failed to use the Plans' bargaining power to reduce fees. Based on similar facts, the Eighth Circuit affirmed a trial judgment that plan fiduciaries breached their duties. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014). Similarly, the Seventh Circuit reversed summary judgment based on evidence and expert testimony that recordkeeping expenses exceeded market rates and that a prudent fiduciary under similar circumstances would have solicited competitive bids in order to reduce fees. *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 798–800 (7th Cir. 2011).

As to plan investments, Cornell included dozens of "retail" share class mutual funds in the Plans despite the availability of "institutional" share classes of the *same* funds—which are identical in every respect except that the institutional versions charge significantly lower fees. Based on similar facts, the Ninth Circuit affirmed a trial judgment for defined contribution plan participants. *Tibble v. Edison Int'l*, 729 F.3d 1110, 1138–39 (9th Cir. 2013). As the Supreme Court explained in the same case (while holding, in a 9–0 decision, that under ERISA's statute of limitations, the date of the initial selection of a fund does not provide a defense for the continued retention of an imprudent investment): "[H]ow could respondents have acted prudently in offering the six higher priced retail-class mutual funds when respondents could have offered them effectively the same six mutual funds at the lower price offered to institutional investors like the Plan?" *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1826 (2015).

Although *Tussey*, *George*, and *Tibble* involved "401(k)" plans whereas the Cornell Plans are "403(b)" plans—meaning they are subject to different code sections for *tax* purposes—both types of plans are subject to the same standard of conduct for fiduciary purposes: ERISA's "prudent man standard of care," 29 U.S.C. §1104(a)(1). Because both types of plans are defined contribution plans, both have the same fundamental purpose of allowing employees to save for retirement. As the Supreme Court recognized over eight years ago, defined benefit pensions for workers in the private sector have declined to the point of near extinction, such that "[d]efined contribution plans dominate the retirement plan scene today." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 255 (2008). "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 135 S. Ct. at 1826. When a defined contribution fiduciary fails to negotiate and control those expenses, participants' account values are reduced and their retirement security jeopardized. Just as 401(k) participants depend on plan fiduciaries to act prudently in monitoring plan fees and

investments, employees of organizations offering 403(b) plans have the right to demand the same level of care from their fiduciaries. That the plans have some historical and tax differences is irrelevant.

Moreover, regardless of plan type, a fiduciary does not discharge its duties under ERISA merely by "following the crowd," or more specifically to Cornell, by following a small group of peers. That peer universities had similar plan structures says nothing about whether the underlying decisions were the result of a prudent, reasoned analysis. In any event, whether Cornell was justified in exercising a lesser degree of care with its 403(b) plans compared to a 401(k) fiduciary under similar circumstances is ultimately a matter for expert testimony and evidence at trial.

    b)    Defendants' Defenses

Defendants Cornell University and Retirement Plan Oversight Committee ("Cornell") contend that Plaintiff lacks standing to pursue his Complaint, which fails to state a claim, in any event.

As explained in Cornell's October 7, 2016 pre-motion submission (Doc. 29), an ERISA plaintiff who alleges that a fiduciary has breached a duty owed to a defined-contribution retirement plan must allege (and ultimately establish) how he has individually been harmed by the purported breach. The Complaint does not allege how Plaintiff has individually been affected by the supposedly imprudent actions that he now is challenging.

On the merits, Plaintiff is wrong about what ERISA requires and about Cornell's fiduciary processes and faces serious statute-of-limitations problems. ERISA's duty of prudence is satisfied when fiduciaries follow appropriate processes in their decision-making. Fiduciaries must act as would reasonable individuals "in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Plaintiff alleges that Cornell breached ERISA by doing the same things its peer institutions were doing—as evidenced by the fact that Plaintiff's counsel filed a dozen of these lawsuits in a two-week period in August. Plaintiff's primary theory is not that reasonable fiduciaries to university 403(b) plans acted differently, it is that "defined contribution" fiduciaries, as a generic group, would have done otherwise.

But there is a reason ERISA requires a contextual analysis. 401(k) plans and 403(b) plans are managed differently because they are different creatures. 403(b) plans are annuity plans; comparable annuities in 401(k) plans are rare. 403(b) annuities present a host of structural complexities. For example, many 403(b) annuities are individual contracts between the participant and the insurer. Plan fiduciaries have no authority to alter those contracts.

Hon. P. Kevin Castel
October 24, 2016
Page 4

Cornell, moreover, has in place a robust set of procedures for evaluating and periodically updating its 403(b) plans to benefit plan participants.

Finally, Cornell doubts that Plaintiff's claims are timely. ERISA requires a fiduciary-breach plaintiff to file suit within three years after he acquires knowledge of a breach, and no more than six years after the breach takes place. Many of Plaintiff's specific allegations—that there were too many recordkeepers, that there were too many investment choices, that the fees were too high—concern basic features of the Plan about which all participants had notice long ago.

2)      Contemplated Motions

Cornell has filed a pre-motion letter identifying the grounds it believes support a motion to dismiss. Doc. 29. Plaintiff has filed a response describing the reasons it believes Cornell's arguments lack merit. Doc. 30.

The parties dispute whether this case would be a jury trial or a bench trial. Plaintiff has demanded a jury trial. Cornell's position is that no jury right applies.

Plaintiff will move for class certification.

3)      Prospect for Settlement

The parties believe that settlement discussions would be premature at this time.

Hon. P. Kevin Castel
October 24, 2016
Page 5

Respectfully,

<table>
<tr><td>

SCHLICHTER BOGARD & DENTON LLP

/s/ Michael A. Wolff (with consent)
Jerome J. Schlichter (admitted *pro hac vice*)
Michael A. Wolff (admitted *pro hac vice*)
Troy A. Doles (admitted *pro hac vice*)
Heather Lea (admitted *pro hac vice*)
Andrew D. Schlichter, Bar No. 4403267
100 South Fourth Street, Suite 1200
St. Louis, Missouri 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934
jschlichter@uselaws.com
mwolff@uselaws.com
tdoles@uselaws.com
hlea@uselaws.com
aschlichter@uselaws.com

</td><td>

MAYER BROWN LLP

/s/ Brian D. Netter
Brian D. Netter (admitted *pro hac vice*)
Michelle N. Webster (admitted *pro hac vice*)
1999 K Street Northwest
Washington, DC 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
bnetter@mayerbrown.com
mwebster@mayerbrown.com

Nancy G. Ross (admitted *pro hac vice*)
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
nross@mayerbrown.com

Jean-Marie L. Atamian
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910
jatamian@mayerbrown.com

</td></tr>
</table>