UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| CASEY CUNNINGHAM, CHARLES E. LANCE, STANLEY T. MARCUS, LYDIA PETTIS, AND JOY VERONNEAU, individually and as representatives of a class of participants and beneficiaries on behalf of the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca and the Cornell University Tax Deferred Annuity Plan, | Case No. 16-cv-6525 (PKC) |
| Plaintiffs, |  |
| v. |  |
| CORNELL UNIVERSITY, THE RETIREMENT PLAN OVERSIGHT COMMITTEE, MARY G. OPPERMAN, AND CAPTRUST FINANCIAL ADVISORS, LLC, |  |
| Defendants. |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CAPTRUST FINANCIAL ADVISORS, LLC'S
## MOTION TO DISMISS

## **TABLE OF CONTENTS**

Introduction ..................................................................................................................1

Background ...................................................................................................................2

   I.  The parties ........................................................................................................2

   II.  The Cornell contract ......................................................................................3

Legal Standard .............................................................................................................4

Argument .....................................................................................................................5

   I.  Counts I to IV must be dismissed because CAPTRUST has no fiduciary duty for plan administration.................................................................................5

      A.  The Cornell contract provides that CAPTRUST has no fiduciary duties related to plan administration. ...........................................................6

      B.  Plaintiffs' claims against CAPTRUST related to plan administration (Counts I to IV) must be dismissed...........................................................7

   II.  Plaintiffs' claim that CAPTRUST is liable for offering imprudent investment options (Count V) fails to state a claim because it uses hindsight to second-guess fiduciary decisions. ....................................................................8

      A.  The allegation that other funds had lower fees does not state a claim...........9

      B.  Ample choice of investment options is not a sign of imprudence. ...........10

      C.  Plaintiffs cannot state a claim for imprudence based purely on hindsight. ...12

   III.  Count VI's prohibited transaction allegations also fail because the mutual funds in which the plans invested are not "parties in interest" under ERISA, and the mutual fund's assets are not plan assets.........................................................14

   IV.  Plaintiffs' claims against CAPTRUST are based on impermissible "group pleading" and should be dismissed for that reason as well..................................15

Conclusion ................................................................................................................16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                   **Page(s)**

*ACE Secs. Corp. Home Equity Loan Tr. v. DB Structured Prods., Inc.*,
   5 F. Supp. 3d 543 (S.D.N.Y. 2014) ..................................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................4, 6

*Austin v. Union Bank & Tr. Co.*,
   No. 3:14-CV-706, 2016 U.S. Dist. LEXIS 43454 (D. Or. Feb. 19, 2016) ...............9

*Beddall v. State St. Bank & Tr. Co.*,
   137 F.3d 12 (1st Cir. 1998)................................................................................................5, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................4

*Boeckman v. A.G. Edwards, Inc.*,
   No. 05-658-GPM, 2007 U.S. Dist. LEXIS 90251 (S.D. Ill. Aug. 31, 2007) ............14

*Columbia Air Servs., Inc. v. Fid. Mgmt. Tr. Co.*,
   No. 07-11344, 2008 WL 4457861 (D. Mass. Sept. 30, 2008) ...................................5

*DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*,
   920 F.2d 457 (7th Cir. 1990) ............................................................................................12

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)..............................................................................................3

*F.W. Webb Co. v. State St. Bank & Tr. Co.*,
   No. 09 Civ. 1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) .............................5

*Flanigan v. Gen. Elec. Co.*,
   93 F. Supp. 2d 236 (D. Conn. 2000), *aff'd*, 242 F.3d 78 (2d Cir. 2001) ................7

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ....................................................................................2, 9, 10

*Hecker v. Deere Co.*,
   569 F.3d 708 (7th Cir. 2009) ............................................................................................10

*IATSE Local 33 Section 401(k) Plan Bd. of Trs. v. Bullock*,
   No. CV 08-3949, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008).................................14

*Laboy v. Board of Trustees of Building Service 32 BJ SRSP*,
   513 F. App'x 78 (2 d Cir. 2013) ......................................................................................12

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
129 F. Supp. 3d 4 (S.D.N.Y. 2015) ...................................................................12

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2011) .................................................................9, 10, 11

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
811 F.3d 998 (8th Cir. 2016) ...................................................................5

*Medina v. Bauer*,
No. 02 Civ. 8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004)............................15

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
No. 12 CIV. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 F.
App'x 19 (2d Cir. 2013)................................................................................2, 15

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011)................................................................5, 9, 10

