UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CASEY CUNNINGHAM, CHARLES E.
LANCE, STANLEY T. MARCUS, LYDIA
PETTIS, and JOY VERONNEAU, individually
and as representatives of a class of participants
and beneficiaries on behalf of the Cornell
University Retirement Plan for the Employees of
the Endowed Colleges at Ithaca and the Cornell
University Tax Deferred Annuity Plan,

                               Plaintiffs,                         16-cv-6525 (PKC)

          -against-                            MEMORANDUM
                                                     <u>AND ORDER</u>

CORNELL UNIVERSITY, THE RETIREMENT
PLAN OVERSIGHT COMMITTEE, MARY G.
OPPERMAN, and CAPFINANCIAL PARTNERS,
LLC d/b/a CAPTRUST FINANCIAL ADVISORS,

                             Defendants.
-----------------------------------------------------------x

CASTEL, Senior District Judge:

          Plaintiffs are participants and beneficiaries of the Cornell University Retirement

Plan for the Employees of the Endowed Colleges at Ithaca (the "Retirement Plan") and the

Cornell University Tax Deferred Annuity Plan (the "TDA Plan") (together, the "Plans"). They

bring this action on behalf of the Plans against Cornell University, The Retirement Plan

Oversight Committee, Mary G. Opperman (the "Cornell Defendants") and CAPTRUST

Financial Advisors ("CAPTRUST") alleging violations of sections 404 and 406 of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1106.

The Cornell Defendants and CAPTRUST have separately moved to dismiss the corrected amended complaint (the "Complaint") (Dkt. 81). (Dkts. 71, 76.) For reasons to be explained, defendants' motions to dismiss will be granted in part and denied in part.

THE COMPLAINT

The following factual allegations are taken from the Complaint and accepted as true for the purposes of defendants' motions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). All reasonable inferences are drawn in favor of the plaintiffs as the non-movants. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

I.      The Plans.

The Retirement Plan and the TDA Plan are defined contribution, individual account, employee pension benefit plans sponsored by Cornell University ("Cornell") for eligible employees. (Compl. at 7-8.)[1] According to the Complaint, the Retirement Plan is funded by contributions from Cornell on behalf of its employees while the TDA Plan is funded through employee contributions of their own pre-tax earnings. (Id. at 7, 9, 16.) As of December 2014, the Plans each held over $1 billion in net assets and were among the largest 0.06% and 0.087% of all defined contribution plans in the United States based on asset size. (Id. at 7, 9.) According to plaintiffs, such "jumbo plans" have "tremendous bargaining power to demand low-cost administrative and investment management services" from third-party service providers. (Id. at 2, 9.)

The Plans' fiduciaries choose the investment options included in the Plans and participants may decide to invest in any of the options available under the Plans. (Id. at 9.)

---

[1] The Court notes that the Complaint is not consistently numbered sequentially and includes several paragraphs with the same number. (See, e.g., ¶ 32 on page 13 and ¶ 32 on page 16.) Therefore, all citations to the Complaint are to the page number rather than paragraph number.

Participants have sole discretion to direct their investments.  (See id.)  Plaintiffs allege that defendants violated their fiduciary duties by including imprudent and expensive investment options in the Plans and by allowing the Plans' "conflicted third-party service providers—TIAA-CREF and Fidelity—to dictate the Plans' investment lineup."  (Id. at 3-4.)

The Complaint alleges that as of December 31, 2014, the Retirement Plan offered 299 investment options including 68 TIAA-CREF investments and 231 Fidelity investments. (Id. at 53.)  The TDA Plan offered 301 investment options including 70 TIAA-CREF investments and 231 Fidelity investments.  (Id.)  Both plans offered the TIAA Traditional Annuity, which is a fixed annuity contract that returns a contractually specified minimum interest rate.  (Id.)  TIAA-CREF requires plans that offer the TIAA Traditional Annuity to also offer the CREF Stock Account and Money Market Account and to use TIAA as a recordkeeper for its proprietary products.  (Id. at 38.)  The other investment options in the Plans include retail and institutional mutual funds, an insurance separate account (the TIAA Real Estate Account), variable annuity options, and a fixed annuity option.  (Id. at 53-54.)

Both plans use two separate recordkeepers, TIAA-CREF and Fidelity, a system plaintiffs claim is inefficient and costly.  (Id. at 63.)  Plaintiffs allege that a prudent fiduciary would have moved to a single recordkeeper and cite several examples of other university retirement plans that have done so.  (Id. at 41-46.)  Plaintiffs also cite industry literature indicating that multi-recordkeeper models are inefficient, expensive and confusing for participants.  (Id. at 46-51.)

II.    The Parties.

Plaintiffs are Casey Cunningham, Charles E. Lance, Stanley T. Marcus, Lydia Pettis and Joy Veronneau.  (Id. at 1.)  Each is a current or former Cornell employee who is a

participant in the Plans.  (Id. at 10.)  They bring this action on behalf of the Plans pursuant to

29 U.S.C. § 1132(a)(2).  (Id. at 1.)  Plaintiffs allege that they have invested in many, but not all,

of the options offered under the Plans.  (Id. at 5-6.)

