

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFTON MARSHALL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NORTHROP GRUMMAN CORP., et al.,<br><br>    Defendants. | Case No. CV 16-06794-AB (JCx)<br><br>[PROPOSED] ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS |

    Pending before the Court is Defendants'[1] Partial Motion to Dismiss Plaintiffs' Second Amended Complaint. (Dkt. No. 141.) Plaintiffs filed an Opposition on January 17, 2018, (Dkt. No. 142), and Defendants replied on February 2, 2018, (Dkt. No. 143). After considering the papers filed in support of and in opposition to the instant Motion, the Court deems this matter appropriate for decision without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7–15. The hearing set for February

---

[1] There are three "groups" of Defendants in this case: (1) Northrop Grumman Corporation ("Northrop"), (2) the Administrative and Investment Committees (the "Committees"), and (3) a group of twenty-one individual defendants who served on the Committees at various points during the class period. The instant Motion is brought by Northrop and the Individual Defendants. The Committees answered the Second Amended Complaint on November 27, 2017. (Dkt. No. 135.)

Exhibit 1

16, 2018 is hereby **VACATED**.  For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Partial Motion to Dismiss.

## I.   BACKGROUND

Plaintiffs Clifton W. Marshall, Thomas W. Hall, Maria E. Midkiff, Manuel A. Gonzalez, Ricky L. Hendrickson, Phillip B. Brooks, and Harold Hylton commenced this proposed class action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., on September 9, 2016.  (*See* Dkt. No. 1; Dkt. No. 132, Second Amended Complaint ("SAC") ¶ 1.)  Plaintiffs are retired and/or former employees of Northrop Grumman Corporation ("Northrop") who, in addition to their beneficiaries, are or may become eligible to receive benefits under the Northrop Grumman Saving Plan. (SAC ¶¶ 11–16.)  Plaintiffs allege several claims for breaches of the duties ERISA imposes on plan fiduciaries.

Plaintiffs make the following allegations:

The Northrop Grumman Savings Plan ("Plan") is an employee pension benefit plan in which participants invest their individual accounts in a variety of investment options controlled by Plan fiduciaries.  (SAC ¶ 7.)  "Under the Plan, participants are responsible for investing their individual accounts and will receive in retirement only the current value of that account."  (*Id.*)  The Northrop Grumman Defined Contribution Master Trust holds the assets of the Plan in accordance with the terms of a written trust agreement.  (SAC ¶ 9.)  Northrop's Board of Directors appoints the Trustee of the Master Trust, and the Plan's fiduciaries have full authority over the Trustee as to the disposition of Plan assets.  (*Id.*)

The document governing the Plan designates two committees—an "Administrative Committee" and an "Investment Committee"—which, along with their members, are administrators and named fiduciaries of the Plan.[2]  (SAC ¶¶ 19, 23.)  Each

---

[2] The Investment Committee and its members are fiduciaries of the Plan for investment matters, and the Administrative Committee and its members are fiduciaries of the Plan for all other purposes.  (SAC ¶¶ 19, 23.)

Exhibit 1

committee is comprised of three members, to be appointed by Northrop's Board of Directors.[3] (SAC ¶¶ 20, 24.) The Board designates certain executives, by virtue of their positions, to sit on these committees regardless of their qualifications or suitability to be an ERISA fiduciary. (SAC ¶¶ 21, 25.) These Committees and their members, along with Northrop, are Defendants in this action. (*See* SAC ¶¶ 23–49.)

Administrative Services Agreements ("ASAs"), entered into by Northrop and the Committees, govern which of Northrop's departments provide administrative and investment services to the Plan. (SAC ¶ 52.) The ASAs authorized only Benefits Administration and Services, Benefits Accounting and Analysis, Benefits Compliance, and Investment and Trust Management departments to be reimbursed for services they provided on behalf of Northrop to the Plan. (SAC ¶ 53.) The Committees were tasked with approving each of the departments' reimbursements and ensuring all charges to the Plan were authorized by the ASAs.[4] (SAC ¶¶ 54, 55.)

