## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CASEY CUNNINGHAM, et al.,

                       Plaintiffs,

v.

CORNELL UNIVERSITY, et al.

                       Defendants.

No. 1:16-CV-06525-PKC

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

I.      The Parties and the Plans ..................................................................................... 2

II.     Plaintiffs' Claims ................................................................................................. 4

        A.      Excessive Recordkeeping and Administrative Fees (Count III) ............... 4

        B.      Imprudent Investments (Count V) ........................................................... 5

        C.      Failure to Monitor (Count VII) ............................................................... 6

III.    The Proposed Class Definition ............................................................................ 7

ARGUMENT ..................................................................................................................... 7

I.      Standard for Class Certification ........................................................................... 7

II.     Plaintiffs Meet the Requirements of Rule 23(a) ................................................... 8

        A.      Numerosity .............................................................................................. 8

        B.      Commonality ........................................................................................... 8

        C.      Typicality ................................................................................................ 11

        D.      Adequacy ................................................................................................ 13

III.    Plaintiffs Meet the Requirements of Rule 23(b) .................................................. 16

        A.      The class should be certified under Rule 23(b)(1) .................................... 17

        B.      In the alternative, the class should be certified under Rule 23(b)(3) ......... 20

IV.     CAPTRUST's Opposition Is Without Basis ........................................................ 22

CONCLUSION .................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott v. Lockheed Martin Corp.*,
   286 F.R.D. 388 (S.D. Ill. 2012) ............................................................................... 17

*Abbott v. Lockheed Martin Corp.*,
   No. 06-701, 2015 U.S.Dist.LEXIS 93206 (S.D. Ill. July 17, 2015) ........................................ 16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................... 13, 17, 20, 21

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)............................................................................................ 8

*Baffa v. Donaldson*,
   222 F.3d 52 (2d Cir. 2000) ................................................................................. 15

*Beesley v. Int'l Paper Co.*,
   No. 06-703, Doc. 240 (S.D. Ill. Sept. 30, 2008) ...................................................... 17

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) ................................................................................. 20

*Caridad v. Metro-N. Commuter R.R.*,
   191 F.3d 283 (2d Cir. 1999) ................................................................................. 11

*Caufield v. Colgate-Palmolive*,
   No. 16-4170, 2017 U.S.Dist.LEXIS 18022 (S.D.N.Y. July 27, 2017).................................... 17

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) .................................................................................. 8

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ................................................................................. 20

*Crabill v. Trans Union, L.L.C.*,
   259 F.3d 662 (7th Cir.2001) ................................................................................. 22

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ................................................................................. 14

*Donovan v. Bierwirth*,
   680 F.2d 263 (2d Cir. 1982) .................................................................................. 1

*Flores v. Anjost Corp.*,
   284 F.R.D. 112 (S.D.N.Y. 2012) ............................................................................. 8

*George v. Kraft Foods Global Inc.*,
   251 F.R.D. 338 (N.D. Ill. 2008)............................................................................ 17

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) ................................................................ 1, 8, 16, 20

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ................................................................................. 11, 14

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 1, 9, 16

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
No. 12-2548, 2017 U.S.Dist.LEXIS 59264 (S.D.N.Y. Mar. 31, 2017) ..................................... 9

*In re Northrop Grumman Corp. ERISA Litig.*,
No. 06-6213, 2011 U.S.Dist.LEXIS 94451 (C.D. Cal. Mar. 29, 2011) ..................................... 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
No. 02-4483, 2007 U.S.Dist.LEXIS 31963 (S.D.N.Y. Apr. 30, 2007) ...................................... 9

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................... 9, 19

*In re Prudential Sec. Inc. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................................. 9

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ........................................................................ 1, 9, 16, 20

*In re Suntrust Banks, Inc.*,
No. 08-03384, 2016 U.S. Dist. LEXIS 108916 (N.D. Ga. Aug. 17, 2016) .................................. 12

*In re US FoodService Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) .................................................................................. 8

*In re Virtus Inv. Partners, Inc.*,
No. 15-1249, 2017 U.S.Dist.LEXIS 73554 (S.D.N.Y. May 15, 2017) ...................................... 12

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008) ..................................................................... 11, 12, 16, 17

*Katsaros v. Cody*,
744 F.2d 270 (2d Cir. 1984) .............................................................................. 1, 13

*Koch v. Dwyer*,
No. 98-5519, 2001 U.S.Dist.LEXIS 4085 (S.D.N.Y. Mar. 22, 2001) ..................................... 16, 20

*Krueger v. Ameriprise Fin., Inc.*,
304 F.R.D. 559 (D.Minn. 2014) .......................................................................... passim

*La Scala v. Scrufari*,
479 F.3d 213 (2d Cir. 2007) ................................................................................. 1

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
No. 07-9329, 2017 U.S.Dist.LEXIS 194293 (S.D.N.Y. Nov. 27, 2017) ................................... passim

*Loomis v. Exelon Corp.*,
No. 06-4900, 2007 U.S.Dist.LEXIS 46893 (N.D. Ill. June 26, 2007) ....................................... 17

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) ................................................................................ 22

iv

*Mass Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)............................................................................................. 7

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
  No. 15-9936, 2017 U.S.Dist.LEXIS 143208 (S.D.N.Y Sept. 5, 2017) ............................ passim

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
  No. 08-5310, 2016 U.S.Dist.LEXIS 153804 (S.D.N.Y. Nov. 4, 2016)................................... 15

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)............................................................................................. 19

*Petrobras Sec. Univs. Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras*,
  862 F.3d 250 (2d Cir. 2017) ................................................................................. 7

*Piazza v. EBSCO Indus. Inc.*,
  273 F.3d 1341 (11th Cir. 2001) ...................................................................... 12, 19

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015) ................................................................................. 7

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ...................................................................... 11, 12

*Sacerdote v. New York Univ.*,
  No. 16-6284, 2018 U.S.Dist.LEXIS 23540 (S.D.N.Y. Feb. 13, 2018)............................ passim

*Spano v. Boeing Co.*,
  294 F.R.D. 114 (S.D. Ill. 2013) ............................................................................ 17

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009)............................................................................ 19

*Surowitz v. Hilton Hotels Corp.*,
  383 U.S. 363 (1966)............................................................................................. 14

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) .................................................................................. 21

