## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASEY CUNNINGHAM, CHARLES E. LANCE, STANLEY T. MARCUS, LYDIA PETTIS, and JOY VERONNEAU, individually and as representatives of a class of participants and beneficiaries on behalf of the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca and the Cornell University Tax Deferred Annuity Plan,<br><br>*Plaintiffs*,<br><br>v.<br><br>CORNELL UNIVERSITY, THE RETIREMENT PLAN OVERSIGHT COMMITTEE, MARY G. OPPERMAN, and CAPFINANCIAL PARTNERS, LLC,<br><br>*Defendants*. | Case No. 16-CV-6525 (PKC) |

## CAPFINANCIAL PARTNERS, LLC'S MEMORANDUM
## IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Joel S. Feldman (admitted *pro hac vice*)
Eric S. Mattson (admitted *pro hac vice*)
Daniel R. Thies (admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
jfeldman@sidley.com
emattson@sidley.com
dthies@sidley.com

Andrew W. Stern
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
astern@sidley.com

## TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Legal Standard ............................................................................................................... 3

Factual and procedural background ................................................................................ 4

    I.     The difference between this case and the NYU and Duke cases. ................................ 4

    II.    Facts pertinent to Plaintiffs' motion for class certification ........................................... 6

Argument ....................................................................................................................... 7

    I.     Plaintiffs have waived the right to seek damages with respect to the alleged
          underperformance of 178 funds. ............................................................................... 7

    II.    The breadth of Plaintiffs' claims, together with their failure to offer any evidence
          of classwide damages or to address individualized statute of limitations issues,
          precludes class certification. ...................................................................................... 9

          A.    Plaintiffs have failed to meet their burden of presenting evidence to
               demonstrate how this case can be resolved on classwide basis. ........................... 9

          B.    The extensive individualized evidence necessary to resolve Plaintiffs'
               claims for each of the 244 challenged options precludes certification under
               Rules 23(b)(1) and (b)(3). ................................................................................. 10

               1.    Option-specific evidence would have to be examined separately for each
                    investment option. ....................................................................................... 10

               2.    The NYU trial confirms the need to consider extensive individualized
                    evidence for each investment option. ............................................................ 11

                3.    Additional individualized evidence would have to be examined to
                      resolve the inquiry into share classes. ......................................................... 14

          C.    For a material segment of the proposed class, an additional individualized
               inquiry class would have to be held to resolve the statute of limitations issue. ... 15

          D.    Plaintiffs cannot satisfy the requirements for a Rule 23(b)(1) or (b)(3) class. ..... 16

          E.    Plaintiffs have not met their burden of presenting evidence on how
               damages can be calculated. .................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                  **Page(s)**

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,
   566 F. Supp. 2d 305 (S.D.N.Y. 2008)........................................................................7

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*,
   99 F. Supp. 3d 1110 (C.D. Cal. 2015) ....................................................................7

*Benner v. Becton Dickinson & Co.*,
   214 F.R.D. 157 (S.D.N.Y. 2003) ............................................................................4

*Breitman v. Xerox Educ. Servs., LLC*,
   No. 12 Civ. 6583, 2014 WL 5364103 (S.D.N.Y. Oct. 22, 2014) ...........................19

*Bowe Bell + Howell Co. v. Immco Employees Association*,
   No. 03 C 8010, 2005 WL 1139645 (N.D. Ill. May 11, 2005) ...............................18

*Casa Orlando Apartments, Ltd. v. Fannie Mae*,
   624 F.3d 185 (5th Cir. 2010) ..............................................................................19

*Clark v. Duke Univ.*,
   No. 16-CV-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ........................4, 5

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................................................3

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006)...................................................................................7

*Divane v. Northwestern Univ.*,
   No. 16 C 8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018) ................................4

*Fernandez v. Wells Fargo Bank, N.A.*,
   No. 12 Civ. 7193, 2013 WL 4540521 (S.D.N.Y. Aug. 28, 2013) ............3, 4, 10, 20

*Gould Paper Corp. v. Madisen Corp.*,
   614 F. Supp. 2d 485 (S.D.N.Y. 2009).....................................................................7

*Hewlett-Packard Co. v. Factory Mut. Ins. Co.*,
   2006 U.S. Dist. LEXIS 44365 (S.D.N.Y. June 27, 2006).........................................8

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (2012) ........................................................................................17

*In re Citigroup ERISA Litig.*,
   104 F. Supp. 3d 599 (S.D.N.Y. 2015).....................................................................15

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................17

*In re Photochromic Lens Antitrust Litig.*,
   MDL No. 2173, 2014 WL 1338605 (M.D. Fla. Apr. 3, 2014) ................19

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)................................................................17

*Kramer v. Time Warner, Inc.*,
   937 F.2d 767 (2d Cir. 1991)................................................................7

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017) ........................................................17

*Lemberg v. Scottsdale Healthcare Corp. Health Plan*,
   No. CV-11-271, 2013 WL 12097449 (D. Ariz. Feb. 4, 2013)................18

*Moreno v. Deutsche Bank Am. Holding Corp.*,
   No. 15 Civ. 9936, 2017 U.S. Dist. LEXIS 143208 (S.D.N.Y. Sept. 5, 2017) ........17

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999).........................................................................16

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
   100 F. App'x 296 (5th Cir. 2004) ......................................................19

*Presbyterian Church v. Talisman Energy, Inc.*,
   No. 01-Civ-9882, 2005 WL 2278076 (S.D.N.Y. Sept. 20, 2005) ............3

