**MAYER • BROWN**

Mayer Brown LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel +1 202 263 3000
Main Fax +1 202 263 3300
www.mayerbrown.com

**Brian Netter**
Direct Tel +1 202 263 3339
Direct Fax +1 202 263 5236
BNetterr@mayerbrown.com

June 28, 2018

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Cunningham v. Cornell University*,
      No. 16-6525-PKC (S.D.N.Y.)

Dear Judge Castel:

Plaintiffs' motion to compel is a classic example of refusing to take "yes" for an answer. The Cornell Defendants have undertaken more-than-reasonable efforts to locate and to produce documents responsive to Plaintiffs' requests for production of documents as demonstrated by the 15,488 documents produced in response to those requests. Plaintiffs have known *for months* that the Cornell Defendants are willing to conduct targeted additional searches for any relevant documents or categories of documents that Plaintiffs believe were not produced as part of the initial search and production.

Despite repeated offers, Plaintiffs have refused to identify any documents or categories of documents that they believe are missing. Rather, assuming the classic posture of a fishing expedition, they attempt to intensify the already-disproportionate burden on Cornell by belatedly challenging the scope of search terms and the number of custodians searched for essentially the same set of materials relating to the work of the Retirement Plan Oversight Committee.

As explained herein, the Cornell Defendants' offer is reasonable and meaningfully balances the competing interests effectuated by the Federal Rules—facilitating the exchange of information without needlessly burdening the defendants.

Plaintiffs' motion to compel should be denied.

I.   **Background**

As this Court is aware, this case is one of a dozen nearly identical lawsuits filed by Plaintiffs' counsel against large, private universities. The complaint against Cornell University was filed on August 17, 2016.

The parties conducted their initial Rule 26(f) conference in October 2016. That conference resulted in competing proposed case management orders, which were presented to the Court at

Hon. P. Kevin Castel
June 28, 2018
Page 2

the initial pretrial conference on October 31, 2016.  The Court did not act on the proposals at that time because the dates in the initial proposal were contingent on the timing of the motion-to-dismiss proceedings.  The Court advised the parties that it expected to set a schedule once, with dates certain.

The parties' discussions regarding discovery continued on November 2, 2016, when Plaintiffs sent a letter foreshadowing their positions on key discovery issues—Plaintiffs apprised the Cornell Defendants as to which data sources they would want reviewed, how the Cornell Defendants should prepare to produce the documents, and which forms of metadata Plaintiffs would be soliciting.  *See* November 2, 2016 letter from S. Hoeplinger to B. Netter (attached as Exhibit A).  Plaintiffs took the position that the Cornell Defendants should be preserving documents dating as far back as January 2006.  *Id.* at 1.  In a letter dated December 7, 2016, the Cornell Defendants objected to Plaintiffs' positions on discovery.  As relevant here, the Cornell Defendants explained that, "in view of [ERISA's] six-year period of repose, Cornell believes that its preservation efforts should be limited to the period beginning August 1, 2010, as extending the time period increases the quantity of documents and ESI at issue and multiplies the costs and burdens on Cornell, without a correspondingly proportional benefit to any party in this case." *See* December 7, 2016 letter from B. Netter to S. Hoeplinger (attached as Exhibit B).  Although the Cornell Defendants invited Plaintiffs to resolve any disagreements at "our meet-and-confer sessions," Plaintiffs did not respond.  Yet, they now attempt to reassert this issue on pages 5 and 8-9 of their motion to compel, ignoring the good faith obligations that apply to all parties in discovery.

The record reveals that after the Court granted in part and denied in part Defendants' motion to dismiss on September 29, 2017, the parties reconvened in November 2017 to conduct another Rule 26(f) conference.  Proposed case management orders were submitted for the pretrial conference on December 4, 2017 with differing schedules for completion of certain aspects of discovery.  Plaintiffs did not, however, seek to resolve the parties' dispute as to the timeframe for discovery, nor did they propose an exchange of search terms as part of the discovery schedule.  The Court entered a case management order, granting more time than the Cornell Defendants had proposed and less time than Plaintiffs had requested.  The Court added a meaningful handwritten note onto the Order: "The Court does not anticipate granting any extension of the discovery period."  Case Management Letter, *Cunningham v. Cornell University* (No. 16-6525-PKC), Dkt. 166 at 3.  Thus far, the case has proceeded in accordance with the case management order and the Cornell Defendants submit that Plaintiffs have failed to demonstrate any need to alter it.

