UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CASEY CUNNINGHAM, CHARLES E.
LANCE, STANLEY T. MARCUS, LYDIA
PETTIS, and JOY VERONNEAU, individually
and as representatives of a class of participants
and beneficiaries on behalf of the Cornell
University Retirement Plan for the Employees of
the Endowed Colleges at Ithaca and the Cornell
University Tax Deferred Annuity Plan,

                    Plaintiffs,                    16-cv-6525 (PKC)

      -against-                                OPINION
                                                  AND ORDER

CORNELL UNIVERSITY, THE RETIREMENT
PLAN OVERSIGHT COMMITTEE, MARY G.
OPPERMAN, and CAPFINANCIAL
PARTNERS, LLC d/b/a/ CAPTRUST
FINANCIAL ADVISORS,

                      Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs move to certify a class of participants and beneficiaries of the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca (the "Retirement Plan") and the Cornell University Tax Deferred Annuity Plan (the "TDA Plan") (together, the "Plans") pursuant to Rule 23, Fed. R. Civ. P. (Doc 151.) Plaintiffs assert that the fiduciaries of these plans have not managed the Plans prudently and have allowed the plans to underperform and accrue excessive administrative fees. Plaintiffs allege violations of sections 404 and 406 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1106. For the reasons explained, the plaintiffs' motion for class certification is granted.

BACKGROUND

The five named plaintiffs in this action are current or former employees at Cornell University ("Cornell"). (Am. Compl. at 10; Doc 81.)[1] Three of the five plaintiffs are participants in the TDA Plan and all five plaintiffs are participants in the Retirement Plan. (Am. Compl. at 10.) The Plans are defined contribution, individual account, employee pension benefit plans sponsored by Cornell for eligible employees. (Am. Compl. at 7-8.) The Retirement Plan is funded by contributions from Cornell on behalf of its employees, (Am. Compl. at 7), while the TDA plan is funded by employees' pre-tax deferrals of compensation, (Am. Compl. at 9.) The plans are referred to as "jumbo plans" for their large size (each well over $1 billion), which plaintiffs claim affords them "tremendous bargaining power in the market for retirement plan services." (Am. Compl. at 9.) TIAA-CREF[2] and Fidelity are the two recordkeepers for both plans. (Am. Compl. at 52−53.)

Plaintiffs assert that defendants are the fiduciaries of the Plans. Cornell is the administrator of the Plans. (Am. Compl. at 11.) Cornell formed co-defendant the Retirement Plan Oversight Committee (the "Committee"), headed by co-defendant Mary G. Opperman, to oversee the Plans' investment options. (Am. Compl. at 12.) Capfinancial Partners, LLC d/b/a CAPTRUST Financial Advisors ("CAPTRUST") is an investment advisory firm hired by the Committee. (Am. Compl. at 12.) While the Plans' fiduciaries choose the investment options included in the Plans, participants may designate in which of the Plans' funds to invest their individual accounts. (Am. Compl. at 9) As of December 31, 2014, the Retirement Plan offered a total of 299 investment

---

[1] Because the Complaint is not consistently numbered sequentially (see, e.g., ¶32 on page 13 and ¶32 on page 16), the Court will cite to the Amended Complaint by page number.
[2] According to the Complaint, TIAA-CREF is "an insurance company financial services provider." Am. Compl. at 33. The acronym refers to two organizations, the Teachers Insurance and Annuity Association of America (TIAA), and the College Retirement Equities Fund (CREF). Id.

options (68 TIAA-CREF and 231 Fidelity investments), and the TDA Plan offered a total of 301 investment options (70 TIAA-CREF and 231 Fidelity investments). (Am. Compl. at 53.) Plaintiffs have invested in many, but not all, of the funds in the Plans. (Am. Compl. at 6.)

