# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CASEY CUNNINGHAM, et al.,

          Plaintiffs,

v.

CORNELL UNIVERSITY, et al.

          Defendants.

No. 1:16-CV-06525-PKC

**Expert Report of Wendy Dominguez**

August 24, 2018

CONFIDENTIAL



## Table of Contents

I.      Engagement ...............................................................................................................3

II.     Compensation ...........................................................................................................3

III.    Qualifications and Experience ................................................................................3

IV.     Executive Summary ..................................................................................................8

V.      Prudent Fiduciary Practices ...................................................................................8

        A.  Plan fiduciary governance ...........................................................................9

        B.  Investment Policy Statements....................................................................10

        C.  The development of a streamlined investment menu ............................11

        D.  Due diligence in the selection, monitoring and removal of plan investments ......14

VI.     Factual Background................................................................................................15

VII.    The Cornell Fiduciaries failed to implement a prudent fiduciary governance
        structure...................................................................................................................29

VIII.   The Plan fiduciaries failed to engage in a prudent due diligence process for the
        selection, monitoring and removal of Plan investments. ...................................31

        A.  Failure to follow prudent fiduciary practices by creating a best of class
            investment menu and map all assets to a single provider menu as of
            September 1, 2010. .....................................................................................31

        B.  Imprudent retention of underperforming and imprudent Plan investments
            as of September 1, 2010. .............................................................................40

        C.  Retention of underperforming and imprudent Plan investments as of July
            2013................................................................................................................42

        D.  Maintaining higher-cost share classes of Plan investments ...................44

**I.      Engagement**

1.      I have been retained by Plaintiffs in this matter to provide expert analysis and opinions related to the investment decisions and related matters relative to the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca, the Cornell University Tax-Deferred Annuity Plan and the fiduciary process employed by the Cornell University, its Retirement Plan Oversight Committee, the individual Cornell Defendants and CAPFINANCIAL PARTNERS, LLC d/b/a CAPTRUST Financial Advisors in the selection, monitoring and retention of investment options included in the Plans.

**II.     Compensation**

2.      I am compensated at the rate of $450 per hour. My compensation is not dependent on my opinions or on the outcome. My opinions on this matter are ongoing. I specifically reserve the right to supplement, revise, or amend these opinions.

3.      A list of the materials considered in this matter is attached hereto as **Exhibit 1.**

**III.    Qualifications and Experience**

4.      I earned my BSBA in Finance from the University of Denver in 1991 graduating "Magna Cum Laude." In addition, I also earned a Master of Business Administration from the University of Denver in 1992.

5.      I have over 25 years of experience in financial services, including investment consulting for retirement plans, and specifically 403(b) plans.

6.      I am President and Co-Founder of Innovest Portfolio Solutions LLC, an investment adviser registered with the Securities and Exchange Commission pursuant to the Investment Advisers Act of 1940. The firm was founded in 1996. Innovest's institutional clients include fiduciaries, trustees and investment committees of retirement plans, foundations,

3

endowments and nonprofit organizations. Innovest provides consulting services to over 200 institutional clients with investment portfolios totaling over $18 billion.

7.    At Innovest, I serve as an investment consultant providing investment services to clients that include retirement plans, foundations and high net worth individuals. I am on the Board of Managers of the firm and have final responsibility for all decisions regarding capital markets expectations, investment strategies, portfolio management and investment products.

8.    I lead Innovest's Retirement Plan Practice Group, a specialized team that identifies best practices and implements process improvements to maximize efficiencies for our retirement plan clients. In 2014, I was named one of the 20 Most Influential Women in Benefit Advising in the nation by *Employee Benefit Adviser*. I have been designated as one of the *Financial Times'* Top 100 Women Financial Advisors.

9.    I am responsible for contract negotiation between many of our retirement plan clients and their vendors. My views on investment cost control have been published in *Pensions & Investments*, and the National Association of Government Defined Contribution Administrators (NAGDCA). I have also authored a number of articles on fiduciary related matters which have been published in several national publications. Additionally, I have been a speaker at the Center for State and Local Government Excellence, a national conference in Washington, DC, the Colorado Public Pension Conference and the Rocky Mountain Defined Benefit Plan Conference, among others. In the Fall of 2018, I will be moderating a panel at the National Association of Governmental Defined Contribution Plan Conference.

10.    Innovest consults to 125 defined contribution plans. Three of our 403(b) plan clients are some of the largest employers in **REDACTED**. We have focused on 403(b) plan consulting since 2007, when the IRS announced new regulations that we believed effectively

required most exempt 403(b) plans to comply with ERISA.. In September of 2006, I wrote an article for *The CPA Journal*, entitled "The Disadvantages of Multiple Retirement Plan Vendors." In 2007, Richard Todd from our firm wrote an article for *INSIGHTS, the Association of Benefit Administrations, Inc. (ABA) Journal, Volume 12, Number 4, Summer 2007,* entitled "403(b) Plans Should No Longer Be Ignored." In January of 2008, Rich Todd and I wrote an article in *Benefits and Compensation Digest* entitled "Best Practices for 403(b) Plans." In 2008, Rick Rodgers from our firm wrote an article for *The Contributor, published by the National Association of Government Defined Contribution Administrators, Inc. (NAGDCA) entitled* "403(b) Plans Should Get Much Better Soon."

11.  Not all of Innovest's 403(b) plan clients are governed by ERISA, because they are offered by public entities. However, the plan rules are very similar and we use the same processes, monitoring and fiduciary best practices to guide us. We currently have <sup>REDACT?</sup> 403(b) clients, of which <sup>REDACT?</sup> are ERISA plans.

12.  Innovest scrutinizes share classes as a way to reduce costs. It is our goal in selecting funds to minimize expenses paid by plan participants. Expenses are but one of many criteria examined in identifying top quality products for our clients. In addition, we review each recipient of investment expenses to ensure there is a reasonable balance between the amount of compensation they receive and the services they provide to plan participants and the plan sponsor.

13.  My firm has assisted plan sponsors with restructuring and consolidating their investment options and vendors for their retirement plans offered plan participants and beneficiaries. For instance, as early as 2005, my firm assisted the **REDACTED** school district in the country streamline their 403(b) plan and move from an insurance model to more of an

institutional 401(k) model. In 2008, the firm assisted a not-for-profit plan sponsor to establish an ERISA 403(b) plan for their employees, including the designing and selection of an investment menu.

14. In 2011, we were retained by a not-for-profit plan sponsor to assist the client in designing and selection an investment menu. We also assisted a large university for their ERISA 403(b) plan to implement a new lower-cost institutional investment menu from a variety of fund families. During that year, we also assisted another 403(b) plan sponsor in moving from an annuity platform to a mutual fund platform lower costs to plan participants.

15. As another example, in 2014, Innovest assisted a large public university consolidate its 403(b) plan providers from eight to single provider. Total plan assets were greater than $500 million. The plan moved from individual contracts to a modern plan sponsor agreement. During that year, Innovest also was retained by a REDACTED school district to evaluate their current 403(b) plan design and system. At the time, the client had six different 403(b) providers and a total of 481 proprietary investment options. Through this process, the client transitioned to a single 403(b) provider with a nonproprietary investment menu. The process resulted in price reduction for both administrative and investment fees. Innovest assisted another large public school system to move from a proprietary investment option menu to low cost institutional investment menu with the same recordkeeper.

16. In 2017, we were retained by a public university to assist them in consolidating their 403(b) plan providers to a single recordkeeper and an institutional investment menu. During that year, Innovest also was retained by one of the largest public school systems in REDACTED REDACTED to assist them in consolidated their 403(b) plan providers to a single provider and create an institutional investment menu.

17.     Innovest has been recognized in numerous publications including:

- *PlanAdviser,* Top 100 Retirement Plan Advisers of the Year, 2018, 2016, 2015, 2014
- *National Association of Plan Advisors, Top DC Advisor Firm, 2017*
- *Pension & Investments*, Best Places to Work in the Nation, 2017, 2016 and 2014
- *Financial Times,* Top Registered Investment Advisers, 2016
- *Employee Benefit Adviser*, Most Influential Women in Benefit Advising (Innovest President Wendy Dominguez), 2016, 2014
- *Pension & Investments*, Eddy Award, 2016
- *PLAN SPONSOR*, The Retirement Plan Adviser Team of the Year, 2014 to 2015
- *Financial Advisor*, Top National Financial Advisor, #23 in the nation, 2014
- *Denver Business Journal*, Best Places to Work, 2013
- *Financial Advisor*, Top National RIAs, 2012
- NABCAP, Premier Advisors, 2009, 2010, 2011, 2012, 2013, 2014

18.     In March 2016, Innovest received an Eddy award from *Pensions and Investments* recognizing our work with a large University's 403(b) plan on their retirement plan conversion communication to participants. As a result of our collaborative communication efforts, the University now offers modern and streamlined plans to its faculty and staff.

19.     In September 2014, Innovest was selected as the Retirement Plan Adviser Team of the Year in the nation by PLANSPONSOR, one of the most prestigious awards in the retirement plan business. The nomination by our clients and their vendors and selection by our industry colleagues for this prestigious award displays our thought leadership in retirement plan consulting, our commitment to our clients, and our proven expertise in implementing custom solutions to best meet client's unique needs.

20.     I was appointed by Governor Hickenlooper to serve on the Metropolitan State University Board of Trustees in 2016.

21.     I was appointed to the Advisory Council of the University of Denver Reimann School of Finance in 2018.

22.     A copy of my curriculum vitae is attached hereto as **Exhibit 2.**

23.     I have never previously testified at trial or by deposition as an expert witness.

**IV.     Executive Summary**

24.     Cornell's failure to remove the CREF Stock Account and the TIAA Real Estate Account as of September 1, 2010 and map those assets to their default mapping fund caused the Plans losses of $202,078,109.32 for the CREF Stock Account and $3,936,875.74.

25.     Cornell's failure to create a single best of class line up as of September 1, 2010 and map all other assets in the Plans to that line up (with the exception of CREF Stock Account and TIAA Real Estate Account noted above) caused the Plans losses of $124,707,240 for the Fidelity investments in the Plans and $39,811,544.24.

26.     Cornell's failure to conduct any investment monitoring and to remove underperforming funds, funds inappropriate for the Plans and funds without a sufficient performance history cause the Plans losses of

27.     Cornell's failure to follow the recommendation of CAPTRUST on July 31, 2013 and remove underperforming funds, non-scored funds and inappropriate funds from the Plans cause the Plans losses of $148,651,884.

28.     Had the Cornell Defendants provided the lower-cost share classes of these TIAA-CREF mutual fund options from August 17, 2010 through December 31, 2011, and using the investment returns of lower-cost shares to account for lost investment opportunity, the Plans suffered $336,577 in losses.

**V. Prudent Fiduciary Practices**

29.     A fiduciary of a defined contribution plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA") is held to strict fiduciary standards under ERISA. The fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants

8

and beneficiaries."[1] One must act "for the exclusive purpose" of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan".[2] Of critical importance when making investment decisions, the fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims".[3] This means fiduciaries are held to the standard of a prudent financial expert. Throughout this report, I describe the actions of a "prudent fiduciary", which refer to the actions of plan fiduciaries acting under these standards.

### A.    Plan fiduciary governance

30.    The fiduciary for a 403(b) plan must establish a clear and defined fiduciary governance structure. This governance structure begins with the formation of a retirement plan committee tasked with the oversight of plan investments and expenses charged to plan participants for investment management and administrative services. The roles and responsibilities of all parties involved should be clearly defined, acknowledged, and documented in writing.[4]

31.    The committee should meet on a regular and consistent basis, at least quarterly, to make decisions related to the retirement plan. The committee should document all actions, including what alternatives were considered, what data was used in making the decisions, what action was taken, and the reasons for such action. The decisions should be documented in formal meeting minutes approved by the committee, which represent the official record of the decision-making process and provides the accurate reflection of the reasoned decisions of the fiduciaries.

---

[1] 29 U.S.C. §1104(a)(1).
[2] 29 U.S.C. §1104(a)(1)(A).
[3] 29 U.S.C. §1104(a)(1)(B).
[4] See, e.g., Fiduciary360, *Prudent Practices for Investment Stewards*, Practice S-1.2 (2007); see also Fiduciary360, *Prudent Practices for Investment Stewards,* Practice S-1.2 (2011).

9

32.     Documenting the fiduciary process is critical to prudent fiduciary practices. As the Department of Labor emphasized: "Prudence focuses on the *process* for making fiduciary decisions. Therefore, it is wise to document decisions and the basis for those decisions."[5] To be sure, "[c]areful documentation is critical in establishing procedural due diligence—a key factor in demonstrating good fiduciary practices."[6]

33.     The fiduciaries selected to serve on a fiduciary committee should have the necessary qualifications and training to carry out their fiduciary responsibilities. They should be free from conflicts of interests and able to attend regular meetings and have the desire and willingness to serve in a fiduciary capacity on behalf of plan participants and beneficiaries.

**B.      Investment Policy Statements**

34.     It is an accepted and recognized prudent fiduciary practice for plan fiduciaries to adopt an Investment Policy Statement (IPS). The written IPS serves as the foundation for all investment decisions for the retirement plan.

35.     Fiduciaries following best practices will create a robust, clear and detailed IPS to ensure that prudent decisions are made regarding the savings of plan participants. Following a written IPS has an overwhelming impact on long-term fiduciary process. A written IPS provides appropriate guidance on construction and ongoing management of a 403(b) plan, providing consistency and guidance to new fiduciaries. This is because the IPS represents the standards set by the fiduciary to govern its conduct. It is a document that should provide the framework so that consistent decisions are made, today and in the future.

---

[5] Dept. Of Labor, *Meeting your Fiduciary Responsibilities,* p. 2, https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/meeting-your-fiduciary-responsibilities.pdf.
[6] Vanguard, *Best Practices for Plan Fiduciaries,* p. 15, https://institutional.vanguard.com/iam/pdf/BestPracticesPlanFiduciaries.pdf; see also *id.* p. 11 ("Document all committee actions and decisions."); Mercer Investment Consulting, Inc., *DC Fee Management—Mitigating Fiduciary Risk and Maximizing Plan Performance,* p. 7 ("It is critically important that plan fiduciaries address their responsibilities around DC plan fees, document their efforts through committee minutes or other official records…").

36.     The IPS must clearly set criteria for how a fund is initially included, monitored, removed and replaced in the plan. It should outline the due diligence criteria of candidate funds.

37.     The IPS should include the operating procedures in the event of sequentially deteriorating funds so the preparation of removing and replacing funds is smooth. In my experience, if an actively managed fund does not have a minimum three years of performance history, it would not get through any reasonable due diligence screening process. Five years of performance history would be optimal.

38.     If an IPS is adopted by the fiduciaries, they must follow its terms and ensure that they are continuously monitoring the requirements of the IPS. Failing to follow the terms of the IPS is evidence that they failed to employ a prudent investment process because they violated the standards they adopted to govern their conduct. The fiduciaries must sufficiently document a departure from the IPS's terms and explain that course of action. The IPS should be formally reviewed annually.

C.      **The development of a streamlined investment menu**

39.     In my experience, a prudent fiduciary conducts appropriate due diligence to develop an investment menu from which plan participants invest their retirement savings. This is a fundamental step that any prudent fiduciary must undertake when overseeing a defined contribution plan.

40.     In developing an investment menu, a prudent fiduciary seeks to create a balanced well-diversified menu from which a full range of portfolios may be built. In my experience, our firm recommends a streamlined investment menu with coverage over major asset classes, including domestic equity (small-, mid-, and large-cap), international equity, fixed income, and target date or asset allocation funds. It is recommended, particularly for domestic (Large

11

Company Blend) and international (Foreign Large Blends) equity, to offer passively managed investment options for core options to complement any actively managed funds that are included within growth or value investment strategies for the same asset class.



41.     To the extent an actively managed fund is selected for inclusion or retention in an investment lineup, the fiduciary must make a reasoned determination that the actively managed fund is likely to generate returns in excess of the benchmark index and fees in subsequent periods. A strong justification must be demonstrated because a passive lineup generates a market return at a lower fee. There is no justification for undertaking the tracking error and higher fees through active management if the goal is simply to match the benchmark.

42.     Sector funds that are concentrated to a specific industry sector (e.g., healthcare, utilities, natural resources and precious metals) are not recommended to be offered within the core investment menu. These investments lack diversification and exhibit higher volatility than the traditional investment strategies employed in the recommended asset classes and investment

styles outlined above. They also tend to have higher expenses than core investment options that are deemed suitable for participants to create a diversified portfolio.

