# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASEY CUNNINGHAM et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>CORNELL UNIVERSITY et al.,<br><br>    *Defendants*. | Civil Action No. 16-cv-6525<br><br><br>Hon. P. Kevin Castel |

## REPLY IN SUPPORT OF
## CORNELL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Nancy G. Ross
Samuel P. Myler
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Jean-Marie L. Atamian
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500

Brian D. Netter
  bnetter@mayerbrown.com
Michelle N. Webster
Matthew A. Waring
Ankur Mandhania
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Cornell Defendants*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................1

I. In this Circuit, Plaintiffs have the burden to prove loss causation......................................1

II. Cornell is entitled to summary judgment on Plaintiffs' administrative fee claim. ..............2

    A. Cornell followed a prudent process to determine that there was no single vendor capable of recordkeeping its investment lineup..........................................3

    B. Plaintiffs have failed to adduce evidence showing that Cornell could have obtained recordkeeping services on better terms. ...................................................5

III. Cornell is entitled to summary judgment on Plaintiffs' investment selection claims. ...................................................................................................................................7

    A. Plaintiffs lack evidence to establish that CREF Stock was imprudent. ...................7

    B. Plaintiffs lack evidence to show that TIAA Real Estate was imprudent. ................9

    C. Plaintiffs' allegations about retail-class funds are irrelevant. .................................9

    D. New funds identified by Plaintiffs' expert—but not by Plaintiffs' operative complaint—are not at issue in this case. ................................................................10

CONCLUSION........................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Chimes D.C., Inc.*,
   2019 WL 931710 (D. Md. Feb. 26, 2019) ............................................................................... 3

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................................. 1, 5

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
   860 F. Supp. 2d 251 (S.D.N.Y. 2012) ..................................................................................... 1

*Brotherston v. Putnam Invs., LLC*,
   907 F.3d 17 (1st Cir. 2018) ..................................................................................................... 2

*Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*,
   259 F.3d 1036 (9th Cir. 2001) ................................................................................................ 9

*Delaney v. Bank of Am. Corp.*,
   766 F.3d 163 (2d Cir. 2014) ................................................................................................... 9

*Dominick & Dominick LLC v. Deutsche Oel & Gas AG*,
   2017 WL 3669619 (S.D.N.Y. Aug. 24, 2017) .................................................................. 8, 10

*Geddes v. Anaconda Copper Mining Co.*,
   254 U.S. 590 (1921) ................................................................................................................ 2

*Gucci Am., Inc. v. Guess?, Inc.*,
   843 F. Supp. 2d 412 (S.D.N.Y. 2012) ..................................................................................... 6

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ................................................................................................... 6

*Marinelli v. Chao*,
   222 F. Supp. 2d 402 (S.D.N.Y. 2002) .............................................................................. 8, 10

*Marshall v. Snyder*,
   572 F.2d 894 (2d Cir. 1978) ................................................................................................... 2

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) .............................................................................................. 8, 9

*Nedd v. United Mine Workers of Am.*,
   556 F.2d 190 (3d Cir. 1977) ................................................................................................... 2

# TABLE OF AUTHORITIES—continued

Page(s)

*N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*,
  18 F.3d 179 (2d Cir. 1994)............................................................................................1, 2

*Parks v. Blanchette*,
  144 F. Supp. 3d 282 (D. Conn. 2015)..................................................................................9

*PBGC v. Morgan Stanley Inv. Mgmt., Inc.*,
  712 F.3d 705 (2d Cir. 2013)..................................................................................................7

*Pfeil v. State Street Bank & Tr. Co.*,
  806 F.3d 377 (6th Cir. 2015) ................................................................................................9

*Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*,
  858 F.3d 1324 (10th Cir. 2017) ............................................................................................1

*Plasterers' Local Union No. 96 Pension Plan v. Pepper*,
  663 F.3d 210 (4th Cir. 2011) ................................................................................................2

*Sacerdote v. N.Y. Univ.*,
  328 F. Supp. 3d 273 (S.D.N.Y. 2018).............................................................................3, 5

*Silverman v. Mut. Benefit Life Ins. Co.*,
  138 F.3d 98 (2d Cir. 1998)....................................................................................................1

*In re State Street Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
  842 F. Supp. 2d 614 (S.D.N.Y. 2012)..................................................................................1

*Troudt v. Oracle Corp.*,
  2019 WL 1006019 (D. Colo. Mar. 1, 2019) ........................................................................5

