**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CASEY CUNNINGHAM, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CORNELL UNIVERSITY, *et al.*,<br><br>*Defendants*. | Civil Action No. 16-cv-6525<br><br>Hon. P. Kevin Castel |

**CORNELL DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS IN RESPONSE TO CORNELL DEFENDANTS' SUPPLEMENTAL MEMORANDUM FOR SUMMARY JUDGMENT**

353. The mutual funds listed in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D, which are marked with an X under the column, "Dominguez Opinion August 2010," significantly underperformed their respective peer groups over the 3- and 5-year periods at the start of the class period and should have been removed from the Plans at the beginning of the class period.[1]

RESPONSE: Cornell disputes this assertion of opinion. There is no factual basis for this assertion other than the opinion of Plaintiffs' putative expert Wendy Dominguez. But as explained in the Cornell Defendants' motion to exclude her testimony and opinions (Dkt. 227), Dominguez's expert opinions are not admissible. Even if Dominguez's opinion were admissible, she provides no evidence that any difference between the identified funds and the identified peer groups was "significant" as that is a statistical concept, not a measurement, and Dominguez conducted no statistical tests. Moreover, there is no evidence to support the assertion that Dominguez has compared funds to "their respective" peer groups; Dominguez has not disclosed a methodology for determining peer groups—which are not assigned by the funds themselves—and therefore cannot provide testimony as to the selection of peer groups. Even under the assumption that certain funds underperformed certain peer groups, admissible evidence disproves the assertion that such funds should be removed, because (as Dominguez herself acknowledged) a quantitative-only assessment is insufficient to determine that a fund should be removed from a plan. Dkt. 227; *see also* Ex. D86 ¶¶ 60, 108. Finally, Cornell's process for monitoring and reviewing these funds precludes a finding of imprudence based only on the performance of particular funds. Dkt. 313, ¶¶ 80-90.

---

[1] Doc. 249-18, Expert Report of Wendy Dominguez at ¶¶ 27, 24-28, 82, 111-118, 120; Doc. 301-4, Exhibit 6 to Dominguez Report (mutual funds highlighted in yellow on the Dominguez report would have violated Cornell's IPS, mutual funds highlighted in red are the worst of the worst); *see also* Doc. 313 at ¶ 220.

354. The mutual funds listed in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D, which are marked with an I under the column, "Dominguez Opinion August 2010," exhibited high performance volatility (risk), lacked diversification, did not further the purposes of the Plans, had high expense ratios, and should have been removed from the Plans at the beginning of the class period.[2]

RESPONSE: Cornell disputes this assertion of opinion. As explained in the Cornell Defendants' motion to exclude her testimony (Dkt. 227), there is no factual basis for this assertion other than the opinion of putative expert Wendy Dominguez, which is inadmissible. Furthermore, the cited material does not support this statement; Dominguez's opinion was that the identified funds exhibited *one* of the identified characteristics, not all of them. Moreover, to the extent Plaintiffs suggest that individual funds exhibiting an unidentified level of volatility, an unidentified level of diversification, or an unidentified expense ratio must be removed from a retirement plan lineup, Plaintiffs' assertion incorporates erroneous conclusions of law about the requirements of ERISA. *See, e.g.*, *Young v. Gen. Motors Inv. Mgmt. Co.*, 325 Fed. App'x. 31, 33 (2d Cir. 2009) (holding that ERISA's risk-reducing diversification requirement does not require individual funds in a defined contribution retirement to be diversified because they can be blended to reduce volatility and increase diversification). Finally, admissible evidence disproves the claim that these funds should have been removed. Ex. D86 ¶¶ 98-105; Dkt. 313 ¶¶ 80-90.

355. The mutual funds listed in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D, which are marked with an SH under the column, "Dominguez Opinion August 2010," had

---

[2] Doc. 249-18, Expert Report of Wendy Dominguez at ¶¶43, 52, 62, 65, 112, 113, 119; Doc. 301-4, Exhibit 6 to Dominguez Report (mutual funds highlighted in orange); *see also*, Doc. 313 at ¶¶15, 75-76, 87, 91-92, 104-105, 121, 338, 341-343.

performance histories that would not allow a prudent performance review, and should have been removed from the Plans at the beginning of the class period.[3]

RESPONSE: Cornell disputes this assertion of opinion. As explained in the Cornell Defendants' motion to exclude her testimony (Dkt. 227), there is no factual basis for this assertion other than the opinion of putative expert Wendy Dominguez, which is inadmissible. Furthermore, admissible evidence contradicts Dominguez's claim that these funds should have been removed. Ex. D86 ¶¶ 98-105; Dkt. 313 ¶¶ 80-90. Moreover, to the extent Plaintiffs suggest that ERISA prohibits fiduciaries from offering investment options within a certain period after their inception, that assertion incorporates erroneous conclusions of law about the requirements of ERISA.

