## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CASEY CUNNINGHAM et al.,

        *Plaintiffs*,

    v.

CORNELL UNIVERSITY et al.,

        *Defendants*.

Civil Action No. 16-cv-6525

Hon. P. Kevin Castel

## MEMORANDUM OF LAW IN SUPPORT OF
## CORNELL DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
## PLAINTIFFS' EXPERT WENDY DOMINGUEZ'S SHARE CLASS OPINIONS

Nancy G. Ross
Samuel P. Myler
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Jean-Marie L. Atamian
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500

Brian D. Netter
  bnetter@mayerbrown.com
Michelle N. Webster
Ankur Mandhania
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Cornell Defendants*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

    A.    Plaintiffs' Claims ................................................................................................. 1

ARGUMENT ...................................................................................................................... 4

    A.    Dominguez should not be permitted to testify about a calculation of
damages that she did not complete and did not disclose. ..................................... 5

    B.    Dominguez's opinion does not follow a reliable methodology. ........................... 6

CONCLUSION.................................................................................................................... 8

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*,
　509 U.S. 579 (1993)........................................................................................4, 5, 6, 7

*Lara v. Delta Int'l Machinery Corp.*,
　174 F. Supp. 3d 719 (E.D.N.Y. 2016) ...................................................................5

*Marini v. Adamo*,
　995 F. Supp. 2d 155 (E.D.N.Y. 2014) ...................................................................5

*Medisim Ltd. v. BestMed LLC*,
　861 F. Supp. 2d 158 (S.D.N.Y. 2012) ...................................................................5

*Nimely v. City of New York*,
　414 F.3d 381 (2d Cir. 2005)...................................................................................5

*In re Puda Coal Securities Litig.*,
　30 F. Supp. 3d 230 (S.D.N.Y. 2014) .....................................................................5

*SEC v. Tourre*,
　950 F. Supp. 2d 666 (S.D.N.Y. 2013).....................................................................5

*Stratton v. Dep't for the Aging for the City of New York*,
　132 F.3d 869 (2d Cir. 1997)...................................................................................6

*United States v. Ulbricht*,
　858 F.3d 71 (2d Cir. 2017).....................................................................................6

*United States v. Williams*,
　506 F.3d 151 (2d Cir. 2007)...................................................................................5

*Water Pollution Control Auth. of City of Norwalk v. Flowserv US Inc.*,
　2018 WL 1525709 (D. Conn. 2018) ......................................................................6

**Statutes**

Employee Retirement Income Security Act of 1974 ......................................................2

**Other Authorities**

Fed. R. Evid. 702 ......................................................................................................5, 6

730963555.3

## INTRODUCTION

On the claim that remains for trial, Plaintiffs intend to offer Wendy Dominguez as an expert witness.  According to her expert report, Dominguez will testify that the Cornell Defendants caused the Plans to sustain $336,577 in damages by failing to switch to the institutional share class of the TIAA-CREF LifeCycle mutual funds prior to 2012.

Testimony about that damages figure is admissible only if the calculation stems from a reliable process.  Under that standard, there are two fatal flaws in Dominguez's proposed opinion on damages.  *First*, when asked about the undisclosed calculations that supported her opinion that "the plan suffered $336,576 in losses;"  Dominguez testified unequivocally that she "didn't calculate the loss." Ex. 1, at 49:5-20.  *Second*, whoever came up with Plaintiffs' damages figure did not follow the methodology that Dominguez uses when assessing fees for her clients.  In particular, whereas Dominguez accounts for funds rebated to the plan when calculating cost differences between share classes, Plaintiffs' damages figure appears to have ignored rebates achieved by the Cornell Defendants.

These material deficiencies preclude Plaintiffs from demonstrating that Dominguez followed a reliable methodology to reach her opinion, so she should not be permitted to offer the $336,576 damages figure to the jury.

## BACKGROUND

### A.    Plaintiffs' Claims

Two defined contribution retirement plans are at issue in this case: the Cornell University Retirement Plan for Employees of the Endowed Colleges at Ithaca and the Cornell University Tax-Deferred Annuity Plan (the "Plans").

In 2016, five individual participants in the Plans ("Plaintiffs") filed suit on behalf of a putative class of Plan participants.  As amended, the complaint alleges that the Cornell

Defendants and Cornell's consultant, defendant Capfinancial Partners LLC ("CAPTRUST"),

violated various provisions of the Employee Retirement Income Security Act of 1974

("ERISA"). The majority of Plaintiffs' claims were dismissed with prejudice for failure to state a

claim. Dkt. 107.  After the close of discovery, the Court granted summary judgment to

Defendants as to all but one of Plaintiffs' claims.  Dkt. 352.

In the claim that remains for trial, Plaintiffs allege that the Cornell Defendants breached

their fiduciary duties by imprudently failing to convert the TIAA-CREF Lifecycle target date

funds from a retail share class to an institutional share class, for the period August 17, 2010,

through December 31, 2011.  *See* Dkt. 352 at 37-38 (granting summary judgment to the Cornell

Defendants on the share class claim as to any other fund or any other time period).

