# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CASEY CUNNINGHAM, et al.,

   *Plaintiffs*,

v.

CORNELL UNIVERSITY, et al.,

   *Defendants*.

No. 1:16-CV-06525-PKC

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Table of Contents

BACKGROUND ........................................................................................................... 1

   I.   Plaintiffs' Claims ............................................................................................ 1

   II.   The Course of the Litigation .......................................................................... 2

   III.   The Terms of the Proposed Settlement. ........................................................ 3

   IV.   Preliminary Approval of the Settlement and Plaintiffs' Motion for Attorneys' Fee and Class Representative Awards ................................................................. 4

   V.   Class Member Reaction ................................................................................. 4

ARGUMENT .............................................................................................................. 4

   I.   The Settlement Is Presumptively Reasonable ............................................... 6

   II.   All the *Grinnell* Factors Weigh in Favor of Approving the Settlement .......................... 7

      A.   The Complexity, Expense, and Duration of the Litigation of the Case Proceeded to Trial Supports Approval (Factor 1) ....................................... 7

      B.   The Class's Reaction to the Settlement Strongly Supports Approval (Factor 2) ...... 8

      C.   Settlement After Full and Complete Discovery Supports Approval (Factor 3) ........ 8

      D.   Plaintiffs Faced Significant Risk of Not Prevailing (Factors 4-6) ........................... 9

      E.   The Defendants' Ability to Pay More Favors the Settlement or is Neutral (Factor 7) ................................................................................... 10

      F.   The Settlement is Outstanding in Light of the Best Possible Recovery and Risks of Litigation (Factors 8 and 9) ........................................ 11

   III.   All the Rule 23(e) Factors Support Approval of the Settlement ................................... 12

      A.   The Class Representative and Class Counsel Have Adequately Represented the Class ................................................................................... 12

      B.   The Settlement was Negotiated at Arm's Length ................................. 13

      C.   The Relief Provided for the Class in the Settlement is Adequate ........................... 13

      D.   The Settlement Treats Class Members Equitably Relative to Each Other .............. 13

   IV.   The Notice was Performed as Directed By The Court ................................... 14

   V.   The Court Should Approve Plaintiffs' Motion for Attorneys' Fees and Costs ............. 15

   VI.   The Court Should Approve a $1,000 Dollar Award to the Class Representative ......... 15

CONCLUSION ......................................................................................................... 15

Table of Authorities

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  No. 6-701, 2015 WL 4398475 (S.D. Ill. July 15, 2015) ........................................................ 6

*Baudin v. Res. Mktg. Corp.*, LLC,
  No. 19-386, 2020 WL 4732083  (N.D.N.Y. Aug. 13, 2020), *on reconsideration in part*,
  No. 19-386, 2020 WL 6131758 (N.D.N.Y. Oct. 19, 2020) ...................................................... 12

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
  No. 15-02062, 2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) .................................................... 6

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................................................................................................ 11

*Detroit v. Grinnell Corporation*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated
  Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...................................................................................... 5

*Dial Corp. v. News Corp.*,
  317 F.R.D. 426 (S.D.N.Y. 2016) .............................................................................................. 12

*Guevoura Fund Ltd. v. Sillerman*,
  No. 15-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................... 8

*Hart v. RCI Hosp. Holdings*,
  2015 WL 5577713 (S.D.N.Y. Sep. 22, 2015) ........................................................................... 14

*Hill v. State Street Corp.*,
  No. 09-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015) ....................................................... 10

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ................................................................................................................... 7

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................................ 11

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................................... 12

*In re Canadian Superior Sec. Litig.*,
  2011 WL 5830110 (S.D.N.Y. Nov. 16, 2011) .......................................................................... 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-3400-CM-PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...................................... 7

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .............................................................................................. 12

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................................................. 10

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .............................................................................................. 12

*In re Michael Milken and Associates Sec. Lit.*,
  150 F.R.D. 57 (S.D.N.Y.1993)), *aff'd sub nom. D'Amato*, 236 F.3d 78 ................................ 11

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020) ...................................................................... 6, 13, 14

*In re Northrop Grumman Corp. ERISA Litig.*,
  No. 06-6213, 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) .................................... 13

