UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CASEY CUNNINGHAM, et al.,

Plaintiffs,

16-cv-6525 (PKC)

-against-

OPINION AND ORDER

CORNELL UNIVERSITY, et al.,

Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiffs, who are beneficiaries of the Cornell University Retirement Plan and the Cornell University Tax Deferred Annuity Plan (together, the "Plans"), brought this action against fiduciaries of the Plans alleging violations of the Employee Retirement Income Security Act ("ERISA"). In an Opinion and Order of September 29, 2017, the Court dismissed Count IV of plaintiffs' corrected amended complaint (the "Complaint"). Cunningham v. Cornell University, 16-cv-6525 (PKC), 2017 WL 4358769, at *9–10 (S.D.N.Y. Sept. 29, 2017). That claim (the "prohibited transaction claim") alleges that defendants caused the Plans to engage in prohibited transactions each time the Plans paid fees to the Plans' recordkeepers. (ECF 81, Compl't ¶ 230.) The Second Circuit affirmed the dismissal of the prohibited transaction claim. Cunningham v. Cornell University, 86 F.4th 961, 973–79 (2d Cir. 2023). The Supreme Court granted certiorari and reversed. Cunningham v. Cornell University, 604 U.S. 693, 709 (2025).

After this Court dismissed the prohibited transaction claim and before plaintiffs had taken their appeal, defendants moved to strike the Complaint's jury demand as to the then-remaining claims. In an Opinion and Order of September 6, 2018 (the "2018 Opinion"), the

Court denied the motion in part. Cunningham v. Cornell University, 16-cv-6525 (PKC), 2018 WL 4279466 (S.D.N.Y. Sept. 6, 2018). The Court held that controlling Second Circuit precedent required that the Court conclude that certain of the relief requested by the Complaint—that the fiduciaries "make good to the Plans all losses to the Plans" resulting from the fiduciaries' purported breaches of their fiduciary duties—was legal relief as to which plaintiffs were entitled to a trial by jury. (Compl't at 139.)

The Second Circuit has issued its mandate, which directs this Court to decide, if necessary, whether plaintiffs are entitled to a jury trial on the prohibited transaction claim, the sole remaining claim in this action. (ECF 476.) Defendants now move to strike plaintiffs' jury demand as to that claim. (ECF 491.) They contend that intervening Second Circuit precedent since the Court's 2018 Opinion supports a conclusion that the Complaint seeks only equitable, and not legal, relief. For reasons that will be explained, the motion to strike will be denied as to the Complaint's request that defendants "make good to the Plans all losses" stemming from the purported prohibited transactions.

DISCUSSION.

A party has a right to a jury trial under the Seventh Amendment when it asserts "legal rights" as opposed to "equitable rights." Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990) (quoting Parsons v. Bedford, 28 U.S. 433, 447 (1830)). Whether a plaintiff is entitled to a jury trial is subject to a two-part test in which the Court examines "the nature of the action and of the remedy sought." Tull v. United States, 481 U.S. 412, 417 (1987). "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." Id. "Second, we examine the remedy sought and determine whether it is legal or equitable in nature." Id. at 417–18.

As the Court concluded in its 2018 Opinion, and as plaintiffs now appear to concede, breach of fiduciary duty claims like the prohibited transaction claim would have historically been brought in courts of equity. 2018 WL 4279466, at *2 (first quoting Pereira v. Farace, 413 F.3d 330, 338 (2d Cir. 2005); and then citing Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985)); see also Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 241–42 (2000) ("ERISA § 406(a)(1) . . . supplements the fiduciary's general duty of loyalty to the plan's beneficiaries . . . ."). Accordingly, the first inquiry is answered in favor of defendants' position because the prohibited transaction claim historically would have been brought in a court of equity.

The Court thus turns to the second inquiry, which "is accorded 'greater weight' than the first and, as such, is the 'more important' step." Pereira, 413 F.3d at 339 (citation omitted) (first quoting Germain v. Connecticut Nat. Bank, 988 F.2d 1323, 1328 (2d Cir. 1993); and then quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989)). As a preliminary matter, the Court can discern no reason to disturb its conclusion in its 2018 Opinion that the Complaint's request for relief in the form of removal of fiduciaries, an accounting, reformation of the Plans and "other equitable or remedial relief as the Court deems appropriate" are traditional equitable remedies for which the prohibited transaction claim need not be tried to a jury. 2018 WL 4279466, at *2, 4. Accordingly, the motion will be granted as to those forms of relief, which will be tried to the Court.