*Rosen v. Prudential Retirement Insurance & Annuity Co.*,
No. 3:15-cv-1839, 2016 WL 7494320 (D. Conn. Dec. 30, 2016), *appeal filed*,
No. 17-239 (2d Cir. 2017)................................................................2, 9, 16

*Santomenno v. John Hancock Life Ins. Co. (U.S.A)*,
768 F.3d 284 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1860 (2015) ...........................7

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctr. Ret. Plan v.
Morgan Stanley Inv. Mgmt., Inc.*,
712 F.3d 705 (2d Cir. 2013).................................................................. *passim*

*Tatone v. SunTrust Mortg., Inc.*,
857 F. Supp. 2d 821 (D. Minn. 2012) .................................................................15

*Tibble v. Edison Int'l*,
729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823
(2015) ................................................................................................ *passim*

*White v. Chevron Corp.*,
No. 16-cv-793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................................9

*Williams v. Milford Police Dep't*,
No. 3:15-cv-1394, 2015 U.S. Dist. LEXIS 129726 (D. Conn. Sept. 28, 2015).....................15

## Statutes

29 U.S.C. § 1002(21) ........................................................................... *passim*

29 U.S.C. § 1101(b)(1) ...................................................................................14

29 U.S.C. § 1106(a)(1)............................................................................................................8

Plaintiffs' Amended Complaint (Dkt. 38) is a broad attack on the basic structure of 403(b) retirement plans—plans designed to allow non-profit organizations to offer their employees a variety of retirement investment options. This attack should fail, but in any case it has little to do with the actions of Defendant CapFinancial Partners, LLC, d/b/a CAPTRUST Financial Advisors ("CAPTRUST").[1] Cornell University hired CAPTRUST to provide investment advice about its retirement plans pursuant to a contract attached as Exhibit 1. But the scope of that undertaking is limited: the contract limits CAPTRUST's advice to "the selection of investment manager(s) or mutual fund(s) available to the Plans *within the platform provided by the Plan's Administrator.*" Ex. 1 at 1 (emphasis added). In light of this limitation, Plaintiffs' allegations that the Cornell plans used too many recordkeepers, that they paid excessive fees for recordkeeping and other services, and that, given Cornell's chosen platform, the plans offered investment options built into that platform do not implicate CAPTRUST's fiduciary responsibilities. Indeed, most of the decisions challenged in the Amended Complaint were made before CAPTRUST was first engaged in late 2011.

The few allegations that remain boil down to the claim that the Cornell plans offered investment choices with excessive fees and sub-par performance. There are two problems with this theory, one general and one unique to CAPTRUST. First, because CAPTRUST is an investment advisor, its role was limited to providing advice, with Cornell University retaining "final decision-making authority and responsibility for the implementation of any recommendations." *Id*. Nothing in the Amended Complaint points to any allegedly imprudent advice from CAPTRUST. Second, merely pleading that cheaper funds exist somewhere in the marketplace does not state a claim, because cheaper funds may have other problems that make

---

[1] The Amended Complaint misnames CAPTRUST as "CAPTRUST Financial Advisors, LLC."

them unsuitable for a particular plan. *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).

Nor can a complaint "rely on the vantage point of hindsight" by alleging that an investment's

return underperformed a benchmark. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic*

*Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)

(quotation marks omitted). Plaintiffs' claims should therefore be dismissed, just as similar

allegations against CAPTRUST were recently dismissed (with prejudice) in *Rosen v. Prudential*

*Retirement Insurance & Annuity Co.*, No. 3:15-cv-1839, 2016 WL 7494320, at *12-17 (D. Conn.

Dec. 30, 2016), *appeal filed*, No. 17-239 (2d Cir. 2017).

Plaintiffs' allegations against CAPTRUST should be dismissed for a procedural reason as

well: They fail to specify any particular wrongdoing on the part of CAPTRUST. Instead,

CAPTRUST is lumped together with other defendants in a textbook example of impermissible

"group pleading." Am. Compl. ¶ 1; *see Ochre LLC v. Rockwell Architecture Planning & Design,*

*P.C.*, No. 12 CIV. 2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), *aff'd,* 530 F. App'x

19 (2d Cir. 2013). In light of CAPTRUST's limited role, many of the allegations against

"Defendants," plural, cannot possibly be meant to apply to CAPTRUST. For this reason too,

Plaintiffs' claims against CAPTRUST should be dismissed.[2]

## Background

## I.      The parties

Cornell offers employees the opportunity to enroll in at least two retirement plans: (1) the

Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca, and

(2) the Cornell University Tax Deferred Annuity Plan. Am. Compl. ¶¶ 9-18. Plaintiffs are

participants in at least one of the plans. *Id.* ¶¶ 19-23. Cornell is the administrator of the plans,

---

[2] CAPTRUST also adopts by reference the dismissal arguments made by the other defendants.

and CAPTRUST provides investment advice to Cornell about which investment options it should consider offering to plan participants. *Id.* ¶¶ 24, 29.