According to the Complaint, Cornell is the Plan Administrator and "the fiduciary

responsible for the control, management and administration of the Plans under 29 U.S.C.

§ 1102(a)."  (Id. at 11.)  Plaintiffs allege that Cornell has authority and discretionary control over

the "selection and compensation of providers of administrative services to the Plans," and the

"selection, monitoring, and removal of the investment options made available to participants for

the investment of their contributions and provisions of their retirement income."  (Id.)  Plaintiffs

claim that Cornell is a fiduciary to the Plans "because it exercised discretionary authority or

discretionary control respecting the management of the Plans or exercised authority or control

respecting the management or disposition of its assets, and has discretionary authority or

discretionary responsibility in the administration of the Plans."  (Id. (citing 29 U.S.C.

§ 1002(21)(A)(i), (iii)).)

Plaintiffs also allege that Cornell formed the Retirement Plan Oversight

Committee (the "Committee") to oversee the investment options provided by the Plans "or

otherwise administer the Plans."  (Id. at 12.)  Defendant Mary G. Opperman serves as Cornell's

Vice President for Human Resources and Chair of the Committee.  (Id.)  Plaintiff claims that

both the Committee and Opperman are fiduciaries of the Plans because they "exercised

discretionary authority or discretionary control respecting the management of the Plans or

exercised authority or control respecting the management or disposition of its assets, and have

discretionary authority or discretionary responsibility in the administration of the Plans."  (Id.

(citing 29 U.S.C. § 1002(21)(A)(i), (iii)).)

Defendant CAPTRUST is an investment advisory firm allegedly hired by the Committee.  (Id.)  Plaintiffs claim that CAPTRUST is also a fiduciary of the Plans because "it rendered investment advice to the Plans for a fee or other compensation . . . with respect to any moneys or other property of the Plans, or had the authority or responsibility to do so."  (Id. (citing 29 U.S.C. § 1002(21)(A)(ii)).)  Plaintiffs also claim that, like the Cornell Defendants, CAPTRUST exercised discretionary authority or control over the management of the Plans, the management or disposition of the Plans' assets and had discretionary authority or responsibility for the Plans' administration.  (Id. at 13.)

III.     Alleged Fiduciary Breaches.

Plaintiffs contend that defendants breached their fiduciary duties by failing to leverage the Plans' size to reduce expenses, failing to exercise independent judgment in choosing the investments included in the Plans, and allowing TIAA-CREF and Fidelity to require inclusion of particular proprietary funds, link their recordkeeping services to the placement of proprietary funds in the Plans, and collect "nearly unlimited asset-based compensation from their proprietary products."  (Id. at 3.)  Plaintiffs also allege that defendants selected and retained unnecessarily expensive and underperforming investment options in the Plans and failed to monitor and control the Plans' administrative fees.  (Id. at 126-28, 130-34.)  Finally, plaintiffs allege that defendants failed to monitor other fiduciaries and caused the Plans to engage in prohibited transactions by paying unreasonable fees.  (Id. at 124-25, 128-29, 134-35, 137-38.)

IV.     Litigation Background.

This action is one of several filed by the same counsel in federal courts across the country against different university pension plans alleging breaches of the fiduciary duties imposed by ERISA.  Several courts have, in the context of a motion to dismiss, had occasion to

speak to whether a parallel complaint states a claim for relief. See, e.g., Henderson v. Emory Univ., No. 16 cv 2920 (CAP), 2017 WL 2558565 (N.D. Ga. May 10, 2017); Clark v. Duke Univ., No. 16 cv 1044 (CCE) (LPA), Dkt. 48 (M.D.N.C. May 11, 2017); Sweda v. Univ. of Pennsylvania, No. 16-4329, 2017 WL 4179752 (E.D. Pa. Sept. 21, 2017). In this district, Judge Katherine Forrest recently issued a decision in Sacerdote v. New York Univ., No. 16 cv 6284 (KBF), 2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) and in Cates v. Trs. of Columbia Univ. in the City of New York, No. 16 cv 6524 (KBF), Dkt. 116 (S.D.N.Y. Aug. 28, 2017), granting in part and denying in part defendants' motions to dismiss. In both of these cases, plaintiffs brought claims against New York University ("NYU") and Columbia University ("Columbia") that are nearly identical to those asserted against the Cornell defendants and CAPTRUST. The Court agrees in substantial part with Judge Forrest and adopts her reasoning as set forth in both Sacerdote and Cates, except where noted below.

DISCUSSION

I.    Legal Standard.

      Defendants move to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court "may consider all papers and exhibits appended to the complaint, as well as any

matter of which judicial notice may be taken." Hirsch v. Arthur Andersen & Co., 72. F.3d 1085, 1092 (2d Cir. 1995). "[D]ocuments upon which the complaint relies and which are integral to the complaint" are also appropriate for consideration. Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

II.     Judicial Notice.

The Cornell defendants ask the Court to take judicial notice of several documents. Those documents are: (1) Cornell University's Investment Policy Statement, available on Cornell's website; (2) TIAA's Restated Charter, filed with the State of New York; (3) Forms 5500 filed with the U.S. Department of Labor ("DOL") by Cornell and other universities; (4) excerpts from 2016 prospectuses for several investment funds, filed with the U.S. Securities and Exchange Commission ("SEC"); (5) 2016 plan disclosures for both Plans and a 2012 notice of midyear benefits change; (6) TIAA Annuity contracts; and, (7) the complaint filed in Doe v. Columbia Univ., No. 16 cv 6488 (S.D.N.Y.) on August 17, 2016. (Request for Judicial Notice in Connection with Cornell Defs.' Mot. to Dismiss ("Judicial Notice Request"), Dkt. 74, Exs. A-G.) Pursuant to Rule 201 of the Federal Rules of Evidence, a court may take judicial notice, "at any stage of the proceeding," of any fact that is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201, Fed. R. Evid. A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Id.