According to Plaintiffs, the Committees failed to comply with the terms of the ASAs, violating their "fiduciary duty to operate the plan solely in the interest of the plan participants" by "allow[ing] the heads of the very departments that were to be paid from Plan assets the authority to authorize payment of Plan assets to those departments." (SAC ¶ 56.) "In other words, Northrop effectively exercised unfettered control over its payment from Plan assets, including payments to departments not authorized by the ASAs and payments for services that were not authorized by the ASAs or authorized under ERISA." (*Id.*) These departments allegedly maximized the expenses charged to the Plan with no regard as to whether those expenses were reasonable, necessary, competitive, or in the exclusive interest of Plan participants. (SAC ¶¶ 57–59.)

---

[3] The Compensation Committee of the Board of Directors appoints individuals to the Administrative Committee, and since 2011, Northrop's CEO appoints individuals to the Investment Committee. (SAC ¶¶ 20, 24.)

[4] The ASAs required the Investment Committee to approve expenses of the Investments and Trust Management Department, and the Administrative Committee was required to approve reimbursements from all other authorized departments. (SAC ¶¶ 54, 55.)

According to Plaintiffs, the Plan also paid unreasonable recordkeeping fees to its recordkeeper, a fault attributable to Defendants. (SAC ¶ 64.) From January 1, 2007, to April 1, 2016, Hewitt Associates LLC ("Hewitt") served as the Plan's recordkeeper. From at least 2010 to 2016, Hewitt was compensated for its services at a fixed rate of $500,000 per month in addition to transaction-specific payments.[5] (SAC ¶ 69.) In addition to its set monthly rate plus a per-participant rate per year, Hewitt allegedly received payments from Financial Engines, a provider of investment advice to individual Plan participants who opt in to paying for this service. According to Plaintiffs, Financial Engines pays Hewitt a portion of the fees Plan participants pay for Financial Engines' advice for nothing in return. This "kickback" suggests, in Plaintiffs' view, Defendants paid Financial Engines excessive fees for the services provided to participants, and furthermore, that Defendants "failed to properly monitor Hewitt's total compensation from all sources in light of the services Hewitt provided and thus caused the Plan to pay unreasonable administrative expenses to Hewitt." (SAC ¶¶ 69–72.)

Plaintiffs further allege despite a 23% decrease in the number of Plan participants from 2009 to 2015, Hewitt's per-participant compensation was not likewise reduced, which effectively caused "Hewitt's total recordkeeping compensation to increase over 54% on a per-participant basis to $73 per participant per year, even though Hewitt's recordkeeping services remained the same or declined." (SAC ¶ 73.) Plaintiffs allege that from Financial Engines, in particular, Hewitt's compensation increased from $258,120 to over $2.3 million in a two-year period. (SAC ¶ 74.) And in general, the Plan's payments to Hewitt from 2010 to 2015 for recordkeeping services were unreasonably high, ranging from $5.9–7.5 million. Plaintiffs contend these figures are significantly higher than the $2.5–3.3 million dollar range that they allege is the "outside limit of a reasonable recordkeeping fee" in light of "the nature of the administrative services provided by Hewitt, the Plan's number of participants (100,000–130,000), and

---

[5] Plaintiffs calculate this set rate on a per participant basis, alleging Hewitt was compensated $37–$39.47 per participant per year. (SAC ¶ 69.)

Exhibit 1

the recordkeeping market." (SAC ¶¶ 75, 76.) Plaintiffs allege Defendants failed to gauge the reasonableness of Hewitt's fees against an independent third party since 2007, and since 2010, Defendants failed to seek competitive bids for the recordkeeping it required. (SAC ¶¶ 77, 78.)

Plaintiffs also allege Defendants mismanaged the Emerging Markets Equity Fund ("EMEF") since at least 2010. The EMEF was a Plan investment option that invested in securities issued by developing countries. (SAC ¶ 80.) Plaintiffs allege the EMEF consistently underperformed its benchmark since 2010, and Defendants failed to determine whether maintaining a strategy of active management continued to be in the best interests of Plan participants. (SAC ¶¶ 87–89.) Plaintiffs contend Defendants' failure to more prudently manage the EMEF earlier cost Plan participants $30 million in performance losses and $12 million in unreasonable investment management fees. (SAC ¶¶ 90–91.)