*Tatum v. R.J. Reynolds Tobacco Co.*,
  254 F.R.D. 59 (M.D.N.C. 2008) ...................................................................... 16, 20

*Taylor v. United Techs. Corp.*,
  No. 06-1494, 2008 U.S.Dist.LEXIS 43655 (D. Conn. June 3, 2008).................................... 17

*Tibble v. Edison Int'l*,
  No. 07-5359, 2009 U.S.Dist.LEXIS 120939 (C.D. Cal. June 30, 2009), .................... 11, 17, 19

*Tibble v. Edison Int'l*,
  135 S. Ct. 1823 (2015).......................................................................... 11, 13, 16, 22

*Tussey v. ABB Inc.*,
  850 F.3d 951 (8th Cir. 2017) ............................................................................... 18

*Tussey v. ABB Inc.*,
  No. 06-4305, 2007 U.S.Dist.LEXIS 88668 (W.D. Mo. Dec. 3, 2007).................................... 16

*Tussey v. ABB, Inc.*,
   No. 06-4305, 2012 U.S.Dist.LEXIS 45240 (W.D. Mo. Mar. 31, 2012) ................................ 19

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) .................................................................................... 5, 13, 22

*Tussey v. ABB, Inc.*,
   No. 06-4305, 2012 U.S.Dist.LEXIS 157428 (W.D. Mo. Nov. 2, 2012) ................................ 16

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S.Ct. 1036 (2016) .................................................................................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................. 9, 10, 13

**Statutes**

29 U.S.C. §1002(16)(A)(i) ................................................................................................... 3

29 U.S.C. §1002(2)(A) ....................................................................................................... 2

29 U.S.C. §1002(34) ......................................................................................................... 2

29 U.S.C. §1102(a) ........................................................................................................ 3, 6

29 U.S.C. §1103(c)(1) ....................................................................................................... 5

29 U.S.C. §1104(a)(1) ....................................................................................................... 9

29 U.S.C. §1104(a)(1)(A) ................................................................................................... 5

29 U.S.C. §1104(a)(1)(B) ................................................................................................... 4

29 U.S.C. §1109(a) ............................................................................................ 1, 2, 7, 13, 14

29 U.S.C. §1132(a)(2) ......................................................................................... 1, 7, 12, 13

**Rules**

Fed.R.Civ.P. 23 ................................................................................................................ 7

Fed.R.Civ.P. 23(a)(1) ........................................................................................................ 8

Fed.R.Civ.P. 23(a)(2) .................................................................................................... 8, 20

Fed.R.Civ.P. 23(a)(3) ...................................................................................................... 11

Fed.R.Civ.P. 23(a)(4) ................................................................................................. 13, 14

Fed.R.Civ.P. 23(b)(1) .................................................................................................... 2, 16

Fed.R.Civ.P. 23(b)(1)(A) .................................................................................................. 17

Fed.R.Civ.P. 23(b)(1)(B) ............................................................................................. 19, 20

FED.R.CIV.P. 23(b)(3) ................................................................................................ 17, 20, 21

Fed.R.Civ.P. 23(g) ................................................................................................ 15, 16, 23

**Other Authorities**

DOL Adv. Op. 2013-03A (Jul. 3, 2013) .......................................................................................... 5

# INTRODUCTION

As the fiduciaries of two ERISA-governed defined contribution retirement plans for Cornell University employees, Defendants owed the Plans a duty to act in accordance with "the objective prudent person standard developed in the common law of trusts"—a standard that is "the highest duty known to the law." *La Scala v. Scrufari*, 479 F.3d 213, 219–21 (2d Cir. 2007)(citing *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984), *Donovan v. Bierwirth*, 680 F.2d 263, 271–72 & n.8 (2d Cir. 1982)(Friendly, J.)).

To redress a breach of fiduciary duties, ERISA expressly authorizes any plan participant to bring suit in a representative capacity on behalf of a plan to obtain the plan's remedies, including "losses to the plan" and appropriate equitable relief. *See* 29 U.S.C. §§1132(a)(2), 1109(a). Courts repeatedly have held "that the distinctive 'representative capacity' aspect of ERISA participant and beneficiary suits makes litigation of this kind 'a paradigmatic example of a [Rule 23](b)(1) class.'" *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012)(alteration in original) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)(citing cases). *See also Sacerdote v. New York Univ.*, No. 16-6284, 2018 U.S.Dist.LEXIS 23540, *17–19 (S.D.N.Y. Feb. 13, 2018); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-9329, 2017 U.S.Dist.LEXIS 194293, *44–47 (S.D.N.Y. Nov. 27, 2017); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-9936, 2017 U.S.Dist.LEXIS 143208, *21–27 (S.D.N.Y Sept. 5, 2017)(same), *pet'n to appeal denied*, No. 17-2911, 2017 U.S.App.LEXIS 26653 (2d Cir. Dec. 19, 2017).

This case is no exception. Plaintiffs' claims arise from Defendants' plan-level conduct regarding administrative fees and investment options. On behalf of a class of all participants in

1

the Plans,[1] Plaintiffs seek to obtain remedies due to the Plans under 29 U.S.C. §1109(a),

including damages and equitable relief. The Court should certify this action as a class action

under Federal Rule of Civil Procedure 23(b)(1).

## BACKGROUND

### I.     The Parties and the Plans

The Plans are individual account, defined contribution employee pension benefit plans under

29 U.S.C. §1002(2)(A) and §1002(34). Doc. 81 ¶¶9, 13 (Corrected Am. Compl.); Doc. 111 ¶¶9,

13 (Cornell Ans.). Each of the five named Plaintiffs is a current or former Cornell University

("Cornell") employee and a current or former participant in one of the Plans; all five are

participants in the Retirement Plan, and three are participants in the TDA Plan. Doc. 81 ¶¶19–23;

Doc. 111 ¶8 (referring to Plaintiffs as "the participants"); *see also* Declarations of Casey

Cunningham, Charles E. Lance, Stanley T. Marcus, Lydia Pettis, and Joy Veronneau

(collectively, "Named Plaintiffs' Declarations"), ¶1 of each, filed herewith.

The Plans are among the largest defined contribution plans in the United States. Doc. 81 ¶3.