*Rambarran v. Dynamic Airways, LLC*,
   No. 14-cv-10138, 2015 U.S. Dist. LEXIS 97651 (S.D.N.Y. July 27, 2015)............18

*Ritchie Risk-Linked Strategies Trading, Ltd. v. Coventry First LLC*,
   2012 U.S. Dist. LEXIS 19218 (S.D.N.Y. Jan. 9, 2012)..........................7

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
   No. 14-cv-4394, 2018 WL1750595 (S.D.N.Y. Apr. 11, 2018) ...........4, 16

*Sacerdote v. New York University*,
   No. 16-cv-6284. 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ..........12, 17

*Selby v. Principal Mut. Life Ins. Co.*,
   197 F.R.D. 48 (S.D.N.Y. 2000) .........................................................18

*Sicav v. Wang*,
   No. 12 Civ. 6682, 2015 WL 268855 (S.D.N.Y. Jan. 21, 2015)................9

*Singleton v. Fifth Generation, Inc.*,
    No. 15-cv-474, 2017 WL 500144 (N.D.N.Y. Sept. 27, 2017)................................................20

*Spann v. AOL Time Warner, Inc.*,
    219 F.R.D. 307 (S.D.N.Y. 2003) ........................................................................................17

*Sweda v. University of Pa.*,
    No. CV 16-4329, 2017 WL 4179752 (E.D. Pa. Sept. 21, 2017) ...............................................4

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    546 F.3d 196 (2d Cir. 2008)...........................................................................................3, 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).........................................................................................................3

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008)................................................................................15

**Statutes**

29 U.S.C. § 1113.................................................................................................................15

**Introduction**

Everyone agrees that this Court must undertake a "rigorous analysis" of the evidence presented by both sides in deciding whether to certify a class. This analysis is guided by a simple principle: If Plaintiffs demonstrate that classwide evidence can efficiently resolve the key issues in the case, then class certification should be granted. On the other hand, if varying evidence would be needed to resolve one or more key issues, then class certification should be denied.

The sole remaining claim against Defendant CapFinancial Partners, LLC ("CapTrust") alleges that 244 separate investment options in the Cornell retirement plans were imprudent, either because they underperformed, cost too much, or both. The breadth of that claim is Plaintiffs' Achilles heel. In the two university retirement plan cases where courts certified a prudence claim, plaintiffs were pursuing a challenge to just two investment options. And perhaps that is Plaintiffs' intention here, but their motion does not specify which investment options they seek to challenge on a classwide basis.

As an initial matter, regardless of their intentions, Plaintiffs have forfeited the right to seek damages for alleged "underperformance" violations involving investment options other than the TIAA Real Estate Account and the CREF Stock Account. Those are the only investment options for which Plaintiffs identified damages in their initial disclosures. Their failure to articulate damages allegedly arising from other funds bars Plaintiffs from seeking such damages, which necessarily means they cannot seek certification of claims challenging those funds.

In the alternative, if Plaintiffs do intend to seek such certification of those claims, and the Court holds that Plaintiffs are not barred from seeking damages arising from funds other than the TIAA Real Estate and CREF Stock Accounts, common evidence cannot determine whether it was prudent to initially offer, and continue to offer, the hundreds of separate options listed in the Amended Complaint.

The recently tried New York University case proves this point. For each of the two options Plaintiffs challenged, the court took evidence on multiple issues, including:

- Whether it was prudent to initially offer the investment option;

- Whether the investment option was "reasonably priced";

- Whether the investment options were measured against appropriate benchmarks;

- If the benchmark was inappropriate, what benchmark would be appropriate;

- How well the investment options were managed;

- Whether the investment options' performance as measured against a benchmark was good, mediocre, or poor;

- Whether the fiduciaries' monitoring of the investment options was sufficient.

The court heard at least four days of testimony on these and other issues—again, just to address two investment options. But that evidence and testimony would not resolve the same inquiries for the 242 other options Plaintiffs are challenging in this case. Extrapolating arithmetically, and using the NYU trial as a template, resolving the prudence question for 244 investment options would require 486 days of trial time.

Nowhere in Plaintiffs' class certification brief do they identify any evidence common to 244 separate funds that can fairly and efficiently determine the outcome of these inquiries. The only evidence Plaintiffs offered is a smattering of the plans' annual reports plus a few plan-related documents. But the annual reports simply identify how much money is invested in each investment option, and the other documents merely describe certain operational aspects of the plan. They say nothing about the prudence of any particular investment option.

The extraordinary breadth of Plaintiffs' complaint is only one impediment to class certification. Additional individualized evidence would have to be heard on whether the claims

of any particular plan participant are barred by the statute of limitations. Equally importantly, Plaintiffs have offered no evidence that might show the Court how it could calculate classwide damages. In light of this failure of proof, class certification should be denied.

## Legal Standard

Plaintiffs devote just a single paragraph to the legal standard for class certification. Pl. Br. at 7-8. They acknowledge that this Court must conduct a "rigorous analysis" of this critical question, but never explain what evidence Plaintiffs must present to satisfy their burden.

The standards for class certification have become more rigorous over the past decade. The Supreme Court has confirmed that courts must examine all evidence relevant to the standards of Rule 23, even if that evidence also bears on the merits. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). As a result, the Court must look beyond the allegations in the complaint and delve into the relevant facts—not to decide the merits, but to determine whether the merits can be resolved with classwide evidence.