Plaintiffs' counsel's approach to discovery in this case differs markedly from their approach to discovery in *Cates v. Columbia*—a case involving the same claims, the same forum, and the same plaintiffs' and defendants' counsel.  In *Cates*, which also had its pretrial conference in December 2017, the plaintiffs negotiated a protocol under which the parties would exchange and negotiate search terms in January 2018, before document review was underway.  *See* Joint Letter, *Cates v. Columbia University* (No. 1:16-cv-06524), Dkt. 132; 132-1.  No such protocol was negotiated in this case, nor was it even suggested by Plaintiffs.

Hon. P. Kevin Castel
June 28, 2018
Page 3

On December 27, 2017, the parties in this case made their first exchange of documents. As provided by the negotiated scheduling order, the Cornell Defendants produced the Plans' written instruments (within the meaning of 29 U.S.C. § 1102(a)), summary plan descriptions, annual reports, and fiduciary committee meeting minutes, with attachments, pertaining to the six-year period preceding the filing of the initial complaint.

On January 5, 2018, Plaintiffs served 47 additional requests for production of documents. Their requests were accompanied by detailed specifications for the format of the production but made no mention of search terms or custodians. *See* Pls.' Req. for Prod. to Cornell Defs. (attached as Exhibit C). The Cornell Defendants began analyzing Plaintiffs' requests, identifying the appropriate document custodians, and preparing an over-inclusive list of search terms. The Cornell Defendants served their written responses to Plaintiffs' document requests on February 5, 2018. Consistent with the position taken and communicated to Plaintiffs in 2016 (and the results of the parties' negotiations on the early exchange of documents), the Cornell Defendants objected to producing documents predating the discovery period or postdating the filing of the complaint, but agreed to conduct a "reasonably diligent search" for materials responsive to Plaintiffs' requests, with the production of documents to begin by March 16, 2018 and to end by May 16, 2018.

During the month of February, Defendants collected over 9 million documents from over 35 different individual custodians and file servers, developed a list of search terms designed to cull irrelevant documents from this large collection, and began reviewing documents for responsiveness and privilege in order to complete production by the proposed completion date. On March 1, 2018, after the aforementioned collection and review process was well-underway, Plaintiffs requested a meet and confer on Defendants' responses. On March 6, 2018, the parties met and conferred. As memorialized by the Cornell Defendants' letter dated March 15, the parties again discussed the timeframe of documents to be searched. Neither party was willing to review documents predating August 2010. Plaintiffs did not request to negotiate search terms.

Plaintiffs sent a follow-up letter on March 23, 2018. It was in that letter that Plaintiffs first mentioned search terms, although they did not request to negotiate them, nor did they propose specific search terms they believed were essential to include:

> Data Sources. Please identify custodians and data sources from which the Cornell Defendants are collecting documents, and the search terms used in their review for responsive documents.

March 23, 2018 Letter from S. Hoeplinger to S. Myler at 3 (attached as Exhibit D). The Cornell Defendants responded, again maintaining their position on the timeframe for discovery:

> Defendants continue to maintain their objection that expanding the discovery time period by almost four full years—from six years to ten years—is unduly burdensome when applied to each of the 48 overbroad requests propounded by Plaintiffs. Accordingly,

3

Hon. P. Kevin Castel
June 28, 2018
Page 4

> Defendants generally object to producing documents related to events that occurred prior to August 2010 or after August 2016.

April 9, 2018 Letter from S. Myler to S. Hoeplinger at 2 (attached as Exhibit E). In so providing, the Cornell Defendants clarified: "Defendants' refusal to provide discovery related to actions that occurred prior to August 2010 does not extend to actions, the effect of which, carried into the time period at issue. Accordingly, Defendants will produce copies of resolutions, charters, contracts, and agreements that were executed prior to the six year time period at issue, but that were in effect at any point during those six years. Documents related to the RPOC's creation, authority, and charter, for example, will be produced." *Id.*

At the same time, the Cornell Defendants opined that it was premature to exchange custodian and search term lists, emphasizing that "if following the substantial completion of Defendants' review and production of responsive materials Plaintiffs have a reasonable basis to believe Defendants' production was deficient in some regard, Plaintiffs may request that the parties meet-and-confer regarding the need for additional, targeted collections or search terms." *Id.* at 4.