As the Court discussed in its decision denying in part defendants' motion to dismiss, the Amended Complaint plausibly alleged that all defendants except CAPTRUST failed to monitor and control the Plans' recordkeeping fees, solicit bids from competing recordkeeping providers on a flat per-participant fee basis, and determine in a timely manner whether the Plans would benefit from moving to a single recordkeeper. See Cunningham v. Cornell Univ., 16 cv 6525 (PKC), 2017 WL 4358769, at *6, *11 (S.D.N.Y. Sept. 29, 2017). It further plausibly alleged that all defendants unreasonably continued to offer as a fund option the CREF Stock Account and TIAA Real Estate Account despite high fees and poor performance, selected and retained funds with high fees and poor performance relative to other available options, and selected and retained high-cost mutual funds instead of identical lower-cost funds. See id. at *6−8. Finally, the Amended Complaint plausibly alleged that Cornell and Mary G. Opperman failed to monitor the performance of their appointees to the Committee and failed to remove appointees whose performance was inadequate as related to the abovementioned failures of selecting and retaining funds. See id. at *11.

The named plaintiffs seek to represent a putative class defined as follows: "All participants and beneficiaries of [the Plans] from August 17, 2010, through the date of judgment, excluding the Defendants and any participant who is a fiduciary to the Plans." (Am. Compl. at 113.) The Court noted in its Order granting in part and denying in part defendants' motion to dismiss that "[t]his action is one of several filed by the same counsel in federal courts across the country against different university pension plans alleging breaches of the fiduciary duties imposed

options (68 TIAA-CREF and 231 Fidelity investments), and the TDA Plan offered a total of 301 investment options (70 TIAA-CREF and 231 Fidelity investments). (Am. Compl. at 53.) Plaintiffs have invested in many, but not all, of the funds in the Plans. (Am. Compl. at 6.)

As the Court discussed in its decision denying in part defendants' motion to dismiss, the Amended Complaint plausibly alleged that all defendants except CAPTRUST failed to monitor and control the Plans' recordkeeping fees, solicit bids from competing recordkeeping providers on a flat per-participant fee basis, and determine in a timely manner whether the Plans would benefit from moving to a single recordkeeper. See Cunningham v. Cornell Univ., 16 cv 6525 (PKC), 2017 WL 4358769, at *6, *11 (S.D.N.Y. Sept. 29, 2017). It further plausibly alleged that all defendants unreasonably continued to offer as a fund option the CREF Stock Account and TIAA Real Estate Account despite high fees and poor performance, selected and retained funds with high fees and poor performance relative to other available options, and selected and retained high-cost mutual funds instead of identical lower-cost funds. See id. at *6−8. Finally, the Amended Complaint plausibly alleged that Cornell and Mary G. Opperman failed to monitor the performance of their appointees to the Committee and failed to remove appointees whose performance was inadequate as related to the abovementioned failures of selecting and retaining funds. See id. at *11.

The named plaintiffs seek to represent a putative class defined as follows: "All participants and beneficiaries of [the Plans] from August 17, 2010, through the date of judgment, excluding the Defendants and any participant who is a fiduciary to the Plans." (Am. Compl. at 113.) The Court noted in its Order granting in part and denying in part defendants' motion to dismiss that "[t]his action is one of several filed by the same counsel in federal courts across the country against different university pension plans alleging breaches of the fiduciary duties imposed

by ERISA." (Id. at *3.) Class certification in all cases in which a motion for certification has been decided has been granted. See, e.g., Cates v. Trs. of Columbia Univ. in the City of New York, 16 cv 6524 (GBD)(SDA), Dkt. 218 (S.D.N.Y. Nov. 15, 2018); Henderson v. Emory Univ., 16 cv 2920 (CAP), 2018 WL 6332343, at *10 (N.D. Ga. Sept. 13, 2018); Clark v. Duke Univ., 16 cv 1044, 2018 WL 1801946, at *10 (M.D.N.C. Apr. 13, 2018); Sacerdote v. New York Univ., 16 cv 6284 (KBF), 2018 WL 840364, at *8 (S.D.N.Y. Feb. 13, 2018). In addition, class counsel has filed cases with similar complaints in the Middle District of Tennessee and the District of Massachusetts that have reached and granted class certification. See Cassell v. Vanderbilt Univ., 16 cv 2086, 2018 WL 5264640, at *6 (M.D. Tenn. Oct. 23, 2018); Tracey v. MIT, 16 11620 (NMG), 2018 WL 5114167, at *7 (D. Mass. Oct. 19, 2018).