43.     The streamlined investment menu is structured in a multiple tiered structure. Tier I includes target date investments for investors who desire a simple diversified approach to investment. Tier II include the "core" investments for investors who want a more hands-on investing style. And for those investors who want an expanded choice of investments, Tier 3 provides a self-directed brokerage option through the recordkeeper that allows access to thousands of available options. In my experience, only 2–3% of plan participants (as measured by assets) elect a brokerage option.

44.     In creating an investment menu, an analysis of qualitative and quantitative factors is conducted for available candidates to identify a single best of class investment for each asset class and investment style deemed suitable for the menu. In my experience, a best of class investment menu benefits employees in making their investment decisions and assists the committee in fulfilling their fiduciary responsibilities in overseeing plan investments.

45.     When recommending an investment menu, prudent fiduciaries select quality, low cost investment options. An open architecture with no proprietary fund requirement is always the prudent course of action. A prudent fiduciary would not allow a plan's recordkeeper to place their proprietary funds in the investment menu without conducting a proper due diligence process.

46.     When multiple share classes are available for a given investment option, a prudent fiduciary selects the lowest cost share class available. This is because mutual funds issue multiple share classes that provide the same underlying investment pool but that deduct different amounts of expenses from the pool. The only difference between institutional and retail shares is

13

the fees that are deducted from participant accounts. Because institutional shares have lower expenses, plan participants experience greater investment returns as a result.

47.     Very large plans (plans in excess of $1 billion) have an even greater ability to reduce investment expenses. For example, the Vanguard Institutional Index Instl Fund (VINIX) has an expense ratio of 0.04%. The Vanguard Institutional Index Instl Plus Fund (VIIIX), which has the identical underlying portfolio of the Index Instl Fund, but a minimum of $100 million in that share class, has an expense ratio of 0.02%. Therefore, streamlining investment to a single best of class line up creates the opportunity for very large plans to further reduce costs.

48.     Once a well-diversified menu is approved, a prudent fiduciary removes any investment options that were previously included in the plan that were not selected for inclusion in the recommended menu. In my experience, the assets of the removed funds would then be mapped to the best in class fund in the same asset class, and to the extent there is no comparable asset class in the recommended menu, mapped to the qualified default investment alternative.

**D.     Due diligence in the selection, monitoring and removal of plan investments**

49.     A fiduciary must engage in a prudent and thorough process for the selection, monitoring and retention of investment options provided to plan participants. This process must be followed for each investment option included in the plan.

50.     To appropriately evaluate an actively managed fund for potential inclusion within a plan, a prudent fiduciary would perform an evaluation of the fund's annualized and rolling historical performance over 1-, 3-, 5-, and 10-year periods, peer group rankings, risk metrics, expenses, and other quantitative and qualitative measures.

51.     When monitoring investment options, standard fiduciary practices include thoroughly evaluating an investment option's performance on a quarterly basis. For actively

managed funds, time-weighted returns and volatility of returns must be evaluated over a variety of time periods, including rolling three-year period, and must compare favorably with the performance of the appropriate benchmark index or passively managed equivalent. An analysis of qualitative factors must also be considered.

52.     Certain events may trigger additional due diligence of an investment option by a fiduciary to determine whether the options should be maintained. These events must be recorded and evaluated, and may include personnel turnover in the fund management, changes in investment style of the portfolio, and failure to adhere to the stated investment approach or strategy. Sector funds may be especially sensitive to external triggering events, such as new regulations, legislation or political activities.

53.     The fiduciary of the defined contribution plan may engage the services of an investment consultant to assist in the oversight of plan investments. The fiduciary must not blindly rely on the advice of a consultant in carrying out its fiduciary obligations. It must carefully monitor the performance of the consultant on an ongoing basis. The fiduciary must have a level of familiarity with performance measures and other metrics used by the consultant to evaluate fund options. Without this understanding, fiduciaries are unable to make informed decisions to ensure the plan maintains prudent investment alternatives. When a fiduciary chooses not to follow the investment recommendations from the consultant, the fiduciary must document its reasoned decision for its actions.

## VI.     Factual Background

54.     The Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca ("CURP" or "Retirement Plan") is a 403(b) plan.[7] Cornell's Board of Trustees

---

[7] CORNELL027154.

serves as the fiduciary for the CURP.[8] The Cornell University Tax-Deferred Annuity Plan ("TDA Plan") is a 403(b) plan.[9] The CURP and TDA will collectively referred to as the "Plans." Cornell's Board of Trustees serves as the fiduciary for the CURP.[10] As of April 7, 2011, Cornell's Board of Trustees delegated oversight authority to the Retirement Plan Oversight Committee ("RPOC").[11] The RPOC Charter states that the Chair of the RPOC shall at all times be the Vice President for Human Resources of Cornell University, "who shall determine the number of other RPOC members and appoint all of the other RPOC members."[12] Mary Opperman has at all relevant time served as the Chair of the RPOC. CAPFINANCIAL Partners, LLC, d/b/a CAPTRUST Financial Advisors ("CAPTRUST") served as a fiduciary to the Plan. CAPTRUST Investment Advisors Barry Schmitt and Jim Strodel served as the main contacts with the RPOC and attended RPOC meetings on behalf of CAPTRUST. As of September 30, 2010 the CURP had $1,113,957.436.11 in assets invested with TIAA and $261,946,407.49 in invested with Fidelity. As of September 30, 2010 the TDA Plan had $574,218,461.53 in invested with TIAA and $254,116,771.10 in assets invested with Fidelity.

55.    Prior to the delegation of the Plans' oversight authority to the RPOC, on May 28, 2010 Cornell's internal auditing firm for the Plans, TCBA Watson Rice LLP (a firm that also provides investment advisory services to 403(b) plans) identified in a Report to the Plan Administrators (Cornell's Board of Trustees) that the Retirement Plan had a deficient internal control.[13] The internal control deficiency noted was that "[t]he plan has not adopted a formal investment policy. ERISA imposes a fiduciary responsibility requiring a plan, among other

---

[8] CORNELL027154.
[9] CORNELL027163.
[10] CORNELL027163.
[11] CORNELL019448.
[12] CORNELL019448.
[13] CORNELL025340.

things, to manage plan assets solely in the interest of participants and beneficiaries and diversify investments to minimize the risk of large losses."[14]

56.    The RPOC held its first meeting on November 29, 2010. At the meeting, the RPOC did not conduct any investment monitoring or review.[15]

57.    On April 7, 2011, the Executive Committee of the Board of Trustees approved a charter to create the RPOC.[16] The charter charged the RPOC with "the development, adoption and implementation of an Investment Policy Statement ('IPS') for the Plans, and the selection and monitoring of investment options for the Plans consistent with the IPS."[17] The primary duties of the RPOC were to "provide policy oversight for the selection of investment options for the plans by means of the IPS, and establish criteria to review and monitor the investment performance of the investment option, and update the IPS as required."[18]

58.    In 2011, the RPOC met two times as a group for a total of two hours and twelve minutes (2:12) for the year. At the meetings, the RPOC did not conduct any investment monitoring or review.[19] Cornell retained CAPTRUST as its Investment Advisor as of December 8, 2011.[20] CAPTRUST's agreement with Cornell indicates that it will provide plan level advice, investment menu development and ongoing investment due diligence, among other things.[21] The agreement further states that "CAPTRUST will provide specific investment advice to Client in respect to the Plans; however, Client acknowledges that it has retained, and will exercise, final decision-making authority and responsibility for the implementation of any recommendations made to the Client by CAPTRUST. CAPTRUST will serve as a fiduciary as defined by ERISA

---

[14] CORNELL025340.
[15] CORNELL021932.
[16] CORNELL019448.
[17] CORNELL019448.
[18] CORNELL019448.
[19] CORNELL021930; CORNELL021931.
[20] CAPTR_0000001.
[21] CAPTR_0000001.

§3(21)(A)(ii) with regard to the selection of investment manager(s) or mutual funds(s) available to the Plans within the platform provided by the Plan's Administrator."[22] The agreement indicates that CAPTRUST's fee was a $165,000 flat annual fee in year 1 and $125,000 plus an annual adjustment of 5% from year 2 forward.[23]

59.     The first meeting CAPTRUST attended was on January 11, 2012. At the meeting, CAPTRUST noted that "TIAA-CREF has several redundant asset classes as well as underperforming accounts. Fidelity current offering (180+ funds) has significant redundancy, many underperforming accounts and too many choices in general. ... [.]"[24] CAPTRUST noted that "[c]urrently there is a limited process in place to make investment decisions,'" and that there was a "[f]iduciary obligation to effectively select, monitor, and communicate investment options available to plan participants."[25] CAPTRUST further noted that "TIAA-CREF, as well as most providers, offers an open investment architecture in order to create a "best in class" fund line up. Recommendation would be to create a 'best in class' fund line up within TIAA-CREF's investment structure. ... Asset class overlap – our recommendation would be to streamline the investment structure to eliminate overlap of funds which causes confusion to faculty and staff."[26] With respect to the Fidelity funds in the Plans, CAPTRUST noted that "Fidelity offers an open investment architecture in order to create a 'best in class' fund line up. Recommendation would be to create a 'best in class' fund line up within Fidelity's investment structure."[27]

60.     CAPTRUST noted that Fidelity had "[s]lightly higher overall expense due to active management philosophy"[28] and "[s]ignificant Asset class overlap-our recommendation

---

[22] CAPTR_0000001.
[23] CAPTR_0000001.
[24] CAPTR0047903.
[25] CAPTR0047903.
[26] CAPTR0047903.
[27] CAPTR0047903.
[28] CAPTR0047903.

would be to streamline the investment structure to eliminate overlap of funds which causes confusion to faculty and staff. For example, Fidelity offers Ithaca campus participants the choice of 21 Large Cap Growth Funds."[29] CAPTRUST indicated that the total average weighted expense was 0.51% for TIAA-CREF and 0.61% for Fidelity funds.[30] CAPTRUST recommended the "[c]reation of a condensed and consolidated 'tiered' investment structure consistent across plans and providers."[31] One of the advantages, according to CAPTRUST, was that the "[a]bility to negotiate fees is enhanced."[32] CAPTRUST further recommended a "[s]treamlined fund line up across three vendors using 'best in class' fund structure[.]"[33] This would result in the "[e]limination of overlap[, and] [e]limination of underperforming funds ..."[34] CAPTRUST indicated that the negatives of staying with the status quo would be "[c]ontinued participant confusion[,] [d]isparate fund structure[,] [c]omplex and inefficient investment due diligence[,] [f]iduciary oversight more difficult [and] [c]ontinued disjointed administration[.]"[35] The RPOC noted that their goals for the next several months included, among other things, "implementation of Investment Policy Statement (IPS), investment menu redesign for TIAA-CREF, Fidelity and Vanguard; understanding plan expenses and methodology for monitoring plan investments in the future, and fee benchmarking."[36]

61.     As of April 13, 2012, CAPTRUST indicated to Cornell that their fund analysis methodology would evaluate both quantitative and qualitative factors such as risk, style, expenses and management issues.[37] CAPTRUST also noted that "[r]esearch indicates the impact

---

[29]CAPTR_0047903.
[30] CAPTR_0047903.
[31] CAPTR_0047903.
[32] CAPTR_0047903.
[33] CAPTR_0047903.
[34] CAPTR_0047903
[35] CAPTR_0047903.
[36] CAPTR_0047903.
[37] CAPTR_0047903.

of 'choice overload'. Choice overload suggests that the more options participants have, the more likely they are to become overwhelmed and moved towards inaction lowering participation rates and/or resulting in poor asset allocation."[38]

62.     On July 24, 2012, CAPTRUST presented initial asset class recommendations.[39] CAPTRUST recommended the use of a passive US Core Bond, passive Large Cap Blend, passive Small to Mid-Cap Blend and passive Developed Market Index.[40] CAPTRUST recommended that sector funds would only be available through a brokerage window.[41]

63.     On November 19, 2012 the RPOC adopted an Investment Policy Statement ("IPS")—approximately two years and six months after Cornell was notified by an outside auditor that the lack of an IPS was an internal control deficiency. CAPTRUST proposed that Cornell retain 23 investment choices and noted under the proposed outcome "[m]anageable due diligence for RPOC".[42]

64.     The IPS was signed by Mary Opperman on November 28, 2012.[43] The IPS provides that it is "designed to provide meaningful director for the Investment Fiduciaries of the Institution and the designated Investment Consultant in the management of Plan investments." The IPS, among other things the IPS, "[i]dentifies appropriate investment asset classes for inclusion in the Plans' menus of alternatives; [e]stablishes a prudent process for selecting appropriate investment alternatives to be made available for participant direction; ... [e]stablishes a prudent process by which selected investment alternatives generally will be monitored for compliance with this IPS ... [.]"[44] The IPS further provides that the RPOC "as an

---

[38] CAPTR_0047903.
[39] CORNELL019443.
[40] CORNELL019443.
[41] CORNELL019443.
[42] CORNELL022229.
[43] CORNELL013763.
[44] CORNELL013763.

Investment Fiduciary, has the responsibility to select the array of investment alternatives to be made available for participant investment and then provide on-going oversight of those investment alternatives[,]"[45] and that "[t]he Committee will review the Plans' investment alternatives following the regimen outlined below in this IPS."[46]

65.     The IPS provides the quantitative and qualitative standards for selection and retention of investment options within the Plans.[47] Among other things, "[t]he expense ratio for a given investment should, in most cases, fall below the average expense ratio for the peer group. … investment managers generally will be expected to maintain a broadly diversified portfolio and will be expected to avoid unreasonable overweighting in a given investment, industry or sector. Volatility, as measured by Standard Deviation, should be within reasonable ranges for the given peer group. Other risk measures, including Sharpe ration, $M^2$ and beta, may be used as well. … [w]ith few exceptions, all actively managed investments should rank in the top 50% of their given peer group for the 3 or 5 year annualized period at the time of their selection."[48] Investments were to be reviewed, "generally on a quarterly basis."[49]

66.     The RPOC did not meet for an eight-month period from November 19, 2012 until July 31, 2013. On June 28, 2013, CAPTRUST advisor Jim Strodel drafted an internal e-mail indicating that "we have been asked by Cornell to provide some type of interim investment review to their Committee."[50] On July 2, 2013, CAPTRUST's Senior Director of Investment Research drafted an internal e-mail stating "Jim/Barry – Is this the meeting we need to have some sort of quant review on their 5,000 funds?"[51] The next day, July 3, 2013, CAPTRUST

---

[45] CORNELL013763.
[46] CORNELL013763.
[47] CORNELL013763.
[48] CORNELL013763.
[49] CORNELL013763.
[50] CAPTR_0053223.
[51] CAPTR_0053254.

21

Investment Advisor Barry Schmitt wrote in response that "We should probably have a quick call to discuss. We are simply trying to provide some 'fiduciary cover' until the fund consolidations occur."[52] Barry Schmitt further wrote that "[t]o put this in perspective, we were hired in December 2011 and we have yet to do a review AND the recommended fund menu that will be delivered at the end of July [2013] may not be implemented until mid-2014 (or later)."[53]

67.     On July 15, 2013, CAPTRUST, via its Investment Advisor Barry Schmitt, wrote in a presentation given to the University of Maine that in the current 403(b) landscape "[c]urrent multiple vendor, unconstrained fund line-up environment makes it nearly impossible for plan fiduciaries to fulfill fiduciary obligations."[54] The report to the University of Maine further noted that plan oversight included "[f]ollowing a prudent process for the selection & monitoring of investments[.]"[55] CAPTRUST also wrote to the University of Maine in July 2013 that there were benefits to creating a best in class investment menu and that in doing so "[f]unds will be proactively evaluated and replaced as appropriate given quantitative, qualitative and/or style purity concerns."[56]

68.     On July 31, 2013, CAPTRUST provided a quantitative only review of the Plans' investment options.[57] CAPTRUST provided a dashboard document listing 359 fund. The presentation was contrary to what CAPTRUST indicated was their full review process on April 13, 2012. Additionally, CAPTRUST did not provide any underlying performance data to the RPOC Committee that would allow the RPOC to perform an informed review of the color coded indicators on the dashboard. In contrast, on July 15, 2013, CAPTRUST provided the University

---

[52] CAPTR_0053254.
[53] CAPTR_0053254.
[54] EX176.
[55] EX176.
[56] EX176.
[57] CORNELL020122.

of Maine with underlying performance data for Maine's funds labeled as "FUND FACTS SHEETS & COMPARISONS."[58] These fund fact sheets given to the University of Maine, but not to Cornell's RPOC during the same period, gave a short narrative analysis of each fund and several key performance measures. The comparisons document gave side by side performance measures for each asset class within the University of Maine's plan that would assist Maine's oversight committee to evaluate like investment options that were readily available within the plan. This critical information for independent evaluation was not given to the RPOC until 2017.