*In re Unisys Sav. Plan Litig.*,
  173 F.3d 145 (3d Cir. 1999)..................................................................................................1

*White v. Chevron Corp.*,
  2016 WL 4502808 (N.D. Cal. Aug. 26, 2016) ....................................................................3

*Wilcox v. Georgetown Univ.*,
  2019 WL 132281 (D.D.C. Jan. 8, 2019).....................................................................4, 5, 8

## STATUTES, RULES, AND REGULATIONS

29 U.S.C. § 1104(a)(1)(B) ............................................................................................................9

Fed. R. Civ. P. 56(c)(2)................................................................................................................9

58 Fed. Reg. 19,050 (Apr. 12, 1993) ..........................................................................................7

75 Fed. Reg. 64,910 (Oct. 20, 2010)...........................................................................................7

## INTRODUCTION

Rather than addressing the merits of the Cornell Defendants' motion for summary judgment, Plaintiffs' opposition attempts the spaghetti-test approach of throwing as many half-boiled strands as possible at the wall in hopes that something will stick. This strategy exposes Plaintiffs' inability to controvert the body of material facts and law that entitle Cornell to judgment. Plaintiffs have failed to adduce "significantly probative" evidence as to essential elements of their claims, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), and summary judgment is warranted.

## ARGUMENT

### I. In this Circuit, Plaintiffs have the burden to prove loss causation.

As an initial matter, Plaintiffs disclaim the burden to prove loss causation, attempting to shift that burden to Defendants. Dkt. 286, at 8 & n.14. They are incorrect. In this Circuit, when a plaintiff files suit for breach of the duty of prudence, "[c]ausation of damages is … an element of the claim, and the plaintiff bears the burden of proving it." *Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 105 (2d Cir. 1998) (Jacobs & Meskill, JJ., concurring)[1]; *see also id.* at 104 (panel opinion) ("[W]e read the relevant statutes to require Silverman to show that the loss claimed resulted from Principal's breach.").[2]

Plaintiffs relegate *Silverman* to a footnote, offering no principled basis for distinguishing it. Instead, Plaintiffs assert that a different Second Circuit case, *New York State Teamsters Council*

---

[1] "Judge Jacobs's concurrence reflects the opinion of a majority of the Second Circuit panel" in *Silverman*, and is therefore binding. *In re State Street Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 842 F. Supp. 2d 614, 653 n.26 (S.D.N.Y. 2012).

[2] Courts both within and without the Second Circuit understand *Silverman* to be the law of the Circuit on loss causation in cases alleging fiduciary imprudence. *See Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 860 F. Supp. 2d 251, 261 (S.D.N.Y. 2012) ("[T]he holding in *Silverman* is unambiguous. … The Second Circuit interpreted the language 'resulting from' [in 29 U.S.C. § 1109(a)] to make causation an element of the claim, for which plaintiffs have the burden of proof."); *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 160 n.23 (3d Cir. 1999); *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1336 (10th Cir. 2017).

1

*Health & Hospital Fund v. Estate of DePerno*, 18 F.3d 179 (2d Cir. 1994), creates the opposite rule. But *DePerno* dealt with a breach of the duty of *loyalty*, a claim this Court has already dismissed from this case. *See* Dkt. 107, at 10 (dismissing loyalty claims because Plaintiffs' allegations did "not support an inference that defendants' actions were for the purpose of providing benefits to themselves or someone else") (emphasis omitted). The *DePerno* court justified burden-shifting because "the burden of proof is always on the party to the self-dealing transaction to justify its fairness." 18 F.3d at 183 (quoting *Marshall v. Snyder*, 572 F.2d 894, 900 (2d Cir. 1978)). The cases relied on by *DePerno* reflect the same principle: Conflicted transactions are inherently suspect and must be justified. *See Nedd v. United Mine Workers of Am.*, 556 F.2d 190, 210 (3d Cir. 1977); *Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590, 599 (1921). Here, with no extant duty-of-loyalty claim, there is no conflicted transaction to justify.