356. In 2015, CAPTRUST identified mutual funds listed in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D, which are marked with an X under the column, "Fails IPS 2015," as failing Cornell and CAPTRUST's IPS.[4]

RESPONSE: Cornell disputes this assertion. The IPS is not conceptualized as a pass/fail test; rather, the IPS expressly categorizes funds as "Good Standing," "Marked for Review," and "Considered for Termination," and emphasizes that "[t]he scoring system is not intended to be a self-contained algorithm that automatically triggers a fiduciary outcome or decision." Doc. 313 ¶ 283 & n. 1373; Ex. D76.

---

[3] Doc. 249-18, Expert Report of Wendy Dominguez at ¶¶43, 52, 62, 65, 112, 113, 119; Doc. 301-4, Exhibit 6 to Dominguez Report (mutual funds highlighted in yellow with comment of "Short Track Record"); *see also*, Doc. 313 at ¶¶15, 75-76, 87, 91-92, 104-105, 121, 338, 341-343.

[4] Ex. P178, CAPTR_0029773; Ex. P179, CAPTR_0029771; *see also* Ex. P110, RPOC Presentation December 12, 2016 (CAPTR_0008486) at p. 15 ("IPS is clear about <u>what</u> constitutes an underperforming fund") (emphasis in original).

357. In 2017, CAPTRUST and Cornell agreed to remove and map imprudent mutual funds listed in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D, which are marked with an X under the column, "Remove and Map 2017."[5]

RESPONSE: Cornell admits that it decided in 2017 that it would, at an appropriate future date, remove and map certain funds on its platform, and that it would work with CAPTRUST on the mapping. Ex. P9 at 294:17-299:22; Ex. P49; Dkt. 313 ¶¶ 87-89. Cornell denies the remaining assertions in this paragraph, and specifically disputes the legal conclusion that the funds in question were "imprudent," as it is not a statement of fact subject to Local Rule 56.1.

358. Cornell at all relevant times had the full authority to remove and map all the imprudent mutual funds listed in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D to prudent alternatives.[6]

RESPONSE: Cornell admits that it had the authority to remove the mutual funds on its lineup listed in these tables and to map invested assets to different funds. Cornell denies the remaining assertions in this paragraph, and specifically disputes the legal conclusion that the funds in question were "imprudent," as it is not a statement of fact subject to Local Rule 56.1.

359. All mutual funds listed in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D should have been removed from the Plans at the start of the class period, or, at the latest, July 2013.[7]

RESPONSE: Cornell disputes this assertion of opinion. There is no factual basis for this assertion other than the opinion of putative expert Wendy Dominguez. But as explained in the Cornell Defendants' motion to exclude her testimony and opinions (Dkt. 227), Dominguez's

---

[5] Ex. P180, CAPTR_009630; Ex. P181, CAPTR_0009601; Ex. P172, CAPTR_0044513; Ex. P173, CORNELL027852.
[6] *Id*; Doc. 249-18, Expert Report of Wendy Dominguez at ¶¶48, 88, 110.
[7] Doc. 313 at ¶¶ 238-239, 314; Doc. 249-18, Expert Report of Wendy Dominguez at ¶¶ 27, 79, 81, 117-121.

expert opinions are not admissible. Other than Dominguez's inadmissible report, Plaintiffs' only cited authority is their original statement of undisputed facts. Cornell incorporates herein its responses to the original assertion. *See* Doc. 313 at ¶¶ 238-239, 314. Moreover, admissible evidence contradicts this statement; indeed, not even Plaintiffs believe that these funds should have been removed as early as 2013. *See* Dkt. 337 Tables 1-1 to 1-6 and 2-A to 2-D (listing a number of funds as passing CAPTRUST review in 2013 and later); Dkt. 313 ¶¶ 80-90.