In support of this claim, Plaintiffs offered the expert opinion of Wendy Dominguez.

Dominguez's firm provides investment counseling services to retirement plans in and around

Colorado.  Her share class opinion comprises 3 substantive paragraphs of her 123-paragraph

report, as well as one paragraph of the executive summary. Dkt. 355-2, ¶¶ 28, 46, 122, 123.  In

those paragraphs, Dominguez opines that a prudent fiduciary must "select[] the lowest cost share

class available," as "mutual funds issue multiple share classes that provide the same underlying

investment pool but that deduct different amounts of expenses from the pool." *Id.* ¶ 46.

Dominguez explains how she would calculate the loss to the plans from a fiduciary's failure to

follow this advice: this amount "can be determined by multiplying the mutual fund's beginning

account balance by the differential in the reported annual expense ratios between the higher-cost

and lower-cost institutional shares. This amount must then account for lost investment

opportunity by using the annual investment returns of the lower-cost shares." *Id.* ¶ 122.  The

report then asserts that applying that methodology results in $336,577 in damages for Cornell's

failure to shift the TIAA-CREF Lifecycle target date funds to the institutional share class.  *Id.* ¶¶ 28, 123. In a footnote, Dominguez represents that the supporting calculations are "contained in an accompanying spreadsheet."  *Id.* ¶ 123 n.134.  No such calculations appear in the attachments to her report.

Although several spreadsheets did accompany Dominguez's report, none of the those spreadsheets corroborate the $336,577 calculation.  Dkt. 249-18 at Exs. 4, 6.  Accordingly, at Dominguez's deposition, on October 16, 2018, the Cornell Defendants asked Dominguez about her methodology:

> Q (By Mr. Netter) Let's turn back to page 28, or paragraph 28 of your report. Paragraph 28 you say, had the Cornell defendants provided the lower cost of share classes of these TIAA-CREF mutual fund options from August 17, 2010 through December 31st, 2011, and using the investment returns of lower cost shares to account for lost investment opportunity, the plan suffered $336,576 in losses.
>
> Do you see that?
>
> A Yes, I see it.
>
> Q In making that statement, are you accounting for any difference in revenue sharing being attributed by different share classes of TIAA-CREF mutual fund?
>
> A I didn't calculate the loss.

Ex. 1, at 49:5-20.

Plaintiffs did not ask any questions to Dominguez on redirect.

On November 5, 2018, Dominguez swore before a notary that the transcription of her deposition was correct, except for 12 listed alterations to the form or substance of her testimony. Ex. 1.  Dominguez's testimony that she had not computed damages associated with the TIAA-CREF LifeCycle Funds remained unchanged.  *Id.*

On October 23, 2019, more than a year after Dominguez's deposition, Plaintiffs' counsel

sent an email asserting that they had identified "a transcriptional error through which the damages from Cornell University Retirement Plan ('CURP') were copied from Dominguez's spreadsheet to the report, while the asset amounts and returns for both CURP and the Tax Deferred Annuity Plan ('TDAP') were in her spreadsheet."  Ex. 2 at 2 (10/23/19 email from J. Schlichter to N. Ross et al.).  No calculations accompanied the email.  After the undersigned counsel responded that the Cornell Defendants had "seen no evidence that Wendy Dominguez made any computations of supposed damages relevant to the remaining claim," Plaintiffs' counsel responded: "You're wrong, Brian."  Ex. 2 at 1 (10/25/19 email from J. Schlichter to B. Netter et al.).  Plaintiffs still have not identified any relevant computations performed by Dominguez—particularly not any that can be reconciled with her testimony, under oath, that she did not undertake such computations.

## ARGUMENT

Dominguez's opinion as to the supposed loss associated with the TIAA-CREF LifeCycle mutual funds is inadmissible. This Court should therefore exercise its gatekeeping function under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to preclude Dominguez from offering this opinion in her testimony to the jury.  Under *Daubert*, Plaintiffs bear the burden to establish that Dominguez's opinion stems from a reliable process that has reliably been applied.  But Dominguez denied calculating the supposed loss and no calculation—attributed to Dominguez or anybody else—has been disclosed to the Cornell Defendants.

In any event, the way that the supposed calculation is described in her expert report deviates dramatically from Dominguez's professional practices, contravening the requirement that a testifying expert apply the same methodology, and the same level of rigor, to generate litigation-related opinions as she does in her normal work.

**A.**     **Dominguez should not be permitted to testify about a calculation of damages that she did not complete and did not disclose.**

Dominguez's sworn testimony that she did not compute damages should preclude her from testifying, at trial, that she followed a methodology and calculated $336,577 in damages.