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships
  Litig.*, 117 F.3d 721 (2d Cir. 1997) ..................................................................... 8, 11

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ............................................................................... 4, 5

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
  333 F.R.D. 314 (S.D.N.Y. 2019) ............................................................................ 13

*Kelly v. Johns Hopkins Univ.*,
  No. 16-2835, 2020 WL 434473 (D. Md. Jan. 28, 2020).......................................... 6

*Kemp-DeLisser v. Saint Francis Hospital and Medical Center*,
  No. 15-113, 2016 WL 6542707 (D. Conn. Nov. 3, 2016)...................................... 10

*Krueger v. Ameriprise Fin., Inc.*,
  No. 11-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ................................... 13

*Kruger v. Novant Health, Inc.*,
  No. 14-208, 2016 WL 6769066  (M.D.N.C. Sep. 29, 2016) ................................... 8

*Martin v. Caterpillar, Inc.*,
  No. 07-1009, 2010 WL 3210448 (C.D. Ill. Aug. 12, 2010) ................................... 7

*Newman v. Stein*,
  464 F.2d 689 (2d Cir.1972) ................................................................................ 11

*Nolte v. Cigna Corp.*,
  No. 07-2046, 2013 WL 12242015 (C.D. Ill Oct. 15, 2013) ................................... 13

*Sacerdote v. New York Univ.*,
  328 F. Supp. 3d 273 (S.D.N.Y. 2018) ................................................................. 10

*Sacerdote v. New York Univ.*,
  No. 16-6284-KBF, 2017 WL 3701482  (S.D.N.Y. Aug. 25, 2017) ......................... 9

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015).............................................................................................. 9

*Tibble v. Edison Int'l*,
  843 F.3d 1187 (9th Cir. 2016) ........................................................................... 8, 9

*Tibble v. Edison Int'l*,
  No. 07-5359, 2010 WL 2757153 (C.D. Cal. July 8, 2010)...................................... 8

*Tibble v. Edison Int'l*,
  No. 07-5359, 2017 WL 3523737  (C.D. Cal. Aug. 16, 2017) ................................. 9

*Tibble v. Edison Int'l*,
   No. 07-5359, Doc. 612, (C.D. Cal. June 9, 2020) .................................................... 8

*Troudt v. Oracle Corp.*,
   325 F.R.D. 373 (D. Colo. 2018), *amended*, No. 16-175, 2019 WL 1006019 (D. Colo. Mar.
   1, 2019) ...................................................................................................................... 6

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) ...................................................................................... 8

*Tussey v. ABB, Inc.*,
   850 F.3d 951, 954–56 (8th Cir. 2017) ........................................................................ 8

*Tussey v. ABB, Inc.*,
   No. 06-4305, 2012 WL 1113291 (W.D. Mo. March 31, 2012)................................... 8

*Tussey v. ABB, Inc.*,
   No. 06-4305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012), *vacated and remanded*, 746
   F.3d 327 (8th Cir. 2014) ............................................................................................. 7

*Tussey v. ABB, Inc.*,
   No. 06-4305, Doc. 869, (W.D. Mo. Aug. 16, 2019)................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................. 4, 5, 6, 7, 9, 11

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
   No. 14-8925 -KMW, 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ...................... 12

**Statutes**
29 U.S.C. § 1109(a) ........................................................................................................ 2

**Rules**
Fed. R. Civ. P. 23(e)(2)................................................................................................... 6

**Other Authorities**
Manual for Complex Litigation, Third  (1995)............................................................... 5

Plaintiffs move pursuant to Rule 23(e) for the Court's final approval of a settlement of the remaining claim after the Court's order on summary judgment. Plaintiffs allege that Defendants Cornell University, the Retirement Plan Oversight Committee, and Mary G. Opperman (collectively, the "Cornell Defendants") breached their fiduciary duties and committed prohibited transactions under the Employee Retirement Income Security Act of 1974 ("ERISA") by causing the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca and the Cornell University Tax Deferred Annuity Plan ("the Plans") to pay unreasonable recordkeeping and administrative fees and to maintain high-cost and underperforming investment options, including investment options in higher-cost share classes. Docs. 1, 81. The Cornell Defendants dispute these allegations and deny liability for any alleged fiduciary breach. The Court dismissed or granted summary judgment on all of Plaintiffs' claims except Plaintiffs' allegation that the Cornell Defendants breached their duty of prudence by failing to adopt the institutional share classes of the TIAA-CREF Lifecycle Funds. Doc. 352 at 39.