As with defendants' earlier motion to strike, the parties' dispute is centered on the Complaint's request that the Court "[f]ind and adjudge that Defendants are personally liable to make good to the Plans all losses to the Plans resulting from each breach of fiduciary duty, and to otherwise restore the Plans to the position they would have occupied but for the breaches of

fiduciary duty." (Compl't at 139.) As to the prohibited transaction claim, the Complaint specifically alleges that "Defendants are liable to restore all losses to the Plans resulting from these prohibited transactions, and to provide restitution of all proceeds from these prohibited transactions . . . ." (Id. ¶ 232.)

In its 2018 Opinion, the Court concluded that the Second Circuit's decision in Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005), controlled whether the "make good" relief was equitable or legal in nature. In Pereira, the Circuit adopted dictum from the Supreme Court's decision in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002), holding that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property *in the defendant's possession*." Pereira, 413 F.3d at 340 (emphasis in original) (quoting Great-West, 534 U.S. at 214). This Court, applying Pereira, reasoned that the monetary compensation sought by the then-remaining claims involved funds that defendants never possessed and was therefore legal relief subject to trial by jury. 2018 WL 4279466, at *2–4.

The Court also addressed defendants' contention that Pereira has been undermined by the Supreme Court's decision in CIGNA Corp v. Amara, 563 U.S. 421 (2011). In Amara, the Supreme Court held that an award of make-whole relief to compensate for a breach of a fiduciary duty was permitted under section 502(a)(3) of ERISA, which authorizes courts to award "appropriate equitable relief." 563 U.S. at 441–42; see 29 U.S.C. § 1132(a)(3). The Amara Court distinguished Great-West, noting that the suit before it involved a claim brought by a plan beneficiary against a plan fiduciary and was therefore analogous to a suit brought against a trustee. Amara, 563 U.S. at 439. The Supreme Court concluded that such a suit "is the kind of lawsuit that, before the merger of law and equity, respondents could have

brought only in a court of equity, not a court of law." Id. The Supreme Court further explained that "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty" and that "prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'" Id. at 441–42 (citations omitted).

This Court, in deciding that Pereira nonetheless controlled, reasoned that Pereira, which addressed a party's jury trial right, was premised on consideration of eighteenth-century practice in courts of equity, while Amara instead interpreted section 502(a)(3)'s "appropriate equitable relief" provision. 2018 WL 4279466, at *3. This Court also noted that a "complicating circumstance in applying Amara" is that, prior to the merger of law and equity, equity courts adopted the practice of awarding legal relief without transforming its nature as legal relief. Id.; see Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993) ("At common law, however, there were many situations—not limited to those involving enforcement of a trust—in which an equity court could 'establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority.'"). This Court concluded, "[i]n the context of the assertion of a constitutional right to trial by jury, this Court cannot say that Amara so undermines Pereira that it is nearly inevitable that it will be overruled by the Second Circuit." 2018 WL 4279466, at *4. Accordingly, the Court held that it was required to follow Pereira "unless and until the case is overruled or clear Supreme Court precedent intervenes." Id.

Although not discussed in the 2018 Opinion, since Pereira, the Supreme Court has reaffirmed the continued efficacy of Great-West, which was relied heavily upon in the Second Circuit's decision in Pereira. Montanile v. Board of Trustees of Nat. Elevator Industry Health Benefit Plan, 577 U.S. 136, 148 n.3 (2016) (holding that "our interpretation of 'equitable relief'

in *Mertens*, *Great–West*, and *Sereboff v. Mid Atlantic Medical Services, Inc.* . . . remains unchanged."); see Pereira, 413 F3d at 340 ("Like our sister circuits, we are compelled to read Great–West as broadly as it is written.").

Defendants now argue that the Second Circuit's decision in Sullivan-Mestecky v. Verizon Communications Inc., 961 F.3d 91 (2d Cir. 2020), decided after this Court's 2018 Opinion, has overruled Pereira. In Sullivan-Mestecky, the Second Circuit vacated the district court's dismissal of the plaintiff's claim under section 502(a)(3) for monetary compensation for a plan fiduciary's alleged breach of fiduciary duty. Relying on the reasoning of Amara, the panel held that the plaintiff had invoked "the equitable remedy of surcharge" and was thus "appropriately seeking equitable relief" under section 502(a)(3). Sullivan-Mestecky, 961 F.3d at 99, 102–03.

The Court is unconvinced that Sullivan-Mestecky overruled Pereira sub silentio. The specific holding of Sullivan-Mestecky on which defendants rely was a straightforward application of Amara. Sullivan-Mestecky, like Amara, determined whether the relief requested by the plaintiff was "appropriate equitable relief" under section 502(a)(3) of ERISA. Sullivan-Mestecky did not decide whether the plaintiff was entitled to a jury trial as to that relief. Pereira, as this Court has already explained, squarely addressed the availability of a jury trial as to a claim for monetary compensation stemming from an alleged breach of fiduciary duties and in doing so implicitly considered eighteenth-century practice in courts of equity. Pereira still controls, and nothing in Sullivan-Mestecky undermines the Court's reasoning in the 2018 Opinion.