CAPTRUST was not named as a defendant in the initial complaint, and the Amended Complaint, despite its length, includes just three substantive paragraphs that explicitly mention CAPTRUST. The first alleges that Cornell "contracted with" CAPTRUST, and that CAPTRUST is "an investment advisory firm." *Id.* ¶ 29. The other two parrot ERISA's definition of a fiduciary and allege that CAPTRUST qualifies as one. *Id.* ¶¶ 30-31.

## II.    The Cornell contract

Because the Amended Complaint relies on the Cornell contract to establish CAPTRUST's status as a fiduciary, the Court may consider that contract on a motion to dismiss. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Although the Court generally must accept well-pleaded factual allegations as true, the terms of the contract control over contradictory allegations in the Amended Complaint. *ACE Secs. Corp. Home Equity Loan Tr. v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014).

The contract limits the scope of CAPTRUST's duties and its status as a fiduciary in at least three ways. First, although CAPTRUST agreed to provide investment advice and in that limited sense to serve as an ERISA fiduciary, Cornell "acknowledges that it has retained, and will exercise, final decision-making authority and responsibility for the implementation of any recommendations." Ex. 1 at 1.

Second, the Cornell contract provides that "CAPTRUST will serve as a fiduciary as defined by ERISA §3(21)(A)(ii)." *Id.* The cited provision states that anyone who "renders investment advice for a fee . . . with respect to any moneys or other property of [a] plan" is a fiduciary. 29 U.S.C. § 1002(21)(A)(ii). The Cornell Contract does *not* suggest that CAPTRUST is a fiduciary under the other provisions of ERISA's definition of fiduciary, which provide that a

3

person is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Third, the Cornell contract limits the investment advice CAPTRUST will provide to advice about "the selection of investment manager(s) or mutual fund(s) available to the plans *within the platform provided by the Plan's Administrator*," *i.e.*, provided by Cornell. Ex. 1 at 1 (emphasis added).

### Legal Standard

Rule 12(b)(6) requires dismissal if a complaint lacks enough factual allegations to support the claim or fails to assert a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court generally must assume the truth of well-pleaded factual allegations, this rule does not apply to legal conclusions, which are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The claim must be "plausible," which means the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

The Second Circuit has cautioned that allegations of a breach of fiduciary duty under ERISA require "particular care" on a motion to dismiss "to ensure that the Amended Complaint alleges *nonconclusory* factual content raising a *plausible* inference of misconduct." *Pension Benefit Guar. Corp.*, 712 F.3d at 718. Affirming this Court's dismissal of ERISA claims, the Second Circuit observed that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document

requests about its methods and knowledge at the relevant times. This burden, though sometimes appropriate, elevates the possibility that 'a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the discovery process will reveal relevant evidence.'" *Id.* at 719 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

**Argument**

**I.      Counts I to IV must be dismissed because CAPTRUST has no fiduciary duty for plan administration.**

"[F]iduciary status under ERISA is not an all-or-nothing concept." *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002 (8th Cir. 2016). Because a person is a fiduciary only "to the extent" it does certain things, an entity with such a duty for one purpose may not be a fiduciary for another. *Id.*; *see also* 29 U.S.C. § 1002(21)(A). "Where ERISA plan fiduciaries and a service provider enter into a written contract, that contract logically serves as the starting point and primary reference for any analysis" of the extent of a service provider's fiduciary duties. *F.W. Webb Co. v. State St. Bank & Tr. Co.*, No. 09 Civ. 1241, 2010 WL 3219284, at *9 (S.D.N.Y. Aug. 12, 2010). Courts routinely dismiss fiduciary duty claims against ERISA service providers based on the terms of a contract. *Renfro v. Unisys Corp.*, 671 F.3d 314, 323 (3d Cir. 2011) (finding no fiduciary status based on service provider's "limited role . . . delineated in the trust agreement"); *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 24 (1st Cir. 1998) (holding that contract "unambiguously establishes that [service provider] retained no discretionary authority" sufficient to make it a fiduciary); *Columbia Air Servs., Inc. v. Fid. Mgmt. Tr. Co.*, No. 07-11344, 2008 WL 4457861, at *3 (D. Mass. Sept. 30, 2008) (trust agreement demonstrated that service provider lacked discretionary authority).