Courts regularly take notice of publicly available documents including regulatory filings. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (SEC filings); Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc., 99 F. Supp. 3d 1110, 1126

(C.D. Cal. 2015) (Form 5500 filings). Courts may also take judicial notice of information contained on websites where "the authenticity of the site has not been questioned." Hotel Emps. & Rest. Emps. Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 549 (2d Cir. 2002). Judicial notice may also be taken "of a document filed in another court . . . to establish the fact of such litigation and related filings." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (internal quotation marks omitted).

Plaintiffs do not dispute the authenticity of any of the proffered documents. Rather, they argue that even if judicial notice may be taken of these materials, they cannot be used for the purposes the Cornell defendants seek to use them – namely, to resolve disputed issues of fact in the Cornell defendants' favor. The Court will take judicial notice of all but the TIAA annuity contracts and 2012 notice of midyear benefits change as publicly available online (Cornell University's Investment Policy Statement), publicly filed with a government regulatory agency (TIAA's Restated Charter, DOL Forms 5500, prospectuses), court filings (Doe v. Columbia University complaint), or referenced in, and integral to, the complaint (plan disclosures). However, these documents may only be considered for the fact that they contain a statement therein but not to prove the truth of the statement. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008). The TIAA annuity contracts and the 2012 notice of midyear benefits change are not proper subjects of judicial notice as they are neither integral to the complaint nor publicly available.

III.    ERISA Fiduciary Duties.

ERISA imposes upon fiduciaries "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the

maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." Mertens v. Hewitt Assocs., 508 U.S. 248, 251-52 (1993) (internal quotation marks omitted) (alteration in original). ERISA is a "comprehensive and reticulated statute" which statutorily defines these duties. Id. at 251 (quoting Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980)). An ERISA fiduciary has a duty of loyalty, which requires that he "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). An ERISA fiduciary also has a duty of prudence, which requires that the fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Id. § 1104(a)(1)(B). To state a claim for breach of fiduciary duty, a complaint must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty. See id. § 1109.

IV.    Duty of Loyalty – Counts I, III and V.

As in Sacerdote and Cates, plaintiffs claim that all defendants failed to act "for the exclusive purpose of providing benefits to participants and their beneficiaries." Id. § 1104(a)(1)(A). Specifically, plaintiffs allege that defendants breached the duty of loyalty by:

> (1) "favor[ing] the financial interests of TIAA-CREF in receiving a steady stream of revenues from TIAA-CREF's proprietary funds over the interests of participants" by allowing TIAA to mandate the inclusion of its own funds in the Plans and to require that it provide recordkeeping services for its proprietary options (Count 1);

(2) "allowing TIAA-CREF and Fidelity to put their proprietary investments in the Plans without scrutinizing those providers' financial interest in using funds that provided them a steady stream of revenue sharing payments" (Count III); and

(3) failing to consider the recordkeepers' financial interest in including their own proprietary investments in the Plans and failing to make investment decisions based solely on the merits of the investment funds (Count V).

(Compl. at 122-23, 127, 132.)

Because these claims do not support an inference that defendants' actions were *for the purpose* of providing benefits to themselves or someone else and did not simply have that incidental effect, the loyalty claims in Count I, Count III and Count V are dismissed. See Sacerdote, 2017 WL 3701482, at *5-6.

V.    Duty of Prudence – Counts I, III and V.

a.    Count I.

ERISA imposes a duty on plan fiduciaries to manage plan assets with prudence. 29 U.S.C. § 1104(a)(1)(B).  In Count I, plaintiffs allege that defendants breached their fiduciary duties by:

(1) "allowing TIAA-CREF to mandate the inclusion of the CREF Stock Account and Money Market Account in the Plans, as well as the TIAA Traditional Annuity;" and by

(2) allowing TIAA-CREF to "require that it provide recordkeeping for its proprietary options."

(Compl. at 122.) According to plaintiffs, these two "lock-in" agreements violated the duty of prudence because they interfered with the Plan's ability to remove certain investments, even if they became imprudent, and prevented the Plans from using lower-cost recordkeepers. (Id.) Plaintiffs assert that by agreeing to these arrangements, defendants "abdicated their duty to independently assess the prudence of each option in the Plans on an ongoing basis, and to act prudently and solely in the interest of participants in selecting the Plans' recordkeeper." (Id.)