In light of these allegations, Plaintiffs seek to certify as a class Plan participants or beneficiaries since May 11, 2009, who were affected by Defendants' alleged conduct. (SAC ¶ 100). Plaintiffs allege three counts of breach of fiduciary duties for (1) payments to Northrop, (2) unreasonable administrative and recordkeeping fees, and (3) management of the Emerging Markets Equity Fund; three counts of prohibited transactions (1) between the Plan and Northrop as a party in interest, (2) between the Plan and Northrop, and (3) between the Plan and its service providers; one count of failure to monitor; and one count for other remedies against Northrop.

## II.     LEGAL STANDARD

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). The complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct

Exhibit 1

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint" and construe the pleading in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## III. DISCUSSION

Generally, Defendants argue the SAC fails to specify how Northrop or the Individual Defendants acted in a fiduciary capacity with respect to Plaintiffs' claims. Defendants also argue Plaintiffs have not alleged sufficient facts to support a failure to monitor claim against Northrop (Claim VII), and that Claim VIII should be dismissed as duplicative. Lastly, Defendants ask the Court to strike Plaintiffs' jury demand. The Court addresses each argument in turn.

### A. Northrop as a Fiduciary (Claims I–VI)

Defendants seek dismissal of the breach of fiduciary duty claims against Northrop because they claim Northrop is not a named or functional fiduciary with respect to the duties of loyalty and prudence Plaintiffs allege were violated. (Mot. at 6–8.) Plaintiffs concede Northrop is not a named fiduciary under the Plan, but argue it has sufficiently alleged Northrop is a functional fiduciary under 29 U.S.C. § 1002(21)(A).[6] (Opp'n at 3–

---

[6] 29 U.S.C. § 1002(21)(A) provides: "Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any

6

Exhibit 1

6.) In particular, Plaintiffs assert Northrop appoints its executives to serve on the Administrative and Investment Committees, and these individuals "acted to enrich Northrop by having Plaintiffs' retirement funds pay Northrop corporate expenses." (Opp'n at 4; SAC ¶ 18.) Thus, according to Plaintiffs, "Northrop, acting through its executives and employees, exercised control over Plan assets and was provided and exercised discretionary authority and control over the administration and management of the Plan for its own benefit." (Opp'n at 5.)

"[T]he power [ ] to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of § 1002(21)(A)." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir. 1996). But, a fiduciary's duties are limited to the extent "it retains or exercises any discretionary authority over the management or administration of a plan." *Id.*; *see also* 29 C.F.R. § 2509.75-8 ("Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in section 3(21)(A) of the Act. For example, the board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise 'discretionary authority or discretionary control respecting management of such plan' and are, therefore, fiduciaries with respect to the plan. However, their responsibility, and, consequently, their liability is limited to the selection and retention of fiduciaries.").

Essentially, Plaintiffs argue that Northrop retained authority over the management and administration of the Plan because it appointed its own employees to serve on the Committees. Plaintiffs contend that since Northrop can act only through its employees,

---

discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title."

Exhibit 1

1  the employees' actions are attributable to Northrop. (SAC ¶ 18.) However, this slight
2  modification of Plaintiffs' original argument is unpersuasive. A Plan sponsor does not
3  become or remain a fiduciary merely because it appoints its own employees to serve on
4  fiduciary committees. *See Gelardi v. Pertec Computer Corp.*, 761 F.2d 1232, 1325 (9th
5  Cir. 1985) (*overruled on other grounds by Cyr v. Reliance Standard Life Ins. Co.*, 642
6  F.3d 1202 (9th Cir. 2011)); *Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1090 (D.
7  Nev. 2011 ("[A]n employer is not immediately considered a plan fiduciary merely
8  because one or more of its employees function as such."). Although ERISA anticipates
9  that employees will serve on fiduciary committees, the statute only imposes liability on
10 the employer when and to the extent that the employer himself exercises the fiduciary
11 responsibility allegedly breached. *See Gelardi*, 761 F.2d at 1325 (citing 29 U.S.C.
12 § 1105(c), 1108(c); 29 C.F.R. § 2560.503–1(g)(1); 29 C.F.R. § 2509.75–8). The
13 Committees exercised the fiduciary duties allegedly breached, not Northrop.
14 Accordingly, Plaintiffs fail to state a claim for breach of the fiduciary duties of loyalty
15 and prudence against Northrop. The Court **GRANTS** Defendants' Motion to Dismiss
16 Counts I through VI against Northrop. Because Plaintiffs have had numerous
17 opportunities to state the basis for holding Northrop liable as a fiduciary but has
18 consistently failed to do so, the Court finds further amendment would be futile. This
19 dismissal is therefore **with prejudice**. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th
20 Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for
21 leave to amend."); *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir.
22 2011) (holding a "district court's discretion to deny leave to amend is particularly
23 broad where plaintiff has previously amended the complaint").