As of year-end 2014, the Plans had a combined total of over $3 billion in assets, with the

Retirement Plan holding $1.9 billion and the TDA Plan $1.2 billion. *Id.* at ¶¶11, 15; Doc. 111

¶¶11, 15. Each Plan has had thousands of participants throughout the proposed class period

(since August 17, 2010). The Retirement Plan has had at least 17,950 participants at all relevant

times, and 19,191 participants with account balances as of year-end 2016. Doc. 81 ¶11; Doc. 111

¶11; Exs.[2] 1–7, at 2, Line 6(g) of each (Retirement Plan Forms 5500, 2010–2016). The TDA

Plan has had at least 10,280 participants at all relevant times, and 11,778 participants with

---

[1] The "Plans" are the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca ("Retirement Plan") and the Cornell University Tax Deferred Annuity Plan ("TDA Plan"). Doc. 81 ¶¶9, 13.

[2] "Ex." or "Exs." refer to exhibits to the Declaration of Andrew Schlichter, filed herewith.

account balances as of year-end 2016. Doc. 81 ¶15; Doc. 111 ¶15; Exs. 8–14, p. 2, Line 6(g) of each (TDA Plan Forms 5500, 2010–2016).

Defendant Cornell is the Administrator and named fiduciary of both Plans, with exclusive authority to control and manage the operation and administration of the Plans. Doc. 81 ¶¶24–25; Doc. 111 ¶24; Exs. 15–16, at 15 (§1.51) of each (Retirement Plan and TDA Plan Documents); 29 U.S.C. §§1002(16)(A)(i), 1102(a). Cornell formed the Retirement Plan Oversight Committee ("Committee"), chaired by Defendant Mary G. Opperman, "to assist in the fulfillment of its fiduciary responsibilities." Doc. 74-1 at 5[3] (Investment Policy Statement); Doc. 81 ¶¶26–28; Doc. 111 ¶¶26–27. Both the Committee and its Chair were fiduciaries to the Plans and had discretionary authority to manage and administer the Plans and their assets. Doc. 81 ¶28; Doc. 111 ¶26. The Committee was responsible for reviewing "the acceptability of the investment alternatives made available to the participants [of both plans]." Doc. 74-1 at 5, 22–23.

Per the Retirement Plan and TDA Plan Documents, the Cornell Defendants were responsible for hiring the Plans' administrative service providers, negotiating their compensation, and determining the available investment options in which participants can invest. Exs. 15–16, at 82, 84 (§§7.02(7)–(8), 7.04(A), 8.01(A)(2)) of each. Using that authority, the Cornell Defendants hired CAPTRUST, which provided, *inter alia*, investment advice and vendor analysis. Doc. 81 ¶¶29–31; Doc. 111 ¶30; Doc. 112 ¶¶29–30 (CAPTRUST Ans.); Doc. 77-1 at 2, 8 (CAPTRUST Retirement Plan Advisory Services Agreement). CAPTRUST, as the Committee's Investment Consultant, acted as a co-fiduciary with the Committee for investment selection and monitoring. Doc. 74-1 at 5–6. Due to Defendants' centralized management of Plan assets, there is substantial overlap in the Plans' investment lineups. As of the year-end 2014, the Retirement Plan had 299

---

[3] All "Doc." page citations refer to the ECF page number at the top of the page.

investment options (231 Fidelity, 68 TIAA-CREF), and the TDA Plan had 301 investment options (231 Fidelity, 70 TIAA-CREF). Doc. 81 ¶¶102–103.

The balance of each participant's account is based on the value of contributions and investment earnings, less expenses. *See, e.g.*, Exs. 1 & 8, at 35 (p.5, Note 1 of the Financial Statements) of each. The Plans' administrative expenses are paid entirely through asset-based revenue sharing from the expense ratios of the Plans' investment options. Exs. 15–16, at 87, 98, 99 (§§7.04(C)(2), 9.01, 9.02(C)(1)) of each; Exs. 1–14 (Schedule C of each, noting that Fidelity and TIAA receive "indirect compensation"). Even the Cornell Defendants concede that at least "a portion of the Plans' recordkeeping and administrative expenses are offset by expenses charged for investing in certain mutual funds available to the Plans' participants." Doc. 111 ¶127.

## II.   Plaintiffs' Claims

After the Court granted in part and denied in part Defendants' motions to dismiss, Plaintiffs' remaining claims allege that Defendants breached their duty of prudence under 29 U.S.C. §1104(a)(1)(B) by: (1) allowing the Plans to pay unreasonable administrative fees (Count III); (2) selecting and retaining certain investment options with excessive and unreasonable fees and a history of poor performance, including the CREF Stock Account and TIAA Real Estate Account, actively managed funds, and retail-class shares of mutual funds instead of materially identical lower-cost institutional-class shares of the same funds (Count V); and (3) failing to monitor certain appointees (Count VII). Doc. 107 at 12–17, 23–24.

### A.   Excessive Recordkeeping and Administrative Fees (Count III)

The investment options in the Plans made revenue sharing payments to the Plans' recordkeepers ostensibly as compensation for recordkeeping services. Doc. 81 ¶¶55, 127–37; Doc. 111 ¶¶55, 127; Doc. 112 ¶¶55, 129, 133. While ERISA does not explicitly prohibit revenue

4

sharing, Defendants were required to monitor the *amount* of the revenue sharing payments to ensure it was reasonable for the services provided, and to take action to reduce any excessive costs to reasonable levels. *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014); DOL Adv. Op. 2013-03A, at 4 (Jul. 3, 2013)(emphasis added);[4] Doc. 81 ¶¶63–65, 131, 135–36; 29 U.S.C. §§1103(c)(1), 1104(a)(1)(A).

Defendants failed to monitor and control the amount of revenue sharing payments, failed to determine and negotiate a reasonable recordkeeping fees, and failed to adequately negotiate rebates of excessive fees paid by the Plans. Doc. 81 ¶¶126–34, 138. Plaintiffs allege that, based on the market for similar services for similarly sized Plans, Defendants could have obtained a total annual recordkeeping fee for *both* Plans of $1,050,000 (an average of roughly $35/participant). *Id.* ¶135. The uncapped, asset-based revenue sharing payments to the Plans' recordkeepers far exceeded these market rates. From 2010 to 2014, the Retirement Plan paid between $2.9 and $3.4 million annually—approximately $115 to $183 per participant—over *420% higher* than the reasonable market rate. *Id.* ¶136. In that same period, the TDA Plan paid between $1.8 and $2.2 million annually—approximately $145 to $200 per participant—over *470% higher* than the reasonable market rate. *Id.* ¶137. Plaintiffs estimate that Defendants' failure to prudently monitor and control these excessive administrative and recordkeeping fees caused losses to the Plans in excess of $28 million. *Id.* ¶141.