Plaintiffs bear the burden of proving each prong of Rule 23 by a preponderance of the evidence. *Fernandez v. Wells Fargo Bank, N.A.,* No. 12 Civ. 7193, 2013 WL 4540521, at *4 (S.D.N.Y. Aug. 28, 2013) (Castel J.). The Second Circuit adopted this standard a decade ago, in *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008): "Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."

The evidence Plaintiffs proffer to satisfy this standard cannot be "limited" or anecdotal. *Wells Fargo*, 2013 WL 4540521, at *5. Rather, it must be sufficient to allow the Court to anticipate how a trial can proceed with generalized as opposed to disparate evidence. *See, e.g., Presbyterian Church v. Talisman Energy, Inc.*, No. 01-Civ-9882, 2005 WL 2278076, at *3

(S.D.N.Y. Sept. 20, 2005); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 168 (S.D.N.Y. 2003).

Plaintiffs' burden of presenting classwide evidence also applies to resolution of affirmative defenses, including the statute of limitations. "[C]ertification is improper if 'plaintiffs have offered no reliable means of collectively determining how many class members' claims are time-barred.'" *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394, 2018 WL1750595, at *16 (S.D.N.Y. Apr. 11, 2018), *appeal docketed*, No. 18-1074 (2d Cir.).

Even if Plaintiffs can show how liability can be determined with classwide evidence, "they would still be required to offer that some approach to damages satisfies the predominance requirement." *Wells Fargo*, 2013 WL 4540521, at *14. In *Wells Fargo*, this Court denied class certification because, among other things, "plaintiffs have not come forward with a meaningful approach to gauging damages on classwide basis." *Id.* at *15.

## Factual and procedural background

### I.  The difference between this case and the NYU and Duke cases.

Plaintiffs have correctly noted that class certification was granted in a case involving challenges to the prudence of investment options in the NYU retirement plan. Pl. Br. at 9-10. Class certification was also granted in a case involving challenges to the prudence of investment options in the Duke University retirement plan. *Clark v. Duke Univ.*, No. 16-CV-1044, 2018 WL 1801946, at *10 (M.D.N.C. Apr. 13, 2018).[1] But this case is meaningfully different from those cases. In this case, Plaintiffs are challenging a whopping 244 investment options. Dkt. 81 ("Am. Compl.") ¶ 174. According to Plaintiffs, any investment option that (in their view)

---

[1] Courts have also dismissed with prejudice two complaints raising similar allegations involving university 403(b) plans. *Divane v. Northwestern Univ.,* No. 16 C 8157, 2018 WL 2388118 (N.D. Ill. May 25, 2018); *Sweda v. University of Pa.*, No. CV 16-4329, 2017 WL 4179752 (E.D. Pa. Sept. 21, 2017), *appeal docketed*, No. 17-3244 (3d Cir.).

underperformed their benchmarks—even if by one percent—over the previous five years was imprudent. *Id*. They list 178 separate investment options as falling into that category. *Id*. Plaintiffs also challenge 92 options for having allegedly excessive "expense ratios" (i.e., they claim their fees were too high), 66 of which do not appear on the list of "underperforming" funds, *id.* ¶ 149, yielding a total of 244 allegedly imprudent options.

In contrast, in the NYU and Duke cases, plaintiffs pursued certification of prudence claims challenging only two investment options. The NYU complaint did not attack a laundry list of options, but instead challenged the prudence only of the CREF Stock and TIAA Real Estate Accounts. *See* NYU Am. Compl. ¶¶ 164-89, Ex. 1 to the Declaration of Daniel R. Thies ("Thies Decl.").

The complaint in the Duke case does question the prudence of 140 investment options, but plaintiffs pursued certification of only their challenges to the CREF Stock and TIAA Real Estate Accounts, and the court certified the claim for only these two options. Plaintiffs' opening class certification brief makes no explicit reference to the 140 allegedly imprudent funds, and only generically refers to "imprudent investment options," Thies Decl. Ex. 2 at 6. Duke's opposition brief similarly makes no mention of the 140 funds. *Id.*, Ex. 3. Plaintiffs' reply brief refers repeatedly to the CREF Stock and TIAA Real Estate Accounts, but says nothing about the broader allegations about the 140 allegedly imprudent funds. *Id.*, Ex. 4 at 5, 8-10. And the court's class certification ruling states: "Count Five also challenges the inclusion of two allegedly imprudent funds—the CREF Stock Account and the TIAA Real Estate account." *Duke Univ.*, 2018 WL 1801946, at *3. The opinion then discusses these two investment options—not the scores of others placed at issue in the complaint.

In sum, plaintiffs in the NYU and Duke cases pursued, and obtained, certification on their prudence claim only with respect to two investment options.

## II.  Facts pertinent to Plaintiffs' motion for class certification

Cornell offers employees the opportunity to enroll in two retirement plans at issue in this case: (1) the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca, and (2) the Cornell University Tax Deferred Annuity Plan. Am. Compl. ¶¶ 9-10, 13-14. Plaintiffs are participants in at least one of the plans. *Id.* ¶¶ 19-23. Cornell is the administrator of the plans, and CapTrust provides advice to Cornell about which investment options it should consider offering to plan participants. *Id.* ¶¶ 24, 29.