Plaintiffs waited nearly a month to respond, with a letter dated May 2, 2018. Their response did not mention search terms, and merely confirmed the Cornell Defendants' position on the scope of the search of electronic documents. *See* May 2, 2018 Letter from S. Hoeplinger to S. Myler at 1 (attached as Exhibit F). As contemplated in the February 2018 discovery responses, the Cornell Defendants completed their document production, subject to the obligation to seasonably supplement, on May 18, 2018. The productions disclosed the document custodians through their metadata, and the Cornell Defendants separately disclosed their search terms on May 22, 2018.

On June 21, 2018, for the first time, and once again after waiting nearly a month to respond, Plaintiffs proposed search terms that they wished for Defendants to apply.

## II. Date Range

Plaintiffs now ask this Court to resolve a dispute they have known about since December 2016: the extent to which the Cornell Defendants must search for documents that predate the limitations period (and that, therefore, cannot form the basis for a claimed fiduciary breach) and documents that postdate the filing of the complaint (and that, therefore, cannot prove or disprove the complaint's allegations).

Plaintiffs' position is that their 49 broadly written discovery requests ought to be applied uniformly, to documents dated 2008 (before the class period), 2012 (during the class period), or 2018 (after the lawsuit was filed). This position would include, for example, applying the thirteen searches for Retirement Plan Oversight Committee members' names to 2008 and 2009, even though the committee was not created until 2010. Moreover, Plaintiffs would increase the irrelevance with their longer search term list: roughly 20% of their searches involve committee

4

Hon. P. Kevin Castel
June 28, 2018
Page 5

members and Plaintiffs ask for these searches to be applied to a period where there was no committee.

The Cornell Defendants have maintained the reasonable middle-ground position that, given the differing relevance of these documents, different approaches are warranted. The Cornell Defendants have already produced "copies of resolutions, charters, contracts, and agreements that were executed prior to the six year time period at issue, but that were in effect at any point during those six years," and have offered to conduct targeted searches for other documents or categories of documents that would actually be relevant.

This approach is demonstrably reasonable: in fact, Plaintiffs' own conduct in this case illustrates the reasonableness of this approach. Just like the Cornell Defendants, Plaintiffs declined to search for documents predating August 2010—even though the Cornell Defendants have a defense for Plaintiffs' actual knowledge irrespective of whether that knowledge was acquired before or during the class period. *See* 29 U.S.C. § 1113. Rather, Plaintiffs responded to the Cornell Defendants' request for pre-August 2010 documents as follows: "If Defendants are aware of any pre-2010 documents they believe would have given Plaintiffs actual notice of their claims, please let us know what they are and we can determine whether Plaintiffs possess them." May 2, 2018 Letter from S. Hoeplinger to S. Myler at 1. The Cornell Defendants have made the equivalent offer to Plaintiffs to address pre-2010 discovery.

Plaintiffs have not taken the Cornell Defendants up on this offer. Nor have they identified any documents outside the class period that they require. Plaintiffs' letter motion identifies nothing in particular; in the meet-and-confer letters, Plaintiffs' only specific example of a purportedly missing document was that the Cornell Defendants had failed to produce the "operative recordkeeping agreement with TIAA," which is dated November 11, 2006. *See* June 13, 2018 Letter from J. Rohlf to S. Myler at 1 (attached here as Exhibit G). But Plaintiffs were simply mistaken—consistent with the approach described above, three copies of that November 2006 agreement have been produced. *See* June 15, 2018 Letter from S. Myler to J. Rohlf at 1 (attached here as Exhibit H).

Plaintiffs' motion is based on the false premise that the Cornell Defendants are disclaiming the relevance of documents outside the class period. That misses the point; even if one or more relevant documents is dated outside the class period, the vast majority of such documents would be irrelevant. Under Fed. R. Civ. P. 26(b)(2), discovery requests must be reasonable and proportional. Under the circumstances present here, that standard requires a more tailored approach for documents outside the scope of the class period—as the Cornell Defendants have offered. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004) (noting the court has "expressed a preference for narrowly tailored discovery orders where possible" and when it is not possible, discovery orders may be denied); *Astrazeneca AB v. Dr. Reddy's Labs., Ltd.,* 2010 WL 1375176, at *7 (S.D.N.Y. Mar. 30, 2010) (rejecting the "improper eleventh hour request for more discovery" as a "fishing expedition" because it "is unreasonable and not tailored at all"); *Sand v. Greenberg*, 2009 WL 6540161, at *1 (S.D.N.Y. July 23, 2009) (denying "discovery requests on the grounds that they are overbroad, burdensome, and