Cornell, the Committee, and Ms. Opperman ("the Cornell Defendants") do not oppose plaintiffs' motion for class certification on Count III, the claim that the Cornell Defendants breached a duty of prudence by allowing the Plans to pay unreasonable administrative fees. (Cornell Defs.' Resp. to Class Cert. Mot. at 1; Doc 168.) But defendants oppose class certification as to the remaining claims brought in Counts V and VII. (Docs 165, 168.)

STANDING

ERISA creates a private cause of action for any "participant, beneficiary or fiduciary" to sue for "breaches [of] any of the responsibilities, obligations, or duties imposed upon fiduciaries" of a retirement plan. 29 U.S.C. §§ 1109(a), 1132(a)(2). Such claims are "brought in a representative capacity on behalf of the plan." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 n.9 (1985). "[T]he basic standing issue is whether the plaintiff is within the zone of interests ERISA was intended to protect." L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity

Comm'n of Nassau Cty., Inc., 710 F.3d 57, 65 (2d Cir. 2013) (quoting Mullins v. Pfizer, Inc., 23 F.3d 663, 668 (2d Cir. 1994)).

The Cornell Defendants argue that plaintiffs do not have standing to bring class claims because the named plaintiffs have not shown investments in <u>each</u> of the hundreds of investment funds covered by the Plans, such that they cannot demonstrate the required injury-in-fact. Collectively, the named plaintiffs invested in at least twenty-five of the funds offered by the Plans. (Am. Compl. at 6.) The Cornell Defendants do not contest that plaintiffs have standing to bring claims for funds in which they have invested.

Plaintiffs do not need to make a showing of investment in each fund to demonstrate standing. The Court adopts the reasoning laid out in detail in Sacerdote, 2018 WL 840364, at *7, and Leber v. Citigroup 401(K) Plan Inv. Comm., 323 F.R.D. 145, 155−59 (S.D.N.Y. 2017), and adopted most recently by Cates, 16 cv 624 (GBD)(SDA), Dkt. 218 (S.D.N.Y. Nov. 15, 2018). As discussed in those cases, the Second Circuit has held that plaintiffs who assert claims in a derivative capacity on behalf of a retirement plan establish "injury-in-fact sufficient for constitutional standing" by alleging injuries to the plan itself. L.I. Head Start, 710 F.3d at 67 n.5. While the plan in L.I. Head Start was a defined benefit plan, unlike the defined contribution plans at issue in this case, the Court is persuaded by the discussion in Leber that L.I. Head Start remains binding precedent for all suits brought in a derivative capacity. See 323 F.R.D. at 155 ("Nothing in the Long Island Head Start decision indicates that the Court of Appeals relied on any unique characteristics of defined benefit plans to reach its conclusion about standing.").[3]

---

[3] As stated in LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 250 n.1 (2008):
> [A] 'defined contribution plan' or 'individual account plan' promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions. A 'defined benefit plan,' by contrast, generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation.

Further, for the reasons discussed in Leber, 323 F.R.D. at 156, the Court agrees that plaintiffs meet requirements for standing even if L.I. Head Start did not control. The Second Circuit has considered whether named plaintiffs have "'class standing' to bring claims related to" financial instruments that plaintiffs had "not purchased on behalf of the absent class members who *had* purchased them." Ret. Bd. of the Policemen's Annuity and Benefit Fund v. Bank of N.Y. Mellon, 775 F.3d 154, 160 (2d Cir. 2014). To establish class standing, a plaintiff must show that she "personally has suffered" an injury-in-fact as a result of defendant's conduct, and defendant's conduct "implicates 'the same set of concerns' as the conduct alleged to have caused injury" to the other putative class members. NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir. 2012) (first quoting Blum v. Yaretsky, 457 U.S. 991, 999 (1982), then quoting Gratz v. Bollinger, 539 U.S. 244, 267 (2003)). "When this standard is satisfied, the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." Ret. Bd., 775 F.3d at 161.