69.     CAPTRUST's quantitative only analysis revealed that one hundred five funds in the Plans, representing $927,138,983 in assets, raised quantitative factor concerns, i.e. performance, style and/or expense deficiencies. Funds on the Fidelity platform represented $222,336,941 of this amount. Funds on the TIAA platform represented $704,802,042 of this amount. Eighteen of the funds in the quantitative analysis did not include any performance indicators, representing $75,725,949 in assets at the time of the presentation. These funds are represented with an A in **Exhibit 3**. Sixteen funds were marked as failing quantitative criteria, representing $45,778,096 in assets. These funds are represented with a B in Exhibit 3. Thirty-three trailed in several performance categories, partially failing the quantitative criteria and representing $619,944,873 in assets. These funds are represented with a C in Exhibit 3. Thirty-eight additional funds noted a yellow in a performance area,[59] but do not provide any underlying

---

[58] EX176.

[59] CAPTRUST indicates on one of its later presentations to Cornell and to the University of Maine that a yellow triangle in a performance area means the following: **3/5 Year Risk – adjusted performance.** The investment option's 3 or 5 year Annualized Risk Adjusted Performance falls below the 50th percentile of the peer group. **3/5 Year Performance v. Peers.** The Investment option's 3 or 5 year Annualized Peer Relative Performance falls below the 50th percentile of the peer group. Cornell's IPS states that "[W]ith few exceptions, all actively managed investments should rank in the top 50% of their given peer group for the 3 or 5 years annualized period at the time of their selection. **3/5 Year Style.** The investment option's 3 or 5 year R-Squared measure falls below the absolute threshold set per asset class. **3/5 Year Confidence.** The investment option's 3 or 5 year Confidence Rating falls below the 50th percentile of the peer group. CORNELL015005; EX179; EX002_CORNELL013763.

performance data to evaluate the underperformance, representing $185,690,065 in assets.[60] These funds are represented with a D in Exhibit 3. Simultaneously, on July 15, 2013, CAPTRUST recommended that the University of Maine consider a replacement for TIAA-CREF Lg-Cap Val-Inst,[61] which is a fund CAPTRUST listed as yellow performance in 3-year risk adjusted performance.[62] CAPTRUST also recommended freezing contributions to six annuity options. These funds are represented with a E in Exhibit 3. These annuities represented an additional $395,854,441 in assets at the time of the presentation. Cornell took no action on these recommendations. Simultaneously, on July 15, 2013, CAPTRUST recommended that the University of Maine consider elimination of the CREF Inflation-Linked Bond and CREF Global Equities.[63] CAPTRUST recommended that the University of Maine freeze contributions to CREF Growth, CREF Global Equities and CREF Equity.[64] Total expense ratio that are in excess of the weighted average are marked in yellow on Exhibit 3. CAPTRUST recommended that the RPOC consider the replacement of all funds on the Fidelity platform except for Fidelity Freedom Funds (Target Date Funds), PIMCO Total Return (PTTRX) and Fidelity Contrafund K (FCNKX).[65] CAPTRUST recommended that the RPOC either consider the replacement or freezing of all funds on the TIAA platform except TIAA-CREF Money Market (TCIXX), TIAA Traditional, CREF Social Choice, TIAA-CREF Target Date Funds, CREF Stock, T. Rowe Price Large Company Growth, American EuroPac Growth and TIAA Real Estate.[66]

---

[60] CORNELL020122.
[61] EX176.
[62] CORNELL020122.
[63] EX176.
[64] EX176.
[65] CORNELL020122.
[66] CORNELL020122.

70.     On July 31, 2014 CAPTRUST provided a "RE-CAP OF DECISIONS TO DATE – ASSET CLASS REPRESENTATION."[67] The menu construction objectives included, among other things, "[i]nclude current investments that are appropriate and meet criteria established within the IPS."[68] CAPTRUST also observed that the Plans' current available investment options contained "[s]ector funds and boutique asset classes[.]"[69] CAPTRUST noted that its quantitative analysis "based on analytics in the Investment Policy Statement ... [s]upports the recommendation of reduced menu to 'most appropriate' by asset class[.]"[70]

71.     Subsequently, on September 3, 2014, CAPTRUST advisor Barry Schmitt noted in a presentation to the Investment Advisory Committee for Virginia Commonwealth University "*PIMCO Total Return* (Score of 74). Fund manager Bill Gross' performance has been volatile over the past few years, but long-term performance remains strong. CAPTRUST is encouraged to see recent performance pick up and view the new Deputy-CIO structure as a significant part of that improvement. Recently exposure to emerging market debt has helped performance. CAPTRUST continues to monitor this fund closely given the significant changes that have taken place in 2014 (CIO resignation and various published articles about the firm)."[71] On September 3, 2014, Mr. Schmitt reported to Virginia Commonwealth University that "Fidelity Freedom Funds have a CAPTRUST score of 79 (out of 100). These target date funds demonstrated lagging performance issues in several underlying areas (commodities exposure and several large cap value managers), a recent portfolio manager change, and changes to the asset allocation structure. ... [.]" On CAPTRUST's September 17, 2014 report to the RPOC, CAPTRUST indicated that the PIMCO Total Return and Fidelity Freedom Funds had overall ratings of

---

[67] CORNELL020122.
[68] CORNELL020122.
[69] CORNELL020122.
[70] CORNELL020122.
[71] EX177.

caution, with no underlying performance numbers.[72] CAPTRUST testified that the methodology for scoring using the appendix on the IPS is consistent and used as a Form document.[73] In its Quarterly Review to the University of Maine for the period ending September 30, 2014, CAPTRUST indicated that the PIMCO Total Return had an overall score of 67 and should be "considered for termination."[74]

72.     The RPOC did not ask for, and was not presented with any further monitoring analysis until 14 months later on September 30, 2014. As of the September 2014 dashboard presentation, one hundred forty-five (145) funds raised concerns in the review.

73.     On October 1, 2014, investments selections were separated into three tiers by vendor. Twenty-four funds made up Tier II for TIAA-CREF with a set of Lifecycle Index funds. Twenty-one funds made up Tier II for Fidelity with a set of target date funds. Fidelity Tier II included the PIMCO Total Return Fund and Fidelity Freedom Funds. Tier I and II for Fidelity and TIAA continued to appear on the dashboard reports. The remaining funds were not deemed appropriate for Tiers I and II. The Cornell fiduciaries kept them in the Plans by creating a Tier III. The remainder of the fund that were sent to Tier III received no dashboard indicators that were ever again presented to the RPOC, nor were they monitored. On December 3, 2014, after the separation of investments into tiers, CAPTRUST provided the RPOC with funds fact sheets for Tier I and II for the first time. CAPTRUST had the capability to provide these fact sheets to the RPOC at the RPOC's first meeting. Barry Schmitt and Jim Strodel simply had to request the underlying information from their internal teams.[75] They did not do so.

---

[72] EX177.
[73] Deposition of Barry Schmitt, 115:10-116:3.
[74] EX178.
[75] Deposition of James Strodel, 128:18-129:16.

74.    On December 3, 2013, the RPOC meeting minutes noted that "[i]n order to be fully fiduciary prudent under existing regulatory guidance, Cornell should consider phasing out, as soon as may be practicable, all investment funds Cornell will not monitor, and encourage/facilitate the brokerage option for those participants affected[,]"[76] and that "RPOC and CAPTRUST will work on defining a process to make decisions on the funds currently found in the Tier III menu of funds."[77]

75.    In April 2015, CAPTRUST internally created a spreadsheet indicating 106 funds within the Plans failed the IPS; however, the internal spreadsheet was not shared with the RPOC.[78] The funds that failed because they were sector funds added an additional 31 investment funds to the list of 111 options indicating performance problems as of July 31, 2013. The RPOC did not meet as a full committee for a six (6) month period from December 3, 2014 until June 2, 2015. At the first meeting since selecting its best-in-class line up, the PIMCO Total Return fund received an overall score of 67 and was marked consider for termination.[79] As of June 2, 2015, 227 approximately 62%, over $552 million, of plan participant assets on the Fidelity platform remained in the unmonitored Tier III.[80] Approximately $725 million in plan participant assets on the TIAA platform remained in the unmonitored Tier III. On December 15, 2015, CAPTRUST noted that the RPOC decided in September 2015 to close and map funds that were failing performance guidelines.[81] It also noted that the RPOC decided to freeze contributions to Tier II investment accounts to new hires, but subsequent to the meeting it was determined that this was problematic, i.e. violated non-discrimination rules.[82]

---

[76] CAPTR_0013586.
[77] CAPTR_0013586.
[78] CAPTR_0030017; CAPTR_0029773.
[79] CORNELL015005.
[80] CORNELL015005.
[81] CORNELL011358.
[82] CORNELL011358.

76.     On March 31, 2016, CAPTRUST noted that funds in Tier III could be mapped to Tier I and II for "both accumulations and future contributions."[83] On June 29, 2016, CAPTRUST noted that the RPOC agreed in March 2016 to freeze all new contributions to the "approximately 130 funds on the Fidelity platform" by January 2017.[84] The next meeting, on September 28, 2016, CAPTRUST noted that the 130 funds on the Fidelity platform would be closed to new contributions in the spring of 2017.[85] On December 12, 2016, the RPOC indicated that the PIMCO Total Return Fund would be replaced with the Prudential Total Return Bond Fund.[86] The RPOC further noted that it wanted to "[r]educe number of funds [in Tier III] to a manageable level ~50 or so feels appropriate[,]"[87] and that "[f]ailing funds must be closed and assets mapped."[88] The meeting materials also noted under the heading of "Process for Monitoring/Closing Failing Funds" that the "IPS is clear about what constitutes an underperforming funds, but we should discuss the creation of a Process to determine action to take and timeline to allow regarding underperforming funds."[89] The RPOC did not have a process in place to remove an underperforming fund from its investment line up until December 2016 and that process was only put into place after the Chair of the RPOC openly inquired at the June 29, 2016 meeting about what would be required to remove a fund.[90] The RPOC wrote that "[i]nactivity could create risk."[91] The RPOC then put forth general guidelines to consider when terminating a fund noting that "[a]ssets will be mapped to like funds or target date funds (if no like fund exists) if no action is taken [by a plan participant upon termination of the investment

---

[83] CORNELL011361.
[84] CORNELL013413.
[85] CAPTR_0006763.
[86] CAPTR_0008486.
[87] CAPTR_0008486.
[88] CAPTR_0008486.
[89] CAPTR_0008486.
[90] Deposition of Mary Opperman, 177:2-14; CAPTR0013565; CAPTR0008486.
[91] CAPTR_0008486.

option]." The process would allow "at least 60 days advance notice to plan participants to allow them to make movement themselves."[92]

77.     On or about January 17, 2017, the RPOC approved general guidelines for mapping funds. The RPOC indicated they would "[b]ase mappings on the Morningstar classification at time of mapping"[93] but noted that "CAPTRUST's classification always supersedes the Morningstar classification if applicable."[94] By the period ending September 30, 2017, $213 million in Tier III Fidelity assets had been mapped; $310 million in assets remained in the Tier III Fidelity line up and $784 million remained in the Tier III TIAA-CREF line up. By the period ending March 31, 2018, $16 million in the Fidelity platform and $2 million on the TIAA-CREF platform were in the self-directed brokerage window.

78.     As of 2018, Cornell will monitor all remaining funds in Tier III.

### VII.   The Cornell Fiduciaries failed to implement a prudent fiduciary governance structure.

79.     Despite being instructed that an IPS served as an internal control for the governance of the Plans, Cornell did not adopt the Plans' IPS for two and a half years. Once adopted, the RPOC did not apply the IPS to the investments within the Plans for an additional one and a half years.

80.     The RPOC met sporadically, met for short periods of time, and failed to have meetings for long periods of time. The Chair of the RPOC, along with many of its members, stated they did not have any investment experience. The RPOC selected members who were too busy to attend meetings. This is in stark contrast to Cornell's Investment Committee, responsible for the University's endowment, that met quarterly for at least four hours and was staffed with

---

[92] CAPTR_0008486.
[93] CAPTR_0009705.
[94] CAPTR_0009705.

over 20 investment professionals. The faculty and administrative staff serving Cornell's Investment Committee made time to attend quarterly meetings.

81.     The RPOC did not have a process in place to monitor funds until late in 2014. The RPOC failed to follow CAPTRUST's recommendations on July 31, 2013 and failed to take any action on the eighteen funds CAPTRUST listed as not being evaluated and the sixteen funds listed as significantly failing quantitative criteria. Instead, the RPOC allowed these underperforming and mystery performance funds to remain in the Plans. The RPOC blindly accepted CAPTRUST's failure to evaluate eighteen of the Plans' investments without being provided any underlying data.

82.     The RPOC did not have a process in place to remove an underperforming fund until December 2016. This resulted in a failure to remove, or freeze future contributions to, a significant number of identified underperforming funds and funds that failed the IPS in the Plans. The RPOC continually demonstrated it did not have the capacity to remove underperforming funds despite being notified of funds with significant quantitative performance problems, qualitative issues and funds that failed Cornell's IPS.

83.     Overall, the RPOC meeting minutes do not reflect a reasoned decision-making process; instead, the meeting minutes reflect a group with no decision-making process resulting in indecision, delay and failure to act on information in a timely manner. For example, the RPOC added the PIMCO Total Return Fund to Tier II on October 1, 2014 despite serious qualitative issues with PIMCO that occurred in September 2014. CAPTRUST noted these issues in September 2014 in meetings with other Universities as well. The RPOC meeting minutes do not reflect any reasoned decision-making process to override concerns with that fund. There is no indication that CAPTRUST advised the RPOC of Fidelity Freedom Funds performance issues as

CAPTRUST had advised Virginia Commonwealth University during the same time period. Meeting minutes to not address the RPOC's analysis of why it included Fidelity Freedom Funds in the Tier II line-up when TIAA-CREF had a substantially similar product in the Plans that did not have the same performance concerns noted by CAPTRUST.

**VIII.   The Plan fiduciaries failed to engage in a prudent due diligence process for the selection, monitoring and removal of Plan investments.**

**A.   Failure to follow prudent fiduciary practices by creating a best of class investment menu and map all assets to a single provider menu as of September 1, 2010.**

84.     A prudent fiduciary would have implemented a Tier I and II, best-in-class, investment menu for the Plans as of August 2010. Plan fiduciaries did not institute an investment menu until October 1, 2014, and the recommended menu was provided for each vendor's platform. Implementing multiple investment menus across platforms is inconsistent with prudent fiduciary practices because a single investment line-up reduces duplication. Here, the two investment menus have the same 19 asset classes. The two investment menus had the exact same investment option for the following 12 assets classes: (1) Small Company Growth; (2) Small Company Blend; (3) Small Company Value; (4) Foreign Large Blend; (5) Foreign Large Value; (6) Medium Company Growth; (7) Medium Company Blend; (8) Medium Company Value; (9) Large Company Blend[95]; (10) Large Company Value; (11) Intermediate Corporate Bond;[96] and (12) Short Term Bond. A single investment menu creates economies of scale and allows a plan to leverage plan assets to create more pricing efficiency, e.g., lower cost share classes. A single investment menu reduces plan participant confusion.

---

[95] The TIAA platform additionally includes CREF Stock Account in the Large Company Blend asset class.
[96] The Fidelity platform additionally includes the PIMCO Total Return.

85.    CAPTRUST informed the RPOC of the benefits of an investment menu redesign and recommended removing nearly all funds currently in the Plans' platform.[97]

86.    Cornell should have implemented a best-in-class investment menu at least as of August 2010. The TIAA investment menu that Cornell ultimately implemented on October 1, 2014 with the exception of CREF Stock, TIAA Real Estate, BlackRock Investment Grade Bond Institutional Class and the Federated Short-Term Income Institutional (described below) offered a reasonable investment menu as of August 2010 that a prudent fiduciary would have implemented. The acceptable menu that should have been implemented for the Cornell Plans as of August 2010 is as follows:

| | |
|---|---|
| Small Company Growth | Prudential Jennison Small Company Q |
| Small Company Blend | Vanguard Small Cap Index Ins |
| Small Company Value | Goldman Sachs Small Value Inst |
| Foreign Large Bend | Amer Funds EuroPac R6<br><br>Vanguard Total Intl Stock Index Admiral |
| Foreign Large Value | MFS International Value R5 |
| Medium Company Growth | Eagle Mid Cap Growth R6 |
| Medium Company Blend | Vanguard Mid Cap Index Ins |
| Medium Company Value | JHancock Disciplines Value Mid Cap R6 |
| Large Company Growth | T Rowe Price Instl Large Cap Growth |
| Large Company Blend | Vanguard Inst Index |
| Large Company Value | MFS Value R5 |
| Target Date Funds | TIAA-CREF Lifecycle |

---

[97] CAPTR_0047903.

| Target Date Funds | TIAA-CREF Lifecycle Index |
|---|---|
| World Allocation | CREF Social Choice Account |
| Intermediate Term Bond | Vanguard Total Bond Market Index Inst |
| Capital Preservation | TIAA Traditional – Retirement Annuity |
| Cash and Equivalents – Money Market | CREF Money Market |

87.     I considered whether the TIAA investment menu asset class allocation represented a balanced, well-diversified menu from which a full range of portfolios may be built. I also evaluated quantitative and qualitative measures as of August 2010 to determine whether the investments within each asset class represented were prudent. A snapshot of the analysis of these funds is included in **Exhibit 4**; however, the attached exhibit does not contain analysis for the BlackRock Investment Grade Bond, Federated Short-Term Income, CREF Stock Account and TIAA Real Estate Account, which are discussed below.