It is therefore Plaintiffs' burden to prove, for each of their claims, that the action taken or decision made by Defendants was objectively imprudent; if a hypothetical fiduciary with a perfect process could have reached the same outcome, any alleged procedural breach could not have *caused* the claimed losses to the Plans. *See, e.g.*, *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 218 (4th Cir. 2011) (fiduciaries are "insulated from liability under § 1109(a)" if they make objectively prudent investments, because fiduciaries "can only be held liable for losses to the Plan actually resulting from their failure to investigate") (alteration incorporated); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 33 (1st Cir. 2018) ("ERISA defendants are not liable for damages that the Plan would have suffered even with a prudent fiduciary at the helm."). Plaintiffs have not satisfied that burden.

**II.    Cornell is entitled to summary judgment on Plaintiffs' administrative fee claim.**

Cornell explained in its motion (at 5-14) that summary judgment on Plaintiffs' administra-

tive fee claim is warranted for two independent reasons: (1) on the undisputed facts, Cornell followed a prudent process; and (2) Plaintiffs have not adduced probative evidence that materially lower fees were attainable, and thus cannot show causation. Plaintiffs' responding arguments do not reveal the existence of a genuine issue of material fact warranting a trial.

> **A. Cornell followed a prudent process to determine that there was no single vendor capable of recordkeeping its investment lineup.**

To begin, Cornell certainly has not "failed to address two of Plaintiffs' allegations of imprudence." Dkt. 286, at 11 (setting out the allegations supposedly overlooked). To the contrary, Cornell demonstrated (at 8-11) that it reduced TIAA's and Fidelity's administrative fees by 75.5% and 70%, respectively, through negotiations over the limitations period.[3] It further explained (at 10) that "competitive bidding is not *per se* required under ERISA." *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 286 (S.D.N.Y. 2018); *accord White v. Chevron Corp.*, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 26, 2016) ("[N]othing in ERISA compels periodic competitive bidding."). That is particularly so here, where TIAA and Fidelity "were the only [recordkeepers] that could practicably provide the necessary services." Ex. 48, Matheson Decl. ¶ 3; SOF ¶ 55; *see Acosta v. Chimes D.C., Inc.*, 2019 WL 931710, at *7, *19 (D. Md. Feb. 26, 2019) ("There is no requirement under the law to engage in a formal, written RFP process"; fiduciary acted prudently where "informal search activities were the functional equivalent given the few choices available.").

As to Cornell's demonstration that recordkeeper consolidation was impracticable because no single recordkeeper had the capacity to recordkeep the Plans' entire investment lineup (Dkt. 233, at 5-7), Plaintiffs merely attempt to confuse the issue. Dkt. 286, at 11-12. They assert that a

---

[3] Plaintiffs' argument that "a reduction in basis points on increasing assets does not mean a decrease in total fees" (Dkt. 286, at 14) is peculiar. Cornell's motion demonstrated a reduction in *per participant* fees over the limitations period from $155 to $59 for TIAA, and from $82 to $38 for Fidelity. Dkt. 233, at 9; SOF ¶¶ 50-52.

3

handful of universities chose between TIAA and Fidelity. *Id.* at 12 & n.17 (citing Ex. 31 at 9). But the undisputed evidence shows that these decisions entailed tradeoffs that Cornell was not required to make. Universities that left TIAA forfeited their employees' ability to make future contributions to TIAA annuities while still having to pay TIAA to recordkeep their frozen TIAA annuities.[4] Universities that left Fidelity forfeited their employees' access to Fidelity's highly regarded mutual funds. SOF ¶¶ 42, 46; *see Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *12 (D.D.C. Jan. 8, 2019) (dismissing same claim where "Plaintiffs provide[d] no evidence that the three entirely different current investment platforms … would agree to continue the same offerings at a lesser, or combined, recordkeeping price" and failed to "identif[y] any college or university that has accomplished that feat"). Cornell deliberately chose not to make these tradeoffs, out of concern for disrupting plan participants' retirement strategies and investment choices. SOF ¶¶ 42-48.

Because Plaintiffs have no evidence that Cornell could have achieved the same investment lineup with a single recordkeeper (*i.e.*, the theory of their complaint), Plaintiffs now endeavor to shift the goalposts by suggesting that Cornell could have chosen a "master administrator." Dkt. 286, at 12. But that is just a euphemism for having (and paying) multiple recordkeepers, as Plaintiffs' own expert explained. RSOF ¶ 26; Ex. 122, Minnich Dep. at 56:13-57:12 ("[T]he staff or faculty member would actually see the legacy assets on our statement, on our website, but [in] reality, the assets were still being record kept at TIAA."); *id.* at 58:11-60:13 (agreeing that in a master recordkeeper arrangement, TIAA would continue to "receive compensation for providing recordkeeping services to its proprietary products"). Plaintiffs' newfound preference for a reallocation of responsibilities among multiple recordkeepers appears nowhere in their complaint and

---

[4] Plaintiffs have no evidence that any plan has ever stopped offering TIAA annuities without paying TIAA ongoing fees for recordkeeping. *See* RSOF ¶¶ 43-44. For example, Pepperdine was paying $96 per participant per year to TIAA on top of the payments to its new recordkeeper. Dkt. 233, at 12; SOF ¶¶ 43-45.