360. Cornell Defendants' failure to remove the mutual funds listed in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D from the Plans cause the Plans' participants lost retirement income, reflected under the column "Damages."[8]

RESPONSE: Cornell disputes this assertion. To establish "lost" income, Plaintiffs would need evidence of where the Plans' participants would have invested their accounts if the identified funds had been removed. Plaintiffs have not identified any such evidence in their expert reports, their own testimony, or elsewhere, so this assertion is based on nothing more than speculation. The legal question of how to measure "damages" requires legal conclusions that are not subject to Local Rule 56.1. The only authorities cited for this contention are the opinions of putative experts Wendy Dominguez and Gerald Buetow. But as explained in the Cornell Defendants' motion to exclude their testimony and opinions (Dkt. 227), these expert opinions are not admissible. Moreover, admissible evidence contradicts this statement. *See, e.g.*, Ex. D86 ¶¶ 87-111.

[8] Ex. P182, Fidelity Damages starting from 2010 (excerpt); Ex. P183, Fidelity Damages starting from 2013 (excerpt); Ex. P184, Fidelity Damages QDIA mapping starting from 2010 (excerpt); Ex. P185, Fidelity Damages QDIA mapping starting from 2013 (excerpt); Ex. P186, TIAA Damages starting from 2010 (excerpt).

361. Loss to the Plans was calculated by mapping the imprudent investments in Table 1-1 to Table 1-6 and Table 2-A to Table 2-D to prudent, plausible investment alternatives.[9]

RESPONSE: This contention purports to assert how Plaintiffs calculated the "Loss to the Plans" asserted in ¶ 360. The underlying expert reports are inadmissible for the reasons set forth in Cornell's motion to exclude their opinions and testimony. *See generally* Dkt. 227. Furthermore, this contention identifies "Loss" stemming from "imprudent" investments that could have been replaced by alternatives that were "prudent" and "plausible." These legal concepts are not statements of fact subject to Rule 56.1. Moreover, admissible evidence contradicts this contention. *See, e.g.*, Ex. D86 ¶¶ 87-111.

**Tables 1-1 through 1-6 [images omitted]**

RESPONSE: To the extent Tables 1-1 through 1-6 are referenced in numbered paragraphs, the Cornell Defendants' responses thereto appear in the respective paragraphs above. Tables 1-1 through 1-6 also contain additional information. Although Plaintiffs have not incorporated that information into any of their assertions of undisputed material facts and no response is therefore required, for avoidance of doubt, the Cornell Defendants dispute the characterizations in the columns "July 2013" and "September 2014," which are apparently intended to convey the impression that CAPTRUST had formulated a negative opinion of the identified funds as of those dates. At those points in time, CAPTRUST reviewed 3- and 5-year risk-adjusted performance and 3- and 5-year annualized peer relative performance. As the

[9] Doc. 249-18, Expert Report of Wendy Dominguez at ¶¶ 86-88; Doc. 301-3, Exhibit 4 to Dominguez's Report; Ex. P173, CORNELL027852; Ex. P182, Fidelity Damages starting from 2010 (excerpt); Ex. P183, Fidelity Damages starting from 2013 (excerpt); Ex. P184, Fidelity Damages QDIA mapping starting from 2010 (excerpt); Ex. P185, Fidelity Damages QDIA mapping starting from 2013 (excerpt); Ex. P186, TIAA Damages starting from 2010 (excerpt). The number listed in the far right column for any mutual fund represents the damages for each plan. Total damages are calculated from adding mutual fund damages from both Plans together.

Cornell Defendants have explained elsewhere (*e.g.*, Dkt. 313 ¶ 239), every fund is marked with an "X" unless it exceeded the median for all four metrics. There is no evidence in the record that CAPTRUST formed an "opinion" based on those statistics.

Answering further, Cornell disputes that the fund Fidelity Select Health Care Svcs Port was scored as Plaintiffs claim in either July 2013 or September 2014, as Captrust gave the fund a green "total score" on both dates. In addition, Cornell disputes that the four funds listed in table 1-6 are properly described by Plaintiffs, as none appear on the list of underperforming funds in the amended complaint.

Dated: May 22, 2019

Respectfully submitted,

*/s/ Brian D. Netter*

Brian D. Netter
Michelle N. Webster
Matthew A. Waring
Ankur Mandhania
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000

Nancy G. Ross
Samuel P. Myler
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Jean-Marie L. Atamian
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500

*Attorneys for Cornell Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 22, 2019, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice of the filing to all counsel of record.

By: /s/ *Brian D. Netter*
Brian D. Netter