*Daubert* requires judges to serve a gatekeeping function, to ensure that lay jurors are not deceived by the imprimatur of expertise that accompanies testimony under Federal Rule of Evidence 702. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). Among other considerations, the party propounding an expert witness must be able to demonstrate that "the opinion is based upon reliable data and methodology." *Marini v. Adamo*, 995 F. Supp. 2d 155, 179 (E.D.N.Y. 2014), *aff'd*, 644 F. App'x 33 (2d Cir. 2016) (citing *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005)). Parties are emphatically *not* permitted to offer testimony, under the guise of expertise, that is simply an expert's *ipse dixit*, without a foundation of rigor. *In re Puda Coal Securities Inc. Litig.*, 30 F. Supp. 3d 230, 250 (S.D.N.Y. 2014) ("Conclusory opinions are a form of '*ipse dixit*,' and often provide an insufficient basis upon which to assess reliability."); *SEC v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013) (" The law is clear that mere ipse dixit is not appropriate expert testimony because it is not based on reliable methodology, as *Daubert* requires."); *Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 175 (S.D.N.Y. 2012) (excluding expert testimony as "an unsupported *ipse dixit* conclusion, the acceptance of which is tantamount to an abdication of the court's role as gatekeeper of expert testimony").

Parties frequently dispute whether shortcomings in an expert's methodology are questions of admissibility or questions of weight to be assessed by the jury. But it is beyond dispute that, when offering testimony as to which expertise is required, the proponent of that testimony must show that the expert has followed some kind of methodology. *E.g., Lara v.*

5

*Delta Int'l Machinery Corp.*, 174 F. Supp. 3d 719, 734 (E.D.N.Y. 2016) ("The burden of establishing the reliability of an expert's theories pursuant to the standards set forth in Federal Rule 702 and *Daubert* falls squarely with the proponent, who must establish reliability by a preponderance of the evidence.").

Here, the Court has already found that the determination of loss for Plaintiffs' share-class claim is outside the category of "'simple arithmetic' not requiring expert testimony." Dkt. 352 at 38 (quoting *Stratton v. Dep't for the Aging for the City of New York*, 132 F.3d 869, 877 (2d Cir. 1997)); *see also United States v. Ulbricht*, 858 F.3d 71, 116 (2d Cir. 2017) ("The district court cannot perform that complex evaluation of an expert's proposed methodology without a clear articulation of what the expert's opinions are and, even more importantly, of the bases for those opinions."); *Water Pollution Control Auth. of City of Norwalk v. Flowserv US Inc.*, 2018 WL 1525709, at *17 (D. Conn. 2018) (excluding expert report lacking calculations and data upon which opinion was based because "the Court cannot determine" whether expert report was reliable).

And Dominguez has not disclosed a reliable methodology. To the contrary, she has denied even making the computation—let alone following a methodology to do so. Under these circumstances, she should not be permitted to introduce into evidence the baseless assertion that the Plans suffered $336,577 in damages.

**B.**     **Dominguez's opinion does not follow a reliable methodology.**

Dominguez's expert report asserts that damages could be computed by comparing the performance of the undesirable share class with the performance of the desired alternative. Dkt. 355-2 ¶ 122. But Dominguez testified, under oath, that she did not calculate the loss. The Cornell Defendants have not received any disclosures during discovery or since that would establish that any of Plaintiffs' experts provided such a computation.

6

In any event, there is an additional problems that would preclude testimony from whoever actually completed these calculations.  The purported methodology described in Dominguez's report fails to satisfy Dominguez's out-of-litigation custom because it fails to account for rebates achieved for the Plans by the Cornell Defendants.  The methodology in Dominguez's report claims to be comparing the undiscounted retail price of the original mutual funds against the costs of the replacement mutual funds.  But Cornell negotiated rebates retroactive to January 2011.  *See, e.g.*, Dkt. 226-17, at 2; Dkt. 226-18, at 1–2; Dkt. 226-19, at 1.

When she is working for Innovest's clients, Dominguez nets out those rebates when assessing whether a fund has a reasonable expense ratio. Ex. 1, at 46:14–24. As she says, share class analysis "need[s] to reflect" any rebates generated by fund expenses.  Thus, her analysis reflects the *actual* cost of each fund to her clients.  Here, by contrast, the disclosed methodology ignores the rebates without any justification. *Id.* at 50:13–18.

Not even Dominguez was willing to defend this discrepancy; as she admitted at her deposition, the computation of damages should "account for any difference in the amount of revenue sharing that is rebated to plan participants." *Id.* at 50:13-18.

This oversight demonstrates that there is no valid, reliable process of analysis underlying Plaintiffs' $336,577 figure, so it cannot satisfy *Daubert* no matter who is standing behind it.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should order that Wendy Dominguez may not testify at trial regarding the alleged damages associated with Plaintiffs' share class claim.

Dated: November 6, 2019

Nancy G. Ross
Samuel P. Myler
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
Telephone: (312) 782-0600

Jean-Marie L. Atamian
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020-1001
Telephone: (212) 506-2500

Respectfully submitted,

*/s/ Brian D. Netter*
Brian D. Netter
  bnetter@mayerbrown.com
Michelle N. Webster
Ankur Mandhania
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 6, 2019, a copy of the foregoing was filed

electronically using the Court's CM/ECF system, which will provide notice of the filing to all

counsel of record.

By:   /s/ *Brian D. Netter*
    Brian D. Netter