The settlement reached in this case (the "Settlement") represents a substantial recovery on the TIAA-CREF Lifecycle Funds claim and leaves the dismissed claims available for appeal. Considering the litigation risks and costs that further prosecution of this action would entail, this Court should grant final approval of the Settlement as fair, reasonable and adequate.

## BACKGROUND

### I.    Plaintiffs' Claims

Plaintiff Casey Cunningham filed his initial complaint on August 17, 2016. Doc. 1. On December 8, 2016, Cunningham, Charles E. Lance, Stanley T. Marcus, Lydia Pettis, and Joy Veronneau ("Plaintiffs"), filed an amended complaint. The Amended Complaint asserts claims against Cornell University, the Retirement Plan Oversight Committee, Mary G. Opperman, and

1

CAPTRUST Financial Advisors. Doc. 38. Plaintiffs filed a corrected amended complaint on February 24, 2017 to correct the name of CAPTRUST Financial Advisors to CapFinancial Partners, LLC d/b/a CAPTRUST Financial Advisors. Doc. 81.

Plaintiffs alleged that Defendants breached their fiduciary duties and committed prohibited transactions relating to the management, operation, and administration of the Plans. Plaintiffs sought to recover all alleged losses to the Plans resulting from each breach of duty under 29 U.S.C. § 1109(a) and for other equitable and remedial relief.

## II.    The Course of the Litigation

On September 29, 2017, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' Corrected Amended Complaint. Doc. 107. The parties completed fact and expert discovery and took the depositions of all five named Plaintiffs, seven Cornell-affiliated witnesses, two CapFinancial Partners-affiliated witnesses, four non-party witnesses, and seven expert witnesses. Decl. of J. Rohlf, Doc. 433, ¶¶ 19–24.

On January 22, 2019, the Court certified the following class:

> All participants and beneficiaries of the Cornell University Retirement Plan for the Employees of the Endowed Colleges at Ithaca and the Cornell University Tax Deferred Annuity Plan from August 17, 2010, through August 17, 2016, excluding the Defendants and any participant who is a fiduciary to the Plans.

Doc. 219 at 19. The Court appointed Class Representatives and Class Counsel. *Id.* On September 27, 2019, the Court granted in part and denied in part Defendants' motions for summary judgment. Doc. 352. The Court denied Defendants' motions insofar as Plaintiffs alleged that Defendants breached their duty of prudence by failing to adopt the institutional share classes of the TIAA-CREF Lifecycle Funds. *Id.* at 38. The Court granted the motions in all other respects. *Id.* Plaintiffs continued litigating the remaining claim after summary judgment, preparing all pretrial exchanges,

and fully preparing for trial. *See* Doc. 391. The matter was set for jury trial starting on September 29, 2020. Doc. 413.

After extensive litigation, Plaintiffs and the Cornell Defendants engaged in settlement discussions regarding the remaining claim in October 2019, May 2020 and August 2020. On September 18, 2020, the parties reached an agreement on all terms.

## III.   The Terms of the Proposed Settlement.

Plaintiffs requested that the Court certify a Settlement Class consisting of:

> The set of persons who participated in the Plans and invested in the TIAA-CREF Lifecycle funds between August 17, 2010 and April 17, 2012, including any Beneficiary of a deceased person who participated in one or more of the Plans at any time during the Class Period and invested in the TIAA-CREF Lifecycle funds between August 17, 2010 and April 17, 2012, and any Alternate Payee of a person subject to a Qualified Domestic Relations Order who participated in one or more of the Plans at any time during the Class Period and invested in the TIAA-CREF Lifecycle funds between August 17, 2010 and April 17, 2012. Excluded from the Settlement Class are any individuals that served as members of the Retirement Plan Oversight Committee from August 17, 2010 to April 17, 2012.

Doc. 422.[1] In exchange for the dismissal of the TIAA-CREF Lifecycle Funds claim and for entry of the Judgment as provided for in the Settlement Agreement, the Cornell Defendants will make available to Settlement Class members the benefits described below.