Nor does the Supreme Court's decision in Securities and Exchange Commission v. Jarkesy, 603 U.S. 109 (2024), supply "clear" Supreme Court precedent that undermines

Pereira. In Jarkesy, the Supreme Court held that the Seventh Amendment entitles a defendant to a jury trial when the Securities and Exchange Commission seeks civil penalties against the defendant for violations of the securities laws. The Supreme Court explained that "[w]hile monetary relief can be legal or equitable, money damages are the prototypical common law remedy," and "[w]hat determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" Jarkesy, 603 U.S. at 123 (quoting Tull, 481 U.S. at 422). "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." Id. (quoting Austin v. United States, 509 U.S. 602, 610 (1993)).

Respectfully, Jarkesy does not support defendants' argument. Jarkesy affirms that "money damages are the prototypical common law remedy." Id. (citing Mertens, 508 U.S. at 255 (describing plaintiffs' request for "monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties" as taking "the classic form of *legal* relief" (emphasis in original))).

A central premise of defendants' argument is that the remaining prohibited transaction claim is intended "solely to 'restore the status quo.'" Id. But the defendant fiduciaries never possessed the fees that are the subject of the prohibited transaction claim and recovery is sought from the personal assets of the defendants, the distinction that Great-West and Pereira make. The Complaint seeks a judgment requiring defendants to "make good to the Plans all losses to the Plans" and "restore all losses to the Plans resulting from these prohibited transactions." (Compl't at 139 & ¶ 232.) The Complaint alleges that the defendant fiduciaries engaged TIAA-CREF and Fidelity, who as "service providers" were "parties in interest," as

recordkeepers, which caused the Plans to engage in prohibited transactions. (Id. ¶¶ 4, 229–30.) There is no contention the challenged fees passed into the hands of the defendant fiduciaries. Rather plaintiffs seek a judgment requiring defendant fiduciaries to personally pay to the Plans from their personal assets the fees that should not have been paid to the non-party recordkeepers. It is, as plaintiffs' Complaint describes it, a "make good" remedy, and hence legal in nature, to which the plaintiffs are entitled to a jury. It is not a "restore the status quo" remedy.

The decision that this Court again reaches is consistent with those reached since this Court's 2018 Opinion by three other district courts in this Circuit denying motions to strike the jury demands on "make good" damages claims under ERISA. In Vellali v. Yale University, 662 F. Supp. 3d 238 (D. Conn. 2023) (Thompson, J.), the plaintiffs sought to have the Court "[f]ind and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duty . . . ." 662 F. Supp. 3d at 240. In denying the defendants' motion to strike the jury demand as to the make-good remedy against the defendant fiduciaries, Judge Thompson concluded that "the material distinction . . . is between those situations where a plaintiff seeks to recover 'particular funds or property in the defendant's possession,' and those situations where the plaintiff seeks to recover damages out of the defendant's assets generally." Id. at 245 (quoting Great-West, 534 U.S. at 213); see also Khan v. Bd. of Directors of Pentegra Defined Contribution Plan, 20-cv-7561 (PMH), 2023 WL 6237862, at *3 (S.D.N.Y. Sept. 26, 2023) (Halpern, J.) ("[T]he Court holds that Plaintiffs' request that Defendants 'make good' to the Plan losses suffered as a result of Defendants' alleged breaches of fiduciary duty is a legal remedy, not an equitable one."); Garthwait v. Eversource Energy Co., 20-cv-902 (JCH), 2022 WL 17484817, at *3 (D. Conn. Dec. 7, 2022) (Hall, J.) ("[T]he restoration of losses to the Plan . . . would not be equitable restitution as the defendants are not

alleged to have possessed those funds. Thus, a Great-West and Pereira analysis would suggest that plaintiffs are entitled to a jury trial for the "make good" claims . . . .").[1]

CONCLUSION.

Defendants' motion to strike the jury demand as to the remaining prohibited transaction claim is DENIED. The Clerk is respectfully directed to terminate the motion. (ECF 491.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
August 6, 2026

[1] Judge Carter struck the jury demand in a breach of fiduciary duty action brought derivatively on behalf of a corporation against a corporate fiduciary who allegedly caused the corporation to make payments to himself and an associate. Hawkins v. MedApproach Holdings, Inc., 13-cv-5434 (ALC), 2021 WL 4199996, at *1 (S.D.N.Y. Sept. 15, 2021). The decision is not to the contrary because the Complaint sought "[a]n order directing [the fiduciary] to disgorge and repay to [the corporation] all amounts wrongfully taken from [the corporation]," an equitable remedy. Id. at *3.