5

CAPTRUST's contract here limits its fiduciary duties to providing investment advice, and even that advice was limited in scope. As explained below, because the Amended Complaint contains no factual allegations suggesting that CAPTRUST's advice exceeded that scope, this requires the dismissal of most of the claims against CAPTRUST.

### A.     The Cornell contract provides that CAPTRUST has no fiduciary duties related to plan administration.

The Cornell contract provides that CAPTRUST will give advice about investment options available "within the platform provided by the Plan's Administrator." Ex. 1 at 1. The Amended Complaint thus has plausibly alleged that CAPTRUST is a fiduciary, at least to some extent, under prong (ii) of ERISA's definition of fiduciary—the "investment advice" prong. The Amended Complaint goes on to allege "[u]pon information and belief [that] CAPTRUST is also a fiduciary to the Plans because it exercised discretionary authority or discretionary control respecting the management of the Plans or exercised authority or control respecting the management or disposition of its assets, and has discretionary authority or discretionary responsibility in the administration of the Plans." Am. Compl. ¶ 31. Because this allegation just parrots prongs (i) and (iii) of the statutory definition of fiduciary, it is a legal conclusion entitled to no weight. *See Iqbal*, 556 U.S. at 679.

Entirely absent from the Amended Complaint are any *factual* allegations of what CAPTRUST might have done to become a fiduciary under prongs (i) or (iii) of the statutory definition. As a result, Plaintiffs have not plausibly alleged that CAPTRUST has any duty with respect to plan administration, nor have they plausibly alleged that CAPTRUST exercised any control over the plans' assets or management. As one court explained in a holding affirmed by the Second Circuit, "[w]hile it is clear that a party cannot contract away its fiduciary obligations arising from its exercise of discretionary authority or control, the contract at issue here is the sole

source of plaintiff's contention that [the defendant] was a fiduciary . . . . It is appropriate, therefore, to examine the contract language to determine whether particular individuals are fiduciaries under ERISA." *Flanigan v. Gen. Elec. Co.*, 93 F. Supp. 2d 236, 253 (D. Conn. 2000), *aff'd*, 242 F.3d 78 (2d Cir. 2001).

As in *Flanigan*, the sole factual basis for the allegation that CAPTRUST is a fiduciary is the contract. Am. Compl. ¶ 29. Accordingly, that contract limits the scope of CAPTRUST's fiduciary duties. *See Santomenno v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 299 (3d Cir. 2014) (scope of fiduciary duty under § 1002(21)(A)(ii) can be determined by reference to the relevant contract), *cert. denied*, 135 S. Ct. 1860 (2015).

**B.      Plaintiffs' claims against CAPTRUST related to plan administration (Counts I to IV) must be dismissed.**

Because CAPTRUST's fiduciary duty is limited to providing advice about investment options available within the platform chosen by Cornell, Plaintiffs' claims against CAPTRUST relating to other issues must be dismissed.

**Counts I and II**, for example, allege that "Defendants" violated ERISA by choosing TIAA-CREF as the recordkeeper for the Cornell plans, thereby "allowing the Plans to be locked into" certain funds. Am. Compl. ¶ 217; *see also id.* ¶¶ 208-19. But nothing in the Amended Complaint suggests that CAPTRUST had any responsibility for this decision.[3] In fact, the decision to retain TIAA-CREF as the recordkeeper was made well before Cornell even engaged CAPTRUST as an advisory in 2011. *See* Am. Compl. ¶¶ 99, 204. As the Amended Complaint admits, "*Cornell has responsibility and complete discretionary authority* to control the operation,

---

[3] The contract indicates that CAPTRUST's services included "vendor analysis." Ex. 1 at 1. But as an amendment to the contract clarified, those services are "non-fiduciary" in nature. *Id.* at First Amend. In any case, CAPTRUST had no authority over the hiring of a recordkeeper. *Id.* at 1.

management and administration of the Plans, with all powers necessary to enable Cornell to properly carry out such responsibilities, *including the selection and compensation of the providers of administrative services to the Plans* and the selection, monitoring, and removal of the investment options made available to participants." Am. Compl. ¶ 24 (emphasis added); *see also id.* ¶ 113 ("By allowing the Plans to enter such a bundled arrangement with TIAA-CREF, Cornell agreed to lock its employees into funds which Cornell did not analyze."). The theories advanced in Counts I and II thus cannot state a claim against CAPTRUST.