In Sacerdote and Cates, Judge Forrest dismissed identical allegations for failing to plausibly allege a breach of fiduciary duty. See Sacerdote, 2017 WL 3701482, at *7-8; Cates, No. 16 cv 6524, Dkt. 116 at 3. But see Henderson, 2017 WL 2558565, at *6. As was the case in Sacerdote, the three challenged investments represent a small fraction of the 299 and 301 options available in the Plans, and there is no allegation that plaintiffs were required to invest in any particular option. See Sacerdote, 2017 WL 3701482, at *7. Similarly, the Court agrees with Judge Forrest that the Plans' contractual agreement with TIAA-CREF requiring it to place certain investment options in the Plans and use TIAA-CREF's recordkeeping services does not, on its own, demonstrate imprudence. See id. at *7-8. Even if the agreement with TIAA-CREF limited defendants' ability to remove particular investment options, there is no allegation that defendants were unable to terminate the entire agreement with TIAA-CREF if they believed that to be a prudent action. Finally, the Complaint fails to allege that an agreement with TIAA-CREF that restricted defendants' ability to contract with lower-cost recordkeepers breached the duty of prudence. See id. at *7-8 (quoting Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Medical Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 719-20 (2d Cir. 2013)).

Henderson relied on the Supreme Court's decision in Tibble v. Edison Int'l, 135 S. Ct. 1823 (2015) ("Tibble III") in denying a motion to dismiss similar claims against Emory University.  See 2017 WL 2558565, at *6.  While considering a statute of limitations issue, the Tibble III Court suggested that a plan fiduciary has a continuing duty to monitor investment options and remove any that become imprudent.  135 S. Ct. at 1828-29.  However, the Court also specifically declined to define the precise scope of that continuing duty.  Id. at 1829.  Therefore Tibble III does not preclude dismissal at this stage.

Defendants' motions to dismiss the prudence claims in Count I are granted.

b. Count III.

In Count III, plaintiffs allege that defendants acted imprudently by allowing the Plans to pay unreasonable administrative fees.  Specifically, plaintiffs allege defendants breached their fiduciary duties by:

(1) failing to monitor and control the Plans' recordkeeping fees by (a) failing to monitor the amount of revenue sharing received by the Plans' recordkeepers, (b) failing to determine if the amount of revenue sharing paid to the recordkeepers was competitive or reasonable, and (c) failing to use the Plans' size to reduce fees or obtain sufficient rebates to the Plans for excessive fees paid by participants;

(2) failing to solicit bids from competing recordkeeping providers on a flat per-participant fee basis; and

(3) failing to engage in a timely and reasoned decision-making process to determine whether the Plans would benefit from moving to a single recordkeeper.

(Compl. at 126-27.)  In <u>Sacerdote</u> and in <u>Cates</u>, Judge Forrest concluded that identical claims plausibly stated a claim for relief at this stage.  <u>See</u> <u>Sacerdote</u>, 2017 WL 3701482, at *8-10; <u>Cates</u>, No. 16 cv 6524, Dkt. 116 at 3; <u>see also</u> <u>Henderson</u>, 2017 WL 2558565, at *5-6 (denying motion to dismiss similar claims); <u>Clark</u>, No. 16 cv 1044, Dkt. 48 at 3 (same).  <u>But</u> <u>see</u> <u>Sweda</u>, 2017 WL 4179752, at *8 (granting motion to dismiss similar claims).  This Court agrees and denies defendants' motions to dismiss the prudence claims in Count III for the reasons explained in <u>Sacerdote</u>.

  c. <u>Count V.</u>

   In Count V, plaintiffs allege that defendants breached their duty of prudence by selecting investment options with excessive and unreasonable fees and by failing to remove investment options with a history of poor performance.  Specifically, plaintiffs allege defendants breached their fiduciary duties by:

  (1) continuing to offer the CREF Stock Account and TIAA Real Estate Account despite their high fees and poor performance;

  (2) selecting and retaining investment options, including actively managed funds, with high fees and poor performance relative to other investment options that were readily available to the Plans;

  (3) selecting and retaining high-cost retail mutual funds instead of materially identical lower cost institutional mutual funds;

  (4) selecting and retaining investment options with unnecessary layers of fees;

  (5) failing to consolidate the Plans' investment options into a "core lineup," depriving the Plans of their ability to qualify for lower cost share classes of certain investments and causing confusion among plan participants;

(6) failing to monitor any of the Plans' options until October 1, 2014, and

monitoring only "core" investment options after that date.

(Compl. at 131-34.)  This Court agrees with Judge Forrest that the fourth and fifth allegations fail

to plausibly allege a breach of the duty of prudence.  See Sacerdote, 2017 WL 3701482, at *11.

Simply alleging that the Plans included investment options with unnecessary "layers" of fees

does not plausibly allege that the overall fee was unreasonable, and while plaintiffs claim that the

Plans offered too many options to participants, they do not allege that any plan participant was

actually harmed by defendants' failure to reduce the number of options available.  See id.; see

also Cates, No. 16 cv 6524, Dkt. 116 at 3 (noting that while the Columbia plans had more

investment options than the NYU plans at issue in Sacerdote, that fact did not change the

analysis); Henderson, 2017 WL 2558565, at *3 (111 options not imprudent).  But see Clark, No.

16 cv 1044, Dkt. 48 at 3 (denying, without analysis, motion to dismiss a claim that offering 400

options was imprudent).  Defendants' motions to dismiss the prudence claims based on the layers

of fees and the number of investment choices are granted.