    **B. Northrop's Duty to Monitor (Claim VII)**

25     Defendants seek dismissal of Count VII on two grounds. First, Defendants argue
26 Plaintiffs "allege no facts establishing that Northrop [] possesses a duty to monitor."
27 (Mot. at 9.) Second, Defendants argue that even assuming the Court finds Northrop
28 possessed a duty to monitor based on its appointment authority, Plaintiffs "point to no

Exhibit 1

particular facts related to Northrop['s] [] alleged failure in appointments or in exercising any limited duty to monitor those appointments." (Mot. at 10.)

But, as outlined in the prior Order, Plaintiffs essentially allege Defendants did nothing at all to monitor their appointed fiduciaries: Northrop failed to "evaluate their [appointees'] performance, or to have a system in place for doing so," and "ensure that the monitored fiduciaries had a prudent process in place for evaluating the Plan's administrative fees and ensuring that the fees were competitive," and "remove appointees whose performance was inadequate." (SAC ¶ 147.) These allegations are sufficient to state a claim for failure to monitor. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Count VII.

### C. "Other Remedies Against Northrop" (Count VIII)

Defendants also seek to dismiss Count VIII on two grounds. First, Defendants suggest that "Plaintiffs fail to adequately allege that the funds they seek are traceable to specific funds in Northrop's possession." (Mot. at 10.) Second, Defendants argue that this count "contains no separate allegations of wrongdoing" and is duplicative of the SAC's other claims. (*Id.*)

Plaintiffs counter that Count VIII properly and plausibly alleges an alternative theory of liability under 29 U.S.C. § 1132(a)(3). (Opp'n at 7.) According to Plaintiffs, Count VIII is only duplicative to the extent Northrop is found to be a fiduciary. In that case, Plaintiffs concede that they could not obtain recovery under this theory of liability as well. But, if Northrop is not a fiduciary, it may still be liable in restitution under 29 U.S.C. § 1132(a)(3). Hence, Plaintiffs assert this claim in the event its other claims against Northrop fail. Plaintiffs also assert that they cannot trace the relevant proceeds to specific accounts or funds at this stage and need discovery to do so. (Opp'n at 7–8.)

Defendants' arguments are unpersuasive. First, it is proper to allege these counts in the alternative. *See Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 960–62 (9th Cir. 2016); *see also* Fed. R. Civ. P. 8(a)(3). In the event it is determined that Northrop is not a fiduciary, Plaintiffs can fall back on this claim and seek restitution

Exhibit 1

against Northrop.  Plaintiffs recognize they cannot obtain double recovery.  Second, Plaintiffs allege that proceeds on nontraceable items remain and that they will be able to trace these proceeds to specific funds or property in Northrop's possession.  (SAC ¶ 153.)  These allegations are sufficient to withstand a motion to dismiss.  The question of whether Plaintiffs will ultimately succeed in tracing the funds is not the question presently before the Court.  Accordingly, the Court **DENIES** Defendants' Motion as to Count VIII.

### D. Allegations Against the Individual Defendants

Defendants argue that Plaintiffs fail to provide factual support for their position that the Individual Defendants are individually responsible for the alleged fiduciary breaches of the Committees.  (Mot. at 12.)  Defendants point to Plaintiffs' counsel's statements that that the Individual Defendants "did not act on their own" but acted "collectively as part of the same Administrative Committee to make Plan-level administrative fee decisions that affected all participants." (*Id.* at 13.)  Defendants also contend that the Individual Defendants are joined for purely tactical reasons: Plaintiffs are covering their bases in the event Defendant moves to dismiss the Committees, because in this district, it is unclear whether committees can be sued for breach of fiduciary duty.  (*See* Opp'n at 8.)