### B.    Imprudent Investments (Count V)

Defendants allowed the Plans' recordkeepers, TIAA and Fidelity, to dictate the Plans' investment lineups. As a result of Defendants' deficient process for monitoring investments, Defendants' retained options—including the TIAA Real Estate Account and CREF Stock

---

[4] Available at: https://www.dol.gov/sites/default/files/ebsa/employers-and-advisers/guidance/advisory-opinions/AO2013-03A_0.pdf.

Account—that charged significantly higher fees and consistently underperformed over long periods compared to prudent alternative investment options available to the Plans. *Id.* at ¶¶170–202,[5] 241–45. The CREF Stock Account and TIAA Real Estate Account had long histories of substantial underperformance as of the beginning of the proposed class period, dramatically underperforming both passive and active benchmarks on a long-term basis, and charged significantly higher fees than comparable options available to the Plans. *Id.* ¶¶173–202. Defendants similarly included a number of actively managed mutual funds with high expenses and poor performance compared to readily available alternatives, and included retail share class funds despite the availability of identical lower cost alternatives. *Id.* ¶¶142–52, 175–83, 236–41. Had Defendants used a prudent investment review process, these options would have been removed. *Id.* ¶¶144–45, 148, 150–51, 173, 183, 193, 195, 199, 201. Defendants' failure to remove those imprudent options caused the Plans' participants to lose millions of dollars of their retirement savings. *Id.* ¶¶152, 196, 202.

## C.   Failure to Monitor (Count VII)

Cornell, the Plans' Administrator and named fiduciary, formed the Committee and named Mary Opperman as Committee Chair, delegating to her the authority to appoint and remove Committee members. The Cornell Defendants then hired CAPTRUST to serve as investment advisor.  *See supra*, § I. In its role as the named fiduciary, Cornell is the ultimate responsible party with regard to the control, management, and administration of the Plans and the Plans' service providers. Doc. 81 ¶253; Doc. 111 ¶253; 29 U.S.C. §1102(a). In her role as Committee Chair, Mary Opperman has the power and responsibility to monitor the performance of the Committee and its members, including the responsibility to remove Committee members who failed to perform their duties. Doc. 81 ¶254. Both Cornell and Mary Opperman have a duty to

---

[5] The citation here references ¶¶170–174 on pages 87–94, as well as ¶172–202 on pages 95–113.

monitor the appointees and delegatees for the Plans, and to ensure they are acting in the best interests of the Plans' participants and performing their tasks in accordance with ERISA. *Id.* ¶¶255–56. Cornell and Mary Opperman breached that duty, failing to monitor their appointees' performance and processes, thereby allowing the aforementioned breaches to continue, unchecked and unabated. *Id.* ¶¶256–57.

## III.   **The Proposed Class Definition**

ERISA authorizes any plan participant to bring an action on behalf of a plan to enforce ERISA's fiduciary duties and to recover all losses to a plan caused by a breach of fiduciary duty. 29 U.S.C. §§1132(a)(2), 1109(a). Plaintiffs bring this action "in a representative capacity on behalf of the plan as a whole" to recover losses to their Plans caused by Defendants' breaches, and to obtain equitable remedies. *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Plaintiffs seek to represent and to certify the following class:

> All participants and beneficiaries of the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca and the Cornell University Tax Deferred Annuity Plan from August 17, 2010, through the date of judgment, excluding the Defendants and any participant who is a fiduciary to the Plans.

Doc. 81 ¶204.

## ARGUMENT

## I.   **Standard for Class Certification**

To obtain class certification, a proposed class must meet the four requirements of Rule 23(a) and one of the requirements of Rule 23(b). *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *Moreno*, 2017 U.S.Dist.LEXIS 143208, *9–10; Fed.R.Civ.P. 23.[6] Although courts must conduct a "rigorous analysis" to ensure that the Rule 23(a) elements are met, *Flores v.*

---

[6] Implicit in Rule 23 is a "modest threshold requirement" of ascertainability, which asks if the "proposed class is defined using objective criteria that establish a membership with definite boundaries." *Petrobras Sec. Univs. Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras*, 862 F.3d 250, 269 (2d Cir. 2017). Here, the class is indisputably defined using objective criteria: status as a participant or beneficiary of the Plans during the proposed class period (excluding the Plans' fiduciaries). Doc. 81 ¶204.

*Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012)(citation omitted), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## II.   <u>Plaintiffs Meet the Requirements of Rule 23(a)</u>

Rule 23(a) requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *In re US FoodService Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). The proposed class satisfies these elements.

### A.   Numerosity

"[T]he class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "In this Circuit, numerosity is 'presumed at a level of 40 members.'" *Leber*, 2017 U.S.Dist.LEXIS 194293, *30 (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). When a proposed class has "thousands of members," joinder "would obviously be impracticable …." *In re Beacon*, 282 F.R.D. at 339.

Here, the Plans collectively had more than 28,000 participants throughout the proposed class period, with over 30,000 participants as of year-end 2016. Doc. 81 ¶¶11, 15; Exs. 1–14 at 2, Line 6(g) of each. "Certainly, this number of potential plaintiffs serves to make joinder impracticable." *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *9.

### B.   Commonality

Commonality is satisfied if "there are questions of law or fact common to the class[.]" Fed.R.Civ.P. 23(a)(2). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw.*, 457 U.S. at 157 n.13. "Those requirements [ ] also tend to merge with the adequacy-of-representation requirement …." *Id.*

8

Commonality involves "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)(internal quotations omitted). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. The commonality test is "generally considered a 'low hurdle' easily surmounted." *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02-4483, 2007 U.S.Dist.LEXIS 31963, *11 (S.D.N.Y. Apr. 30, 2007)(quoting *In re Prudential Sec. Inc. P'ships Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995)).

Because an ERISA fiduciary breach action is undertaken on behalf of a plan regarding duties owed at the plan level, "commonality is quite likely to be satisfied." *Schering*, 589 F.3d at 599 n.11. "Typically, 'the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries.'" *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-2548, 2017 U.S.Dist.LEXIS 59264, *20 (S.D.N.Y. Mar. 31, 2017)(quoting *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006)); *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *10 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 452)(holding same).