Cornell first hired CapTrust in late 2011. Dkt. 77-1 at 7. Since then, CapTrust has worked with Cornell to help ensure that plan participants have access to high-quality investment options at reasonable costs. This process entails looking at investment funds individually and making context-specific decisions about benchmarking, performance, style, management, and desirability. For example, a CapTrust presentation dated September 17, 2014 provided a Cornell committee with at least ten quantitative and qualitative metrics related to risk-adjusted performance, performance vs. peer funds, investment style, and the quality of fund management. Thies Decl. Ex. 6 at CAPTR_0007139-47.

In the context of 403(b) plans like those at issue in this case, deciding which funds to include on a "menu" of options for plan participants—and then deciding which funds to keep and which to drop as time passes—is anything but formulaic. As explained in the accompanying declaration of Scott Matheson (incorporated by reference), that analysis can encompass a wide variety of metrics, quantitative and qualitative, ranging from which benchmark should be used, to which "look-back" period is appropriate when assessing past performance, to the identity of fund managers—and multiple other factors.

6

## Argument

### I.  Plaintiffs have waived the right to seek damages with respect to the alleged underperformance of 176 funds.

Although Plaintiffs identified 178 investment options in paragraph 174 of the Complaint, the only options for which they identified damages in their initial disclosures are the TIAA Real Estate and the CREF Stock Accounts. "Rule 26(a) requires a party to provide a computation of any category of damages voluntarily, i.e., 'without awaiting a discovery request,'" and also to provide "the documents or other evidentiary material . . . on which such computation is based." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006). Rule 37(c)(1) allows district courts to impose any appropriate sanction, including preclusion of evidence, for a violation of Rule 26(a), unless the offending party can show that the failure was substantially justified or harmless. *Id.*; *see also 24/7 Records, Inc. v. Sony Music Entm't, Inc.,* 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008). Numerous courts have applied these rules to preclude parties from seeking damages that were not detailed in their Rule 26(a) disclosures. *Design Strategy*, 469 F.3d at 295; *Ritchie Risk-Linked Strategies Trading, Ltd. v. Coventry First LLC*, 2012 U.S. Dist. LEXIS 19218, at *29 (S.D.N.Y. Jan. 9, 2012); *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009); *24/7 Records*, 566 F. Supp. 2d at 318.

Plaintiffs' failure to disclose here is neither substantially justified nor harmless. Basic information about fund performance as compared to benchmarks is publicly available in mutual fund prospectuses. *Cf. Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (prospectuses subject to judicial notice because they are publicly available). Plaintiffs can also access public information about the amount of plan assets invested in each fund from the plans' publicly available annual statements. *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.*, 99 F. Supp. 3d 1110, 1126 (C.D. Cal. 2015) (retirement plan's annual statement

subject to judicial notice). Plaintiffs could have generated a damages theory and an estimate of damages from this information, as they did with their calculation of damages for the TIAA Real Estate and the CREF Stock Accounts. Thies Decl. Ex. 7 at 6-7. But they did not.

Nor is the failure to disclose harmless. Defendants have the right to test Plaintiffs' damages theories in discovery, including their selection of the particular benchmark from which they measure damages for each fund. Because Plaintiffs failed to make the appropriate disclosures, Defendants could not fashion discovery requests directed at the alleged damages related to funds other than the TIAA Real Estate and the CREF Stock Accounts. And Plaintiffs cannot excuse their failure by belatedly disclosing a damages calculation (so far, they have not done so), because "[t]he rule requiring supplementation cannot be used as a justification for the belated assertion of new damages theories that could have been raised earlier." *Hewlett-Packard Co. v. Factory Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 44365, at *42 (S.D.N.Y. June 27, 2006). Plaintiffs should therefore be precluded from seeking damages with respect to the 176 "underperforming" funds.

Plaintiffs' initial disclosures may telegraph their intention to limit their certification request to the TIAA Real Estate and CREF Stock Accounts, as in the Duke and NYU cases. *See* Thies Decl. Ex. 7 at 6-7 (listing computation of claimed damages for those two funds but not other "underperforming" funds). But Plaintiffs' class certification brief is unclear on exactly what they are seeking. Regardless of Plaintiffs' intentions, by omitting any discussion of the other 176 funds mentioned in the Amended Complaint, Plaintiffs have forfeited any right to seek damages on, or certification of, those claims. If the Court agrees, or if Plaintiffs disclaim any intention of seeking certification of those claims, then Part II.B. of this brief would be moot.

## II. The breadth of Plaintiffs' claims, together with their failure to offer any evidence of classwide damages or to address individualized statute of limitations issues, precludes class certification.

Class certification should be denied for any of four reasons. First, Plaintiffs have failed to meet their burden of demonstrating how this case can be resolved with classwide evidence. Second, the factual variation this Court would have to examine to resolve Plaintiffs' claims precludes Plaintiffs from satisfying Rule 23(b)(1) or (b)(3). Third, Plaintiffs have failed to account for the statute of limitations problems embedded in their lengthy proposed class period. And fourth, Plaintiffs have failed to present any model that tells this Court how damages can be computed on a classwide basis.

### A. Plaintiffs have failed to meet their burden of presenting evidence to demonstrate how this case can be resolved on classwide basis.

Plaintiffs bear the burden of demonstrating, by a preponderance of the evidence, how classwide evidence can resolve the key issues in this case. Yet Plaintiffs' entire evidentiary submission consists of the plans' annual reports, two plan contracts, and two plan investment notices. That's it. Nowhere do Plaintiffs discuss, or present any evidence to demonstrate, how the prudence of 244 separate investment options can be resolved with one set of evidence.