Hon. P. Kevin Castel  
June 28, 2018  
Page 6

counterproductive to achieving the efficient resolution of this matter" and granting leave to amend "discovery requests that are narrowly tailored to elicit information that is relevant to Plaintiffs'. . . claims").[1]

As to documents created after the filing of the complaint, Defendants have explained consistently for more than four months that Plaintiffs' complaint obviously did not make allegations about events that had not yet happened. Nor, for that matter, have Plaintiffs sought to supplement their complaint within the meaning of Fed. R. Civ. P. 15(d). As with the period preceding the limitations period, the 49 categories were bluntly applied to a time period unlikely to contain many relevant documents. Courts may allow some discovery of documents created after the complaint, but even the case Plaintiffs' cite for that proposition recognizes that the request must be narrow and specific. *See United States v. Orlofsky*, 1982 U.S. Dist. LEXIS 10944, *3 (S.D.N.Y. Jan. 11, 1982) (holding "[t]hus, the government's application for discovery from January 1, 1980 to December 31, 1981 *will be considered in light of the nature of each specific request*) (emphasis added).[2] Defendants remain amenable to producing particular documents, or particular categories of documents, that would materially aid Plaintiffs' discovery efforts, but Plaintiffs have yet to identify any such documents.[3]

## III. Search Terms

Plaintiffs' request to broaden the search terms reflects the suppression of reason to achieve the appearance of aggressiveness. Plaintiffs blame the Cornell Defendants for acting "unilaterally" and assert that they are entitled to demand a more extensive review, disregarding the clear record of inaction on their part until last week's proposal of specific search terms.

---

[1] Plaintiffs make similarly misplaced claims when insinuating bad faith on the part of Defendants for not retaining documents for eight custodians who left Cornell before the lawsuit was commenced. There is no obligation under ERISA to retain emails from departing committee members—and Plaintiffs have not alleged any such obligation. The fact that Defendants have no documents about this case—or anything else, for that matter— from people who left Cornell years before the lawsuit was filed is entirely unremarkable.

[2] Plaintiffs also cite *Orlofsky* for the proposition that post-complaint discovery is "especially" appropriate when continuing fiduciary breaches are alleged. *See* Plaintiffs' Motion to Compel, Dkt. 171 at 9. *Orlofsky* does not involve fiduciary breaches. In fact, the word fiduciary appears nowhere in the opinion. It is a case about housing discrimination brought by the government against landlords.

[3] Similarly, Defendants are unwilling to conduct a burdensome collection and review for the three custodians who joined Cornell after the complaint and are highly unlikely to possess relevant documents, but would be willing to consider a more specific request that accommodates for relevancy concerns.

Hon. P. Kevin Castel
June 28, 2018
Page 7

Plaintiffs' position requires a considerable amount of hubris. They acknowledge that their eleventh-hour request to overhaul discovery is burdensome but insist that "any burden could have been avoided if the Cornell Defendants had met-and-conferred with Plaintiffs prior to their production." Plaintiffs' Motion to Compel, Dkt. 171 at 7. That position turns the world precisely upside down.

The Federal Rules prescribe conferences between the parties in order to assure that each party's discovery expectations are met. Plaintiffs availed themselves of those conferences to discuss issues as mundane as how the metadata fields ought to be formatted. Plaintiffs' counsel were surely aware that they could have requested to be involved with search terms—as they did in the Columbia case. Having evidently forgotten to undertake the same diligence here, they now seek to blame the Cornell Defendants for their oversight.

Although "[t]he norm in these cases is that counsel for both sides review and agree in advance … on any search terms to be used," *Ferring v. Fera Pharm., LLC*, 2016 WL 5396620, at *3 (E.D.N.Y. Sept. 27, 2016), a party is *required* to move forward "unilaterally" "[a]bsent agreement … about a search strategy." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). That is precisely what the Cornell Defendants did.