Personalized injury-in-fact requires named plaintiffs to demonstrate individualized losses in the form of some amount of financial damage; it does not require harm be shown from investment in each fund that makes up an overall plan. See Leber, 323 F.R.D. at 156−57; Moreno v. Deutsche Bank Ams. Holding Corp., 15 cv 9936 (LGS), 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017); cf. Caufield v. Colgate-Palmolive Co., 16 cv 4170 (LGS)(KNF), 2017 WL 3206339, at *7−8 (S.D.N.Y. July 27, 2017). Indeed, the very reason for articulating a class standing test in NECA-IBEW was to allow named plaintiffs to bring claims related to certificates they had not purchased. Other district courts that have considered the question with respect to these same types of plans involving multiple funds have reached the same conclusion. Cassell, 2018 WL 5264640, at *2−3 (citing, inter alia, Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 593

(8th Cir. 2009), and Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998)); Henderson, 2018 WL 6332343, at *2−3; Velazquez v. Mass. Fin. Servs. Comp., 320 F. Supp. 3d 252, 257 (D. Mass. 2018); Clark, 2018 WL 1801946, at *4; Ramos v. Banner Health, 325 F.R.D. 382, 391−93, 398 (D. Colo. 2018). But see Wilcox v. Georgetown Univ., 18-422 (RMC), 2019 WL 132281, at *9−10 (D.D.C. Jan. 8, 2019).

Here, each named plaintiff has demonstrated individualized losses as the result of defendants' alleged breaches of their fiduciary duties in Counts V and VII. NECA-IBEW, 693 F.3d at 162. Count V alleges that CAPTRUST and the Cornell Defendants (i) continued to offer the CREF Stock Account and TIAA Real Estate Account despite their high fees and poor performance; (ii) retained funds with high fees and poor performance, including actively managed funds, relative to other readily available options; and (iii) retained high-cost retail mutual funds when materially identical lower-cost institutional funds were available. Each named plaintiff has invested in at least one of the funds alleged to have been improperly retained relative to other available options. Compare Am. Compl. at 6 (listing named plaintiffs' funds), with Am. Compl. at 70−78, 83, 89−95 (listing funds with lower share cost options or funds that underperformed their benchmarks). Count VII challenges the Cornell Defendants' failure to monitor appointees to the Committee insofar as the appointees violated their duties of prudence with respect to the alleged improper accounts in Count V. The same demonstrations of loss that sufficed for Count V satisfy the requirement for Count VII.

Defendants' alleged breaches of their fiduciary duties also implicate the same set of concerns with respect to non-named class members. NECA-IBEW, 693 F.3d at 162. Plaintiffs allege that they and all other Plan participants were injured in the same manner due to defendants' failure to discharge their duties in the interests of Plan participants and beneficiaries, leading to

unreasonable administrative fees, unreasonable investment options with high expenses and poor performance, and retention of appointees whose imprudent actions exacerbated the Plans' high costs and fees. (Am. Compl. at 126−28, 130−34, 137.) For example, plaintiffs allege that defendants failed to "conduct[] a prudent and timely investment review process" to weed out underperforming funds. Am. Compl. at 95; see id. at 132. "Because the alleged harms are premised on the process . . . used to manage the Plan[s], the claims involve similar inquiries and proof, and thus implicate the same set of concerns." Moreno, 2017 WL 3868803, at *10 (citing Caufield, 2017 WL 3206339, at *7); see Leber, 323 F.R.D. at 156−57. Plaintiffs have demonstrated standing to bring all remaining claims asserted in their Amended Complaint.

CLASS CERTIFICATION STANDARD

On this motion, plaintiffs must prove by a preponderance of the evidence that the proposed class meets the requirements of Rule 23(a), Fed. R. Civ. P, and at least one of the requirements of Rule 23(b), Fed. R. Civ. P. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011); Novella v. Westchester Cty., 661 F.3d 128, 148−49 (2d Cir. 2011). A court may consider "[m]erits questions . . . to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013). A prerequisite to certification of any class is that the Rule 23(a) requirements of numerosity, commonality, typicality, and adequate representation be satisfied. Dukes, 564 U.S. at 349 (quotation marks omitted).