88.     A prudent fiduciary would have mapped all funds to the best-in-class line up. Prudent fiduciaries would map eliminated funds to like asset classes within the best-in-class line up. When there is not a comparable asset class within the best-in-class line up eliminated investment options should be mapped to the QDIA, e.g., Fidelity Select Wireless should be mapped to the QDIA, Fidelity Large Cap Stock should be mapped to the Vanguard Institutional Index on the TIAA menu. In this case, the QDIA are target date funds. Cornell endorsed a similar process.[98]

---

[98] CORNELL027852.

89.    The rationale for excluding the BlackRock Investment Grade Bond Fund, the Federated Short-Term Income Fund, the CREF Stock Account, and the TIAA Real Estate Account is set forth in the following paragraphs.

## BLACKROCK INVESTMENT GRADE BOND

90.    As of August 2010, the BlackRock Investment Grade Bond Institutional did not have a 3-year track record. The fund was also relatively small with $272 million in assets. There was high turnover in 2009 of 166%.

## FEDERATED SHORT-TERM INCOME

91.    As of August 2010, the Federated Short-Term Income Institutional was relatively small with $929 million in assets. The funds nearly tripled in size from June 2009 to June 2010. The fund had higher than average expense and performance in the 60th percentile against its Morningstar peers for 10-years ending June 30, 2010.

## CREF STOCK ACCOUNT

92.    Variable annuities, which are almost identical to mutual funds when within a 403(b) plan, are not ideal for plan participants because of variable annuities' additional expense structure. The CREF Stock Account is a variable annuity that persists from the time that 403(b) plans only offered annuity products.

93.    The CREF Stock Account is an actively managed variable annuity that invests in a broadly diversified portfolio of common stocks across all capitalizations and several asset classes. As of December 31, 2009, the fund invested approximately 70% in domestic securities and 30% in foreign securities.

94.    Variable annuities, such as the CREF Stock Account, generally have a much higher cost to plan participants than similar, readily available mutual funds. For example, the

CREF Stock Account is offered as a Large Company Blend[99] (i.e., a fund that invests in large cap domestic securities) to the Plans' participants on the TIAA platform. The CREF Stock Account carried a 0.49% expense ratio. A Large Company Blend, the Vanguard Total Stock Market Index Institutional, carried a 0.05% expense ratio in 2010. Further, the Vanguard Total International Stock Index Admiral,[100] which provides investors with equity exposure to both developed and emerging international economies, carries a 0.12% expense ratio. The CREF Stock Account has four layers of fees—administration, management, mortality and expense, and distribution fees. These fees are excessive, and the mortality and expense charge provides no benefit for participants for the years it is paid prior to retirement.

95.    TIAA set as its own benchmark for measuring the performance of the Stock Account as a 70%/30% blend of the Russell 3000 Index and the MSCI All Country World ex USA Investable Market Index.[101] As of the end of 2013 the Stock Account had underperformed that benchmark for the past 5 and 10 years.[102] CAPTRUST's July 31, 2013 report reflects that the CREF Stock Account was in the bottom 50th percentile for 3/5 year risk-adjusted performance and 3/5 year performance relative to peers.[103] When compared against a 70%/30% mix of domestic and internal equities, the CREF Stock Account underperformed from 2000 through June 2010. See **Exhibit 5**.

96.    Further, Large Company Blends are most appropriate for passive funds because the market is well developed. In such a market, actively managed funds typically underperform

---

[99] This categorization refers to large-capitalization, U.S. stocks and is commonly benchmarked using indices, such as the S&P 500 index. Large cap blend domestic equity funds typically invest in domestic securities only. Cornell communicated this large cap blend investment style to Plan participants. See Exhibit 5 analyzing benchmark correlations.
[100] As discussed below, the Plans should have obtained the lower cost institutional share of the Vanguard International Stock Index Admiral.
[101] College Retirement Equities Fund, Form N-CSR (Dec. 31, 2013), https://www.sec.gov/Archives/edgar/data/777535/000093041314000983/c76098_ncsr.htm.
[102] College Retirement Equities Fund, Form N-CSR (Dec. 31, 2013).
[103] CORNELL020122; CORNELL015005.

passive alternatives. Consistent with this well-known principal, CAPTRUST's first recommendation to Cornell was to include only a passive Large Company Blend on both provider platforms.[104] Cornell followed this recommendation on Fidelity's platform, where it offered only a passive Large Company Blend. Further, the massive size and number of stocks in the CREF Stock Account makes it perform like an index fund; therefore, there is no value in investing in the CREF Stock Account over a Large Company Blend index fund (or Foreign Large Blend).

97.      As of August 2010, a prudent fiduciary of a like plan at that time would not have included the CREF Stock Account or would have removed it due to its consistent, long-term underperformance relative to its own specified benchmark, its index-like behavior and high costs versus readily available passive, low-cost options within the Plans. A prudent fiduciary would not have included CREF Stock Account in Tier II in 2013 for the same reasons.

98.      As noted above, the CREF Stock Account had exposure to 70% domestic securities and 30% international securities. The same exposure could have been achieved through the use of readily accessible alternatives—Vanguard Total Stock Market Index and the Vanguard Total International Stock Index—for a much lower cost and with better historical performance.

99.      As an alternative to mapping all CREF Stock Account assets in the Plans to the Large Company Blend option, had Cornell mapped participant funds in the CREF Stock Account pro rata between the Vanguard Total Stock Market Index and the Vanguard Total International Stock Index, they could have achieved the same asset allocation of participant funds, but with better performance and lower costs.

---

[104] CORNELL019443.

100.    Had Cornell offered a mix of these Vanguard funds in place of the CREF Stock Account to achieve the desired equity exposure as of September 1, 2010, Plan participants would have gained an additional **$14,414,259.79** in wealth.

**TIAA REAL ESTATE**

101.    The TIAA Real Estate Account is a real estate fund that intends to invest between 75% and 85% in assets directly in real estate or real estate-related investments while producing returns primarily through rental income and appreciation.[105] The fund invests between 15% and 25% in liquid investments (essentially cash) to satisfy redemptions.[106] The TIAA Real Estate Account also invests in a small portion in a Real Estate Investment Trust ("REIT") and other real estate related investment vehicles.[107] Unlike REITs, the TIAA Real Estate Account invests directly in real estate properties.

102.    The TIAA Real Estate Account identified a composite benchmark of 75% NCREIF index, 20% in cash and 5% in the Wilshire RE Securities Index.[108] As of the end of 2009, the TIAA Real Estate Account consistently underperformed its own benchmarks for the preceding 3 and 5 years.[109]

103.    By March 31, 2010, the TIAA Real Estate Account ranked dead last in its peer group for 1-, 5-, and 10-year periods.[110] For the period ending June 30, 2010, the one year return for TIAA Real Estate listed in its quarterly 8-K filed with the SEC was (-10.19%).[111]

---

[105] TIAA Real Estate Account Prospectus, May 1, 2010, p. 3.
https://www.sec.gov/Archives/edgar/data/946155/000093041310002641/c60354_424b3.htm; TIAA Real Estate Account Prospectus, May 1, 2018,
https://www.sec.gov/Archives/edgar/data/946155/000162828018005465/tiaa2018pro.htm.
[106] TIAA Real Estate Account Prospectus, May 1, 2010; TIAA Real Estate Account Prospectus, May 1, 2018, p. 3.
[107] TIAA Real Estate Account Prospectus, May 1, 2018.
[108] TIAA Real Estate Quarterly Analysis, Dec. 31, 2009,
https://www.sec.gov/Archives/edgar/data/946155/000093041310001296/c60587_ex99-1.htm.
[109] TIAA Real Estate Quarterly Analysis, Dec. 31, 2009.
[110] *Sacerdote v. New York University* trial exhibit PX0034, page 54 (CL00008036). See *Sacerdote v. New York Univ.*, No. 16-6284 (S.D. N.Y.), Doc. 253-106, 253-107. This "Fiduciary Diligence Report" prepared by Cammack

104.    On July 31, 2013, when CAPTRUST indicated to the RPOC that TIAA Real Estate did not have performance data, TIAA Real Estate Account's quarterly 8-K, filed with the SEC on May 13, 2013, indicated that as of quarter end March 31, 2013, TIAA Real Estate underperformed the NCREIF Fund Index on a quarterly, 1 year, 3 year, 5 year, 10 year and since inception basis.[112]

105.    The TIAA Real Estate Account used varying benchmarks over time, and at one point did not even provide a benchmark.[113] It is apparent from CAPTRUST's July 31, 2013 report that they did not have a procedure in place to benchmark and evaluate the TIAA Real Estate Account for the Plans. For the period just prior to the Plans' adoption of the TIAA Real Estate Account into Tier II, CAPTRUST used different benchmarks to assess the TIAA Real Estate Account for different university clients—the NCREIF Property Index for Cornell[114] and the DOW Jones US Select REIT for the University of Maine.[115] In both instances, the TIAA Real Estate Account underperformed the CAPTRUST's benchmark for the 1-, 3-, 5- and 10-year rolling periods.[116] An investment that offers no benchmark, or one in which the investment advisor cannot determine a proper benchmark, is not prudent. I see no process in place by either the RPOC or CAPTRUST to determine a proper benchmark or reconcile the conflicting benchmarks. I see no evidence in the record of consideration of TIAA Real Estate's underperformance to all of these stated benchmarks.

---

LaRhette as of March 31, 2010 is the type of performance data that investment consultants provide to plan fiduciaries.
[111] TIAA_CORNELL_00025534.
[112] TIAA_CORNELL_00026051.
[113] See TIAA_CORNELL_00025534; TIAA_CORNELL_00026051.
[114] CORNELL015005.
[115] EX178.
[116] CORNELL015005; EX178.

106.    TIAA Real Estate had an expense ratio above the weighted expense ratio average[117] for the TIAA investments within the Plans and 0.17% higher than the REIT ultimately offered on the Plans' Fidelity platform.[118] I see no evidence in the record that this cost differential was considered between the TIAA Real Estate Account and Cohen & Steers Institutional Realty Shares, or between the TIAA Real Estate Account and any other alternative REIT investment.

107.    The TIAA Real Estate Account's large cash holdings represents lost opportunity costs, i.e., cash drag, in relation to a REIT. Cornell's CFO observed, "[i]f an investment can bring in 5 or 6 percent and cash can only bring in a couple of basis points" there is "opportunity cost lost" because cash doesn't earn a very good interest rate.[119] Cornell's CFO accurately describes the cash drag that TIAA Real Estate experiences, i.e., the extremely low return on the large amount of cash the investment must hold brings down the overall return of the fund. I see no evidence in the record that the cash ratio within the TIAA Real Estate Account was considered by the RPOC or CAPTRUST when determining whether to retain the fund in the Plans.

108.    A prudent manager applying the standards of the industry in 2010 and/or 2013 would not have included TIAA Real Estate in Tier II or continued to use the TIAA Real Estate Account. I advise that 403(b) plans generally avoid real estate sector investments. To the extent a real estate investment was offered at those time, a REIT would have been appropriate. The Vanguard REIT Index Fund Institutional Shares is a reasonable and prudent choice. The VGNSX is a low-cost and passively managed fund that offers similar exposure to income generating real

---

[117] This weighted expense average is high based on the inclusion of many high cost funds within the Plans as described in this report.
[118] CORNELL020122.
[119] Deposition of Joanne DeStefano, 54:21-55:14.

property. The reported fees for the VGNSX as of May 1, 2010 were 13bps.[120] The fees for TIAA Real Estate Account were 106bps.[121] Unlike TIAA Real Estate, it does not contain the requirement of carrying large amounts of cash.

109.    Had Cornell offered the Vanguard REIT Index Fund Institutional Shares fund in place of the TIAA Real Estate Account to achieve the desired real estate exposure as of September 1, 2010, Plan participants would have gained an additional **$7,781,382.96** in wealth.

110.    Had Cornell implemented a best of class investment menu consistent with prudent fiduciary practices as of September 1, 2010, removed those funds that did not meet the criteria for inclusion in the menu and mapped those funds to the best of class menu, Plan participants would have gained an additional **$370,372,654.30** in wealth.[122]  This number includes the lost gain to the Plans' participants of **$124,707,240** for mapping the Fidelity funds to the selected menu; **$202,078,109.32** for mapping the CREF Stock Account to the Vanguard Institutional Index; **$3,936,875.74** for mapping the TIAA Real Estate Account to the QDIA, and **$39,811,544.24** for mapping the remaining TIAA funds to the selected investment menu.  The total number was reduced **$161,115** by excluding all mappings to the Federated Short-Term Income fund.  This is reflected in the number stated.

**B.    Imprudent retention of underperforming and imprudent Plan investments as of September 1, 2010.**

111.    As recognized by the RPOC, the Plans' fiduciaries have an ongoing duty to monitor all funds within the Plans. No prudent fiduciary would leave any unmonitored funds in the Plans, especially when confronted with information indicating many funds were underperforming. That defeats the whole purpose of having a fiduciary. Cornell did not conduct

---

[120] Vanguard Specialized Funds, Form N-1A, May 28, 2010.
[121] TIAA Real Estate Account, Prospectus, May 1, 2010.
[122] I adopt the calculation contained in the Confidential Expert Report of Gerald Buetow, who calculated damages based on the opinions and methods described in this report.

any investment monitoring from August 2010 (and prior) until July 31, 2013. Had an objective analysis been conducted at or around August 2010 (and apart from the prudent practice to remove all investment options that are not included within the recommended investment menu as described above) there are numerous investment options that a prudent fiduciary would have removed based on a fundamental quantitative performance analysis.

112.    A prudent fiduciary in August 2010 would have eliminated sector funds from the Plans. As of November 2012, Cornell recognized in its IPS that "investment managers generally will be expected to ... avoid unreasonable overweighting in a given investment, industry or sector. Volatility, as measured by Standard Deviation, should be within reasonable ranges for the given peer group."[123] The IPS also provides that, "[t]he expense ratio for a given investment should, in most cases, fall below the average expense ratio for the peer group."[124] CAPTRUST further recommended that sector funds should only be available through a brokerage window.[125]

113.    Here, all of the sector funds had high expense ratios (up to 152bps).[126] The volatility of sector funds in the Plans is generally well above peer group ranges. Examples of sector funds with too much risk include Fidelity Natural Gas, Fidelity Select Energy Fund, Fidelity Latin America and the Fidelity Gold Fund.

114.    As of the end of the 2009 fiscal year, at least 100 funds should have been removed from the Plans. Of these, 41 funds within the Plans demonstrated major underperformance concerns,[127] 50 were inappropriate sector funds and 9 had too short of a performance history to be included in the Plans. A prudent fiduciary would have mapped these

---

[123] CORNELL013763.
[124] CORNELL013763.
[125] CORNELL019443.
[126] Exhibit 3.
[127] These numbers include the CREF Stock Account and TIAA Real Estate Account which are separately addressed above.

funds to like asset classes within the best-in-class line up. When there is not a comparable asset class within the best-in-class line up eliminated investment options should be mapped to the QDIA, e.g. Fidelity Select Wireless should be mapped to the QDIA, Fidelity Large Cap Stock should be mapped to the Vanguard Institutional Index on the TIAA menu. In this case, the QDIA are target date funds. Cornell endorsed a similar process.[128]

115.    An assessment of these funds as of December 31, 2009 is attached as **Exhibit 6.**

116.    Had the Cornell removed the underperforming investments and those that were inappropriate to be included in the Plans as of September 1, 2010, Plan participants would have gained an additional **$52,565,074** in wealth.[129]  This includes an additional gain of **$17,671,468** for funds that showed major performance concerns, **$34,813,816** for funds that work inappropriate for the Plans (i.e. sector funds) and **$79,790** for funds with too short of a performance history to be included in the Plans.