4

finds no support in the record.

### B. Plaintiffs have failed to adduce evidence showing that Cornell could have obtained recordkeeping services on better terms.

Plaintiffs offer insufficient evidence to undermine Cornell's demonstration that they adduced no "significantly probative" evidence that a different process could have produced lower fees. *Anderson*, 477 U.S. at 249; *see* Dkt. 286, at 16-17 (one page of argument). Again, it is Plaintiffs' burden to prove that any alleged process defects caused losses to the Plans; without a showing that the same services Cornell received were available on the market for a materially lower cost, they cannot do so—and have not done so on the record evidence in this case. *See, e.g.*, *Troudt v. Oracle Corp.*, 2019 WL 1006019, at *8 (D. Colo. Mar. 1, 2019).

Cornell's motion explained (at 13-14) that other courts, confronted with identical allegations and evidence, have concluded that "nobody in the history of time has ever gotten" the kinds of recordkeeping fees Plaintiffs claim were attainable. Trial Tr. 904:25-905:1, *Sacerdote*, No. 16-cv-6284 (S.D.N.Y. Apr. 19, 2018), Dkt. 332; *accord id.* at 906:14-17 ("So then this fee never happened. … [T]here's no basis of that $31 ever happening in the history of time."); *Sacerdote*, 328 F. Supp. 3d at 307 ("[P]laintiffs fail to demonstrate … that their proposed fee ranges were the only plausible or prudent ones—or, indeed, that any comparable Plan has ever [been] charged within that range."); *Wilcox*, 2019 WL 132281, at *13 (the notion "that Georgetown could continue to offer the same Plans and the same associated services for $35/year has no factual support, is entirely speculative, [and is] contrary to caselaw and common sense"). Plaintiffs fail to respond.

As to the evidence of objective prudence produced by Cornell, Plaintiffs' only response completely misunderstands the statistics on which it purports to rely. Plaintiffs contend that because Cornell ranked ████████████████████████████████████████, its fees should be compared against plans with similar participant numbers. Dkt. 286, at 17. ████████

5

[REDACTED]⁵

Finally, Plaintiffs continue to rely on their experts' naked assertions about what fees were theoretically possible. Dkt. 286, at 17; *see also id.* at 25. But as Cornell explained in its motion (and in its *Daubert* motions), those numbers are baseless *ipse dixit* and as such do not create a triable issue of fact. Dkt. 233, at 13-14; *see, e.g.*, *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 319 (2d Cir. 2008) (expert's "opinions were not supported by evidence and were conjectural," and were therefore "insufficient to create a genuine factual dispute"); *Gucci Am., Inc. v. Guess?, Inc.*, 843 F. Supp. 2d 412, 417 (S.D.N.Y. 2012) ("Entirely conclusory expert reports are not sufficient to ward off summary judgment.") (quotation marks omitted). On the record before the Court, Cornell is entitled to summary judgment on Plaintiffs' recordkeeping claim.

---

⁵ Plaintiffs endeavor to rebut Cornell's evidence of objective prudence by highlighting supposed limitations in a discussion of CAPTRUST's data (Dkt. 286, at 17). But that supposed rebuttal does nothing to carry Plaintiffs' affirmative burden to produce significantly probative evidence of objective *im*prudence.

6

**III.    Cornell is entitled to summary judgment on Plaintiffs' investment selection claims.**

Cornell also demonstrated in its motion (at 14-25) that summary judgment is warranted on Plaintiffs' investment selection claims, because Plaintiffs' case again fails as to both procedural prudence and loss causation. *See, e.g.*, *PBGC v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) ("In short, ERISA's fiduciary duty of care requires prudence, not prescience.") (quotations and ellipsis omitted). Plaintiffs simply do not show a genuine dispute requiring a trial.