The Cornell Defendants have deposited $225,000 (the "Gross Settlement Amount") in an interest-bearing settlement account (the "Gross Settlement Fund"). The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, Plaintiffs' counsel's attorneys' fees and costs, and the Class Representative's compensation if awarded by the Court.

---

[1] The Cornell Defendants did not oppose Plaintiffs' motion to certify a settlement-only sub-class.

IV.     **Preliminary Approval of the Settlement and Plaintiffs' Motion for Attorneys' Fee and Class Representative Awards**

Plaintiffs filed an unopposed motion for preliminary approval of the Settlement on September 21, 2020. Doc. 418. The Court granted the motion and preliminarily approved the Settlement on September 22, 2020. Doc. 426 ("Preliminary Approval Order"). On October 23, 2020, Plaintiffs filed a motion for attorneys' fees, class representative awards, and expenses. Doc. 430.

V.      **Class Member Reaction**

Class Members were provided the opportunity to object to the Settlement by writing to the Court and lodging their formal objections to the Settlement. On October 23, 2020, Settlement Administrator Analytics Consulting LLC ("Analytics") caused Settlement Notices to be e-mailed or mailed to 4,884 class members. *See* Declaration of Christopher Amundson ¶ 6 ("Amundson Decl.").

This Court's Preliminary Approval Order mandated that objections be filed by no later than 30 days before the date of the Fairness Hearing. Doc 426 ¶ 5(B). The Court scheduled the Fairness Hearing for December 22, 2020. *Id.* ¶ 2. Therefore, objections were due on November 23, 2020. No objections to the Settlement have been filed to date.

## ARGUMENT

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005). Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. In determining whether to approve a settlement, the Court must ensure that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores*, 396 F.3d at 117 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). A determination of the

4

fairness of a settlement is in the sound discretion of the trial court. *Detroit v. Grinnell Corporation*, 495 F.2d 448, 455 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Joel A.*, 218 F.3d at 139. The Second Circuit has dictated that the following factors should be used to assess a class action settlement:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceeding and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)).

In addition to the *Grinnell* factors, the December 2018 amendments to Rule 23(e) require that a court to consider whether:

> 1) "the class representatives and class counsel have adequately represented the class;"
>
> 2) "the proposal was negotiated at arm's length;"
>
> 3) "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class-member

claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and"

4)   "the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2). Courts consider the Rule 23(e)(2) factors "in tandem with the Second Circuit's *Grinnell* factors." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020). As discussed in prior briefing related to this settlement (Doc. 423), and as described in greater detail here, all the *Grinnell* factors and Rule 23(e) factors are met.

## I.      The Settlement Is Presumptively Reasonable

The Settlement, which was negotiated by experienced counsel after full discovery, is presumptively fair, reasonable, and adequate. The Second Circuit has held that there is "[a] presumption of fairness, adequacy, and reasonableness" for class action settlements "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116 (internal quotations omitted). As multiple courts have recognized, class counsel is not only experienced and capable regarding ERISA class actions, but ""pioneer[ed] . . . the field of retirement plan litigation." *Abbott v. Lockheed Martin Corp.*, No. 6-701, 2015 WL 4398475, at *1 (S.D. Ill. July 15, 2015); *see also Kelly v. Johns Hopkins Univ.*, No. 16-2835, 2020 WL 434473, at *4 (D. Md. Jan. 28, 2020); *Bell v. Pension Comm. of ATH Holding Co., LLC*, No. 15-02062, 2019 WL 4193376, at *1 (S.D. Ind. Sept. 4, 2019); *Troudt v. Oracle Corp.*, 325 F.R.D. 373, 381 (D. Colo. 2018), *amended*, No. 16-175, 2019 WL 1006019 (D. Colo. Mar. 1, 2019). As discussed above, the Settlement was only reached after full discovery, including production of hundreds of thousands of pages of documents and over 20 depositions. *See supra* at 2. Additionally, the Settlement was reached through arms-length negotiations between the parties. *See* Schlichter Decl., Doc. 421, ¶ 2. Therefore, the Settlement is

6

presumptively fair, adequate, and reasonable. *Wal-Mart*, 396 F.3d at 116.