Similarly, **Count III** alleges that CAPTRUST violated ERISA by failing to monitor and control recordkeeping fees, thereby causing the plans to incur excessive fees, and by continuing to use two recordkeepers rather than one. *Id.* ¶¶ 223, 225. Again, however, CAPTRUST had no fiduciary duty with respect to this sort of decision, and the decision to retain multiple recordkeepers was made by Cornell well before Cornell engaged CAPTRUST as an advisor. *See* Am. Compl. ¶¶ 99, 204. This count must be dismissed as against CAPTRUST.

**Count IV** alleges that the relevant contracts with the recordkeepers were prohibited transactions. *Id.* ¶ 230. ERISA's prohibited transaction rules limit the activity of "[a] fiduciary with respect to a plan." 29 U.S.C. § 1106(a)(1). Again, because CAPTRUST had no duty to decide which recordkeepers to hire, Count IV must be dismissed as against CAPTRUST.

## II. Plaintiffs' claim that CAPTRUST is liable for offering imprudent investment options (Count V) fails to state a claim because it uses hindsight to second-guess fiduciary decisions.

Count V alleges that the Cornell plans included imprudent investment options. This claim is based on three theories: (1) that the investment options charged excessive fees, Am. Compl. ¶¶ 237-38, 240; (2) that the plans offered too many investment options, *id.* ¶¶ 239-40; and (3) that Defendants failed to remove poorly performing options, *id.* ¶¶ 241-45. Theories like this, which second-guess investment decisions with the benefit of hindsight, have been routinely

dismissed, including one recent dismissal of similar allegations against CAPTRUST. *See Rosen*, 2016 WL 7494320, at \*12-17.

### A. The allegation that other funds had lower fees does not state a claim.

Allegations that cheaper funds exist somewhere in the marketplace do not state a claim, as those funds may have other problems that make them unsuitable for a particular plan. *Hecker*, 556 F.3d at 586. A plaintiff thus cannot defeat a motion to dismiss by alleging that "better investment opportunities were available at the time of the relevant decisions," since "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Pension Benefit Guar. Corp.*, 712 F.3d at 718. As another court found with respect to allegations against CAPTRUST, "the alleged concentration of high-cost mutual funds here, without more, is not sufficient to state a claim." *Rosen*, 2016 WL 7494320, at \*15.

Plaintiffs try to dodge this precedent by alleging that the plans offered higher-cost "retail" funds when otherwise identical "institutional" funds with lower fees were available. Am. Compl. ¶¶ 142-52. Numerous courts have dismissed claims relying on this theory.[4] And the theory is even weaker when applied to CAPTRUST because, as Plaintiffs allege, the difference in fees between share classes is attributable to "revenue sharing" payments that cover administrative costs. Am. Compl. ¶ 55. The decision about whether to offer investment options that pay revenue sharing is thus part of the decision about how to pay for plan administration. *Id.* ¶ 50. Because CAPTRUST was not a fiduciary with respect to those decisions, the decision to offer retail instead of institutional funds cannot be ascribed to it—especially given that the contract gave Cornell final decision-making authority on such decisions. *See* Ex. 1 at 1; *Austin v. Union Bank & Tr. Co.*, No.

---

[4] *See Renfro*, 671 F.3d at 327-28; *Loomis v. Exelon Corp.*, 658 F.3d 667, 672 (7th Cir. 2011); *Hecker*, 556 F.3d at 586; *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015); *White v. Chevron Corp.*, No. 16-cv-793, 2016 WL 4502808, at \*9-10 (N.D. Cal. Aug. 29, 2016).

3:14-CV-706, 2016 U.S. Dist. LEXIS 43454, at *35-37 (D. Or. Feb. 19, 2016) (holding that the portion of a fund's fees attributable to administrative costs should not be considered when determining whether the fund has excessive fees).

Finally, even considering the entirety of the fees associated with the fund options, the funds have expense ratios ranging from 0.04% to 1.76%, with many options scattered throughout that range. Am. Compl. ¶¶ 148, 163. Numerous courts have dismissed excessive fee claims because comparable ranges are "presumptively reasonable," particularly where, as here, the plans offer many options with low fees. *See Hecker*, 556 F.3d at 581 (range of 0.07% to "just over 1%"); *Tibble*, 711 F.3d 1110, 1083 (9th Cir. 2013) (0.03% to 2%); *Renfro*, 671 F.3d at 319 (0.1% to 1.21%); *Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011) (0.03% to 0.96%). For this reason too, Plaintiffs' "excessive fee" allegations should be dismissed.