This Court also agrees that the first and second allegations adequately support

plaintiffs' prudence claim.  See Sacerdote, 2017 WL 3701482, at *10.[2]  Plaintiffs' allegations

that specific funds underperformed over one, five and ten year periods and that lower-cost,

higher performing investments were available plausibly states a claim.  (Compl. at 101-106, 108-

11.)  In addition, defendants' argument that plaintiffs used inappropriate benchmarks to assess

---

[2] In addition to the allegations present in the Sacerdote complaint, plaintiffs claim that as of June 30, 2016, over 66% of the funds with at least five years of performance history underperformed their respective benchmarks over the previous five years.  (Compl. at 132.)  This additional allegation does not materially affect the Court's analysis because plaintiffs' claim that defendants breached their fiduciary duties by retaining underperforming investment options survives the motions to dismiss.

the performance of the challenged options raises factual questions that are not properly addressed on a motion to dismiss.  See Sacerdote, 2017 WL 3701482, at *10.

However, this Court respectfully disagrees with Sacerdote's conclusion, in part, as to plaintiffs' claim that defendants breached their fiduciary duty by including retail mutual funds instead of identical, lower-cost, institutional mutual funds.  In the Complaint, plaintiffs identify over 90 higher cost mutual fund share classes in the Plans for which a "significantly lower-cost, but otherwise identical, share class of the same mutual fund was available."  (Compl. at 69.)  Sacerdote relied on the decisions of the Third, Seventh and Ninth Circuits in Renfro v. Unisys Corp., 671 F.3d 314 (3d Cir. 2012), Loomis v. Exelon Corp., 658 F.3d 667 (7th Cir. 2011), Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009), and Tibble v. Edison Int'l, 729 F.3d 1110 (9th Cir. 2013) ("Tibble II"), vacated on other grounds by 135 S. Ct. 1823 (2015), in finding that "[w]hen retail funds are just several of a wide range of options," and where the fees associated with those retail funds fall within ranges permitted by other courts, their inclusion is not imprudent.  See Sacerdote, 2017 WL 3701482, at *11.  However, the courts in those cases considered challenges to the overall range of investment options offered by the plans rather than the prudence of including any particular investment options.  See, e.g., Renfro, 671 F.3d at 325-28 (dismissing plaintiffs' claims challenging the "plan's mix and range of investment options" but not "the prudence of the inclusion of any particular investment option" because the plan offered "a reasonable range of investment options with a variety of risk profiles and fee rates"); Hecker, 556 F.3d at 586-87 (dismissing plaintiffs' claims challenging the fee distribution and the fact that the plans only included high-fee options because "the Deere Plans offered a sufficient mix of investments for their participants," including a "wide range of expense ratios"); Loomis, 658 F.3d at 670 ("Plaintiffs contend that Exelon should have arranged for access to 'wholesale'

or 'institutional' investment vehicles. Some mutual funds offer a separate 'institutional' class of shares, and Exelon's Plan also could have participated in trusts and investment pools to which the general public does not have access.").

Here, plaintiffs' allegations include the claim that the range of investment options in the Plans was imprudent because it included retail funds. (See Compl. at 131-32.) Therefore, to the extent plaintiffs claim that the Plans' menu of investment options should have included lower-cost options such as "lower-cost insurance company variable annuities and insurance company pooled separate counts," (Id. at 132), this Court agrees that plaintiffs' claims are foreclosed by the principles set out in Loomis, Hecker, Renfro, and Tibble II. See Sacerdote, 2017 WL 3701482, at *11 (citing Renfro, 671 F.3d at 319; Loomis, 658 F.3d at 669-70; Hecker, 556 F.3d at 586; Tibble II, 729 F.3d at 1135).

However, to the extent plaintiffs claim that defendants breached their fiduciary duties by selecting specific retail funds over lower-cost, but otherwise identical, institutional funds, (see Compl. at 67-78), these allegations are sufficient to survive the motions to dismiss. When faced with this type of claim, several courts have found similar allegations to plausibly allege a breach of fiduciary duty. See, e.g., Braden v. Wal-Mart Stores, 588 F.3d 585, 595-96 (8th Cir. 2009) (allegations that plan included only retail share funds despite being able to obtain comparatively cheaper institutional funds due its size stated a claim for breach of fiduciary duty); Kruger v. Novant Health, Inc., 131 F. Supp. 3d 470, 476 (M.D.N.C. 2015) ("This court is not persuaded the Hecker analysis controls this case at the pleadings stage, . . . [in part because] Plaintiffs have alleged these fees are excessive, not by virtue of their percentage as in Hecker and its progeny [including Loomis and Renfro], but because there are different versions of the same investment vehicle available to the Plan that have lesser fees."); Tibble v. Edison Int'l, No. 07-

5359 (SVW)(AGRX), 2010 WL 2757153, at *30 (C.D. Cal. July 8, 2010) ("Tibble I") (granting judgment to plaintiffs after bench trial), aff'd, 711 F.3d 1061 (9th Cir. 2013), aff'd, 729 F.3d 1110 (9th Cir. 2013), aff'd, 820 F.3d 1041 (9th Cir. 2016), vacated and remanded on other grounds, 843 F.3d 1187 (9th Cir. 2016); Henderson, 2017 WL 2558565, at *2. But see Sweda, 2017 WL 4179752, at *9 (relying on Loomis, Renfro and Hecker), White v. Chevron Corp., No. 16 cv 0793 (PJH), 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) (same).