The Court finds that Plaintiffs have sufficiently alleged that the Individual Defendants are ERISA fiduciaries.  Plaintiffs assert that the Individual Defendants, all of whom were officers of Northrop who served on the Committees for at least a portion of the class period, are named and potential *de facto* fiduciaries.  The SAC alleges facts or circumstances from which it can be inferred that these Individual Defendants' actions may have set in motion the circumstances for which Plaintiffs complain.  Plaintiffs allege that the Individual Defendants may have exercised discretionary authority over the Plan and the Committees during the class period.  This is sufficient at this stage of the proceedings.  The Court notes that fiduciary status must be determined in the context of the specific fiduciary duties asserted to have

Exhibit 1

been breached.  Because the timing of the alleged fiduciary breaches as well as the extent of the Committee members' knowledge, participation or involvement in some of the acts that led to the breach of fiduciary claims is at issue, dismissal is premature at this time.  The Court **DENIES** Defendants' Motion to Dismiss Counts I–VIII against the Individual Defendants.

### E. Jury Demand

Lastly, all Defendants, including the Committees, move to strike Plaintiffs' jury demand. (Mot. at 15.)  Defendants argue that courts routinely strike jury demands in ERISA fiduciary breach cases.  Under Ninth Circuit law, the "remedies available to a participant or beneficiary under ERISA are equitable in nature and the Seventh Amendment does not require that a jury trial be afforded for claims made by participants or beneficiaries."  *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 997 (9th Cir. 2000); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir. 1985) (no independent constitutional or statutory right to jury trial in ERISA cases); *Cha v. 1199SEIU Health Care Emps. Pension Fund*, 672 F. App'x 714 (9th Cir. 2016) ("The district court properly denied Cha's request for a jury trial because there is no constitutional or statutory right to a jury trial in an ERISA action.").

Plaintiffs contend that the *Blau* and *Thomas* courts' holdings are not applicable because those cases involved claims under § 1132(a)(1), whereas this case involves a claim under 1132(a)(2). (Opp'n at 11.)  However, the *Thomas* court rejected a similar distinction in its opinion.  There, the plaintiffs attempted to distinguish *Spinelli v. Gaughan*, 12 F.3d 853 (9th Cir. 1993)—another case holding there is no right to a jury trial for claims brought under section 502 of ERISA—on the ground that Spinelli brought claims under § 1132(a)(3), whereas they brought claims under § 1132(a)(1). *Thomas*, 228 F.3d at 995–96.  The Ninth Circuit nonetheless found that it's holding in *Spinelli* "applied equally to all claims by participants and beneficiaries seeking remedies under § 502." *Id.* at 996.  Accordingly, the Court reads *Thomas* to apply to this case even though it is brought under § 1132 (a)(2).  Indeed, Plaintiffs have failed

Exhibit 1

to cite a single case from this district that does not follow *Thomas*.

Further, the Court finds that "the overwhelming weight of authority in the federal courts holds that actions under ERISA § 502(a)(2) by participant-beneficiaries and fiduciaries to remedy, as in this instance, alleged violations of ERISA § 409(a) are equitable in nature for purposes of the Seventh Amendment jury trial right." *Spano v. Boeing Co.*, No. 06-cv-743-DRH, 2007 WL 1149192, at *8 (S.D. Ill. Apr.18, 2007) (citing cases); *see also Rodrigues v. Bank of Am.*, No. C 16-1390 CW, 2016 WL 3566950, at *4 (N.D. Cal. July 1, 2016); *In re First Am. Corp. ERISA Litig.*, No. SACV 07-01357-JVS (RNBx), 2009 WL 536254, at *2 (C.D. Cal. Feb. 9, 2009); *Camp v. Pacific Fin. Group*, 956 F. Supp. 1541, 1552 (C.D. Cal. 1997) ("There is no right to a jury trial in claims under ERISA for breach of fiduciary duty."). Accordingly, Plaintiffs' demand for a jury trial is hereby **STRICKEN.**

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Partial Motion to Dismiss.  (Dkt. No. 141.)  The Court **GRANTS** Defendants' Motion as to Northrop Grumman Corporation for Counts I–VI **with prejudice**.  The Court **DENIES** Defendants' Motion as to Counts VII and VIII against Northrop, and as to Counts I–VIII against the Individual Defendants.  Plaintiffs' demand for a jury trial is **STRICKEN.**

**IT IS SO ORDERED.**

Dated:  February 15, 2018

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

Exhibit 1