Here, Defendants owed duties to the *Plans*, not individual participants, and Plaintiffs' claims all concern Plan-level decisions regarding administrative fees and investment options. *See* 29 U.S.C. §1104(a)(1)("a fiduciary shall discharge his duties with respect to *a plan*")(emphasis added). Essentially the same menu of options, the same fee structures, and the same fiduciary actions and omissions applied to *all* participants. *See, e.g.*, Exs. 1–14, Supplemental Schedule H to the Financial Statements of each; Exs. 17–18, at 6–42 of each (Plan and Investment Notices for Retirement Plan and TDA Plan).

Therefore, the core questions in this action are common to all plan participants, including: (1) whether Defendants are fiduciaries; (2) whether Defendants breached their fiduciary duties by taking (or failing to take) actions that resulted in unreasonably high fees or imprudent investments; (3) whether certain investment options were improperly included in the Plans; (4) whether the Plans suffered losses from the foregoing breaches; (5) how to calculate the Plans' losses; and (6) what equitable relief should be imposed in light of these breaches. Doc. 81 ¶205(b). Thus, "[w]hile 'a single common question will do,' the common questions here are numerous." *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *10 (internal citation omitted)(quoting *Dukes*, 564 U.S. at 359).

The evidence needed to answer these contentions are Plan-level facts, and thus the same for all the Plans' participants. If the evidence shows that defendants "failed to monitor [plan] investments" or fees, "it would not only generate answers applicable to all class members, but would also address the heart of the claims at issue in this litigation." *Leber*, 2017 U.S.Dist. LEXIS 194293, *32–33. Thus, "the discovery at issue in this case will 'generate common answers apt to drive the resolution of the litigation.'" *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *10 (quoting *Dukes*, 564 U.S. at 350).

These answers do not depend on particular circumstances of any one participant because in ERISA fiduciary breach actions, "[l]iability is determined based on Defendants' not Plaintiffs' decisions." *Moreno*, 2017 U.S.Dist.LEXIS 143208, *13–14 (citation omitted). The questions of law and fact in this action are common to each class member, as numerous federal courts in similar cases have recognized. *Id.* at *14 (finding commonality because questions regarding the imprudent retention of funds and allegedly excessive recordkeeping fees were common questions to "be resolved with respect to the Plan as a whole"); *Leber*, 2017 U.S.Dist.LEXIS 194293, *32–

10

33 (finding commonality where common questions include "whether defendants failed to prudently and loyally monitor the Plan's investments"); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014)("the questions of whether Defendants breached their fiduciary duties by causing the Plan to select imprudent investment options or pay excessive record-keeping fees, and whether the Plan suffered losses from those breaches, are common to all Plan participants' claims and, therefore, will generate answers common to all of the putative class members"); *Tibble v. Edison Int'l*, No. 07-5359, 2009 U.S.Dist.LEXIS 120939, *8–9 (C.D. Cal. June 30, 2009)(holding same), *aff'd*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 1823 (2015) ; *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) ("Defendants owed identical fiduciary duties to all members of the proposed class with respect [to] the Plan. Because this case involves Defendants' conduct as to all participants in the Plan, Rule 23's 'commonality' requirement is satisfied."). "Ultimately, because the fiduciaries allegedly owed and breached duties to the Plans—not to individuals—commonality must be satisfied." *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *11.

### C.   Typicality

Typicality requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). This prong of the analysis "does not require that the factual background of each named plaintiff's claim be identical to that of all class members," *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999), nor does it require that all Plan participants invest in identical funds at identical times. *Leber*, 2017 U.S.Dist. LEXIS 194293, *41; *Krueger*, 304 F.R.D. at 573. Instead, typicality requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)(quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

*Accord Moreno*, 2017 U.S.Dist.LEXIS 143208, *18; *In re Virtus Inv. Partners, Inc.*, No. 15-1249, 2017 U.S.Dist.LEXIS 73554, *7 (S.D.N.Y. May 15, 2017)(both holding same). Accordingly, "when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936–37.

Because a §1132(a)(2) claim is inherently a representative claim, any participant's claim is necessarily typical of the claims of the class, since any participant is asserting *the Plans'* claim. For these reasons, courts routinely find any participant's fiduciary breach claims to be typical of the claims of all participants in the plan. *Piazza v. EBSCO Indus.*, 273 F.3d 1341, 1351 (11th Cir. 2001)(finding typicality because ERISA fiduciary breach claims on behalf of a plan "arise from precisely the same practice and the legal issues are identical"); *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *12 (because "[e]ach named plaintiff is asserting a claim on behalf of the Plans … adjudication of the fiduciary breach claims will not turn on any individual class member's circumstances"); *In re Suntrust Banks, Inc.*, No. 08-03384, 2016 U.S. Dist. LEXIS 108916, *23–24 (N.D. Ga. Aug. 17, 2016)(because ERISA fiduciary breach claims "are brought on behalf of the Plan," purported conflicts between the representative and the class members "are irrelevant"); *Krueger*, 304 F.R.D. at 573 (typicality satisfied for claims "alleging breaches of fiduciary duties Defendants owed to the Plan," because named plaintiffs and class members sought "redress of similar grievances under the same legal and remedial theories"); *Kanawi*, 254 F.R.D. at 110 ("In light of the representative nature of a suit filed pursuant to [§1132](a)(2) . . . Plaintiffs' claims are sufficiently typical of those of other class members").

Recent decisions from this District have found typicality satisfied for similar ERISA claims

involving defined contribution plans. In *Moreno*, the Court found typicality to be satisfied and certified a class alleging ERISA fiduciary breach claims because each plaintiff had done one or more of the following: (1) invested in a poorly performing fund, (2) participated in the Plan while allegedly excessive recordkeeping fees were being charged, or (3) invested in a challenged fund for which lower cost alternatives were available. 2017 U.S.Dist.LEXIS 143208, *19. *Accord Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *11–12; *Leber*, 2017 U.S.Dist.LEXIS 194293, *38–42. The same reasoning applies here.