No evidence is proffered to demonstrate whether each of the options was imprudent from the outset; no common evidence is proffered on how to uniformly determine whether proper benchmarks were used; nor is there any evidence on what alternative benchmarks should have been employed, how monitoring can be uniformly determined, whether fund managers did a good job, or whether and when the plans should have used cheaper share classes of certain investment options.

"Absent a concrete presentation of the evidence" to show that key issues can be resolved "by common proof," class certification should be denied. *Sicav v. Wang,* No. 12 Civ. 6682, 2015

WL 268855, at *4 (S.D.N.Y. Jan. 21, 2015); *see also Teamsters,* 546 F.3d at 202. Even "limited, anecdotal evidence" would not satisfy Plaintiffs' burden, *Wells Fargo,* 2013 WL 4540521, at *5, and here they have not offered even that much. This, alone, requires the denial of class certification.

> **B.    The extensive individualized evidence necessary to resolve Plaintiffs' claims for each of the 244 challenged options precludes certification under Rules 23(b)(1) and (b)(3).**
>
> > **1.    Option-specific evidence would have to be examined separately for each investment option.**

Class certification should be denied for a second reason as well: Extensive individualized evidence—including data, specialized literature, lay testimony, and expert testimony—would have to be heard to determine whether each of the challenged 244 investment options was imprudent. As Plaintiffs admit, "the fact-finder will have to determine whether Defendants conducted a prudent and thorough investigation of the Plans' investments on an ongoing basis, whether the funds and options were prudent and reasonably priced, and the proper benchmark alternative to measure losses to the Plans." Pl. Br. at 18. Conspicuously absent from Plaintiffs' brief is any explanation of what evidence this Court would need to evaluate in order to resolve the various prudence issues.

The prudence inquiry cannot be conducted on a "one size fits all" basis. An initial, complex inquiry would have to be made to determine whether it was prudent to offer, initially, each of the 178 challenged funds. The relevant considerations could include how many investment options should be offered; the extent to which one option duplicates other options; what share classes should be offered; the past performance of the fund; how to measure the past performance of the fund; how far back in time one should go to measure past performance;

qualitative assessments such as strength of fund managers, the support team, and other variables; and how the fiduciaries want to pay for recordkeeping services. Matheson Decl. ¶¶ 3-7.

After a hearing on this issue, a second hearing would have to be held to evaluate the performance of the fund over time. But this hearing, too, would involve multiple sub-inquiries. *Id.* ¶¶ 8-10, 13. One key question is what benchmarks are appropriate as points of comparison. Starting in 2012, the Department of Labor began requiring plans to disclose fee and performance information to plan participants, using particular benchmarks. *Id.* ¶ 10. These benchmarks, however, are not always the most appropriate benchmarks. *Id.* In fact, the benchmarks identified in the participant fee disclosure statements often differ from the ones stated in fund prospectuses. *Id*. And these benchmarks, in turn, may vary from the ones CapTrust uses. *Id*. Extensive testimony from lay and expert witnesses, along with literature about the appropriateness of each benchmark, would have to be heard. *Id.* ¶¶ 8-10. Once an appropriate benchmark has been chosen, yet another inquiry, requiring additional evidence and testimony, would have to be undertaken to determine how the fund's actual performance compared to the benchmark. *Id.* ¶ 9.

Qualitative factors also affect assessment of performance. These factors include personnel turnover, the stability of the investment team, firm culture, portfolio construction methodology, employee compensation, and other issues. *Id.* ¶¶ 11-13. These assessments involve numerous judgments, based on extensive data, material, and discussions, which necessarily change from fund to fund. *Id.*

> **2. The NYU trial confirms the need to consider extensive individualized evidence for each investment option.**

In the recent trial involving the New York University retirement plans, plaintiffs challenged the prudence of just two investment options: the CREF Stock and TIAA Real Estate

11

Accounts. Nonetheless, the trial consumed eight days of testimony from seventeen witnesses,[2] an additional 780 pages of deposition designations, and four hours of closing argument. *See* NYU Dkts. 272, 279-6 to 279-9, 342.[3] Plaintiffs marked 1,690 exhibits for trial, and defendant marked another 902, a significant percentage of which were admitted into evidence. *See* NYU Dkt. 312 (including 18-page list of admitted exhibits).

Approximately half of this evidence and argument related to the prudence of the TIAA Real Estate and CREF Stock Accounts. After trial, plaintiffs submitted 486 paragraphs of proposed findings of fact and conclusions of law, totaling 130 pages. NYU Dkt. 316. Paragraphs 244 to 414 (171 paragraphs) related exclusively to the prudence of the CREF stock account, and paragraphs 415 to 486 (another 72 paragraphs) related exclusively to the prudence of the TIAA Real Estate Account. *Id.* Similarly, nearly half of the closing arguments involved discussion of the prudence of the two funds. The court heard extensive testimony about the prudence of the two investment options, including:

- Whether NYU engaged in a prudent process when evaluating and monitoring the options, *see, e.g.*, NYU Dkt. 272-17 ¶¶ 23-37; NYU Dkt. 272-21 ¶¶ 68-74; NYU Dkt. 272-19 ¶¶ 41-52; NYU Dkt. 272-15 at 16-25; NYU Dkt. 272-23 ¶¶ 63-77; NYU Dkt. 324 Tr. at 215-20; NYU Dkt. 328 Tr. at 236-68; NYU Dkt. 336 Tr. at 1413-14;