Again, Plaintiffs could have requested involvement in search terms at the Rule 26(f) conference in October 2016, their discovery letter dated November 2016, the Rule 26(f) conference in November 2017, at the pretrial conference in December 2017, or as part of the request for production that they issued in January 2018. They did not identify specific (and overly broad) search terms until June 21, 2018, well after the Cornell Defendants' search and production had been completed.

Plaintiffs' position is evidently that the Cornell Defendants should have approached Plaintiffs and asked that Plaintiffs request certain search terms. Plaintiffs have no support for any such obligation; indeed, they are estopped from asserting such a requirement because they produced electronic documents in response to Defendants' document requests without consulting on search terms or disclosing what search terms *they* used.

Nor are Plaintiffs on solid ground when they assert that Cornell's search was under-inclusive. Parties "must conduct a diligent search, which involves developing a reasonably comprehensive search strategy. Such a strategy might, for example, include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation." *Treppel*, 233 F.R.D. at 374. According to the leading authority on electronic discovery, "[a] responding party may properly access and identify potentially responsive electronic data and documents by using reasonable selection criteria, such as search terms or samples." *Id.* (quoting *The Sedona Principles; Best Practices Recommendations & Principles for Addressing Electronic Document Production,* Principle 11 (2003)).

This is exactly what the Cornell Defendants did. Defendants developed a reasonably comprehensive strategy by identifying key employees and reviewing their files with the aid of

7

Hon. P. Kevin Castel
June 28, 2018
Page 8

search terms. The Cornell Defendants designed broad search terms (including the names of the Plans, the Defendants, the investment advisors and other vendors) and topical terms directly related to the discovery requests, like retail class, retail share class, revenue sharing, annuity, or recordkeeper. *See* Plaintiffs' Letter, Ex. H (listing the 54 search terms used by Defendants). As a result of the breadth of those terms, only 15,488 of the more than 130,000 reviewed documents proved to be responsive.

When coupled with their request for an expanded class period, Plaintiffs now ask to have more than 230,000 additional documents reviewed. They have not requested that expanded search because there are particular types of documents that have been omitted from the production; they are making the request just because they want to. Plaintiffs' proposed additional search terms use generic terms—like "benchmark fee"—that could be used in any number of irrelevant contexts.[4] It is exceedingly unlikely that such terms would appear in documents addressing the Plans without also including the broader terms that have already been searched.

It bears mention, again, that the Cornell Defendants have offered, repeatedly, to conduct targeted searches for documents or categories of documents Plaintiffs believe are missing from the production. But their proposal does not reflect a good-faith request to fill gaps; it reflects a desire to start over from scratch, which is warranted neither by the law nor by the facts.

## IV.     Discovery Period

The urgency of Plaintiffs' letter motion is a product of their own creation. They waited nearly two years to present to the Court a known dispute as to the time period for discovery, and waited six months into the eight-month period the Court set for completion of fact discovery to claim any input in the Cornell Defendants' search terms. Although Plaintiffs strive mightily to blame their shortcomings on the Cornell Defendants, the objective facts tell a different story.

The process of discovery necessarily involves a series of tradeoffs. A search for documents can always be expanded, and there is always a new witness that could be deposed. But the marginal utility of increasing the search is in constant decline. As part of the Court's Rule 26(f) process, Plaintiffs identified the documents that they thought were most important to review. The Cornell Defendants produced those documents in December 2017. Plaintiffs' insistence that

---

[4] Other generic, overbroad search terms include RFP, which alone hits on 8,425 documents *for the period postdating the complaint*, and Request NEAR3 Information hits on 10,534 for that same period. Those are not even the worst offenders: Fidelity AND (ERISA OR "403(b)" OR Retirement OR Investment OR Participant OR RPOC OR Plan OR Fund OR Fee OR Record* OR "cornell university retirement plan" OR "Tax Deferred Annuity Plan" OR CURP OR TDA) hits on 29,094 documents for the same period. That is just one additional requested search.

Hon. P. Kevin Castel
June 28, 2018
Page 9

they still need more information to begin depositions rings hollow—especially in the absence of any specific identification of materials they are missing.

The Cornell Defendants have already arranged the schedules of numerous university employees and officers to accommodate the depositions that Plaintiffs wish to take between now and the close of discovery on August 3. There is no good reason to upset that schedule.

Plaintiffs' letter motion should be denied in its entirety.

Sincerely,

/s/ Brian D. Netter
Brian D. Netter


cc:     Counsel of Record (via ECF)