Plaintiffs seek to certify the proposed class under either Rule 23(b)(1) or (b)(3). Rule 23(b)(1) requires plaintiffs to show that

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with

respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." In re Glob. Crossing Sec. and ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (quotation marks and citation omitted). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "[T]he focus of Rule 23(b)(3) is on the predominance of common questions," Amgen, 568 U.S. at 466, and "[t]he mere existence of individual issues will not be sufficient to defeat certification," Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 87 (2d Cir. 2015).

DISCUSSION

   A. Rule 23(a)

      1. Numerosity

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1), Fed. R. Civ. P. Plaintiffs estimate, based on the Retirement Plan Form 5500 for the years 2010 through 2016 for the Plans, that there are more than 28,000 members of the proposed class. (Declaration of Andrew D. Schlichter at Exs. 1-14 p. 2; Doc 153.) Defendants do not dispute that plaintiffs have shown numerosity. The Court concludes that plaintiffs have satisfied the numerosity requirement.

      2. Commonality

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class." Plaintiff must "demonstrate that the class members have suffered the same

injury," which must turn "upon a common contention." Dukes, 564 U.S. at 350 (quotation marks omitted); see id. at 359 (stating to satisfy Rule 23(a)(2) "even a single common question will do" (internal quotation marks, citation, and alteration omitted). "This requirement has been characterized as a low hurdle." McIntire v. China MediaExpress Holdings, Inc., 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." In re Glob. Crossing, 225 F.R.D. at 452 (internal quotation marks and citations omitted).

The claims of the proposed class turn on the "common contention" that defendants breached their fiduciary duties by taking actions or failing to take actions that resulted in unnecessarily high fees, higher-cost share classes for many funds where identical lower-cost options were available, and the continued offering of underperforming funds, all claims that are "capable of classwide resolution." Dukes, 564 U.S. at 350. Put another way, the common contention is that "the investment lineup made available to all participants violated ERISA." Moreno, 2017 WL 3868803, at *5. As noted in Sacerdote, plaintiffs "are bringing suit on behalf of participants in the Plans, the centralized administration of which is common to all class members." 2018 WL 840364, at *3. Because the fiduciary duties are owed to the Plans, not to individual accounts, common questions of law and fact are central to the case. Plaintiffs' claims involve common questions on matters such as defendants' fiduciary status, whether defendants breached any fiduciary duty, the plans' alleged losses, how to calculate losses, and what equitable relief is appropriate. Whether the number of funds in a particular plan is large or small, the questions of defendants' prudential oversight and failure to take actions that would result in lower costs are questions that are common to the class. Leber, 323 F.R.D. at 157 ("Showing that any

given . . . [f]und had cheaper alternatives or that it had unreasonably excessive fees may allow a trier of fact to 'reasonably infer . . . that the [defendants'] process was flawed,' but it is not dispositive of the ultimate question regarding the 'methods employed by the ERISA fiduciary' to investigate, select, or monitor investments." (quoting Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 718 (2d Cir. 2013)); id. at 158 (stating the duties to administer plans solely in the interest of participants and to monitor investments "are constant duties; they need not be triggered by the characteristics of any [one f]und"). Cf. Spano v. The Boeing Co., 633 F.3d 574, 586 (7th Cir. 2011) ("[T]he assertion that [defendant] has failed to satisfy its fiduciary duties in its selection of investment options . . . describe[s a] problem[] that would operate across the plan rather than at the individual level.") Plaintiffs have demonstrated common questions of law and fact under Rule 23(a)(2).

CAPTRUST argues that the application of statutes of limitations to class member claims require individual analyses that defeat class certification or, at a minimum, require the class time period to be limited to three years before CAPTRUST was named a defendant. ERISA has a three year statute of limitations "after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. CAPTRUST alleges that there is a highly-individualized inquiry into whether members of the would-be class were aware of the alleged breach earlier than three years prior to filing suit.