**C.    Retention of underperforming and imprudent Plan investments as of July 2013.**

117.    On July 31, 2013, CAPTRUST recommended that the RPOC consider the replacement of all funds on the Fidelity platform except for Fidelity Freedom Funds (Target Date Funds), PIMCO Total Return (PTTRX) and Fidelity Contrafund K (FCNKX).[130]  CAPTRUST recommended that the RPOC either consider the replacement or freezing of all funds on the TIAA platform except TIAA-CREF Money Market (TCIXX), TIAA Traditional, CREF Social Choice, TIAA-CREF Target Date Funds, CREF Stock, T. Rowe Price Large Company Growth, American EuroPac Growth and TIAA Real Estate.

---

[128] CORNELL027852.
[129] In this report, I refer to the calculations contained in the Confidential Expert Report of Gerald Buetow.
[130] CORNELL020122.

118.   Effectively, CAPTRUST was giving their opinion on the best-in-class line up for both providers. There is no prudent reason documented by Cornell to deviate from that recommendation. As set forth above, those funds should have been removed many years prior.

119.   In addition to recommending the removal of nearly all funds in the Plans, CAPTRUST indicated to Cornell on July 31, 2013 that many funds were underperforming their 3/5 year risk adjusted performance benchmark, their 3/5 year peer and style benchmarks or could not be quantitatively scored.[131] These funds included the CREF Stock Account and TIAA Real Estate Account. CAPTRUST later informed Cornell that many of the funds in the Plans, including all of the sector funds, violated the IPS Cornell adopted in November 2012.[132]

120.   A prudent fiduciary would have adopted a best-in-class line up as recommended by CAPTRUST (subject to the removal of the CREF Stock Account, TIAA Real Estate Account, BlackRock Investment Grade Bond, Federated Short-Term Income from the recommended investment menu). Further, a prudent fiduciary would have eliminated all funds that did not meet the standard to be in the best-in-class line-up, including, but not limited to, all of the funds CAPTRUST recommended should be eliminated, the CREF Stock Account and TIAA Real Estate Account, funds that did not meet the standards of the IPS as evaluated by CAPTRUST, and funds that could not be scored on CAPTRUST's July 31, 2013 scorecard dashboard.

121.   Had Cornell followed CAPTRUST's recommendation and removed the identified investments with performance concerns or that were not scored and investments failing the IPS by October 1, 2013, and mapped their assets in accordance with the same mapping strategy described above, Plan participants would have gained an additional **$148,651,884** in wealth.[133] This includes an additional gain of **$31,344,058.00** for Fidelity funds, **$100,806,738.00** for

---

[131] CORNELL020122.
[132] CORNELL013288; EX167.
[133] This funds mapped are represented in Exhibit 3.

mapping the CREF Stock Account to the Vanguard Institutional Index ($6,543,318 if mapped to the 70/30 Vanguard mix described above); **$5,675,977.00** for mapping the TIAA Real Estate Account to the QDIA ($8,575,965 if mapped to Vanguard REIT Index Fund Institutional Shares fund) and **$10,825,111.00** for mapping the remaining TIAA funds to the selected investment menu.

**D.    Maintaining higher-cost share classes of Plan investments**

122.    As set forth above, prudent fiduciaries select the lowest cost institutional share class available for plan investment options. The Plan fiduciaries did not offer the lowest cost share classes for Plan mutual fund investments. The methodology for determining the Plans' losses caused by including more expensive share classes in the Plans is to calculate the amount that Plan participants paid through their investment in the higher-cost share class compared to the amount they would have paid had the Plan fiduciaries maintained the lowest-cost share class available. This can be determined by multiplying the mutual fund's beginning account balance by the differential in the reported annual expense ratios between the higher-cost and lower-cost institutional shares. This amount must then account for lost investment opportunity by using the annual investment returns of the lower-cost shares.

123.    Applying this methodology, I calculated the Plans' losses caused by the Plan fiduciaries' failure to provide lower-cost share classes for the TIAA-CREF Lifecyle target date funds. Had the Cornell Defendants provided the lower-cost share classes of these TIAA-CREF mutual fund options from August 17, 2010 through December 31, 2011, and using the investment returns of lower-cost shares to account for lost investment opportunity, the Plans suffered $336,577 in losses.[134] This methodology of calculating Plan losses should be applied to

---

[134] These calculations are contained in an accompanying spreadsheet to this report.

each investment option in the Plans for which Defendants failed to provide the lower-cost version of the same mutual fund investment option.

Respectfully Submitted,

Wendy Dominguez

Materials Considered

In addition to the materials cited in my report, I considered the following documents:

- 5500s for the Cornell University Retirement Plan of Endowed Colleges at Ithaca 403(b) Plan and the Cornell University Deferred Annuity 403(b) Plan
- Cornell University Retirement Plan Oversight Committee Meeting Minutes and Materials
- Materials prepared by the committee or third parties that were presented during the committee meetings
- Investment Policy Statements
- Contracts
- Fee Disclosures
- Invoices
- IPS
- Plan Documents
- Quarterly Assets
- Pleadings
- Quarterly Investment Reports
- Surveys
- All stamped deposition exhibits
- All documents used during depositions.
- All deposition transcripts
- FAQ Upcoming 403(b) Supplemental Retirement Plan Changes for Louisiana State University
- University of Oklahoma Retirement Plan Management Committee February 15, 2013 Meeting Minutes

And the following bates stamped documents:

| | | |
|---|---|---|
| | CORNELL013557 | CORNELL020299 |
| CAPTR_0005130 | CORNELL013558 | CORNELL020300 |
| CAPTR_0005425 | CORNELL014038 | CORNELL020301 |
| CAPTR_0005441 | CORNELL014041 | CORNELL020302 |
| CORNELL013264 | CORNELL014042 | CORNELL020303 |
| CORNELL013267 | CORNELL014043 | CORNELL020304 |
| CORNELL013268 | CORNELL014044 | CORNELL020305 |
| CORNELL013269 | CORNELL014045 | CORNELL020306 |
| CORNELL013270 | CORNELL014334 | CORNELL020307 |
| CORNELL013271 | CORNELL014335 | CORNELL020591 |
| CORNELL013492 | CORNELL014336 | CORNELL020638 |
| CORNELL013537 | CORNELL014338 | CORNELL020660 |
| CORNELL013539 | CORNELL014339 | CORNELL028906 |
| CORNELL013540 | CORNELL014341 | CORNELL028907 |
| CORNELL013555 | CORNELL020172 | CORNELL028908 |

Exhibit 1

| | | |
|---|---|---|
| CORNELL028909 | CAPTR_0016522 | TIAA_CORNELL_00011970 |
| CORNELL028910 | CAPTR_0016565 | TIAA_CORNELL_00021339 |
| CORNELL028911 | CORNELL025362 | TIAA_CORNELL_00032741 |
| CORNELL028912 | CORNELL025390 | CORNELL025343 |
| CORNELL028913 | TIAA_CORNELL_00011306 | CORNELL024111 |
| CORNELL028914 | TIAA_CORNELL_00020831 | CORNELL024112 |
| TIAA_CORNELL_00001451 | CORNELL016840 | CORNELL011408 |
| TIAA_CORNELL_00001517 | CORNELL016842 | CORNELL024113 |
| TIAA_CORNELL_00001553 | CORNELL011416 | CORNELL024114 |
| TIAA_CORNELL_00001481 | CORNELL027587 | CORNELL024115 |
| TIAA_CORNELL_00001384 | TIAA_CORNELL_00025489 | CORNELL024116 |
| TIAA_CORNELL_00001417 | CORNELL011420 | CORNELL011410 |
| TIAA_CORNELL_00001584 | CORNELL016839 | CORNELL014375 |
| TIAA_CORNELL_00000007 | TIAA_CORNELL_00000061 | CORNELL024124 |
| TIAA_CORNELL_00035994 | CORNELL021944 | CORNELL011406 |
| TIAA_CORNELL_00042002 | CORNELL025334 | CORNELL011407 |
| TIAA_CORNELL_00042017 | CORNELL025340 | CORNELL021930 |
| TIAA_CORNELL_00000022 | CORNELL024177 | CORNELL025425 |
| CORNELL016846 | TIAA_CORNELL_00021727 | CORNELL025426 |
| TIAA_CORNELL_00036237 | TIAA_CORNELL_00021442 | CORNELL014456 |
| TIAA_CORNELL_00042015 | TIAA_CORNELL_00021536 | CORNELL024123 |
| CORNELL027154 | TIAA_CORNELL_00025516 | CORNELL015278 |
| CORNELL027163 | CORNELL025342 | CORNELL015279 |
| CORNELL027588 | CORNELL003106 | CORNELL024125 |
| TIAA_CORNELL_00000026 | CORNELL016844 | CORNELL024126 |
| CORNELL015991 | CORNELL011421 | CORNELL014377 |
| CORNELL027140 | CORNELL016838 | CORNELL014479 |
| CORNELL027155 to | CORNELL016841 | CORNELL011418 |
| CORNELL027589 | CORNELL016845 | CORNELL024179 |
| CORNELL027164 | CORNELL027605 | TIAA_CORNELL_00025541 |
| CORNELL027165 | CORNELL011399 | CORNELL024128 |
| TIAA_CORNELL_00021214 | CORNELL011400 | CORNELL024129 |
| TIAA_CORNELL_00021032 | CORNELL011401 | CORNELL024130 |
| TIAA_CORNELL_00025456 | CORNELL021932 | CORNELL024132 |
| CORNELL016843 | CORNELL027604 | CORNELL024134 |
| CORNELL011423 | CORNELL021663 | CORNELL024136 |
| TIAA_CORNELL_00020947 | CORNELL011417 | CORNELL024138 |
| CORNELL025344 | CORNELL022506 | CORNELL024141 |
| CORNELL025345 | CORNELL022536 | CORNELL024143 |
| CORNELL025346 | CORNELL022564 | CORNELL024145 |
| CORNELL025347 | CORNELL022565 | CORNELL014355 |
| CORNELL025348 | CORNELL025458 | CORNELL014359 |
| CORNELL025349 | CORNELL025460 | CORNELL015313 |

2

Exhibit 1

| | | |
|---|---|---|
| CORNELL015315 | CORNELL019404 | CORNELL011433 |
| CORNELL011412 | CORNELL019405 | CORNELL015396 |
| CORNELL001058 | CORNELL024194 | CAPTR_0052645 |
| CAPTR_0052622 | CORNELL024195 | CORNELL015395 |
| CORNELL015323 | CORNELL021931 | CORNELL015399 |
| CORNELL019448 | CORNELL007015 | CORNELL015887 |
| CORNELL024150 | CORNELL015340 | CORNELL015888 |
| CORNELL024152 | CORNELL015341 | CORNELL015889 |
| CORNELL024154 | CORNELL024199 | CORNELL015890 |
| CORNELL024155 | CORNELL012302 | CORNELL015401 |
| CORNELL024156 | CAPTR_0041246 | CORNELL015402 |
| CORNELL024158 | CORNELL_021892 | CORNELL015403 |
| CORNELL024160 | CORNELL015578 | CORNELL015404 |
| CORNELL024162 | TIAA_CORNELL_00022267 | CORNELL015405 |
| CORNELL025524 | CORNELL015362 | CORNELL027623 |
| CORNELL014447 | CORNELL015363 | CORNELL027624 |
| CORNELL014450 | CORNELL015364 | CORNELL027625 |
| CAPTR_0015450 | CORNELL015365 | CORNELL015406 |
| CAPTR_0015475 | CORNELL015377 | CORNELL015407 |
| CORNELL006751 | CORNELL015390 | CORNELL015408 |
| CORNELL006753 | CORNELL015366 | CORNELL015410 |
| CORNELL006781 | CORNELL015367 | CORNELL015411 |
| CORNELL006782 | CORNELL015368 | CORNELL015412 |
| CORNELL015324 | CORNELL015369 | CORNELL015413 |
| CORNELL024168 | CORNELL015370 | TIAA_CORNELL_00021950 |
| CORNELL024169 | CORNELL015371 | TIAA_CORNELL_00022059 |
| CORNELL024176 | CORNELL011597 | CORNELL011441 |
| CORNELL024180 | CORNELL011599 | CORNELL015473 |
| CORNELL011413 | CORNELL011601 | CORNELL015474 |
| CORNELL015325 | CORNELL011603 | CORNELL016059 |
| CORNELL024183 | CORNELL015375 | CORNELL024225 |
| CORNELL024184 | CORNELL015376 | CORNELL024226 |
| CORNELL024185 | CORNELL027622 | CORNELL027626 |
| CORNELL011344 | CORNELL015389 | CORNELL027627 |
| CORNELL024182 | CAPTR_0015322 | CORNELL027634 |
| CORNELL015994 | CORNELL015392 | CORNELL015419 |
| CORNELL021699 | CAPTR_0015324 | CORNELL015420 |
| CORNELL011425 | CAPTR_0015503 | CORNELL015422 |
| CORNELL011426 | CAPTR_0015513 | CORNELL016057 |
| CORNELL015823 | CAPTR_0015723 | CORNELL016058 |
| CORNELL015824 | CAPTR_0015734 | CORNELL027630 |
| CORNELL024188 | CORNELL015394 | CORNELL015908 |
| CORNELL024189 | CORNELL011432 | CORNELL015909 |

3

Exhibit 1

| | | |
|---|---|---|
| CORNELL015432 | CORNELL007750 | CAPTR_0047907 |
| CORNELL015433 | CORNELL007758 | CORNELL003529 |
| CORNELL015434 | CAPTR_0019469 | CORNELL016898 |
| CORNELL015435 | CORNELL022009 | CORNELL022007 |
| CORNELL015436 | CORNELL022010 | CORNELL022014 |
| CORNELL015437 | CORNELL023606 | TIAA_CORNELL_00000055 |
| CORNELL021726 | CORNELL024853 | TIAA_CORNELL_00042031 |
| CORNELL027633 | CORNELL024854 | CAPTR_0034689 |
| CORNELL015475 | CORNELL024855 | TIAA_CORNELL_00022479 |
| CORNELL024227 | CORNELL024856 | CAPTR_0020302 |
| CORNELL027629 | CORNELL025220 | CORNELL023609 |
| CORNELL027631 | CORNELL025275 | CORNELL001804 |
| CORNELL027635 | TIAA_CORNELL_00003515 | TIAA_CORNELL_00025868 |
| CORNELL027628 | TIAA_CORNELL_00012719 | CORNELL022070 |
| CORNELL027632 | TIAA_CORNELL_00012722 | CORNELL025205 |
| CORNELL015455 | TIAA_CORNELL_00012726 | CORNELL025206 |
| CORNELL027658 | TIAA_CORNELL_00021841 | CORNELL019950 |
| CORNELL015460 | TIAA_CORNELL_00028878 | CAPTR_0027318 |
| CORNELL015937 | TIAA_CORNELL_00028915 | TIAA_CORNELL_00043632 |
| CORNELL015942 | CORNELL015580 | CAPTR_0034556 |
| CAPTR_0020567 | CORNELL016836 | CAPTR_0052948 |
| CAPTR_0041249 | CORNELL022008 | CAPTR_0052952 |
| CORNELL015471 | CORNELL022232 | CORNELL014362 |
| CORNELL015472 | CORNELL024545 | CORNELL014364 |
| CORNELL021736 | CORNELL015566 | TIAA_CORNELL_00022837 |
| CORNELL015476 | CORNELL015579 | TIAA_CORNELL_00029216 |
| CORNELL019412 | CAPTR_0047903 | TIAA_CORNELL_00029218 |
| CORNELL024224 | CORNELL015581 | TIAA_CORNELL_00029220 |
| CORNELL024230 | CORNELL015582 | CORNELL003576 |
| CORNELL024231 | CORNELL015583 | CORNELL007070 |
| CORNELL015482 | CORNELL015584 | CORNELL001816 |
| CORNELL015486 | CORNELL022077 | CORNELL019568 |
| CORNELL015487 | CORNELL022078 | CAPTR_0018846 |
| CORNELL015489 | CORNELL015163 | CORNELL003581 |
| CORNELL015490 | CORNELL015164 | CORNELL022076 |
| CORNELL015491 | CORNELL015165 | CORNELL016834 |
| TIAA_CORNELL_00033129 | CORNELL021927 | CORNELL016837 |
| CAPTR_0016832 | CORNELL022011 | CAPTR_0020513 |
| TIAA_CORNELL_00025568 | CORNELL022503 | CAPTR_0047911 |
| TIAA_CORNELL_00020571 | CORNELL022015 | CORNELL004323 |
| CAPTR_0033178 | TIAA_CORNELL_00025596 | CORNELL014825 |
| CORNELL021910 | CORNELL022006 | CORNELL019443 |
| CORNELL025735 | CORNELL022013 | CORNELL019444 |