**A.    Plaintiffs lack evidence to establish that CREF Stock was imprudent.**

Cornell's motion demonstrated that the only theory of imprudence alleged in Plaintiffs' complaint—that the CREF Stock Account underperformed the Russell 3000 index—is legally insufficient. Dkt. 233, at 15-17. Even though the governing prospectus leaves no doubt that the CREF Stock Account is "globally diversified" and discloses a blended benchmark that accounts for its actual composition, Plaintiffs insist with no support that the designation of the (purely domestic) Russell 3000 as the fund's "[b]road market index" (*e.g.* Ex. P114, at 8) means that the CREF Stock Account was supposed to mirror the performance of the Russell 3000. *See* Dkt. 286, at 20. The legal flaw in Plaintiffs' reasoning is that both the SEC (for prospectuses) and DOL (for annual disclosures) require the use of a "broad-based securities market index" even for funds not designed to track a broad-based index.[6] Apart from that index, the SEC "urge[s] funds to compare their performance with other, more narrowly-based indexes" and to explain the disparities with the broad-market index in the prospectus's narrative text. 58 Fed. Reg. at 19,054. That explains why the prospectuses for CREF Stock identify both the Russell 3000 and a blended benchmark that is tailored to the Account's actual composition. There is no dispute that CREF Stock actually pursued a global strategy; Plaintiffs have no theory for why it would make sense to condemn a global fund

---

[6]    *See* 58 Fed. Reg. 19,050, 19,051, 19,053-54 & n.21 (Apr. 12, 1993) (SEC); 75 Fed. Reg. 64,910, 64,916-17 (Oct. 20, 2010) (DOL).

7

for failing to exceed a domestic-only benchmark. "That the CREF Stock Account, with its deliberate mix of foreign and domestic investments, may not have performed as some purely domestic accounts with different investments does not indicate imprudence on the part of Defendants." *Wilcox*, 2019 WL 132281, at *11; *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice.").

Nor should Plaintiffs be permitted, after the close of fact discovery, to change the benchmarks upon which they are relying. *See* Dkt. 286, at 20-21. At the outset of the case, in Cornell's pre-motion letter addressing the initial complaint, Cornell explained that "the prospectuses for the challenged investment options demonstrate that they had different strategies and characteristics than the benchmarks invoked by the Complaint." Dkt. 29, at 5. The Court granted Plaintiffs leave to amend their complaint in response to Cornell's letter (Dkt. 36); Plaintiffs opted to stand by their wrong benchmarks. In equivalent circumstances, this Court has declined to consider at summary judgment arguments based on "factual assertions not found in [the] Amended Complaint," where those assertions constituted a new theory under an existing cause of action. *Dominick & Dominick LLC v. Deutsche Oel & Gas AG*, 2017 WL 3669619, at *3-5 (S.D.N.Y. Aug. 24, 2017) (Castel, J.), *aff'd*, 2018 WL 6131312, at *3 (2d Cir. Nov. 21, 2018) (summary order); *see also, e.g.*, *Marinelli v. Chao*, 222 F. Supp. 2d 402, 406-07 (S.D.N.Y. 2002) (disregarding "those portions of [plaintiff's] Rule 56.1 Statement that exceed the 'clear and concise' allegations in the amended complaint"). Just so here.[7]

---

[7] Even if Plaintiffs were allowed to rely on theories outside the scope of their amended complaint, their new theory does not work. Plaintiffs assert (Dkt. 286, at 21) that the fact that "CREF Stock underperformed its benchmark" is "sufficient to deny summary judgment." ███████████████████████████████ Plaintiffs' position appears to be that a trial for fiduciary breach is required whenever a fund underperforms any benchmark by any amount for any reason. It is no surprise that they identify no authorities to support that indefensible legal theory.

8

Finally, Plaintiffs' objections to Cornell's evidence of CREF Stock's objective prudence are hollow. *See* Dkt. 286, at 22. Evidence that peer retirement plans overwhelmingly offered (and their participants overwhelmingly invested in) CREF Stock is certainly probative of that investment's prudence; after all, the standard is whether a fiduciary exercised the care that a prudent person "would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Courts therefore frequently look to prevailing industry practice to determine what a prudent person in that particular industry would do. *See, e.g.*, *Pfeil v. State Street Bank & Tr. Co.*, 806 F.3d 377, 388 (6th Cir. 2015); *Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*, 259 F.3d 1036, 1044 (9th Cir. 2001).[8] On the factual record, this claim fails.