**II.    All the *Grinnell* Factors Weigh in Favor of Approving the Settlement**

    **A.  The Complexity, Expense, and Duration of the Litigation of the Case Proceeded to Trial Supports Approval (Factor 1)**

    As courts in this district have previously noted, ERISA claims are "complex." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400-CM-PED, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010). As the Supreme Court has recognized, "ERISA is a comprehensive and reticulated statute . . . and is enormously complex and detailed . . ." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) (internal quotations and citations omitted). Excessive fee litigation "entails complicated ERISA claims" and "novel questions of law*." Martin v. Caterpillar, Inc.*, No. 07-1009, 2010 WL 3210448, at *2 (C.D. Ill. Aug. 12, 2010); *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012), *vacated and remanded*, 746 F.3d 327 (8th Cir. 2014).

    Additionally, proceeding forward to trial would have created expensive litigation for an extended duration. A four-day trial with eight fact witnesses and two expert witnesses would have taken place in September. Doc. 370; Doc. 413. Moreover, counsel and out-of-state witnesses would have been required to quarantine in New York for two weeks prior to the trial adding to the expense. Class counsel's airfare and hotel costs alone (excluding costs for experts) for the trial would have cost between $30,000 and $45,000 dollars. Rohlf Decl. ¶ 3. Regardless of who won the trial, years of appeals to the Second Circuit and Supreme Court likely would have created further delay for recovery and expense.

    Indeed, two cases in which Class Counsel were involved demonstrate the risk of prolonged litigation and appeals. In *Tibble v. Edison International*, a case filed in 2007, the district court entered judgment in favor of the plaintiffs on a limited portion of their claims in

2010. No. 07-5359, 2010 WL 2757153 (C.D. Cal. July 8, 2010). That case then went through six years of appeals, including the Supreme Court, until it ultimately was remanded for another trial in 2016. 843 F.3d 1187 (9th Cir. 2016). Only this year did the plan finally recover its damages. No. 07-5359, Doc. 612, (C.D. Cal. June 9, 2020). In *Tussey v. ABB, Inc.*, the plaintiffs filed suit in 2006 and obtained a judgment in their favor in 2012. No. 06-4305, 2012 WL 1113291 (W.D. Mo. March 31, 2012). That judgment was reversed in substantial part, 746 F.3d 327 (8th Cir. 2014), on remand the judgment was substantially reduced, 850 F.3d 951, 954–56 (8th Cir. 2017), that judgment was reversed on a second appeal, *id.* at 959–61, and on remand the case ultimately was settled in 2019, No. 06-4305, Doc. 869, (W.D. Mo. Aug. 16, 2019). In contrast to these protracted cases, the Settlement here provides immediate and substantial recovery. *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *5 (M.D.N.C. Sep. 29, 2016).

**B.   The Class's Reaction to the Settlement Strongly Supports Approval (Factor 2)**

As described above, the Settlement Administrator provided notice of the Settlement to 4,884 class members. Not a single objection was received. "'[T]he absence of objectors may itself be taken as evidencing the fairness of a settlement.'" *Guevoura Fund Ltd. v. Sillerman*, No. 15-07192-CM, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) (alteration in original) (quoting *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997)). Here, the lack of any objection from thousands of class members "strongly supports approval" of the Settlement. *Guevoura Fund*, 2019 WL 6889901, at *7.

**C.   Settlement After Full and Complete Discovery Supports Approval (Factor 3)**

The fact that the parties had completed extensive discovery, fully briefed summary judgment, and the case was ready for trial weighs in favor of approval of the Settlement. "If all discovery has been completed and the case is ready to go to trial, the court obviously has

sufficient evidence to determine the adequacy of settlement." *Wal-Mart*, 396 F.3d at 118

(internal quotations omitted). In total, the Defendants and third parties produced over 150,000

pages of documents in discovery. Doc. 433 ¶ 19. The parties took over 15 fact witness

depositions and seven expert depositions. *Id.* ¶¶ 11, 21, 24. The parties also filed several

discovery motions, including motions to compel, that required extensive briefing and multiple

conferences. *See* Docs. 171, 175, 177, 178, 191, 278, 282, 283, 307, 309, 323. Settlement after

such extensive discovery supports approval.