**B.      Ample choice of investment options is not a sign of imprudence.**

Plaintiffs next allege that the plans offered too many investment options, thereby confusing or intimidating participants. Am. Compl. ¶ 153-69. These allegations are an attempt to rewrite ERISA law, which generally "encourages sponsors to allow more choice to participants in defined-contribution plans." *Loomis*, 658 F.3d at 673; *cf. Tibble,* 729 F.3d at 1134-35 ("participant choice is the centerpiece of what ERISA envisions for defined-contribution plans"). A fiduciary who enhances participant choice, thereby granting control "to the people who have the most interest in the outcome . . . cannot be faulted for doing this." *Loomis*, 658 F.3d at 673-74. Courts accordingly endorse the inclusion of numerous investment options in a plan, including one case in which participants could select among about 2,500 funds. *Hecker*, 556 F.3d at 586. As *Hecker* made clear, offering more choices does not necessarily insulate fiduciaries from liability, but neither does it create liability. *Id.* at 589-90; *see also Hecker v. Deere Co.*, 569 F.3d 708, 711 (7th Cir. 2009).

Plaintiffs offer three theories to support their attempt to rewrite ERISA law, but all three are flawed. First, Plaintiffs assert that if the plans offered fewer investment options, their assets would be more concentrated, thereby allowing the plans to negotiate lower fees. One court has already explained the flaws in that thinking:

> [I]t isn't clear to us why mutual funds would offer lower prices just because participants in this Plan have pension wealth that in the aggregate exceeds $1 billion. Exelon can't commit that sum, or any portion of it, to any one fund without abandoning the arrangement under which the participants themselves choose where their money will be invested. The expenses of retail funds derive in large measure from the need to deal with investors one at a time: to receive and mail small checks, to print and mail individual prospectuses and account statements, frequently to exchange modest sums from one fund to another, and so on. Expenses per dollar under management necessarily are higher if the average account is $100,000 than if it is $100,000,000. Hertz gets a fleet discount from General Motors when it orders 10,000 cars at a time, but Hertz does not secure fleet discounts for members of its #1 Club to buy their own GM cars; retail transactions occur at retail prices. So too with retail transactions in mutual funds.

*Loomis*, 658 F.3d at 672.

Second, Plaintiffs assert that it is imprudent to include multiple investment options "in the same investment style." Am. Compl. ¶ 153. That argument is sheer paternalism; it suggests that a participant who wants to invest in, for example, a large-cap equity mutual fund cannot be trusted with multiple options in that category. *Tibble*, 711 F.3d at 1083 ("[T]hese sorts of paternalistic arguments have had little traction in the courts.").[5]

Third, Plaintiffs cite articles suggesting that some participants cannot handle the added complexity associated with many investment options. Am. Compl. ¶¶ 159-60. Whether true or not, this theory cannot override Congress's judgment, as interpreted in the cases cited above, that

---

[5] Plaintiffs target index funds in particular as having similar characteristics, such that a plan should not offer participants a variety of index funds. Am. Compl. ¶¶ 166-68. But the Amended Complaint does not allege that the index funds the plans offered were identical. *Id.* Even index funds can differ in certain aspects, such as how they treat dividend payments, how they trade when a particular security is added to or deleted from the index, and whether they attempt to track the index based on the price or overall market capitalization of the underlying securities.

participant choice is a goal of ERISA and should be encouraged. If Plaintiffs disagree with that judgment, they should seek to amend ERISA rather than filing a lawsuit.

> **C.**      **Plaintiffs cannot state a claim for imprudence based purely on hindsight.**

Plaintiffs also allege that defendants violated ERISA by failing to remove certain funds that underperformed their benchmarks as of a single cherry-picked date (June 30, 2016). This claim is conceptually flawed because a plaintiff cannot state a claim by relying on hindsight evaluations of investment performance. *Pension Benefit Guar. Corp.*, 712 F.3d at 718 (plaintiffs "cannot rely, after the fact, on the magnitude of the decrease in the relevant investment's price"). Were this not the case, a fiduciary could be sued every time a fund underperformed its benchmark, which plainly is not correct. *See Tibble*, 729 F.3d at 1136 ("hindsight is the wrong metric for evaluating fiduciary duty"); *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457, 465 (7th Cir. 1990) (under ERISA, "the ultimate outcome of an investment is not proof of imprudence"). ERISA requires prudence, not a crystal ball. Yet the Amended Complaint says nothing about why CAPTRUST should have known in 2011 that the funds included in the plans would underperform (by Plaintiffs' metrics) five years later.