   Similarly, the Ninth Circuit's decision in Tibble II relied on Loomis, Hecker and Renfro to affirm the district court's summary judgment ruling that including retail mutual funds in a plan is not categorically imprudent. 729 F.3d at 1134–35. However, the court also affirmed the district court's conclusion, after a bench trial, that including specific retail mutual funds was imprudent where fiduciaries had failed to investigate available institutional class alternatives that the court found to be identical apart from cost. Id at 1137-39 ("The basis of liability was not the mere inclusion of retail-class shares, as the court had rejected that claim on summary judgment. Instead, beneficiaries prevailed [in the district court] on a theory that Edison ha[d] failed to investigate the possibility of institutional-share class alternatives. . . . On this record we have little difficulty agreeing with the district court that Edison did not exercise the 'care, skill, prudence, and diligence under the circumstances' that ERISA demands in the selection of these retail mutual funds."). While it may turn out that defendants had legitimate and prudent reasons for making the challenged investments available to participants—or that the retail and corresponding institutional mutual funds were not truly identical—accepting the Complaint's allegations as true and drawing all reasonable inferences in favor of the plaintiffs, plaintiffs' allegations are sufficient, at this stage, to survive a motion to dismiss. See Braden, 588 F.3d at 596.

Plaintiffs' claim that defendants breached their fiduciary duties by failing to monitor any of the Plans' options before October 1, 2014, and monitoring only "core" investment options after that date fails to plausibly allege a breach of fiduciary duty.[3] Defendants concede that the Plans distinguished between "core" investment options which were "vetted by fiduciaries," and all other investment options which were not similarly monitored, but argue that this practice is common in the industry and not a breach of fiduciary duty. (Cornell Defs.' Mem. at 20.) The Supreme Court suggested that fiduciaries normally have a continuing duty "of some kind" to "monitor investments and remove imprudent ones," Tibble III, 135 S. Ct. at 1828–29, however, the Court specifically declined to define the precise scope of this continuing duty. Id. at 1829. Plaintiffs have not provided the Court with any principled reason to believe that reviewing a subset of core investment options would not satisfy this duty. Therefore, this claim is insufficient to survive a motion to dismiss.

VI.    Prohibited Transactions – Counts II, IV and VI.

"Congress enacted ERISA § 406(a)(1), which supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, § 404(a), by categorically barring certain transactions deemed 'likely to injure the pension plan' . . . ." Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 241-42 (2000) (quoting Comm'r v. Keystone Consol. Indus., Inc., 508 U.S. 152, 160 (1993)). The portions of section 406(a)(1) invoked by plaintiffs provide that:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –

---

[3] This claim was not plead in either Sacerdote, 2017 WL 3701482 or Cates, No. 16 cv 6524 (KBF), Dkt. 116. Plaintiffs allege that the un-monitored, non-core investment options constitute roughly seventy-four percent of the total offerings in the Plans. (Compl. at 87-88.)

(A) sale or exchange, or leasing, of any property between the plan
and a party in interest; . . .

(C) furnishing of goods, services, or facilities between the plan and
a party in interest;

(D) transfer to, or use by or for the benefit of a party in interest, of
any assets of the plan . . . .

29 U.S.C. § 1106.  "What the 'transactions' identified in § 406(a) thus have in common is that

they generally involve uses of plan assets that are potentially harmful to the plan."  Lockheed

Corp. v. Spink, 517 U.S. 882, 893 (1996).  The statute defines a "party in interest" to include any

"person providing services" to a plan.  29 U.S.C. § 1002(14)(B).  Plaintiffs claim that TIAA-

CREF and Fidelity are both parties in interest because they provide services to the Plans.

(Compl. at 124, 128, 134.)

In Count II, plaintiffs claim that by "allowing the Plans to be locked into an

unreasonable arrangement that required the Plans to include the CREF Stock Account and to use

TIAA as the recordkeeper for its proprietary products," despite the CREF Stock Account's high

fees and poor performance and TIAA's unreasonable recordkeeping fees, defendants caused the

Plans to engage in prohibited transactions under section 406(a)(1)(A), (C), and (D) each time the

Plans paid fees to TIAA-CREF in connection with the Plan's investments in the CREF Stock

Account and other options that paid revenue sharing to TIAA.  (Compl. at 124-25.)

In Count IV, plaintiffs claim that "[b]y causing the Plans to use TIAA-CREF and

Fidelity as the Plans' recordkeepers from year to year," defendants caused the Plans to engage in

prohibited transactions" under section 406(a)(1)(A), (C), and (D) each time the Plans paid fees to

TIAA-CREF or to Fidelity in connection with the Plan's investments in funds that paid revenue

sharing to TIAA-CREF or Fidelity.  (Compl. at 128-29.)