Moreover, because the commonality and typicality requirements "tend to merge," *Dukes*, 564 U.S. at 349 n.5, Plaintiffs' claims are typical for many of the same reasons that there are overwhelmingly common issues of fact and law. Because Defendants' actions were directed to and affected the Plans as a whole, the claims of Plaintiffs and class members all arise from the same events and course of conduct—Defendants' failures to prudently (1) monitor and control the Plans' recordkeeping fees, (2) monitor the Plans' investment options on an ongoing basis and to remove imprudent ones, and (3) monitor their appointees and delegees. *See Tussey*, 746 F.3d at 336; *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015); *Katsaros*, 744 F.2d at 279. Moreover, the Plaintiffs and all class members are bringing the same claims under the same legal and remedial theory: enforcement through §1132(a)(2) of Defendants' obligations under §1109(a) to make good to the Plans the losses caused by Defendants' breaches of duty and to obtain appropriate equitable relief.

### D.    Adequacy

The adequacy prong of Rule 23(a) asks whether Plaintiffs "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy requirement ensures that there are no potential "conflicts of interests between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Adequacy looks at both the adequacy of the class representatives and the adequacy of the class counsel. The class representatives "must have an interest in vigorously pursuing the claims of the class," with no "fundamental" conflicts of interest that would render them antagonistic to the class. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). In addition, class counsel must be "qualified, experienced, and able to conduct the litigation." *In re Flag Telecom Holdings*, 574 F.3d at 34 (internal quotations omitted). Here, both requirements are met.

### 1. Plaintiffs have no conflicts with other class members and will vigorously prosecute this action on behalf of the class.

Plaintiffs' interests are aligned with those of the class members because they all are acting on behalf of their Plans in seeking to enforce the fiduciary duties that Defendants owed to the Plans and to recover damages and equitable relief that are due to the Plans. *See* 29 U.S.C. §1109(a); *Russell*, 473 U.S. at 142 n.9. "There is no reason to doubt that the name[d] plaintiffs will 'fairly and adequately protect the interests of the class,' as they have identical legal and effectively identical financial interests in this action as to the proposed class members." *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *12 (internal citation omitted)(quoting Fed.R.Civ.P. 23(a)(4)). Because Plaintiffs are pursuing claims on behalf of the Plans, as opposed to individual claims, there are no conflicts between Plaintiffs' individual interests and the interests of the class. *Krueger*, 304 F.R.D. at 574–75. To the contrary, the Plaintiffs and class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. Mere hypothetical or minor conflicts among class members do not defeat class certification. "In order to defeat a motion for certification, [ ] the conflict must be fundamental." *Flag Telecom*, 574 F.3d at 35 (internal quotations omitted).

A class representative needs only a basic understanding of the claims and a willingness to participate in the case. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). *See also Baffa*

14

*v. Donaldson*, 222 F.3d 52, 61 (2d Cir. 2000)(discussing the Supreme Court's "express[ ]

disapprov[al] of attacks on the adequacy of a class representative based on the representative's

ignorance"). "This is particularly the case in complex securities litigation, where a great deal of

reliance on expert counsel is to be expected." *N.J. Carpenters Health Fund v. Royal Bank of*

*Scot. Grp., PLC*, No. 08-5310, 2016 U.S.Dist.LEXIS 153804, *17 (S.D.N.Y. Nov. 4, 2016)

(internal quotations omitted). Here, all of the Plaintiffs understand the nature of their claims and

duties as class representatives to vigorously prosecute this case through its conclusion. *See*

Named Plaintiffs' Declarations, ¶¶2–3, 5 of each. They have demonstrated that commitment to

date by reviewing court documents sent by their attorneys and monitoring the progress of the

action. *Id.* at ¶4 of each. Thus, each named Plaintiff should be appointed as class representative.

> **2.      Plaintiffs' counsel has no conflicts with the class, is qualified and experienced, and will vigorously prosecute this action on behalf of the class.**

Rule 23(g) provides factors for the Court to assess in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in
> the action; (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action; (iii) counsel's knowledge
> of the applicable law; and (iv) the resources that counsel will commit to
> representing the class.

Fed.R.Civ.P. 23(g).

Plaintiffs' counsel—Schlichter Bogard & Denton LLP—has unparalleled experience in

prosecuting ERISA fiduciary breach class actions and will fairly and adequately represent the

interests of the class. Declaration of Jerome J. Schlichter, ¶¶3–23. The firm conducted a lengthy

investigation of potential claims in this action, and is committed to devoting all necessary

resources to representing the class and vigorously prosecuting this action, as it has done in many

prior ERISA fiduciary breach actions. *Id.* ¶¶6–23. The firm's experience is shown by its

appointment as class counsel in 24 other, large ERISA fiduciary breach class actions, where it

15

obtained multi-million dollar settlements and judgments, as well as its involvement in *Tibble*,

135 S. Ct. 1823—the only defined contribution plan excessive fee case taken by the U.S.

Supreme Court—in which it obtained a unanimous opinion in favor of ERISA plan participants,

and two trial judgments for plan participants. Schlichter Decl. ¶¶6–7, 9, 13. The firm is

recognized as a "pioneer and the leader in the field" of defined contribution plan excessive fee

litigation, *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 U.S.Dist.LEXIS 93206, *4–5

(S.D. Ill. July 17, 2015), and "clearly experts in ERISA litigation." *Tussey v. ABB, Inc.*, No. 06-

4305, 2012 U.S.Dist.LEXIS 157428, *10 (W.D. Mo. Nov. 2, 2012). And it recently completed

trial in this Court in *Sacerdote v. New York University*, No. 16-6284 (S.D.N.Y.), the first

university 403(b) plan excessive fee case. Schlichter Bogard & Denton LLP should be appointed

class counsel under Rule 23(g).