- Whether the investment options were "reasonably priced," NYU Dkt. 328 Tr. at 267-69, 379-81; NYU Dkt. 330 Tr. at 653-54, 656-57;

- Which benchmark should be used to evaluate the funds' performance, *see, e.g.*, NYU Dkt. 272-15 at 32-34, 48-54; NYU Dkt. 272-23 ¶¶ 78-85; NYU Dkt. 324 Tr. at 215-20; NYU Dkt. 328 Tr. at 268-71; NYU Dkt. 330 Tr. at 626-41, 671-73; NYU Dkt. 334 Tr. at 1290; NYU Dkt. 336 Tr. at 1377-78, 1421;

---

[2] The court accepted direct testimony from nearly all of the witnesses by declaration, so the eight days of live testimony was generally limited to cross- and redirect examinations. NYU Dkt. 272 ¶ 5.

[3] Citations to the "NYU Dkt. XXX" refer to documents filed in *Sacerdote v. New York University*, No. 16-cv-6284 (S.D.N.Y.), which are available through the ECF system.

- Whether the funds underperformed, the reasons for any underperformance relative to the benchmark, and what conclusions, if any, to draw from those comparisons, *see, e.g.*, NYU Dkt. 272-15 at 34-48; NYU Dkt. 272-25 ¶¶ 1-26; NYU Dkt. 324 Tr. at 134-36, 215-20; NYU Dkt. 328 Tr. at 235-36, 254; NYU Dkt. 334 Tr. at 1292-94; NYU Dkt. 338 Tr. at 1485-86; NYU Dkt. 340 Tr. at 1572-81.

To drill down on just one of the issues noted above, the parties' disputes about which benchmarks to use included evidence and argument on the following:

- Testimony from four experts, two on each side. NYU Dkts. 272-15, 272-16, 272-25, 272-26;

- A dispute about the unique features of the funds and whether they were sufficient to distinguish the fund from a particular benchmark, including discussions about whether the benchmarks had comparable investment objectives and levels of risk. NYU Dkt. 324 Tr. at 135-36, 218-20; NYU Dkt. 328 Tr. at 234-37; NYU Dkt. 334 Tr. at 1151-52, 1290-93; NYU Dkt. 272-15 at 33, 48-54; NYU Dkt. 272-24 ¶ 51; NYU Dkt. 272-25 ¶¶ 11-12, 17, 21, 23; NYU Dkt. 272-26 ¶¶ 17-20; NYU Dkt. 272-23 ¶¶ 63-64, 72-73;

- Whether it was appropriate to use different benchmarks over time, NYU Dkt. 334 Tr. at 1191-99; NYU Dkt. 272-15 at 15, 26-27, 33, 34-39; NYU Dkt. 272-23 ¶¶ 64-69, 73-74;

- Whether the proposed benchmark matched NYU's characterization of the fund, NYU Dkt. 334 Tr. at 1197-99, 1293-94; Dkt. 272-15 at 27, 33-34;

- Testimony about the benchmark used by Morningstar or other third parties for each fund. NYU Dkt. 328 Tr. at 267-68; NYU Dkt. 330 Tr. at 517-18, 628-36, 670-71; NYU Dkt. 338 Tr. at 1456, 1489-92.

Similarly, in this case, whether to use the benchmark identified in the prospectus, in the fee disclosure, or the one employed by CapTrust (or some other benchmark) would involve extensive evidence and testimony that would need to be addressed for many more funds than the two at issue in the NYU trial. Matheson Decl. ¶ 10. To state the obvious, there is no way this multi-faceted prudence inquiry can be repeated for 244 separate investment options. And Plaintiffs have failed to provide any roadmap on how it can be done.

### 3. Additional individualized evidence would have to be examined to resolve the inquiry into share classes.

Plaintiffs' prudence claim encompasses not just the prudence of initially selecting and then keeping investment options; it also challenges the prudence of offering retail share class investment options when institutional share class options were allegedly available. This additional issue inquiry adds icing on the cake as to why Plaintiffs' challenge to the prudence of 244 separate funds is unmanageable.

There is no "one size fits all" ability to determine whether a less expensive share class is the more prudent option. In some cases, the apparently less expensive share class can turn out to be more expensive. For example, a retail share class may have 50 basis points of expense ratio, with 25 basis points of revenue sharing, but the institutional share class for the same fund might offer no revenue sharing yet charge 30 basis points. In this situation, the institutional share class would effectively cost plan participants five basis points more than the retail share class. Matheson Decl. ¶ 4.

Barry Schmitt, a Senior Vice President of CapTrust, explained it this way when he testified in the Duke case: "it could, in fact, be a better solution to keep you in the slightly more expensive fund because of the revenue share." Thies Decl. Ex. 5 at 10, 178. Mr. Schmitt then provided a specific example of why each fund would have to be analyzed individually:

> [S]o if you look at MFS Value, the total cost of that fund inclusive of revenue share is 63 basis points, of which it's sharing 15 . . . . So on a net basis, that is 48 . . . if we replace that with a lower share class, it only goes down to 52-53 basis points. So on a net basis . . . they would receive more in the form of excess revenue back into their participant account with this fund. So a net—it's not as easy as saying you should go back to the lowest share class. . . .

*Id.* at 179-80. Even more individualized evidence would have to be examined at the participant level to determine which participants came out ahead or behind as a result of revenue sharing. *Id.* at 181-82.