Defendants made a similar argument in their motion to dismiss, which was denied for failing to show that plaintiffs had actual knowledge of material facts necessary to bring suit three years before the filing of this action. Cunningham, 2017 WL 4358769, at *12−13. Now, CAPTRUST brings one example of a putative class representative, Mr. Charles Lance, who purportedly "began to suspect that something was amiss with his retirement accounts in 1999 or

2000." CAPTRUST's Opp. to Mot. for Class Cert. at 16; Doc 165 (citing Declaration of Daniel R. Thies ("Thies Decl.") Ex. 9 at 3; Doc 167.)

"[T]he statute of limitations issue does not negate the many other common issues" in this case, which satisfy the low hurdle for commonality under Rule 23(a)(2). Henderson, 2018 WL 6332343, at *5; see Clark, 2018 WL 1801946, at *5 ("The potential for some individual [statute of limitation] issues that would, at best, reduce any damages award does not defeat commonality and typicality under Rule 23(a)."); Moreno, 2017 WL 3868803, at *6 ("Courts in this circuit have certified classes notwithstanding the purported defects Defendants identify with respect to [the] ERISA . . . statute of limitations." (internal quotation marks and citation omitted)). Questions with respect to the statute of limitations issue may even be common to the class, such as whether, based on Plan fee and performance disclosures, all class members had actual knowledge of a breach.

To the extent CAPTRUST argues class certification should be denied because Mr. Lance is "subject to unique defenses which threaten to become the focus of the litigation," Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (internal quotation marks and citation omitted), the Court concludes that Mr. Lance's potential knowledge does not threaten to become the focus of the litigation, and should not preclude class certification. Accord Moreno, 2017 WL 3868803, at *6; Sykes v. Mel Harris & Assocs., LLC, 285 F.R.D. 279, 292 (S.D.N.Y. 2012) (dismissing argument that named plaintiffs' unique defenses related to statute of limitations issue barred class certification). Moreover, Mr. Lance's alleged statement that bringing this litigation "confirmed what [he] had suspected" based on noticing "how little of a return" he was getting on his investments in the Plans, Thies Decl. Ex. 9 at 3−4; Doc 167, seems unlikely to be the kind of "specific knowledge of the actual breach of duty" required to start the three-year

limitations period, Leber v. Citigroup 401(k) Plan Inv. Comm., 2014 WL 4851816, at *5 (S.D.N.Y. Sept. 30, 2014) (quoting Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001)); see L.I. Head Start, 710 F.3d at 67 ("[A]ctual knowledge is strictly construed and constructive knowledge will not suffice."); Caputo, 267 F.3d at 193 ("It is not enough that plaintiffs had notice that something was awry." (internal quotation marks and citation omitted)).

For the same reasons, the possible statute of limitations defense does not require narrowing the proposed class period. If individual issues as to the application of the statute of limitations become problematic as the case progresses, the Court may take appropriate other measures including decertifying the class, creating subclasses, or conducting individualized fact-finding. Rule 23(c)(1), Fed. R. Civ. P.; see Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir. 1999) (courts are "required to reassess their class rulings as the case develops" (internal quotation marks and citation omitted)).

3. Typicality

Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Commonality and typicality requirements "tend to merge," meaning the analysis is similar for both. Dukes, 564 U.S. at 349 n.5. Typicality may be found where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks and citation omitted); Mazzei v. Money Store, 829 F.3d 260, 272 (2d Cir. 2016) ("Typicality requires that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." (internal quotation marks and citation omitted)). "When it is alleged that the same unlawful

conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931, 936−37 (2d Cir. 1993).

For the reasons discussed in reviewing plaintiffs' commonality arguments, plaintiffs have satisfied the typicality requirement. Plaintiffs have sufficiently alleged that the defendants' failure to manage the Plans affected all proposed members of the class. Each plaintiff's claim and each class member's claim is based on the same legal theory and underlying events, namely, that CAPTRUST and the Cornell Defendants breached their duty of prudence by imprudently selecting, administering, and reviewing the Retirement and TDA Plans' investments, recordkeeping fees, and the Committee's delegates. (Am. Compl. at 126−28, 130−34, 137.)