4

Exhibit 1

| | | |
|---|---|---|
| TIAA_CORNELL_00026009 | CORNELL011481 | CORNELL022819 |
| CAPTR_0020262 | CORNELL012409 | CORNELL024274 |
| CORNELL022755 | CORNELL020061 | CORNELL014776 |
| CORNELL024392 | CORNELL020064 | CAPTR_0052728 |
| TIAA_CORNELL_00025623 | CORNELL011493 | CORNELL001206 |
| CORNELL001937 | CORNELL012410 | CAPTR_0004432 |
| CAPTR_0052936 | CORNELL020066 | CAPTR_0004434 |
| CAPTR_0052941 | CORNELL020841 | CAPTR_0052792 |
| CORNELL003614 | CORNELL020226 | CAPTR_0052812 |
| CORNELL011643 | TIAA_CORNELL_00026023 | CAPTR_0005101 |
| CORNELL001940 | CORNELL022228 | CAPTR_0005113 |
| CAPTR_0020321 | CORNELL024263 | CAPTR_0005114 |
| CORNELL011454 | CORNELL016959 | CAPTR_0005118 |
| CORNELL013432 | CAPTR_0047924 | CAPTR_0005125 |
| CORNELL013433 | CORNELL011453 | CAPTR_0005138 |
| CORNELL013435 | CORNELL016983 | CAPTR_0005143 |
| CORNELL013439 | CORNELL022229 | CAPTR_0005149 |
| CORNELL013440 | CORNELL013763 | CAPTR_0005155 |
| CORNELL013441 | CORNELL004474 | CAPTR_0005370 |
| CORNELL022241 | CORNELL008149 | CAPTR_0005411 |
| CORNELL022248 | CORNELL008157 | CAPTR_0005418 |
| CORNELL022249 | CAPTR_0018845 | CAPTR_0005426 |
| CORNELL001203 | CAPTR_0036079 | CAPTR_0005434 |
| CORNELL003642 | CAPTR_0039749 | CAPTR_0005533 |
| CORNELL019956 | CORNELL013491 | CAPTR_0005540 |
| CORNELL020053 | CORNELL022918 | CAPTR_0052969 |
| CORNELL020054 | CORNELL024868 | CAPTR_0052989 |
| CORNELL020194 | CORNELL024869 | CAPTR_0052996 |
| CORNELL020557 | CORNELL025888 | CAPTR_0005828 |
| CORNELL020560 | CORNELL025890 | CAPTR_0005829 |
| CORNELL020577 | CORNELL025921 | CAPTR_0005830 |
| CORNELL027033 | CORNELL025922 | CAPTR_0005831 |
| CORNELL013443 | CORNELL025944 | CAPTR_0053084 |
| CORNELL001329 | CORNELL025976 | CAPTR_0053087 |
| CORNELL011452 | TIAA_CORNELL_00004344 | CORNELL022253 |
| CORNELL011455 | TIAA_CORNELL_00013504 | CAPTR_0053423 |
| CORNELL011456 | TIAA_CORNELL_00013505 | CORNELL001341 |
| CORNELL011463 | TIAA_CORNELL_00013509 | CORNELL001944 |
| CORNELL011464 | TIAA_CORNELL_00022369 | CORNELL011365 |
| CORNELL019957 | TIAA_CORNELL_00043983 | CORNELL011366 |
| CORNELL019959 | CORNELL014641 | CORNELL019449 |
| CORNELL019960 | CAPTR_0014774 | CAPTR_0053726 |
| CORNELL011472 | CAPTR_0015016 | CORNELL013902 |

Exhibit 1

| | | |
|---|---|---|
| CORNELL013903 | CORNELL014672 | CORNELL014314 |
| CORNELL019987 | CORNELL014673 | TIAA_CORNELL_00023414 |
| CORNELL022834 | CORNELL014674 | TIAA_CORNELL_00043994 |
| CORNELL022835 | CORNELL014675 | CORNELL020115 |
| CORNELL0244405 | CORNELL012536 | CORNELL024454 |
| CORNELL014789 | CORNELL014918 | CAPTR_0053381 |
| CORNELL014790 | CORNELL015161 | CORNELL014847 |
| CORNELL015136 | CORNELL020124 | CORNELL014848 |
| CORNELL022836 | CORNELL014797 | CORNELL014850 |
| CORNELL028991 | CORNELL014798 | CORNELL014851 |
| CORNELL014295 | CORNELL022255 | CORNELL014867 |
| CORNELL022837 | CAPTR_0052929 | CORNELL014868 |
| CORNELL014793 | TIAA_CORNELL_00026051 | CORNELL014870 |
| CORNELL028894 | CORNELL015140 | CORNELL014871 |
| CORNELL004521 | CORNELL022916 | CAPTR_0053362 |
| CORNELL021558 | CORNELL022917 | CAPTR_0053397 |
| CAPTR_0014706 | CORNELL011574 | CORNELL013473 |
| CORNELL012432 | CORNELL022922 | CORNELL014834 |
| CORNELL022839 | CORNELL022923 | CORNELL014835 |
| CORNELL024373 | CORNELL014808 | CORNELL014838 |
| CAPTR_0014849 | CORNELL014815 | CORNELL014839 |
| CAPTR_0014851 | CORNELL024443 | CORNELL014840 |
| CORNELL024374 | CORNELL014820 | CORNELL014841 |
| TIAA_CORNELL_00022580 | CORNELL014821 | CORNELL014842 |
| CORNELL022842 | CORNELL024441 | CORNELL014843 |
| CORNELL022843 | CORNELL024442 | CORNELL014844 |
| CORNELL022844 | CORNELL024444 | CORNELL014845 |
| CORNELL022841 | CORNELL024445 | CORNELL014846 |
| CORNELL004551 | TIAA_CORNELL_00023153 | CORNELL014858 |
| CAPTR_0052617 | CORNELL011367 | CORNELL014859 |
| CAPTR_0052619 | CORNELL024447 | CORNELL014860 |
| CAPTR_0052725 | CORNELL024448 | CORNELL014861 |
| CORNELL024285 | CORNELL014824 | CORNELL014862 |
| TIAA_CORNELL_00026037 | CORNELL014826 | CORNELL014863 |
| CAPTR_0003661 | CAPTR_0050462 | CORNELL014864 |
| CAPTR_0003664 | CAPTR_0050482 | CORNELL014865 |
| CAPTR_0003675 | CAPTR_0053364 | CORNELL014866 |
| CAPTR_0003677 | CORNELL014831 | CORNELL014875 |
| CORNELL024286 | CORNELL014855 | CAPTR_0050444 |
| TIAA_CORNELL_00025652 | CORNELL020614 | CORNELL014837 |
| CAPTR_0038203 | CAPTR_0038752 | CORNELL014849 |
| CAPTR_0052980 | CAPTR_0038756 | CORNELL014852 |
| CAPTR_0052985 | CORNELL013252 | CORNELL014853 |

Exhibit 1

| | | |
|---|---|---|
| CORNELL014854 | CORNELL008345 | CORNELL020241 |
| CORNELL014857 | CORNELL008358 | CORNELL020589 |
| CORNELL014869 | CORNELL019920 | CAPTR_0010936 |
| CORNELL014872 | CORNELL012507 | CAPTR_0010937 |
| CORNELL014873 | CORNELL015158 | CAPTR_0010938 |
| CORNELL014874 | CORNELL016137 | CAPTR_0010940 |
| CORNELL016126 | CORNELL002980 | CAPTR_0010947 |
| CORNELL022257 | CORNELL002983 | CAPTR_0010948 |
| CORNELL004741 | CORNELL007081 | CORNELL004828 |
| CORNELL014836 | CORNELL007084 | CORNELL007095 |
| CORNELL014856 | CORNELL007087 | CORNELL007096 |
| CAPTR_0053520 | CORNELL020350 | CORNELL011743 |
| CAPTR_0049754 | CORNELL020635 | CAPTR_0050442 |
| CORNELL019890 | CORNELL020657 | CAPTR_0050479 |
| CORNELL019891 | CORNELL020745 | CORNELL015160 |
| CORNELL020121 | CAPTR_0010728 | CORNELL020125 |
| CAPTR_0047921 | CAPTR_0050139 | CORNELL019997 |
| CORNELL016370 | CORNELL011737 | CAPTR_0011688 |
| CORNELL016371 | CORNELL020402 | CORNELL012510 |
| CORNELL020122 | CORNELL020808 | CAPTR_0050761 |
| CORNELL015162 | CAPTR_0050141 | CORNELL014687 |
| CORNELL016136 | CAPTR_0050144 | CORNELL014688 |
| CAPTR_0049995 | CAPTR_0050168 | CORNELL014689 |
| CORNELL020178 | CORNELL015159 | CORNELL014690 |
| TIAA_CORNELL_00026065 | CORNELL015166 | CAPTR_0011960 |
| CAPTR_0009964 | CAPTR_0010764 | CAPTR_0019325 |
| CAPTR_0009966 | CAPTR_0010856 | CORNELL011581 |
| CAPTR_0050081 | CAPTR_0010857 | CORNELL014900 |
| CAPTR_0010005 | CAPTR_0010858 | CORNELL016403 |
| CAPTR_0010007 | CAPTR_0010863 | CAPTR_0011958 |
| CAPTR_0010009 | CAPTR_0010865 | CORNELL001220 |
| CORNELL014683 | CAPTR_0010866 | CORNELL011580 |
| CORNELL014684 | CAPTR_0050344 | CORNELL011746 |
| CORNELL014685 | CORNELL002669 | CORNELL011747 |
| CORNELL020631 | CORNELL003090 | CORNELL011748 |
| CORNELL001216 | CORNELL004825 | CORNELL012513 |
| CORNELL015157 | CORNELL004826 | CORNELL014899 |
| CORNELL019940 | CORNELL014894 | CORNELL016402 |
| CORNELL019941 | CORNELL014895 | CORNELL020002 |
| CORNELL020155 | CORNELL019995 | CORNELL020171 |
| CORNELL020175 | CORNELL019996 | CORNELL020218 |
| CORNELL020666 | CORNELL020106 | CORNELL020250 |
| CORNELL007079 | CORNELL020152 | CORNELL020584 |

Exhibit 1

| | | |
|---|---|---|
| CORNELL020597 | CORNELL020594 | CORNELL0000237 |
| CAPTR_0011963 | CAPTR_0050990 | CORNELL0000267 |
| CAPTR_0012115 | CAPTR_0051123 | CORNELL014582 |
| CAPTR_0012123 | CORNELL012537 | CORNELL014954 |
| CAPTR_0050762 | CORNELL012532 | CORNELL026093 |
| CORNELL001991 | CAPTR_0019280 | CORNELL026175 |
| CORNELL011654 | CAPTR_0047918 | CORNELL026198 |
| CORNELL012514 | CORNELL012533 | TIAA_CORNELL_00005255 |
| CORNELL012515 | CORNELL012534 | TIAA_CORNELL_00014390 |
| CORNELL013249 | CORNELL014944 | TIAA_CORNELL_00014396 |
| CORNELL013250 | CAPTR_0051629 | TIAA_CORNELL_00014423 |
| CORNELL013251 | TIAA_CORNELL_00025677 | TIAA_CORNELL_00022947 |
| CORNELL014901 | CORNELL022261 | TIAA_CORNELL_00043998 |
| CORNELL014903 | CORNELL022263 | CORNELL023026 |
| CORNELL016404 | CAPTR_0013081 | CORNELL023068 |
| CORNELL016406 | CAPTR_0013171 | CORNELL027401 |
| CORNELL020126 | CAPTR_0013199 | CORNELL027402 |
| CORNELL020156 | CAPTR_0013612 | TIAA_CORNELL_00030031 |
| CAPTR_0012141 | CAPTR_0051798 | TIAA_CORNELL_00026840 |
| CAPTR_0012144 | TIAA_CORNELL_00023057 | TIAA_CORNELL_00030035 |
| CAPTR_0012147 | CORNELL013778 | TIAA_CORNELL_00030038 |
| CAPTR_0012170 | CORNELL020006 | TIAA_CORNELL_00030048 |
| CORNELL001739 | CORNELL020007 | TIAA_CORNELL_00030051 |
| CORNELL001995 | CORNELL016437 | TIAA_CORNELL_00030055 |
| CORNELL002927 | CORNELL016438 | TIAA_CORNELL_00042370 |
| CORNELL011582 | TIAA_CORNELL_00026079 | TIAA_CORNELL_00042374 |
| CORNELL011749 | CAPTR_0051956 | CAPTR_0037317 |
| CORNELL011752 | CORNELL012547 | CAPTR_0037320 |
| CORNELL011761 | CORNELL014935 | CAPTR_0037325 |
| CORNELL012525 | CORNELL020009 | CAPTR_0052518 |
| CORNELL014904 | CORNELL020013 | CORNELL012332 |
| CORNELL014905 | CORNELL020271 | CORNELL012550 |
| CORNELL014906 | CORNELL014946 | CORNELL013490 |
| CORNELL014907 | CORNELL014947 | TIAA_CORNELL_00026093 |
| CORNELL015167 | CAPTR_0052057 | CORNELL014950 |
| CORNELL015168 | CAPTR_0052060 | CAPTR_0014661 |
| CORNELL016146 | CAPTR_0052069 | CAPTR_0014663 |
| CORNELL016407 | CORNELL014936 | CAPTR_0014665 |
| CORNELL016408 | CORNELL014941 | CAPTR_0033163 |
| CORNELL020003 | CAPTR_0047915 | CAPTR_0033175 |
| CORNELL020094 | CORNELL014943 | CAPTR_0004284 |
| CORNELL020191 | CORNELL014945 | CORNELL002154 |
| CORNELL020229 | CAPTR_0021863 | CORNELL013494 |

Exhibit 1

| | | |
|---|---|---|
| CORNELL014951 | CORNELL014980 | CAPTR_0002155 |
| CORNELL014953 | CAPTR_0015102 | CAPTR_0002157 |
| CORNELL016512 | CORNELL014982 | CAPTR_0002219 |
| CAPTR_0015113 | CORNELL016547 | CAPTR_0002376 |
| CORNELL_023268 | CAPTR_0033782 | CAPTR_0031752 |
| CAPTR_0014686 | CAPTR_0037591 | CAPTR_0031810 |
| CAPTR_0014689 | CORNELL014639 | CORNELL011587 |
| CORNELL014959 | TIAA_CORNELL_00023954 | CORNELL012630 |
| CORNELL016516 | TIAA_CORNELL_00044003 | CORNELL013266 |
| CAPTR_0014692 | CAPTR_0031286 | CORNELL013272 |
| CAPTR_0014694 | CAPTR_0031289 | CORNELL013530 |
| CORNELL012567 | CAPTR_0031318 | CORNELL013531 |
| CORNELL016518 | CORNELL023232 | CORNELL013532 |
| CORNELL016519 | CORNELL023233 | CORNELL013533 |
| CORNELL023057 | TIAA_CORNELL_00027437 | CORNELL013542 |
| CORNELL024592 | TIAA_CORNELL_00027441 | CORNELL013545 |
| CAPTR_0033200 | CORNELL022282 | CORNELL013554 |
| CAPTR_0033203 | TIAA_CORNELL_00026121 | CORNELL014036 |
| CORNELL022278 | CORNELL014039 | CORNELL014040 |
| CAPTR_0014785 | CORNELL013544 | CORNELL014046 |
| CAPTR_0014787 | CORNELL016574 | CORNELL014337 |
| CAPTR_0014788 | CORNELL016589 | CORNELL014340 |
| CORNELL015187 | CORNELL011778 | CORNELL014984 |
| CAPTR_0014789 | CAPTR_0002259 | CORNELL016559 |
| CAPTR_0014791 | CAPTR_0002310 | CORNELL016560 |
| CAPTR_0014792 | CAPTR_0002318 | CORNELL016561 |
| CAPTR_0014805 | CAPTR_0031802 | CORNELL016562 |
| CAPTR_0014688 | CORNELL013541 | CORNELL016573 |
| CAPTR_0014691 | CORNELL013543 | CORNELL016576 |
| CAPTR_0020647 | CORNELL013556 | CORNELL016579 |
| CORNELL014960 | CORNELL016575 | CORNELL016586 |
| CORNELL016517 | CORNELL016577 | CORNELL016587 |
| TIAA_CORNELL_00000004 | CORNELL016588 | CORNELL016590 |
| TIAA_CORNELL_00026107 | CAPTR_0002216 | CAPTR_0002210 |
| CAPTR_0031320 | CAPTR_0002304 | CAPTR_0002267 |
| CAPTR_0034032 | CAPTR_0002362 | CAPTR_0002271 |
| CORNELL014981 | CAPTR_0031794 | CAPTR_0002280 |
| CAPTR_0015075 | CORNELL013265 | CAPTR_0002289 |
| CORNELL007372 | CORNELL013538 | CAPTR_0002295 |
| CORNELL014979 | CORNELL013550 | CAPTR_0031782 |
| CAPTR_0034028 | CORNELL014333 | CAPTR_0031785 |
| CAPTR_0034030 | CORNELL016580 | CAPTR_0031792 |
| CAPTR_0034037 | CORNELL016594 | CAPTR_0031800 |