### B. Plaintiffs lack evidence to show that TIAA Real Estate was imprudent.

Plaintiffs' arguments about the TIAA Real Estate Account are identical to their arguments about the CREF Stock Account. *Compare* Dkt. 286, at 20-22, *with id.* at 22-23. They therefore fail for the same reasons. Again, regardless of what tools anyone used to evaluate TIAA Real Estate as a factual matter, comparisons with REIT indices are insufficient as a matter of law to show imprudence, since TIAA Real Estate and REIT indices pursue completely different investment strategies. SOF ¶ 109 (unlike TIAA Real Estate, REITs are highly correlated with the stock market); *see Meiners*, 898 F.3d at 823.

### C. Plaintiffs' allegations about retail-class funds are irrelevant.

Plaintiffs do not meaningfully dispute that Cornell's negotiation of a required revenue rate with TIAA—retroactive to the 2011 Plan year—negates any possible share-class issue from 2011

---

[8] Moreover, Douglas Chittenden's declaration from *Sacerdote* is properly considered at summary judgment; Rule 56 bars reliance on factual material only if it "*cannot* be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added); *see, e.g.*, *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014); *Parks v. Blanchette*, 144 F. Supp. 3d 282, 293 (D. Conn. 2015) ("[E]ven inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial.") (quotation marks omitted). The contents of Mr. Chittenden's declaration could certainly be presented in admissible form at trial—specifically, the form of testimony from Mr. Chittenden.

onward. Dkt. 286, at 23; *see* Dkt. 233, at 22-23. Because fees in excess of the negotiated rate were rebated to the Plans, including retail-class mutual funds in the Plans did not increase the Plans' overall expenses and therefore could not be found imprudent. Plaintiffs likewise have no evidence that Cornell was eligible for a different share class in 2010. As of December 31, 2009, ███████████████████████████████████████████████████████████████. SOF ¶ 31 & n.64. Plaintiffs cannot seriously contend that 99.98% of TIAA's clients were imprudent, and even if they do this Court should reject it as baseless posturing. Nor do Plaintiffs contest that Cornell showed a prudent process and attentiveness to the share-class issue by transitioning certain funds to institutional share classes in 2010, prior to negotiating the rebates. *See* Dkt. 233, at 22 & n.9; Dkt. 286, at 23-24. On the undisputed material facts, Cornell is entitled to summary judgment.

### D. New funds identified by Plaintiffs' expert—but not by Plaintiffs' operative complaint—are not at issue in this case.

Plaintiffs cite no authority for the proposition that they can be awarded damages with respect to allegedly imprudent funds—that is, discrete instances of supposed imprudence—that are totally absent from their complaint. And for good reason: they cannot. *See, e.g.*, *Dominick*, 2017 WL 3669619, at *3-5; *Marinelli*, 222 F. Supp. 2d at 406-07. That is especially so with respect to the fifty sector funds identified by Dominguez, since even the *concept* of sector funds' supposed imprudence appears nowhere in their complaint. *See* Dkt. 233, at 24. Plaintiffs are not merely offering new facts, they are attempting to improperly expand the scope of their claims. As Cornell explained (*id.* at 24-25), the Venn diagram of the claims pleaded in the complaint and the claims for which Plaintiffs have even attempted to provide evidence shows precious little overlap. The new funds are not in the case.

### CONCLUSION

The Court should grant summary judgment in favor of the Cornell Defendants.

| | |
|---|---|
| Dated: March 25, 2019 | Respectfully submitted, |

| | |
|---|---|
| Nancy G. Ross | */s/ Brian D. Netter* |
| Samuel P. Myler | Brian D. Netter |
| MAYER BROWN LLP | bnetter@mayerbrown.com |
| 71 South Wacker Drive | Michelle N. Webster |
| Chicago, Illinois 60606-4637 | Matthew A. Waring |
| Telephone: (312) 782-0600 | Ankur Mandhania |
| | MAYER BROWN LLP |
| Jean-Marie L. Atamian | 1999 K Street NW |
| MAYER BROWN LLP | Washington, DC 20006-1101 |
| 1221 Avenue of the Americas | Telephone: (202) 263-3000 |
| New York, New York 10020-1001 | Facsimile: (202) 263-3300 |
| Telephone: (212) 506-2500 | |

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 25, 2019, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: */s/ Brian D. Netter*
Brian D. Netter