### D.  Plaintiffs Faced Significant Risk of Not Prevailing (Factors 4-6)

Plaintiffs maintain confidence in their underlying claim related to the Cornell

Defendants' imprudent retention of retail share classes of the TIAA-CREF Lifecycle funds when

the Plans were eligible for lower-cost, institutional shares. Doc. 81 ¶¶ 142–52. Minimizing costs

is a fundamental element of the fiduciary's duty of prudence. *Tibble v. Edison Int'l*, 843 F.3d

1187, 1198 (9th Cir. 2016) (*en banc*). Plaintiffs maintain that the facts supporting their claims

have been found to support findings of fiduciary breach. *Tibble v. Edison Int'l*, 575 U.S. 523

(2015); *Tibble v. Edison Int'l*, No. 07-5359, 2017 WL 3523737, at *11–12 (C.D. Cal. Aug. 16,

2017).

Although class counsel continues to believe in the underlying merits of this claim, there

are significant legal obstacles and defenses that render recovery in this case uncertain. The

Cornell Defendants continue to deny all allegations of wrongdoing and continue to maintain that

the Plans have been managed and operated in compliance with ERISA. Indeed, despite contrary

Supreme Court precedent, a few courts have found that retention of higher cost share classes of a

fund is not a fiduciary breach if the additional fees involve revenue sharing related to

recordkeeping. *See, e.g.*, *Sacerdote v. New York Univ.*, No. 16-6284-KBF, 2017 WL 3701482, at

*11 (S.D.N.Y. Aug. 25, 2017). Additionally, this action is among the first class actions brought

9

under ERISA against a private institution of higher education alleging that plan fiduciaries

caused their 403(b) plan to incur unreasonable investment and administrative expenses and to

suffer from other losses caused by underperforming and high-cost investments. The only similar

case to be tried resulted in a verdict for defendant on all claims. *Sacerdote v. New York Univ.*,

328 F. Supp. 3d 273, 317 (S.D.N.Y. 2018).

While Plaintiffs are confident in their ability to demonstrate loss, the Cornell Defendants

contend that Plaintiffs suffered no loss or significantly less loss because it is offset by

recordkeeping expenses paid with revenue sharing or rebates of revenue sharing. Doc. 391 at 4.

Defendants also argued that Plaintiffs' claims were barred by the statute of limitations. *Id.*

Additionally, damages in ERISA cases require complex damages calculations that make loss

determinations inherently risky. *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 140 (S.D.N.Y. 2010)

("Establishing damages in this case would have been a complicated endeavor. The complex

damages calculations in ERISA cases like this one are expert intensive. . . . Here, the parties have

exchanged expert damages reports that reach widely divergent conclusions."); *Kemp-DeLisser v.

Saint Francis Hospital and Medical Center*, No. 15-113, 2016 WL 6542707, at *9 (D. Conn.

Nov. 3, 2016) (finding complex damages analysis weighed in favor of ERISA class settlement);

*Hill v. State Street Corp.*, No. 09-12146, 2015 WL 127728, at *9 (D. Mass. Jan. 8, 2015)

(similar). Considering these risks, a settlement of nearly eighty percent of Plaintiffs' last

damages calculation is an outstanding result. These significant risks of non-recovery support

approval of the Settlement.

### E.  The Defendants' Ability to Pay More Favors the Settlement or is Neutral (Factor 7)

While the Cornell Defendants may have financial resources to support a larger settlement

amount, that alone is not enough to suggest that the Settlement is unfair. As the Second Circuit

has acknowledged "the defendants' ability to withstand a higher judgment . . . standing alone, does not suggest that the settlement is unfair." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). Rather, "evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement." *PaineWebber*, 171 F.R.D. at 129.

      In short, the Cornell Defendants' ability to pay is neutral or favors approval of the Settlement.