Moreover, Plaintiffs allege that the challenged funds merely underperformed their benchmarks—not that they actually lost money. But again,  underperforming a benchmark is not a sign that an investment is imprudent, particularly where the underperformance is modest. For example, in *Laboy v. Board of Trustees of Building Service 32 BJ SRSP*, the Second Circuit upheld the dismissal of a claim based on underperformance of 6 to 22 percent because "allegations of poor results alone do not constitute allegations sufficient to state a claim." 513 F. App'x 78, 79-80 (2d Cir. 2013); *accord Leber v. Citigroup 401(k) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 14 (S.D.N.Y. 2015) ("Plaintiffs' allegations of the Funds' alleged underperformance in average annual returns as compared to certain benchmark indices . . . do not raise a plausible

inference that a prudent fiduciary would have found those Funds to be 'so plainly risky' as to render the investments in them imprudent.").

Plaintiffs point to two particular funds that they allege should not have been offered: the CREF Stock Account and the TIAA Real Estate Account. But the Amended Complaint also alleges that the plans were *required* to offer the CREF Stock Account as a result of the decision to use TIAA-CREF as a recordkeeper. Am. Compl ¶¶ 78, 211. Because CAPTRUST had no fiduciary duty with respect to that decision, it cannot be held liable for it. As for the TIAA Real Estate Account (an annuity), Plaintiffs' allegations are improperly based on comparisons to the Vanguard REIT Index Fund, a mutual fund. *Id*. at ¶¶ 197-202. Mutual funds "have a variety of unique regulatory and transparency features that make it an apples-to-oranges comparison to judge them against" other types of investments. *Tibble*, 729 F.3d at 1134.

Here, the TIAA Real Estate Account has offered consistent, stable performance with positive returns over the entire class period, compared to the considerably more volatile Vanguard REIT Index Fund:

| Fund | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|------|------|------|------|------|------|------|
| TIAA Real Estate Account[6] | 13.29% | 12.99% | 10.06% | 9.65% | 12.22% | 8.16% |
| Vanguard REIT Index[7] | 28.56% | 8.70% | 17.65% | 2.48% | 30.28% | 2.45% |

Nothing prevents the plans' fiduciaries from choosing stable performance over volatility, even if that volatility might ultimately be associated with higher returns. The consistent positive performance of the TIAA Real Estate Account eviscerates any claim that it was imprudent to offer it.

---

[6] *See* TIAA, *TIAA Real Estate Account Prospectus* (May 1, 2016),
https://www.tiaa/org/public/pdf/realestate_prosp.pdf, at 11 (last visited Feb. 17, 2017).
[7] *See* Vanguard, *Vanguard REIT Index Fund Prospectus* (May 25, 2016),
http://www.vanguard.com/pub/Pdf/i3123.pdf, at 3 (last visited Feb. 17, 2017).

Finally, the Amended Complaint alleges that Defendants do not monitor certain investments available to plan participants. Am. Compl. ¶ 171. Again, CAPTRUST has no fiduciary duty to advise with respect to these investment options. *See* Ex. 1 at 1-2; *Beddall*, 137 F.3d at 24. Once again, then, Plaintiffs' allegations fail to support a claim of imprudence against CAPTRUST.

### III.   Count VI's prohibited transaction allegations also fail because the mutual funds in which the plans invested are not "parties in interest" under ERISA, and the mutual fund's assets are not plan assets.

Count VI alleges that Defendants engaged in prohibited transactions under 29 U.S.C. § 1106(a)(1), which prohibits a fiduciary from causing an ERISA plan to engage in various transactions with a "party in interest" involving the assets of the plan. Specifically, Plaintiffs allege that a prohibited transaction occurred each time plan participants invested in mutual funds provided by TIAA-CREF and Fidelity, both of whom are allegedly parties in interest. Am. Compl. ¶ 248.

This claim fails for two reasons. First, under ERISA, registered investment companies under the Investment Company Act of 1940 (i.e., mutual funds) are not parties in interest subject to this provision when plan assets are invested in their securities. 29 U.S.C. § 1002(21)(B); *see also IATSE Local 33 Section 401(k) Plan Bd. of Trs. v. Bullock*, No. CV 08-3949, 2008 WL 4838490, at *5-6 (C.D. Cal. Nov. 5, 2008) (dismissing prohibited transaction claims because mutual funds are not parties in interest). It is undisputed here that the TIAA-CREF and Fidelity funds are securities of registered investment companies. Dkt. 1 ¶¶ 35-36.

Second, ERISA's definition of "plan assets" excludes the assets of mutual funds. 29 U.S.C. § 1101(b)(1). Transactions between the plans and the mutual funds—including the payment of the expense ratios out of the assets of those mutual funds—thus do not involve plan assets. *See Boeckman v. A.G. Edwards, Inc.*, No. 05-658-GPM, 2007 U.S. Dist. LEXIS 90251, at

*8 (S.D. Ill. Aug. 31, 2007) ("[G]iven that . . . the mutual funds were not trafficking in Plan assets, the Court concludes that Boeckman's prohibited transactions claims fail as a matter of law.").