In Count VI, plaintiffs claim that "[b]y placing investment options in the Plans managed by TIAA-CREF and Fidelity, in which nearly all of the Plans' combined $3.1 billion in assets were invested," defendants caused the Plans to engage in prohibited transactions under section 406(a)(1)(A), (C), and (D) each time the Plans paid fees to TIAA-CREF or to Fidelity in connection with the Plan's investments in TIAA-CREF and Fidelity funds. (Compl. at 134-35.)[4]

Essentially, plaintiffs argue that by entering into contractual agreements with TIAA-CREF and Fidelity, defendants caused the Plans to engage in prohibited transactions each time the Plans paid fees to TIAA-CREF and Fidelity. Plaintiffs' claims under section 406(a)(1)(A) and (D) fail because revenue sharing payments drawn from mutual fund assets and paid to TIAA-CREF and Fidelity are not transactions involving plan assets, and payments for recordkeeping services do not constitute an impermissible "sale or exchange" of property as that term is commonly understood. See Sacerdote, 2017 WL 3701482, at *12-13.

In addition, plaintiffs have failed to plausibly allege that the Plans engaged in an impermissible provision of services by compensating the Plans' service providers in violation of section 406(a)(1)(C). "The transactions prohibited by § [406] tend to be those in which 'a fiduciary might be inclined to favor [a party in interest] at the expense of the plan's beneficiaries.'" Braden, 588 F.3d at 602 (quoting Harris Tr. & Sav. Bank, 530 U.S. at 242); see also Marshall v. Snyder, 572 F.2d 894, 900 (2d Cir. 1978) (noting that "prohibited transactions [under § 406(a)(1)] involve self-dealing"). Thus, absent some evidence of self-dealing or other disloyal conduct,

> allegations that the Plans violated § 406(a) by paying [Fidelity] and
> TIAA-CREF for recordkeeping services—even allegations that the
> Plans paid too much for those services—do not, without more,
> state a claim. To hold otherwise would transform § 406—a

[4] The wording of this claim is slightly different from that in Sacerdote but mirrors the allegation in Cates. See Cates, No. 16 cv 6524 (KBF), Dkt. 76-1 ¶ 250.

statutory provision meant to "categorically bar[] certain transactions deemed 'likely to injure the pension plan,'" Harris Tr. & Sav. Bank, 530 U.S. at 241—into a statutory provision that proscribes retirement pension plan's most basic operations.

Sacerdote, 2017 WL 3701482, at *14; see Sweda, 2017 WL 4179752, at *11 (dismissing similar claims in part because "the transactions at issue . . . were not done 'to benefit other parties at the expense of the plans' participants and beneficiaries' but were simply operating expenses necessary to operate the plan on behalf of the plan beneficiaries") (quoting Reich v. Compton, 57 F.3d 270, 275 (3d Cir. 1995)). Like the plaintiffs in Sacerdote and Sweda, plaintiffs have "offered only conclusory allegations suggesting self-dealing or disloyal conduct." Sacerdote, 2017 WL 3701482, at *14; see Sweda, 2017 WL 4179752, at *11. Therefore, plaintiffs' prohibited transaction claims are dismissed.

VII.    Fiduciary Status of CAPTRUST.

The surviving prudence claims in Count III and Count V are plead against all defendants. CAPTRUST does not claim that it is not a fiduciary as to the conduct alleged in Count V, however, it contends that it had no fiduciary responsibilities as to the decisions regarding plan administration alleged in Count III. This Court agrees.

Under ERISA:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). A plan service provider "may be an ERISA fiduciary with respect to certain matters but not others," such that "fiduciary status exists only to the extent" that the plan

service provider "has or exercises the described authority or responsibility over a plan." <u>Coulter v. Morgan Stanley & Co. Inc.</u>, 753 F.3d 361, 366 (2d Cir. 2014) (internal quotation marks omitted). Thus, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." <u>Id.</u> (quoting <u>Pegram v. Herdrich</u>, 530 U.S. 211, 226 (2000)) (alterations in original).

As to CAPTRUST, the Complaint simply alleges that it is an investment advisory firm hired by the Committee. The Complaint does not describe the services CAPTRUST provided or the role CAPTRUST played in the actions alleged in the Complaint. In fact, in the 140-page complaint, there is not a single allegation of misconduct that is specifically plead against CAPTRUST as opposed to the "defendants" as a group. Count III alleges that defendants imprudently allowed the Plans to pay unreasonable administrative fees to the Plans' recordkeepers. (Compl. at 126-27.) This conduct relates to plan administration rather than particular investment options. If plaintiffs wish to allege that CAPTRUST and the Cornell Defendants acted as a single unit in matters of plan administration, or that all defendants jointly engaged in the alleged misconduct, they must have a factual basis for doing so. Simply reciting the statute and alleging that "upon information and belief" CAPTRUST exercised discretionary authority or control over the management of the Plans, the management or disposition of the Plans' assets and had discretionary authority or responsibility for the Plans' administration, (<u>Id.</u> at 13), is insufficient.

As there are no facts alleged indicating that CAPTRUST served as a fiduciary with respect to the particular activities at issue in Count III, that count will be dismissed as to CAPTRUST.