## III.  Plaintiffs Meet the Requirements of Rule 23(b)

Having satisfied all the requirements of Rule 23(a), Plaintiffs need only satisfy one

subsection of Rule 23(b). Courts in similar ERISA fiduciary breach cases have overwhelmingly

granted certification under Rule 23(b)(1), because "the distinctive 'representative capacity'

aspect of ERISA participant and beneficiary suits makes litigation of this kind 'a paradigmatic

example of a [23](b)(1) class.'" *In re Beacon*, 282 F.R.D. at 342 (alteration in original)(quoting

*In re Global Crossing*, 225 F.R.D. at 453, and collecting cases); s*ee also Schering*, 589 F.3d at

604 (collecting cases); *Krueger*, 304 F.R.D. at 575–78; *In re Northrop Grumman Corp. ERISA

Litig.*, No. 06-6213, 2011 U.S.Dist.LEXIS 94451, *62 (C.D. Cal. Mar. 29, 2011); *Kanawi*, 254

F.R.D. at 111; *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 67 (M.D.N.C. 2008); *Tussey

v. ABB Inc.*, No. 06-4305, 2007 U.S.Dist.LEXIS 88668, *27 (W.D. Mo. Dec. 3, 2007).[7]

---

[7] *See also* orders granting Rule 23(b)(1) certification in *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *17–19; *Leber*,
2017 U.S.Dist.LEXIS 194293, *46–47 & n.17; *Moreno*, 2017 U.S.Dist.LEXIS 143208, *23–27; *Koch v. Dwyer*, No.

In the alternative, if the Court were to somehow find Rule 23(b)(1) certification inappropriate, Plaintiffs seek certification under Rule 23(b)(3) because Defendants' actions and omissions on a Plan- and class-wide basis ensure that common questions predominate over any individual issues, and resolving the Plans' claims in a class-wide proceeding is vastly superior to individual adjudications.

### A.   The class should be certified under Rule 23(b)(1)

"Most ERISA class action cases are certified under Rule 26(b)(1)." *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *17 (quoting *Caufield v. Colgate-Palmolive*, No. 16-4170, 2017 U.S. Dist.LEXIS 118022, *6 (S.D.N.Y. July 27, 2017), and *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008)(Breyer, J.)). Rule 23(b)(1) provides:

> A class action may be maintained if Rule 23(a) is satisfied and if … prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed.R.Civ.P. 23(b)(1). Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike[.]" *Amchem*, 521 U.S. at 614 (internal quotations and citation omitted). "One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his

---

98-5519, 2001 U.S.Dist.LEXIS 4085, *13–14 (S.D.N.Y. Mar. 22, 2001); *George v. Kraft Foods Global Inc.*, 251 F.R.D. 338, 351–52 (N.D. Ill. 2008); *Beesley v. Int'l Paper Co.*, No. 06-703, Doc. 240 (S.D. Ill. Sept. 30, 2008), *vacated on other grounds*, 633 F.3d 574 (7th Cir. 2011); *Taylor v. United Techs. Corp.*, No. 06-1494, 2008 U.S.Dist.LEXIS 43655, *15 (D. Conn. June 3, 2008); *Loomis v. Exelon Corp.*, No. 06-4900, 2007 U.S.Dist. LEXIS 46893, *11 (N.D. Ill. June 26, 2007); *Tibble*, 2009 U.S.Dist.LEXIS 120939, *20, 29; *Spano v. Boeing Co.*, 294 F.R.D. 114 (S.D. Ill. 2013); *Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388, 405 (S.D. Ill. 2012), and *Abbott*, No. 06-701, Doc. 403 at 3–6, 12 (S.D. Ill. Aug. 1, 2014).

conduct." Fed.R.Civ.P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A). Defendants'

fiduciary duties are owed to the Plans, and thus to all participants as a class. 29 U.S.C.

§1104(a)(1). Defendants owed their fiduciary duties to *all* participants in the Plans, and hence to

all class members. In discharging their duties to the Plans, Defendants, as fiduciaries, were

obligated to treat all participants (hence all class members) alike.

Allowing 28,000 individual class members to pursue this action on behalf of the Plans could

result in varying adjudications over whether Defendants breached their duties as alleged, whether

Defendants are liable for these actions, and how to measure damages to the Plans and other

relief. *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, \*17 (holding same with regard to 20,000 member

ERISA class action). As to the administrative and recordkeeping fees claim, the fact-finder will

have to determine the Plans' losses by deciding—with expert testimony—how much the

recordkeepers were paid, whether the services of all recordkeepers were necessary, and whether

the fees were reasonable. For the imprudent investment options, the fact-finder will have to

determine whether Defendants conducted a prudent and thorough investigation of the Plans'

investments on an ongoing basis, whether the funds and options were prudent and reasonably

priced, and the proper benchmark alternative to measure losses to the Plans. *See, e.g., Tussey v.

ABB Inc.*, 850 F.3d 951, 959 (8th Cir. 2017)(where fiduciary breached its duty in replacing a

fund with a fund that benefited the fiduciary and plan recordkeeper, the district court must

measure the plans' resulting losses). With respect to the failure to monitor claims, the fact-finder

will determine whether Defendants Cornell and Opperman adequately monitored the

performance and processes of the fiduciary appointees and whether they failed to remove

fiduciary appointees with inadequate performance.  Injunctive relief may be appropriate to

require a removal of certain investment options or a bidding process to replace the Plans'

recordkeepers. *See, e.g.*, *Tussey v. ABB, Inc.*, No. 06-4305, 2012 U.S.Dist.LEXIS 45240, \*114 (W.D. Mo. Mar. 31, 2012)(ordering breaching fiduciary to "utilize[] a competitive bidding process … to select a new recordkeeper"), *aff'd in part, rev'd in part on other grounds*, 746 F.3d 327 (8th Cir. 2014). Individual adjudications to resolve any one of these issues would create incompatible standards for Defendants in so far as losses or profits they must restore to the Plans under §1109(a), and what Defendants must do to the Plans' investment options and service providers. *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, \*17. As numerous courts have recognized, these claims satisfy the requirements for certification under Rule 23(b)(1)(A). *Piazza*, 273 F.3d at 1352–53; *In re Polaroid ERISA Litig.*, 240 F.R.D at 78; *Krueger*, 304 F.R.D. at 576–77 (citing cases); *Tibble*, 2009 U.S.Dist.LEXIS 120939, \*20–21, 27; *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009).

Rule 23(b)(1)(B) asks whether one participant's action over these claims "as a practical matter[] would be dispositive of the interests" of the other participants' actions over the same claims because they concern the same actions, damages, and fiduciary duties owed to the Plans. Fed.R.Civ.P. 23(b)(1)(B). "[A]n action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" is a typical Rule 23(b)(1)(B) action. Fed.R.Civ.P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). Due to the trust-like nature of a defined contribution plan, with fiduciary duties owed to the *plan* and not to individual participants, many courts (including several in this Circuit) have found similar claims to be classic Rule 23(b)(1)(B) class actions. *E.g.*, *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, \*18; *Leber*, 2017 U.S.Dist.LEXIS 194293, \*46–47 & n.17 (collecting cases); *Moreno*, 2017 U.S.Dist.LEXIS

143208, *23–27 (collecting cases); *In re Beacon*, 282 F.R.D. at 342; *Koch*, 2001 U.S.Dist.LEXIS 4085, *13–14 . *See also Schering*, 589 F.3d at 604; *Krueger*, 304 F.R.D. at 577–78; *Tatum*, 254 F.R.D. at 67.