### C.   For a material segment of the proposed class, an additional individualized inquiry class would have to be held to resolve the statute of limitations issue.

ERISA's statute of limitations provides that an action for breach of fiduciary duty is time-barred unless it is brought before the *earlier* of (a) "six years after the date of the last action which constituted a part of the breach or violation" or (b) "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. Plaintiffs here have alleged a class period of six years prior to filing, Am. Compl. ¶ 204, thereby putting the three-year "actual knowledge" standard squarely at issue.

The "actual knowledge" requirement is satisfied where the plaintiff "has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418 (S.D.N.Y. 2008), *aff'd on other grounds*, 325 F. App'x 31 (2d Cir. 2009). To have "actual knowledge," plaintiffs "need not have knowledge of the relevant law"; they just need to have "all facts necessary to constitute a claim." *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 610 (S.D.N.Y. 2015) (citation omitted). Congress did not intend the "actual knowledge requirement to excuse willful blindness by a plaintiff." *Young*, 550 F. Supp. 2d at 419 n.3.

Whether any putative class member had the facts necessary to state a claim will vary from class member to class member, particularly in light of the fact that plan participants have been receiving fee and performance disclosures since 2012. *See* Matheson Decl. ¶ 10. Plaintiffs' depositions confirmed this. Stanley Marcus, for example, said he would leave it to his attorneys to explain what defendants did wrong, Thies Decl. Ex. 8 at 68, but he relied on an advisor to

15

choose his investments and allocate his money in the Cornell plans, *id.* at 61-65. Contrast that with Charles Lance, who testified that he began to suspect that something was amiss with his retirement accounts in 1999 or 2000. Thies Decl. Ex. 9 at 24. At that time, "I started to really take a notice of how little of a return I was getting on my money, and . . . I was thinking about [moving it to] an IRA." *Id.* When Plaintiffs' counsel enlisted him to file this case, their recitation of the facts merely "confirmed what you had suspected for quite a number of years." *Id.* at 25.

Lance may argue that he did not know enough facts to put him on notice of a viable claim, but that is precisely the point. Only a contested hearing that would examine what Lance knew and when he knew it can resolve that issue. This is exactly the sort of class member-specific inquiry that makes class certification impracticable.[4] "[C]ertification is improper if plaintiffs have offered no reliable means of collectively determining how many class members' claims are time-barred." *Royal Park Invs.,* 2018 WL 1750595, at *16. Plaintiffs have offered no such means here.

At a minimum, if any class is certified, the start of the class period for the claim against CapTrust should be limited to three years before CapTrust was named as a defendant, i.e., to December 8, 2013. *See* Dkt. 38.

> **D.    Plaintiffs cannot satisfy the requirements for a Rule 23(b)(1) or (b)(3) class.**

Plaintiffs seek certification under Rule 23(b)(1) or, alternatively, Rule 23(b)(3). Neither prong of the rule can justify certification here. Rule 23(b)(1) applies in two situations. The first concerns a defendant with limited funds. *See*, *e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838-

---

[4] In assessing whether the statute of limitations posed a barrier to certification in the NYU case, Judge Forrest stated: "This claim is speculative—no evidence is put forth of even one instance of a class member having knowledge three years prior to Aug. 9, 2013." *Sacerdote v. New York Univ.*, No. 16-cv-6284, 2018 WL 840364, at *7 (S.D.N.Y. Feb. 13, 2018). Here, in contrast, CapTrust has presented evidence that this is a bona fide issue for at least some members of the putative class.

39 (1999). Plaintiff has presented no evidence that this is a "limited fund" case, which means certification is not appropriate on that basis.

The second situation concerns harm resulting from the risk of incompatible judgments or the risk that the defendant will be subject to conflicting obligations with respect to different class members. But certification under Rule 23(b)(1) is inappropriate where the factual variation applicable to Plaintiffs' claims could yield different outcomes.

Plaintiffs claim that this is a "paradigmatic" case for certification under Rule 23(b)(1). Pl. Br. at 16. But the cases they cite confirm why class certification should be denied here. The *Beacon*[5] case involved just two investment funds; the *Global Crossing*[6] case involved the prudence of just a single investment option; the *Schering Plough*[7] case likewise involved a challenge to just one investment option; the *New York University*[8] case involved a challenge to just two investment options; and the *Leber*[9] and *Moreno*[10] cases involved just nine and ten challenges, respectively. They provide no guidance on how the Court could resolve a case as sprawling as the one Plaintiffs have pled here.

Given the sparseness of the evidence Plaintiffs have offered, and the need for individualized inquiries to determine the outcome of Plaintiffs' claims, this is actually a paradigmatic case for the *denial* of class certification. Under Rule 23(b)(1), class certification should be denied in the ERISA context when the claims "would entail an individualized inquiry and could result in differentiated rulings." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 321

---

[5] *In re Beacon Assocs. Litig.*, 282 F.R.D. 315 (2012).
[6] *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).
[7] *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009).
[8] *New York Univ.*, 2018 WL 840364.
[9] *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017).
[10] *Moreno v. Deutsche Bank Am. Holding Corp.*, No. 15 Civ. 9936, 2017 U.S. Dist. LEXIS 143208 (S.D.N.Y. Sept. 5, 2017).

(S.D.N.Y. 2003); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 58 n.16 (S.D.N.Y. 2000)

(no Rule 23(b)(1) certification when evaluating claims involves "different information"); 1

*McLaughlin on Class Actions* § 5.4 (14th ed.) ("[C]laims that require individualized inquiries—

which necessarily could result in differentiated rulings—are not properly certified under Rule

23(b)(1)(A)."); *see also Rambarran v. Dynamic Airways, LLC*, No. 14-cv-10138, 2015 U.S. Dist.