With respect to the allegations concerning failure to negotiate lower-cost share classes of identical mutual funds, plaintiffs have alleged a common course of conduct that unites their prudence claims. They allege that, for all funds where a lower-cost share class option was available, defendants should have known a lower-cost option was available and should have negotiated to provide the lower-share class option but did not do so. (Am. Compl. at 69, 78.) The ability of the fiduciaries to negotiate lower-cost options, their knowledge of the existence of lower-cost options, and their reasoning for maintaining higher-cost shares are all common questions related to the same alleged unlawful conduct. As for allegations that defendants retained historically underperforming investments, plaintiffs allege that defendants failed to engage in a prudent investment review process and used inappropriate benchmarks, leading to the retention of a large number of historically underperforming funds. (Am. Compl. at 101, 132.) The allegedly imprudent conduct thus impacted the funds in the Plans in a similar manner. The variations

between Plan participants' individual account choices do not destroy the typicality of plaintiffs' claims.

    4. Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa, 222 F.3d at 60. Defendants have put forth no arguments for why the named plaintiffs fail to meet the adequacy requirement. After considering all relevant submissions, the Court finds the named plaintiffs adequate under Rule 23(a)(4).

    B. Rule 23(b)(1)

A class may be certified for two reasons under Rule 23(b)(1). Rule 23(b)(1)(A) covers class action suits in which the defendant is "obliged by law to treat the members of the class alike . . . or where the [defendant] must treat all alike as a matter of practical necessity." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); see Dukes, 564 U.S. at 361 n.11. Rule 23(b)(1)(B) covers class action suits in which "individual adjudications as a practical matter[] would be dispositive of the interests of the other members not parties to the individual adjudications." Dukes, 564 U.S. at 361 n.11 (quotation marks omitted). It is common for ERISA cases to be certified under Rule 23(b)(1). See Sacerdote, 2018 WL 840364, at *6. Accord In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 604 (3d Cir. 2009) (collecting cases).

Because plaintiffs' allegations are brought with respect to breaches of fiduciary duties to the Plans as a whole, defendants' duties rise and fall with all plaintiffs. Any ruling with respect to one plaintiffs' claims for breach of fiduciary duties may dictate defendants' investment

procedures and management methods going forward that would not only impact other Plan participants but would risk incompatible judgments if separate actions required different remedial or equitable actions. Moreover, allowing multiple individual cases risks incompatible results and issues of administration of the Plans that may have inconsistent effects across all plaintiffs. Because damages are owed to the Plans and not individual plaintiffs, adjudication of the named plaintiffs' suits would be dispositive of the interests of other participants in the Plans. In sum, because the management of the Plans has an effect on all Plan-participants, the class is properly certified under Rule 23(a) and Rule 23(b)(1)(A) or 23(b)(1)(B). See Clark, 2018 WL 1801946, at *9; Sacerdote, 2018 WL 840364, at *6.[4]

CAPTRUST argues that an extensive individualized inquiry is necessary to resolve questions related to the duty of prudence for each individual fund at issue, in total over 200 funds, and that for this reason certification is improper under Rule 23(b)(1). The individualized inquiry CAPTRUST refers to is not with respect to individual plaintiffs, but rather individual funds that make up Plans in which all putative class members have an interest. Even if there is some individualized inquiry with respect to the choice of share class or retention of a particular fund within the Plans, each of these inquiries will affect broad swaths of the putative class. This is not the kind of individualized inquiry that is meant to preclude class certification under Rule 23(b)(1), and CAPTRUST has offered no case law that would persuade the Court to find otherwise. CAPTRUST's arguments are largely logistical and not legal, citing to the amount of evidence required to adjudicate questions of prudence with respect to large numbers of funds that make up

---

[4] Where a class may be certified under Rule 23(b)(1) and (b)(3), "courts find that Rule 23(b)(1) controls." Leber, 323 F.R.D. at 165. In a choice between certifying under Rule 23(b)(1) or (b)(3), "the former should be chosen when to do so will avoid the inconsistent adjudication or compromise of class interests that might otherwise occur [under Rule 23(b)(3)]." Robertson v. Nat'l Basketball Ass'n, 556 F.2d 682, 685 (2d Cir. 1977). Accordingly, the Court need not consider whether certification is appropriate under Rule 23(b)(3). For this reason, the Court does not consider CAPTRUST's argument that plaintiffs have not demonstrated common proof or evidence, as required by Rule 23(b)(3).