9

Exhibit 1

| | | |
|---|---|---|
| CAPTR_0031850 | CORNELL024730 | TIAA_CORNELL_00044009 |
| CORNELL011660 | TIAA_CORNELL_00000045 | TIAA_CORNELL_00042694 |
| CORNELL011661 | TIAA_CORNELL_00000051 | CAPTR_0003647 |
| CORNELL012335 | TIAA_CORNELL_00036008 | CORNELL022293 |
| CORNELL012631 | TIAA_CORNELL_00036014 | CAPTR_0029460 |
| CORNELL013536 | CAPTR_0002213 | CORNELL015007 |
| CORNELL013546 | CAPTR_0002307 | CAPTR_0036915 |
| CORNELL013547 | CAPTR_0002365 | CORNELL015018 |
| CORNELL013548 | CAPTR_0031797 | CORNELL015019 |
| CORNELL013549 | CORNELL013551 | TIAA_CORNELL_00026150 |
| CORNELL016174 | CORNELL013552 | CAPTR_0029756 |
| CORNELL016572 | CORNELL013553 | CORNELL011387 |
| CORNELL016582 | CORNELL016578 | CAPTR_0029771 |
| CORNELL016583 | CORNELL016581 | CAPTR_0029773 |
| CORNELL016585 | CORNELL016591 | CAPTR_0030629 |
| CORNELL016592 | CORNELL016593 | CAPTR_0030780 |
| CORNELL020298 | CORNELL024546 | CORNELL013288 |
| CORNELL028905 | TIAA_CORNELL_00025702 | CORNELL014743 |
| CAPTR_0002302 | CAPTR_0002368 | CORNELL014744 |
| CAPTR_0002358 | TIAA_CORNELL_00025729 | CAPTR_0029970 |
| CAPTR_0002360 | CORNELL011091 | CORNELL024736 |
| CAPTR_0002416 | TIAA_CORNELL_00026136 | CORNELL024737 |
| CORNELL011588 | TIAA_CORNELL_00023632 | CORNELL014745 |
| CORNELL014332 | CAPTR_0013586 | CORNELL014746 |
| CORNELL014435 | CAPTR_0029398 | TIAA_CORNELL_00025741 |
| CORNELL019844 | CORNELL015004 | CAPTR_0004212 |
| CORNELL013263 | CORNELL015006 | CORNELL019975 |
| CORNELL014037 | CORNELL026221 | TIAA_CORNELL_00026164 |
| CORNELL019928 | CORNELL026222 | CAPTR_0030234 |
| CORNELL013566 | CAPTR_0003959 | CORNELL013285 |
| CAPTR_0004286 | CAPTR_0004048 | CAPTR_0013598 |
| CORNELL013567 | CAPTR_0004213 | CORNELL013286 |
| CORNELL013568 | CAPTR_0018481 | CORNELL013289 |
| TIAA_CORNELL_00030507 | CAPTR_0037857 | CAPTR_0004600 |
| CORNELL019965 | CORNELL0000297 | CORNELL_019324 |
| CORNELL020224 | CORNELL0000355 | CORNELL019590 |
| CAPTR_0032933 | CORNELL023310 | TIAA_CORNELL_00024570 |
| CAPTR_0032934 | CORNELL023311 | TIAA_CORNELL_00044015 |
| CAPTR_0037833 | TIAA_CORNELL_00006246 | CAPTR_0025605 |
| CORNELL013573 | TIAA_CORNELL_00015318 | CORNELL015044 |
| CORNELL013574 | TIAA_CORNELL_00015336 | CORNELL015045 |
| CORNELL015005 | TIAA_CORNELL_00015371 | CORNELL009248 |
| CORNELL024729 | TIAA_CORNELL_00023524 | CORNELL009263 |

10

Exhibit 1

| | | |
|---|---|---|
| CORNELL021566 | TIAA_CORNELL_00043964 | CAPTR_0013580 |
| CORNELL021567 | TIAA_CORNELL_00043967 | |
| CAPTR_0004524 | TIAA_CORNELL_00044016 | CAPTR_0008512 |
| CORNELL013300 | CAPTR_0027310 | CAPTR_0041127 |
| CORNELL013301 | TIAA_CORNELL_00024279 | CAPTR_0043477 |
| CORNELL015071 | CORNELL014459 | TIAA_CORNELL_00002064 |
| CAPTR_0025528 | TIAA_CORNELL_00026207 | TIAA_CORNELL_00025795 |
| CAPTR_0025574 | TIAA_CORNELL_00041742 | TIAA_CORNELL_00035914 |
| CORNELL011398 | TIAA_CORNELL_00041743 | TIAA_CORNELL_00035942 |
| TIAA_CORNELL_00026179 | TIAA_CORNELL_00041750 | TIAA_CORNELL_00035943 |
| CORNELL013304 | CORNELL019832 | TIAA_CORNELL_00035975 |
| CORNELL013305 | CORNELL011359 | TIAA_CORNELL_00026249 |
| CORNELL015077 | CORNELL011362 | CAPTR_0007462 |
| CORNELL010981 | CAPTR_0013568 | CAPTR_0007468 |
| CORNELL011394 | CORNELL011360 | CAPTR_0007469 |
| CAPTR_0013573 | CORNELL013413 | CAPTR_0007500 |
| CORNELL011395 | CAPTR_0028183 | CAPTR_0007501 |
| CORNELL011397 | CORNELL024756 | CAPTR_0007555 |
| CAPTR_0027417 | CORNELL024750 | CAPTR_0043375 |
| CORNELL011357 | CORNELL024751 | CAPTR_0007924 |
| CORNELL003409 | TIAA_CORNELL_00024176 | CAPTR_0007926 |
| CAPTR_0026280 | TIAA_CORNELL_00024810 | CAPTR_0043473 |
| TIAA_CORNELL_00026193 | TIAA_CORNELL_00025769 | CAPTR_0043565 |
| CORNELL011712 | TIAA_CORNELL_00026221 | |
| CAPTR_0005206 | CORNELL023441 | CAPTR_0008485 |
| CORNELL011718 | CORNELL023442 | CAPTR_0013590 |
| CORNELL011719 | CORNELL024769 | CAPTR_0044456 |
| CORNELL011354 | CORNELL024770 | CAPTR_0010696 |
| CORNELL011358 | CORNELL024772 | CAPTR_0010618 |
| CAPTR_0013594 | TIAA_CORNELL_00038768 | CAPTR_0012792 |
| CAPTR_0027364 | CORNELL013412 | CAPTR_0012830 |
| CORNELL011355 | CAPTR_0013565 | CAPTR_0042229 |
| CAPTR_0038206 | CORNELL013414 | CORNELL021042 |
| CORNELL0000419 | CAPTR_0006755 | CORNELL021078 |
| CORNELL0000481 | CORNELL_024965 | TIAA_CORNELL_00008549 |
| CORNELL011361 | CORNELL024966 | TIAA_CORNELL_00017487 |
| TIAA_CORNELL_00007323 | TIAA_CORNELL_00025224 | TIAA_CORNELL_00017505 |
| TIAA_CORNELL_00016350 | TIAA_CORNELL_00036239 | TIAA_CORNELL_00017535 |
| TIAA_CORNELL_00016368 | CORNELL013800 | TIAA_CORNELL_00024684 |
| TIAA_CORNELL_00016400 | CORNELL013801 | TIAA_CORNELL_00038669 |
| TIAA_CORNELL_00024062 | TIAA_CORNELL_00026235 | TIAA_CORNELL_00038707 |
| TIAA_CORNELL_00038349 | CAPTR_0006750 | TIAA_CORNELL_00043965 |
| TIAA_CORNELL_00038387 | CAPTR_0006751 | TIAA_CORNELL_00043968 |

11

Exhibit 1

| | | |
|---|---|---|
| CAPTR_0044513 | CAPTR_0013561 | TIAA_CORNELL_00040083 |
| CAPTR_0044939 | CAPTR_0012262 | TIAA_CORNELL_00043966 |
| CAPTR_0009601 | CAPTR_0013296 | TIAA_CORNELL_00043969 |
| CAPTR_0009605 | CAPTR_0013385 | CAPTR_0015229 |
| CAPTR_0009705 | CAPTR_0035943 | CORNELL028139 |
| CAPTR_0009639 | CAPTR_0045862 | CORNELL029129 |
| CAPTR_0009630 | CAPTR_0046666 | CORNELL028138 |
| CORNELL027850 | TIAA_CORNELL_00025338 | CORNELL029128 |
| CORNELL027851 | TIAA_CORNELL_00039435 | CAPTR_0005122 |
| CORNELL027852 | TIAA_CORNELL_00039448 | CAPTR_0005142 |
| CAPTR_0009703 | CAPTR_0012816 | CAPTR_0005154 |
| CAPTR_0009759 | CAPTR_0012855 | CAPTR_0005161 |
| CAPTR_0009760 | CAPTR_0012723 | CAPTR_0005417 |
| CAPTR_0009842 | CAPTR_0012728 | CORNELL029125 |
| CAPTR_0009854 | CAPTR_0012731 | TIAA_CORNELL_00041591 |
| CAPTR_0009880 | CAPTR_0012772 | CORNELL029126 |
| CAPTR_0045002 | TIAA_CORNELL_00026288 | CORNELL028143 |
| CAPTR_0009945 | TIAA_CORNELL_00043802 | CAPTR_0016245 |
| CAPTR_0009946 | TIAA_CORNELL_00025844 | CORNELL029039 |
| TIAA_CORNELL_00024926 | CAPTR_0013290 | CORNELL029040 |
| CAPTR_0010165 | CAPTR_0013291 | CORNELL028135 |
| CAPTR_0010701 | CAPTR_0013939 | CORNELL028136 |
| CAPTR_0010703 | CAPTR_0013943 | CORNELL028144 |
| CAPTR_0010613 | CAPTR_0014034 | CORNELL029038 |
| TIAA_CORNELL_00026262 | CAPTR_0046693 | CORNELL029036 |
| TIAA_CORNELL_00038762 | CORNELL027998 | CORNELL029037 |
| TIAA_CORNELL_00038765 | CAPTR_0012873 | CAPTR_0019249 |
| CAPTR_0011460 | CAPTR_0047975 | CAPTR_0035131 |
| CAPTR_0011552 | CAPTR_0013937 | CORNELL028595 |
| CAPTR_0039673 | CAPTR_0013938 | TIAA_CORNELL_00038606 |
| TIAA_CORNELL_00039340 | CAPTR_0014065 | CAPTR_0020687 |
| TIAA_CORNELL_00039384 | CAPTR_0015281 | CORNELL006365 |
| CAPTR_0010611 | TIAA_CORNELL_00043690 | CORNELL021848 |
| CAPTR_0013583 | CORNELL028141 | CORNELL023396 |
| TIAA_CORNELL_00025821 | CORNELL028142 | CORNELL023615 |
| CAPTR_0048046 | CORNELL029131 | CORNELL028144 |
| TIAA_CORNELL_00026275 | CORNELL029132 | TIAA_CORNELL_00039690 |
| CAPTR_0010886 | TIAA_CORNELL_00009829 | TIAA_CORNELL_00040102 |
| CAPTR_0045959 | TIAA_CORNELL_00018652 | TIAA_CORNELL_00041843 |
| CAPTR_0011455 | TIAA_CORNELL_00018669 | TIAA_CORNELL_00044742 |
| CAPTR_0011456 | TIAA_CORNELL_00018700 | |

Exhibit 1

## WENDY J. DOMINGUEZ, MBA
Current as of August 24, 2018

Innovest Portfolio Solutions LLC
4643 S. Ulster Street, Suite 1040
Denver, CO 80237
(303) 694-1900, ext. 301
wdominguez@innovestinc.com

Through formal education, attainment of professional certifications and over 26 years of experience, Wendy has demonstrated expertise in investment management, retirement plan consulting and the duties and responsibilities of fiduciaries.

## Current Employment

**Innovest Portfolio Solutions LLC**
1996 – Present
Denver, Colorado

Wendy is the President and Co-Founder of Innovest Portfolio Solutions LLC, an investment adviser registered with the Securities and Exchange Commission pursuant to the Investment Advisers Act of 1940. Innovest provides investment consulting and retirement plan consulting services to its clients on a fee-only basis. Its institutional clients include fiduciaries, trustees and investment committees of retirement plans, foundations, endowments and nonprofit organizations. Innovest institutional clients also include high net worth families. Innovest provides consulting services to over 250 institutional clients with investment assets totaling over $23 billion.

Investment Consulting Services

In her role as an investment consultant, Wendy has ongoing consulting relationships with clients that include retirement plans, foundations and high net worth individuals. Consulting services provided to every client are based on the following prudent process (1) initial and ongoing analysis of the client's current situation and investment policies, (2) design of an investment portfolio with an asset allocation that meets the risk and return objectives of the client, (3) documentation in an investment policy statement, (4) selection of investment managers and other service providers, and (5) monitoring, which includes performance measurement and evaluation, and ongoing analysis of the entire investment program, including compliance with fiduciary responsibilities.

Wendy is a member of the Innovest Board of Managers, which has final responsibility for all decisions regarding capital markets expectations, investment strategies, portfolio management and investment products.

Wendy also leads the Retirement Plan Practice Group at Innovest which provides a forum for discussion of issues related to all Innovest retirement plan clients.

1

Wendy shares supervisory responsibility for all Innovest clients because (1) she is on the Board of Managers and responsibility of the management of the firm (company policies and procedures are discussed at quarterly meetings), (2) she is on the Directors Committee (company policies and procedures are discussed at monthly meetings), (3) she leads the Retirement Plan Practice Group (see above), and (4) she is a senior investment consultant (all institutional clients at Innovest have two or more consultants assigned to their accounts, and all consultants occasionally assist with clients with whom they do not regularly work).

<u>Miscellaneous</u>

Wendy is an ERISA fiduciary with respect to the Innovest 401(k) Plan.

## **Professional Certifications, Education and Other Qualifications**

### **Securities Licenses**

Wendy passed the National Association of Securities Dealers (NASD) Series 7 examination, General Securities Registered Representative, in 1993.  She passed the NASD Series 63 and Series 65 examination, Uniform State Securities, in 1993.

### **Education**

Wendy earned her BSBA in Finance from the University of Denver in 1991, graduating "Magna Cum Laude"

Wendy earned her Master of Business Administration from the University of Denver in 1992.

### **Other Background**
In 2014, Wendy was named one of the 20 Most Influential Women in Benefit Advising in he nation by *Employee Benefit Adviser*.  Wendy has also been designated as one of the *Financial Times'* Top 100 Women Financial Advisors.

In 2014, Innovest Portfolio Solutions was named Plan Adviser Team of the Year by Plan Sponsor Magazine.

In 2016, Wendy was appointed by the Governor of Colorado to serve on the Metropolitan State University Board of Trustees. In 2018, she was appointed to the Advisory Council of the University of Denver Reimann School of Finance in 2018.

### **Published Articles**

"Selecting the Right Target Date Fund Family for Your Plan" August 19, 2016, *401(k) Specialist Magazine.*

"The Good and Bad of Investment Committees and Boards" October 17, 2012, *Pensions & Investments.*

"Retirement Plan Expenses Uncovered", *National Association of Governmental Defined Contribution Plans (NAGDCA)*.