### F.  The Settlement is Outstanding in Light of the Best Possible Recovery and Risks of Litigation (Factors 8 and 9)

      The Settlement, which represents a gross recovery of nearly eighty percent recovery of the asserted damages, is more than reasonable considering the best possible recovery and the risks of litigation. "'There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart*, 396 F.3d at 96 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.1972)). "Determining whether a settlement is reasonable 'is not susceptible of a mathematical equation yielding a particularized sum.'" *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000) (quoting *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y.1993)), *aff'd sub nom. D'Amato*, 236 F.3d 78. Here, the settlement of $225,000 represents nearly eighty percent of the last damages calculation of Plaintiffs' expert, $283,803. Doc. 367-2 at 3. As discussed above, there was substantial risk of non-recovery or diminished recovery at trial. *See supra* at 9-10. Moreover, the cost of a weeklong trial would certainly be greater than $56,760, which is twenty percent of the maximum recovery. Finally, eighty percent recovery is multiples greater than the percentage of recovery found reasonable by other courts in this Circuit. *See Baudin v. Res. Mktg. Corp.*, LLC, No. 19-386, 2020 WL 4732083, at *9 (N.D.N.Y. Aug. 13, 2020), *on*

*reconsideration in part*, No. 19-386, 2020 WL 6131758 (N.D.N.Y. Oct. 19, 2020) (finding a settlement of 26.21% of possible recovery reasonable); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, No. 14-8925 -KMW, 2017 WL 3579892, at \*4 (S.D.N.Y. Aug. 18, 2017) (approving a settlement of roughly 33% of possible recovery); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 432 (S.D.N.Y. 2016) (describing a settlement of 36% of maximum recovery as "outstanding"); *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 269 (S.D.N.Y. 2012) (approving a settlement amounting to 11% of estimated damages); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191–92 (S.D.N.Y. 2012) (approving a settlement that represented 12% of maximum recovery); *In re Canadian Superior Sec. Litig.*, 2011 WL 5830110, at \*4 (S.D.N.Y. Nov. 16, 2011) (approving a settlement worth 8.5% of the maximum amount of estimated damages); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving a settlement worth approximately 3% of total estimated damages). Considering the risk of litigation, the maximum recovery, and the cost of trial, the settlement of $225,000 is an outstanding result. *Dial*, 317 F.R.D. at 432.

### III.   All the Rule 23(e) Factors Support Approval of the Settlement

#### A.   The Class Representative and Class Counsel Have Adequately Represented the Class

As this Court has already held, the class representative and class counsel have adequately represented the Class. Doc. 219 at 15 ("After considering all relevant submissions, the Court finds the named plaintiffs adequate under Rule 23(a)(4)."); *id.* at 17–18 (appointing class counsel because "[t]heir performance in the present case demonstrates competence to protect the interests of the class" and they have "significant prior experience litigating ERISA class actions involving similar claims for breach of fiduciary duties.") As discussed above, class counsel and the class representatives navigated multiple motions to dismiss, hundreds of thousands of pages of

documents, over 20 depositions, multiple summary judgment motions, and multiple motions *in limine* for over four years of litigation of this matter. *See supra* at 2. Class counsel is the "preeminent firm" in excessive fee litigation having "achieved unparalleled results on behalf of its clients" in the face of "enormous risks." *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015, at *2–3 (C.D. Ill Oct. 15, 2013). They are "experts in ERISA litigation," *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (citation omitted), and "highly experienced," *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2017 WL 9614818, at *4 (C.D. Cal. Oct. 24, 2017). Additionally, no member of the class has objected to class counsel's requested attorney fees or the award to the class representative demonstrating that the class is satisfied with their representation.

### B.  The Settlement was Negotiated at Arm's Length

As discussed above, the Settlement was negotiated at arm's length by experienced counsel after years of litigation and complete discovery, all of which supports approval under Rule 23(e)(2)(B). *See supra* at 6-7.

### C.  The Relief Provided for the Class in the Settlement is Adequate

The adequacy analysis under Rule 23(e)(2)(C) "overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 321 (S.D.N.Y. 2019); *see also Namenda*, 462 F. Supp. 3d at 311–16 (discussing only the Grinnell factors when analyzing the adequacy of the settlement). As discussed above, the *Grinnell* factors clearly demonstrate that the Settlement was adequate.