### IV. Plaintiffs' claims against CAPTRUST are based on impermissible "group pleading" and should be dismissed for that reason as well.

"Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." *Ochre LLC*, 2012 WL 6082387, at *6. When a complaint fails to explain which defendant did what, "the allegations fail to give adequate notice to the[] defendants as to what they did wrong." *Medina v. Bauer,* No. 02 Civ. 8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004); *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831-32 (D. Minn. 2012). Accordingly, "[a] plaintiff fails to satisfy Rule 8 if the complaint lumps all the defendants together and fails to distinguish their conduct." *Williams v. Milford Police Dep't*, No. 3:15-cv-1394, 2015 U.S. Dist. LEXIS 129726, at *3 (D. Conn. Sept. 28, 2015) (alterations omitted).

The Amended Complaint fails to state a claim against CAPTRUST because it does not specify the misconduct in which CAPTRUST engaged, instead lumping that entity together with all other defendants. Am. Compl. ¶ 1. This leaves CAPTRUST guessing as to exactly how it is alleged to have breached any duties. For example, the Amended Complaint does not allege what advice CAPTRUST offered the plans, whether or how that advice was deficient, and whether the advice was even followed. The mere allegation that the plans acted imprudently when selecting investment options, without specifying CAPTRUST's role, if any, in choosing particular options, does not put CAPTRUST on notice of what it allegedly did wrong, much less raise a plausible inference of misconduct. *See Pension Benefit Guar. Corp.*, 712 F.3d at 718.

The *Rosen* case cited elsewhere in this brief rejected CAPTRUST's "group pleading" argument, dismissing the claims asserted in that case on other grounds. But whether *Rosen*'s ruling on the group pleading issue was right or wrong, the complaint there involved a narrower set of allegations, and it limited CAPTRUST's alleged wrongdoing to the provision of investment advice. In contrast, the much lengthier Amended Complaint here consistently lumps "Defendants" together as a single unit, and consistently attributes actions to that group that CAPTRUST could not have undertaken. *See*, *e.g.*, Am. Compl. ¶ 8(b) (accusing "Defendants" of "improper bundling of some of the Plans' investment products"); *id*. at ¶ 18 (accusing "Defendants" of exercising exclusive control over investment options offered in the plans); *id*. at ¶ 55 (accusing "Defendants" of "us[ing] a different method of paying for recordkeeping for the Plan"); *id*. at ¶ 78 (accusing "Defendants" of "using TIAA-CREF"); *id*. at ¶ 102 (accusing "Defendants" of "offer[ing] a total of 299 investment options"); *id*. at ¶ 125 (accusing "Defendants" of "continu[ing] to contract with two separate recordkeepers"). At times, the Amended Complaint refers to a single unidentified "Defendant," leaving the reader guessing as to exactly which defendant is being referenced. *Id.* ¶ 78 ("Defendant failed to implement an open architecture platform . . . . Defendant used multiple recordkeepers . . . ."); *id.* at ¶ 79 ("Defendant failed to perform such an evaluation . . . . Defendant also failed to evaluate . . . ."); *see also id.* at ¶¶ 113, 185, 240, 245 (referring to Defendants with the singular pronoun "it").

This is more than sloppy pleading; it confirms that Plaintiffs have failed to plead facts that raise a plausible inference of wrongdoing by CAPTRUST. For this reason as well, the claims against CAPTRUST should be dismissed.

## Conclusion

For the foregoing reasons, CAPTRUST respectfully requests that the Court dismiss the claims against CAPTRUST with prejudice and award any other appropriate relief.

Respectfully submitted,

SIDLEY AUSTIN LLP

/s/ *Eric S. Mattson*
Joel S. Feldman (admitted *pro hac vice*)
Eric S. Mattson (admitted *pro hac vice*)
Daniel R. Thies (admitted *pro hac vice*)
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email: jfeldman@sidley.com
        emattson@sidley.com
        dthies@sidley.com

Andrew W. Stern
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: astern@sidley.com

*Attorneys for Defendant CapFinancial Partners,*
*LLC, d/b/a CAPTRUST Financial Advisors, LLC*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 17, 2017, a copy of the foregoing Defendant CAPTRUST Financial Advisors, LLC's Motion to Dismiss was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Daniel R. Thies*          
Daniel R. Thies