VIII.   Duty to Monitor – Count VII.[5]

The text of ERISA does not explicitly impose on plan fiduciaries a duty to monitor, however, several courts have held that there is a duty to monitor appointed fiduciaries under ERISA.  See, e.g., In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 477 (S.D.N.Y 2005) (collecting cases and concluding that an "appointing fiduciary's duty to monitor is well-established"); see also 29 C.F.R. § 2509.75–8, at FR–17 ("At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.").

Plaintiffs claim that Cornell and Opperman breached their fiduciary duties by, among other things, failing to monitor their appointees, including the Committee and its members, failing to have a system in place to monitor the appointees' performance, and failing to remove appointees whose performance was inadequate.  (Compl. at 137-38.)  Unlike the plaintiffs in Sacerdote, who claimed only that NYU was in sole possession of information regarding any potential delegation of fiduciary duties, 2017 WL 3701482, at *14, plaintiffs allege that Cornell created the Committee to oversee the Plans' investment options or otherwise administer the Plans.  (Compl. at 12.)  Plaintiffs also allege that Opperman was Chair of the Committee and was given authority to appoint and remove other members of the Committee.  (Id.)

Defendants' sole argument for dismissing plaintiffs' duty to monitor claim is that plaintiffs have failed to adequately allege any underlying fiduciary breach, thereby defeating

---

[5] Plaintiffs' failure to monitor claim is the seventh claim for relief but it is incorrectly labeled in the Complaint as "Count VIII."  (See Compl. at 136.)

their derivative monitoring claim. However, the Court has determined that plaintiffs have plausibly alleged a breach of the fiduciary duty of prudence. Therefore, defendants' motion to dismiss the monitoring claim for failure to adequately allege an underlying breach is denied. However, the duty to monitor claim is only as broad as the surviving prudence claims and is otherwise dismissed.

IX.     Co-Fiduciary Duty.

Counts III and V assert that all defendants are liable to plaintiffs under a theory of co-fiduciary liability. Under ERISA, a plan fiduciary is liable for another's fiduciary breach with respect to the same plan: "(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) . . . in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a).

To the extent the prudence claims in Count III and Count V survive against the Cornell Defendants and CAPTRUST, the claims of co-fiduciary liability under those counts survive as well.

X.     Statute of Limitations.

Defendants urge that plaintiffs' claims are time-barred by ERISA's three-year statute of limitations. Under ERISA, claims must be brought within the earlier of "(1) six years after . . . the date of the last action which constituted a part of the beach or violation, or . . . (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach . . . ." 29 U.S.C. § 1113. "[A] plaintiff has 'actual knowledge of the breach or violation' . . . when he

has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001) (citing 29 U.S.C. § 1113). These material facts "could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." Id. (quoting Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992)). "However, the disclosure of a transaction that is not inherently a statutory breach of fiduciary duty . . . cannot communicate the existence of an underlying breach." Id. (internal citations and quotation marks omitted). The "actual knowledge [standard] is strictly construed and constructive knowledge will not suffice." L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc., 710 F.3d 57, 67 (2d Cir. 2013).

Defendants claim that plaintiffs had notice of the excessive fees they complain of as a result of disclosures they received over three years ago detailing the number of investment options and the amount of fees for each option. (Cornell Defs.' Mem. at 24-25 (citing 2016 prospectuses for the College Retirement Equities Fund ("CREF") and the TIAA Real Estate Account and 2016 plan disclosures for the Retirement Plan and the TDA Plan, Request for Judicial Notice Exs. D, E.) However, defendants identify no disclosure that notified plaintiffs of the excessive recordkeeping fees alleged in Count III. In addition, defendants effectively ask the Court to assume, based on fund prospectuses and plan disclosures from 2016, that plaintiffs had actual knowledge of the excessive investment fees alleged in Count V prior to 2013. Notice of a particular investment's fee alone does not constitute actual knowledge that the particular fee is excessive and thus imprudent. See Leber v. Citigroup 401(k) Plan Inv. Comm., No. 07 cv 9329 (SHS), 2014 WL 4851816, at *4-5 (S.D.N.Y. Sept. 30, 2014) (awareness of challenged fees insufficient for actual knowledge because "[p]laintiffs could not have known that the fees were

excessive, and thus a basis for an ERISA claim, without the relevant comparison point for assessing excessiveness: fees for comparable funds."). But see Young v. Gen. Motors Inv. Mgmt. Corp., 550 F. Supp. 2d 416, 419-20 (S.D.N.Y. 2008), aff'd, 325 F. App'x 31 (2d Cir. 2009) (dismissing excessive fee claim where allegedly excessive fees had been disclosed to plaintiffs through quarterly summaries and prospectuses more than three years before plaintiffs filed suit). Moreover, defendants may not rely on documents from 2016 as evidence of plaintiffs' knowledge three years prior.

Accordingly, at the pleading stage, defendants have failed to show that plaintiffs had actual knowledge of all the material facts necessary to bring suit three years before filing this action.

CONCLUSION

Defendants' motions to dismiss (Dkts. 71, 75, 76) are GRANTED in part and DENIED in part. Counts I, II, IV and VI are DISMISSED in their entirety as to all defendants. Count III is DISMISSED as to CAPTRUST. Counts III, V and VII are DISMISSED in part as discussed above.

SO ORDERED.

_P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
        September 29, 2017

- 26 -