Even if absent participants were not barred by *res judicata* from litigating the same claims on behalf of the Plans, as a "practical matter" a prior adjudication of whether the fiduciaries breached their duties to the Plans would influence a subsequent court's adjudication of the same claims. Fed.R.Civ.P. 23(b)(1)(B). Thus, Plaintiffs satisfy both Rule 23(b)(1)(A) and (b)(1)(B).

### B. In the alternative, the class should be certified under Rule 23(b)(3)

When a class satisfies both Rule 23(b)(1) and Rule 23(b)(3), Rule 23(b)(1) controls. *Sacerdote*, 2018 U.S.Dist.LEXIS 23540, *17 n.2; *Leber*, 2017 U.S. Dist. LEXIS 194293, *45–46. However, if the Court were to reject certification under Rule 23(b)(1), certification is appropriate under Rule 23(b)(3) because common questions of law or fact predominate and a class action is the superior method of adjudicating the claims. Fed.R.Civ.P. 23(b)(3).

Rule 23(b)(3)'s requirement that common issues of law or fact predominate is closely related to the Rule 23(a)(2) "commonality" requirement. This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Common issues predominate "if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)(quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007)); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).

Here, for the same reasons that commonality is satisfied, there are myriad issues of law and fact common to the members of the proposed class. Plan fiduciaries selected the Plans' investment options, contracted with service providers, and failed to monitor appointees for the

Plans as a whole; such decisions were not made by, or on behalf of, any individual participant. The evidence relevant to Plaintiffs' allegations involve Plan-level facts and are therefore the same for all participants.

A class action is far "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The "superiority" requirement asks the Court to consider: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3) . Class certification is "superior" when the "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem,* 521 U.S. at 615 (internal citations omitted).

Litigating 28,000 separate suits by individual participants is not feasible. The losses suffered by individual participants and beneficiaries are too small for individual members to enforce their rights through individual actions. No participant could economically pursue his individual claim on his own. Rule 23(b)(3) vindicates "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all. . . ." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015)(quoting *Amchem*, 521 U.S. at 617); *see also id.* ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights")(quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.

1997)); *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 665 (7th Cir. 2001)("the core function of [the class action] is to enable the litigation of claims too small to warrant the costs of prosecuting a separate suit for each claim"). Given the nature of the allegations seeking Plan-wide relief for the same Plan-level breaches of fiduciary duties, no class member has an interest in individually controlling the prosecution of this matter that seeks to recover losses on behalf of the Plans.

Moreover, the judicial process and the resources of the federal courts would be severely burdened if the Plans' participants pursued individual suits regarding the same conduct in potentially thousands of suits. Concentrating all litigation concerning the Plans' fiduciaries and their duties in one action would be more economical and ensure uniformity of decision. It would undeniably save the parties and the courts considerable resources and effort by resolving questions concerning the Plans' operation in a single litigation, rather than sorting out the disparate effects of many and possibly contradictory orders. Finally, because the common issues raised in this action predominate, the action will be manageable as a class action. Indeed, similar claims handled by Plaintiffs' counsel involving large 401(k) and 403(b) plans have proceeded to trial on a class-wide basis with no manageability issues. *See, e.g., Tibble*, 135 S. Ct. at 1826; *Tussey*, 746 F.3d at 336; *Sacerdote*, No. 16-6284 (S.D.N.Y.). Thus, Rule 23(b)(3) certification also would be proper.

## IV.   CAPTRUST's Opposition Is Without Basis

CAPTRUST's opposition to Plaintiffs' pre-motion letter (Doc. 146) contains five arguments against class certification, each of which is without basis. While Plaintiffs will address these arguments fully if and when they are formally presented, Plaintiffs note that Judge Forrest recently addressed and disregarded three of these arguments under similar circumstances. *See Sacerdote*, 2018 U.S.Dist.LEXIS 23540 at *14 (rejecting argument "that removing [challenged investments] from the Plans … would create class conflicts because some participants would be

22

hurt by the funds' removal"); *id.* at *20 (rejecting argument that the class needs "to be limited to only those who invested in the [specifically identified funds]"); *id.* at *21–22 (rejecting argument "that [defendant's] statute of limitations defense requires highly individualized inquiries into whether each putative class member had 'actual knowledge' of the facts underlying their claims more than three years before the Complaint was filed")(internal quotations omitted).

As to CAPTRUST's remaining arguments, this Court also has rejected the contention that plan participants lack standing to seek plan-wide relief unless they personally invested in every fund. *Leber*, 2017 U.S.Dist.LEXIS 194293, *17–22; *Moreno*, 2017 U.S.Dist.LEXIS 143208, *27–29. Moreover, the timing of CAPTRUST's hiring does not affect the scope of the class. If anything, it will affect the limits of CAPTRUST's individual liability—something that can be calculated easily and uniformly.

## CONCLUSION

For these reasons, the Court should certify all of Plaintiffs' claims as a class action under Rule 23(b)(1), and appoint Casey Cunningham, Charles E. Lance, Stanley T. Marcus, Lydia Pettis, and Joy Veronneau as class representatives. Under Rule 23(g), the Court should also appoint Schlichter, Bogard & Denton LLP as class counsel.

May 2, 2018                                    Respectfully Submitted,

                                           /s/ Jerome J. Schlichter
                                           SCHLICHTER BOGARD & DENTON LLP
                                           Andrew D. Schlichter, Bar No. 4403267
                                           Jerome J. Schlichter*
                                           Michael A. Wolff*
                                           100 South Fourth Street, Suite 1200
                                           St. Louis, Missouri 63102
                                           (314) 621-6115, (314) 621-7151 (fax)
                                           aschlichter@uselaws.com
                                           jschlichter@uselaws.com
                                           mwolff@uselaws.com
                                           *Admitted *pro hac vice*

                                           *Attorneys for Plaintiffs*