LEXIS 97651, at *33-34 (S.D.N.Y. July 27, 2015) (denying certification outside of the ERISA

context where individualized factors eliminate risk of inconsistent adjudication).

     Courts in other districts have also denied class certification in the ERISA context under

Rule 23(b)(1) when claims involve individualized inquiries. For example, in *Lemberg v.

Scottsdale Healthcare Corp. Health Plan*, No. CV-11-271, 2013 WL 12097449, at *5 (D. Ariz.

Feb. 4, 2013), the court denied certification in a single-plan ERISA case because it presented

individualized factual issues. Similarly, in *Pennsylvania Chiropractic Association v. Blue Cross

Blue Shield Association*, 286 F.R.D. 355, 376 (N.D. Ill. 2012), the court denied certification

under Rule 23(b)(1)(A) because "the wide variety of individual issues present in each proposed

class action make it unlikely that any given defendant could be subject to incompatible standards

of conduct or was obligated to treat all members of the class alike." And in *Bowe Bell + Howell

Co. v. Immco Employees Association*, No. 03 C 8010, 2005 WL 1139645, at *4-5 (N.D. Ill. May

11, 2005), the court denied a request to certify a Rule 23(b)(1) class due to "factual differences."

     As explained above, Plaintiffs' claims would require the Court to adjudicate the prudence

of approximately 244 different mutual funds at different periods across the class period. The

viability of each class member's claim will vary depending on which of those funds each class

member invested in during each period. In the face of such individualized issues, there is no

danger of incompatible adjudications, which means certification under Rule 23(b)(1) is not

appropriate. *See Casa Orlando Apartments, Ltd. v. Fannie Mae*, 624 F.3d 185, 197 (5th Cir. 2010) ("It would not be incompatible for Fannie Mae to disgorge profits earned from one fund while not disgorging profits earned from a different fund.").

Nor can Plaintiffs salvage their claims by shoehorning them into a Rule 23(b)(3) class. "To satisfy the predominance prong of Rule 23(b)(3), a plaintiff must show that common proof will predominate at trial with respect to the essential elements of liability of the underlining cause of action." *Breitman v. Xerox Educ. Servs., LLC*, No. 12 Civ. 6583, 2014 WL 5364103, at *4-5 (S.D.N.Y. Oct. 22, 2014). As explained above, Plaintiffs have failed to demonstrate how common proof can resolve the key question of prudence with respect to the 244 investment options they have chosen to put in issue. "Absent a concrete presentation of the evidence on which such a finding could be made in this case, the Court cannot find that [key issues] to all class members can be established by common proof." *Sicav*, 2015 WL 268855, at *4.

### E. Plaintiffs have not met their burden of presenting evidence on how damages can be calculated.

Class certification should be denied for a final reason: Plaintiffs have not demonstrated how damages can be resolved on a classwide basis, as required by *Comcast*. A preliminary overview of how "damages might be calculated" does not suffice. *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 299 (5th Cir. 2004). Plaintiffs instead must show that their proposed approach "is capable of utilizing common evidence." *In re Photochromic Lens Antitrust Litig.*, MDL No. 2173, 2014 WL 1338605, at *23 (M.D. Fla. Apr. 3, 2014).

Plaintiffs' brief raises the question about "how to measure damages," Pl. Br. at 18, and speaks of "[t]he losses suffered by individual participants and beneficiaries," *id.* at 21, but is conspicuously silent about how those losses or damages can be determined on a classwide basis. Usually, Plaintiffs seeking class certification would present an expert report that discusses, in

detail, how classwide damages can be determined. Even then, class certification is denied when the report "is vague and lacks the sort of step-by-step detail necessary to evaluate whether the [damages] methodology is workable here." *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2017 WL 500144, at *22 (N.D.N.Y. Sept. 27, 2017). Here, far from providing a specific explanation of how damages would be calculated, Plaintiffs provide no evidence at all.

Class certification should be denied when "plaintiffs have not come forward with a meaningful approach to gauging damages on a classwide basis." *Wells Fargo*, 2013 WL 4540521, at *15. That is the case here; it is another reason why certification should be denied.

WHEREFORE, CapTrust respectfully requests that Plaintiffs' motion for class certification be denied.

Dated June 13, 2018                    Respectfully submitted,

                                       /s/ *Joel S. Feldman*
                                       Joel S. Feldman (admitted *pro hac vice*)
                                       Eric S. Mattson (admitted *pro hac vice*)
                                       Daniel R. Thies (admitted *pro hac vice*)
                                       **SIDLEY AUSTIN LLP**
                                       One South Dearborn Street
                                       Chicago, IL 60603
                                       Telephone: (312) 853-7000
                                       jfeldman@sidley.com
                                       emattson@sidley.com
                                       dthies@sidley.com

                                       Andrew W. Stern
                                       **SIDLEY AUSTIN LLP**
                                       787 Seventh Avenue
                                       New York, NY 10019
                                       Telephone: (212) 839-5300
                                       astern@sidley.com

                                       *Attorneys for Defendant CapFinancial*
                                       *Partners, LLC, d/b/a CAPTRUST Financial*
                                       *Advisors*

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on June 13, 2018, the foregoing document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joel S. Feldman*