a Plan. Resolution of questions related to the duty of prudence may be cumbersome for the number of funds alleged in the complaint. Still, for each fund, defendants are "obliged by law to treat the members of the class alike," Amchem, 521 U.S. at 614, and "adjudications with respect to individual class members[']" investments and whether they were managed according to ERISA's fiduciary requirements "would be dispositive of the interests of the other members," Rule 23(b)(1)(B); see Ortiz v. Fibreboard Corp., 527 U.S. 815, 833 (1999).

C. Rule 23(g)

Rule 23(g)(1) states that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel." To appoint class counsel, the court must consider factors such as the work counsel has done, its experience in similar types of litigation, knowledge of the applicable law, and resources available to represent the class. Rule 23(g)(1)(A), Fed. R. Civ. P. Defendants make no arguments with respect to the appointment of plaintiffs' selected class counsel.

Plaintiffs request the appointment of Schlichter Bogard & Denton LLP as class counsel. This firm has provided competent representation for plaintiffs since this action's commencement. It has successfully defended against defendants' motion to dismiss, conducted discovery, and amended the complaint to assert new causes of action and new defendants in response to evidence uncovered. Counsel's submissions reflect knowledge of the law governing plaintiffs' claims and familiarity with class action procedures. Their performance in the present case demonstrates competence to protect the interests of the class.

Plaintiffs' counsel also has significant prior experience litigating ERISA class actions involving similar claims for breach of fiduciary duties. (Declaration of Jerome J. Schlichter at ¶¶5−14; Doc. 154.) The firm has been appointed class counsel in twenty-four ERISA

class actions since 2006, including cases that have led to decisions on which this Court has relied in deciding issues related to the present litigation. (Id. at ¶6; Doc 154.) Plaintiffs' counsel has demonstrated that they have adequate resources to litigate this action and are experienced in litigating class actions generally. Accordingly, the Court appoints Schlichter Bogard & Denton LLP as class counsel in this case.

D. Disclosure of Damages

CAPTRUST and the Cornell Defendants argue that plaintiffs have forfeited the right to bring claims or seek damages for breach of fiduciary duties concerning any funds other than the CREF Stock Account and the TIAA Real Estate Account, because plaintiffs' initial Rule 26(a), Fed. R. Civ. P. disclosures do not allege damages stemming from breaches with respect to any other funds. As an initial matter, the Court notes that plaintiffs' Rule 26(a)(1) disclosures identify damages with respect to the 92 alleged higher-cost share class mutual funds but do not identify damages for the alleged historically underperforming investment options beyond the CREF and TIAA funds. (Doc 167-7 at 6). Defendants do not show how an alleged failure to identify damages specific to individual funds within the Plans would defeat any of the requirements for class certification under Rule 23, Fed. R. Civ. P. See Leber, 323 F.R.D. at 158 ("Proving the existence and quantum of losses incurred by each Affiliated Fund is . . . a secondary inquiry. It is analogous to the damages inquiry, and it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(a) . . . ." (internal quotation marks and citation omitted)). And CAPTRUST's argument asking for the Court to sanction plaintiffs for failures to disclose pursuant to Rule 37(c)(1), Fed. R. Civ. P. is not appropriately filed in a response to a motion for class certification. See Local

Civil Rule 37.2 (requiring counsel for a party moving pursuant to Rule 37 to request an informal conference with the Court by letter-motion).

CONCLUSION

Plaintiffs' motion for class certification is GRANTED (Doc 151.) The Court certifies the following class:

> All participants and beneficiaries of the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca and the Cornell University Tax Deferred Annuity Plan from August 17, 2010, through August 17, 2016, excluding the Defendants and any participant who is a fiduciary to the Plans.

The Clerk is directed to terminate the motion (Doc 151.)

The law firm of Schlichter Bogard & Denton LLP is appointed to act as class counsel. Within 21 days, class counsel shall submit a proposed form of notice to class members and a proposed plan for distributing the notice.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
January 22, 2019