### EXHIBIT 3
### Confidential Expert Report of Wendy Dominguez

| | Fidelity Fund Name | Ticker | Assets | Exp. Ratio |
|---|---|---|---|---|
| A | Fidelity Canada | FICDX | 3,597,892 | .77 |
| A | Fidelity Strategic Real Ret | FSRRX | 2,470,140 | .75 |
| A | Fidelity Spartan Emerging Markets Index ADV | FPMAX | 114,157 | .20 |
| A | Fidelity Emerging Markets Discovery | FEDDX | 536,080 | 1.50 |
| A | Fidelity Total Emerging Markets | FTEMX | 224,993 | 1.40 |
| A | Fidelity Nordic | FNORX | 489,387 | 1.08 |
| A | Fidelity Spartan Global X-US Adv | FSGDX | 118,795 | .18 |
| A | Fidelity Global High Income | FGHNX | 199,050 | 1.07 |
| A | Fidelity Spartan Inflation Protected Index | FSIYX | 190,735 | .10 |
| A | Fidelity Strategic Advisers Core Multi Manager | FLAUX | 5,171 | .98 |
| A | Fidelity Spartan Ext Market Index Adv | FSEVX | 3,766,224 | .07 |
| A | Fidelity StK Sel Mid Cap | FSSMX | 353,376 | .59 |
| A | Fidelity Spartan Real Es Index Adv | FSRVX | 206,398 | .10 |
| A | Fidelity Spartan Small Cap Index Adv | FSSVX | 158023 | .16 |
| A | Fidelity Conservative Inc Bond Fund | FCONX | 266,843 | .40 |
| A | Fidelity Global Bond | FGBFX | 253,860 | .75 |
| A | Fidelity International Bond | FINUX | 110,946 | .75 |
| B | Fid Sel Comm Equip | FSDCX | 441,338 | .90 |
| B | Fid Sel Automotive | FSAVX | 140,665 | .90 |
| B | Fid Sel Gold | FSAGX | 5,437,508 | .89 |
| B | Fid Sel Med Eq Sys | FSMEX | 1,348,764 | .84 |
| B | Fid Medical Del | FSHCX | 680,252 | .86 |
| B | Fid Sel Evn Alt Energy | FSLEX | 214,925 | 1.01 |
| B | Fid Disciplined Eqty K | FDEKX | 1,326,872 | .39 |
| B | FID Magellan K | FMGKX | 18,609,364 | .43 |
| B | Fid Independence K | FDFKX | 2,047,521 | .66 |
| B | Fidelity Janus Twenty T | JAVLX | 1,653,511 | .81 |
| B | Fidelity Blue Chip Value | FBCVX | 887,239 | .77 |
| B | Fidelity Alger midcap Growth I | ALMRX | 960,615 | 1.23 |
| B | Fid Strategic Inc | FSICX | 7,265,417 | .70 |
| B | FID Global Comdty Stk | FFGCX | 196,189 | 1.10 |
| B | Fidelity Pimco Low Dur Inst. | PTLDX | 1,759,420 | .46 |

EXHIBIT 3
**Confidential Expert Report of Wendy Dominguez**

| | | | | |
|---|---|---|---|---|
| B | Fid Small Cap Stock | FSLCX | 2,808,496 | 1.12 |
| C | Fid Sel Wireless | FWRLX | 913,077 | .90 |
| C | Fid Convertible Sec | FCVSX | 1,480,154 | .76 |
| C | Fid Emerging Mkts K | FKEMX | 4,913,320 | .87 |
| C | Fid Sel Natural Gas | FSNGX | 1,053,662 | .86 |
| C | Fid Sel Financial | FIDSX | 351,077 | .90 |
| C | Fid Sel Brokerage | FLSBX | 170,919 | 1.52 |
| C | Fid Intl Value | FIVLX | 151,427 | 1.13 |
| C | Fid Intl Small Cap | FISMX | 1,091,812 | 1.36 |
| C | Fid Intl Sm Cap Opp | FSCOX | 621,312 | 1.47 |
| C | Fid Intl Real Estate | FIREX | 784,555 | 1.19 |
| C | Fid Focused High Inc | FHIFX | 138,879 | .82 |
| C | Fid Sel Transport | FSRFX | 307,033 | .88 |
| C | Fid Sel Air Transport | FSAIX | 125,922 | .96 |
| C | PIMCO Total Return Inst | PTTRX | 13,026,621 | .46 |
| C | Fid Sptn US Bond Index IS | FXSTX | 6,452,619 | .07 |
| C | Fid Invest Gr Bd | FBNDX | 3,091,654 | .45 |
| C | Fid INtermed Bond | FTHRX | 1,869,386 | .45 |
| C | Domini Social Eqty R | DSFRX | 2,045,337 | .90 |
| C | Fid Export Multi K | FEXKX | 3,977,629 | .65 |
| C | Fid  Fidelity Fund K | FFIDX | 2,926,850 | .43 |
| C | Fid Equity Income K | FEIKX | 6,403,808 | .54 |
| C | Fid Equity Div Income K | FETKX | 6,403,808 | .54 |
| C | Fid Stk Sel Lg Cap Value | FSLVX | 1,040,832 | .57 |
| C | Fid Levergd Co Stk K | FLCKX | 3,738,870 | .69 |
| C | Fid Growth Strat K | FAGKX | 2,143,393 | .48 |
| C | Fid Asset Mgr 70% | FASGX | 15908,873 | .77 |
| C | Fid Short Term Bond | FSHBX | 1,882,482 | .45 |
| C | Fid Stk Sel Sm Cap | FDSCX | 1,277,113 | 1.07 |
| C | JHancock Small Company A | JCSAX | 1,150,004 | 1.50 |
| C | Fid Sel Electronics | FSELX | 544,782 | .84 |
| C | Fid Sel Utilities | FSUTX | 1,055,595 | .86 |
| C | Fid Global Strat | FDYSX | 333,647 | 1.08 |
| D | Fid Float Rt Hi Inc | FFRHX | 2,105,546 | .71 |
| D | Fid Asset Mgr 20% | FASIX | 3,248,371 | .54 |
| D | Fid Sel Leisure | FDLSX | 718,778 | .86 |
| D | Fid Sel Constrhouse | FSHOX | 393,947 | .96 |
| D | Fid Sel Natural Res | FNARX | 1,730,454 | .84 |
| D | Fid Sel Energy Svcs | FSESX | 1,657,859 | .82 |
| D | FID Sel Consumer Fin | FSVLX | 1,059,96 | .95 |
| D | Fid Overseaks K | FOSKX | 4,322,237 | .51 |
| D | Fid Sel Biotech | FBIOX | 4,543,878 | .83 |

## EXHIBIT 3
### Confidential Expert Report of Wendy Dominguez

| | | | | |
|---|---|---|---|---|
| D | Fid Capital Income | FAGIX | 3,508,631 | .77 |
| D | Fid High Income | SPHIX | 2,873,904 | .76 |
| D | Fid GNMA | FGMNX | 2,739,513 | .45 |
| D | Fid sptn Int Tr Index Adv | FIBAX | 459,052 | .10 |
| D | Fid Intm Govt Income | FSTGX | 394,259 | .45 |
| D | Fid Total Bond | FTBFX | 4,355,258 | .45 |
| D | Fid Mortgage Sec | FMSFX | 287,467 | .45 |
| D | Fid Japan Small Co | FJSCX | 356,866 | 1.05 |
| D | Fid Japan | FJPNX | 282,436 | 1.09 |
| D | Fid Growth Inc K | FGIKX | 7,015,854 | .54 |
| D | Fid Dividend Gr K | FDGKX | 6,367,035 | .77 |
| D | Fid Value Discov K | FVDKX | 350,879 | .68 |
| D | Fid Growth Disc K | FGDKX | 742,797 | .64 |
| D | Fid Fifty | FFTYX | 702,862 | .94 |
| D | Fid Strategic Div Inc | FSDIX | 2,145,217 | .81 |
| D | Fid sptn Lt Tr Inx Adv | FLBAX | 307,124 | .10 |
| D | Ariel Fund | ARGFX | 2,517,919 | 1.06 |
| D | Ariel Appreciation | CAAPX | 1,695,133 | 1.17 |
| D | MSIF Mid Cap Growth I | MPEGX | 591,687 | .71 |
| D | Franklin SmMidCap Growth A | FRSGX | 360,402 | .99 |
| D | Fid Value K | FVLKX | 5,585,461 | .54 |
| D | Fid Asset Mgr 50% | FASMX | 10,710,143 | .70 |
| D | Fid Asset Mgr 60% | FSANX | 48,144 | .78 |
| D | Fid Real Estate Inc | FRIFX | 2,159,122 | .90 |
| D | Fid Small Cap Growth | FCPGX | 842,088 | 1.03 |
| S | Fid. Pacific Basin | FPBFX | 4,179,647 | 1.28 |
| S | Fid. Emerging Asia | FSEAX | 1,399,394 | .94 |
| S | Fid Europe | FIEUX | 2,515,696 | .83 |
| S | Fid Latin America | FLATX | 3,172,760 | 1.02 |
| S | Fid China Region | FHKCX | 4,453,868 | 1.04 |
| S | Fid EMEA | FEMEX | 120,494 | 1.37 |
| S | Templeton Developing Markets A | TEDMX | 357,554 | 1.71 |
| S | Fid Sel Consumer Staples Port | FDFAX | 1,077,573 | .83 |
| S | Fid Sel Retailing Portfolio | FSRPX | 611,563 | .90 |
| S | Fid Sel Multimedia Portfolio | FBMPX | 509,327 | .90 |
| S | Fid Sel Consumer Discret Port | FSCPX | 74,535 | .89 |
| S | Fid Telecom and Utilities | FIUIX | 457,830 | .83 |
| S | Fid Select Energy Portfolio | FSENX | 2,586,657 | .83 |
| S | Fid Sel Defense & Aero Port | FSDAX | 1,106,358 | .86 |
| S | Fid Sel Industrial Equip Port | FSCGX | 184,828 | .84 |
| S | Fid Sel Industrials  Portfolio | FCYIX | 253,241 | .87 |

EXHIBIT 3
Confidential Expert Report of Wendy Dominguez

| | | | | |
|---|---|---|---|---|
| S | Fid Sel Insurance Port | FSPCX | 96,515 | .89 |
| S | Fid Sel Banking Portfolio | FSRBX | 234,846 | .88 |
| S | Fid Sel Chemicals Portfolio | FSCHX | 1,163,145 | .85 |
| S | Fid Sel Materials Portfolio | FSDPX | 1,405,845 | .85 |
| S | Fid Sel Health Care Portfolio | FSPHX | 2,123,962 | .80 |
| S | Fid Sel Pharmaceuticals Port | FPHAX | 562,728 | .89 |
| S | Fid Sel Telecommunications Port | FSTCX | 293,567 | .90 |
| S | Fid Sel Computers  Portfolio | FDCPX | 756,354 | .86 |
| S | Fid Sel Software & Comp Port | FSCSX | 1,642,853 | .82 |
| S | Fid Sel Technology Portfolio | FSPTX | 1,808,199 | .82 |
| S | Fid Sel IT Services Portfolio | FBSOX | 371,878 | .91 |

| | TIAA Fund Name | Ticker | Assets 101161 | Assets 101160 | Combined Value | Exp. Ratio |
|---|---|---|---|---|---|---|
| A | TIAA Real Estate | QREARX/ TREA# | 35,131,156 | 27,532,723 | 62,663,879 | .92 |
| C | CREF Stock | QCSTRX | 361,730,232 | 170,838,189 | 532,568,421 | .49 |
| D | TIAA-CREF Bond Plus-Inst | TIBFX | 2,537,010 | 2,499,306 | 5,036,316 | .35 |
| D | TIAA-CREF Lg-Cap Val-Inst | TRLIX | 4,612,112 | 4,681,267 | 9,293,379 | .46 |
| D | CREF Bond Market | CBND# | | | 92,255,765 | .45 |
| E | CREF Money Market | CMMA# | | | 57,844,402 | .42 |
| E | CREF Inflation-Linked Bond | CILB# | | | 74,821,967 | .45 |
| E | CREF Equity Index | CEQX# | | | 73,549,914 | .43 |
| E | Cref Growth | CGRW# | | | 93,580,517 | .47 |
| E | CREF Global Equities | CGLB# | | | 96,057,641 | .52 |
| D | WA Core Plus Bond Portfolio | WACPX | 1,543,898 | 1,440,384 | 2,984,282 | .45 |

## EXHIBIT 3
## Confidential Expert Report of Wendy Dominguez

| Provider | Asset Value | | | | | | Totals |
|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | S | |
| Fidelity | $13,062,070 | $45,778,096 | $87,376,452 | $76,120,323 | | $33,521,217 | **$255,858,158** |
| TIAA | $62,663,879 | | $532,568,421 | $109,569,742 | $395,854,441 | | **$1,100,656,483** |
| Combined Asset Values | $75,725,949 | $45,778,096 | $619,944,873 | $185,690,065 | $395,854,441 | $33,521,217 | **$1,356,514,641** |

## Investment Growth*

Time Period : Since Common Inception (12/30/2000) to 6/30/2010



— CREF Stock R1    — 70% U.S., 23% Int'l, 7% EM    — MSCI ACWI NR USD

## Equity Sectors*

| | Portfolio Date | Equity Econ Sector Basic Materials % | Equity Econ Sector Consumer Cyclical % | Equity Econ Sector Financial Services % | Equity Econ Sector Real Estate % | Equity Econ Sector Consumer Defensive % | Equity Econ Sector Healthcare % | Equity Econ Sector Utilities % | Equity Econ Sector Communication Services % | Equity Econ Sector Energy % | Equity Econ Sector Industrials % | Equity Econ Sector Technology % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CREF Stock R1 | 6/30/2010 | 6.13 | 10.11 | 16.41 | 2.25 | 10.01 | 10.69 | 3.63 | 4.29 | 9.47 | 12.74 | 14.28 |
| Russell 3000 TR USD | 6/30/2010 | 3.48 | 9.48 | 14.94 | 2.71 | 10.52 | 12.15 | 3.62 | 3.70 | 9.71 | 12.45 | 17.24 |
| MSCI EAFE NR USD | 6/30/2010 | 10.59 | 9.43 | 21.05 | 2.95 | 10.90 | 9.12 | 5.42 | 5.86 | 7.19 | 11.87 | 5.62 |
| MSCI EM NR USD | 6/30/2010 | 15.72 | 7.11 | 23.38 | 1.96 | 5.90 | 0.92 | 3.81 | 8.30 | 13.08 | 5.75 | 14.05 |
| MSCI ACWI NR USD | 6/30/2010 | 8.82 | 8.28 | 18.71 | 2.14 | 10.17 | 8.97 | 4.27 | 5.25 | 10.75 | 10.56 | 12.09 |
| 70% U.S., 23% Int'l, 7% EM | 6/30/2010 | 5.95 | 9.30 | 16.92 | 2.71 | 10.29 | 10.68 | 4.05 | 4.51 | 9.37 | 11.85 | 14.36 |

## Correlation Matrix: 5-Years Ending 6/30/2010

Time Period : 7/1/2005 to 6/30/2010

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| 1 CREF Stock R1 | 1.00 | | | | | |
| 2 Russell 3000 TR USD | 0.99 | 1.00 | | | | |
| 3 MSCI EAFE NR USD | 0.94 | 0.90 | 1.00 | | | |
| 4 MSCI EM NR USD | 0.88 | 0.83 | 0.93 | 1.00 | | |
| 5 MSCI ACWI NR USD | 0.99 | 0.96 | 0.98 | 0.93 | 1.00 | |
| 6 70% U.S., 23% Int'l, 7% EM | 1.00 | 0.99 | 0.96 | 0.90 | 0.99 | 1.00 |

■1.00 to 0.80   ■0.80 to 0.60   ■0.60 to 0.40   ■0.40 to 0.20   ■0.20 to 0.00
■0.00 to -0.20   -0.20 to -0.40   ■-0.40 to -0.60   ■-0.60 to -0.80   ■-0.80 to -1.00

## Correlation Matrix: 9-Years Ending 6/30/2010**

Time Period : 7/1/2001 to 6/30/2010

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| 1 CREF Stock R1 | 1.00 | | | | | |
| 2 Russell 3000 TR USD | 0.99 | 1.00 | | | | |
| 3 MSCI EAFE NR USD | 0.94 | 0.89 | 1.00 | | | |
| 4 MSCI EM NR USD | 0.87 | 0.83 | 0.90 | 1.00 | | |
| 5 MSCI ACWI NR USD | 0.99 | 0.97 | 0.97 | 0.92 | 1.00 | |
| 6 70% U.S., 23% Int'l, 7% EM | 1.00 | 0.99 | 0.95 | 0.89 | 0.99 | 1.00 |

■1.00 to 0.80   ■0.80 to 0.60   ■0.60 to 0.40   ■0.40 to 0.20   ■0.20 to 0.00
■0.00 to -0.20   -0.20 to -0.40   ■-0.40 to -0.60   ■-0.60 to -0.80   ■-0.80 to -1.00

Source: Morningstar Direct

*70% U.S., 23% Int'l, 7% EM custom benchmark is comprised of 70% Russell 3000 Index, 23% MSCI EAFE Index, 7% MSCI Emerging Market Index
**Correlation table ran for trailing 9-years ending 6/30/2010, as the MSCI Emerging Markets Index was incepted in 2001.