### D.  The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement treats class members fairly by allocating the settlement on a per-capita basis. "'[A]n allocation formula need only have a reasonable, rational basis, particularly if

recommended by experienced and competent Class counsel.'" *Namenda*, 462 F. Supp. 3d at 316 (alteration in original) (quoting *Hart v. RCI Hosp. Holdings*, 2015 WL 5577713, at *12 (S.D.N.Y. Sep. 22, 2015) and *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)). While often settlements in ERISA excessive fees cases are allocated on a pro-rata basis, given the limited scope of the Settlement of this case, a per-capita distribution maximizes the benefits to the class while minimizing the amount of settlement proceeds absorbed by administrative costs. The Settlement Agreement provides that the Plans' recordkeepers are entitled to compensation for data they produce to assist in settlement calculations. Doc. 421-1 ¶¶ 2.1, 3.2. In the experience of class counsel, it can often cost tens of thousands of dollars to obtain individual account level data for thousands of participants to conduct a pro-rata calculation. Rohlf Decl. ¶ 5. For example, in a recent settlement involving one of the Plans' recordkeepers, the settlement fund was charged $71,000 by the recordkeeper for provision of data. *Id.* Additionally, more complicated pro-rata calculations cost more for the settlement administrator to implement. *Id.* ¶ 6. Given that even additional expenses of $22,500 dollars would represent 10% of the Settlement, it was more equitable to conduct a simple per-capita calculation in order to limit expenses.

In summary, all the factors under *Grinnell* and Rule 23(e)(2) favor approval of the Settlement.

## IV.   The Notice was Performed as Directed By The Court

The Court ordered the Settlement Administrator to disseminate the Settlement Notice to the Settlement Class no later than October 23, 2020. Dkt. 426 ¶ 4(B). Notice of the proposed settlement was individually emailed or mailed to the Settlement Class members on October 23, 2020. Amundson Decl. ¶ 6. The Court-approved Settlement Notice was also published on a dedicated Settlement Website hosted by Class Counsel. Rohlf Decl. ¶ 7. Plaintiffs' counsel

14

established the dedicated website (https://cornell403bplansettlement.com/) and published the

Court-approved Settlement Notice with the revised Settlement Agreement on that website on

October 23, 2020. *Id.* In addition, the Settlement Administrator hosted a toll-free number for

automated information and live operations to answer any questions for members of the

Settlement Class. Amundson Decl. ¶ 10. As of December 7, 2020, there have been a total of 96

calls. *Id.*. Of those calls, 68 were connected with a live agent. *Id.*

**V.      The Court Should Approve Plaintiffs' Motion for Attorneys' Fees and Costs**

Class Counsel have submitted a detailed and unopposed motion along with supporting

declarations that demonstrate the reasons that they should receive $75,000 in attorneys' fees and

$15,349.17 in expenses from the Gross Settlement Fund. Doc. 430. Given the final fairness

hearing will be held remotely, (Doc. 435), Plaintiffs amend their expense request to $13,017.25

to exclude budgeted expenses for the final hearing. For the reasons stated in the motion for

attorneys' fees, Class Counsel requests that those fees and expenses be awarded from the Gross

Settlement Amount.

**VI.     The Court Should Approve a $1,000 Dollar Award to the Class Representative**

Plaintiffs have requested that the Court award $1,000 to the Class Representative as an

incentive award from the Gross Settlement Amount. Doc. 431 at 15−16. For the reasons stated in

Plaintiffs' motion (Doc. 431), that award is reasonable and fair compensation for the work

provided and risks undertaken by those representatives. *Id.*

<strong>CONCLUSION</strong>

Plaintiffs respectfully request that the Court grant final approval of the Settlement as fair

reasonable and adequate.

December 8, 2020                        Respectfully submitted,

                                        /s/ Joel D. Rohlf
                                        SCHLICHTER BOGARD & DENTON LLP
                                        Andrew D. Schlichter, Bar No. 4403267
                                        Jerome J. Schlichter*
                                        Heather Lea*
                                        Joel D. Rohlf*
                                        100 South Fourth Street, Suite 1200
                                        St. Louis, Missouri 63102
                                        (314) 621-6115, (314) 621-5934 (fax)
                                        aschlichter@uselaws.com
                                        jschlichter@uselaws.com
                                        hlea@uselaws.com
                                        jrohlf@uselaws.com
                                        *Admitted *pro hac vice*
                                        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

/s/ Joel D. Rohlf
*Counsel for Plaintiffs*